UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>BCR PINEWOOD REALTY LLC,<br><br>Debtor. | ) Chapter 11<br>)<br>) Case No. 23-22655<br>)<br>)<br>)<br>) |

**DECLARATION OF BENJAMIN RINGEL**
**PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2**

I, Benjamin Ringel, state the following under penalty of perjury:

1. I am a managing member of BCR Pinewood Realty LLC, the debtor-in-possession (the "Debtor") in the above-captioned Chapter 11 case. I am fully familiar with the facts and circumstances set forth below based upon my personal knowledge and/or my review of the Debtor's books and records.

2. I submit this declaration on behalf of the Debtor in support of the Debtor's voluntary petition, filed on September 7, 2023 (the "Petition Date"), for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), and pursuant to Rule 1007-2 of the Local Bankruptcy Rules of Bankruptcy Procedure for the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

**I.    Preliminary Statement**

3. This Chapter 11 case has been filed to maximize the value of the Debtor's one and only asset, its real property commonly known as Pinewood Apartments, located at 1609-15 Monmouth Avenue, Lakewood, New Jersey 08701 (the "Property"), through a sale of the Property and the global resolution of various pending actions involving the Debtor. The Property is an apartment complex on fourteen (14) acres of land, consisting of 284 residential apartments and no

other commercial operations. The Property is managed entirely by a third-party management company, Affiliated Management Corporation ("Affiliated").

## II. Background and Capital Structure

4. The Debtor is a Delaware limited liability company formed on February 18, 2011 pursuant to the Delaware Limited Liability Company Act. The Debtor is solely owned by BCR Lakewood Holdings LLC ("Holdco"), a pass-through Delaware limited liability company. Fifty percent (50%) of the membership interests in Holdco are held by BR Lakewood LLC ("BR") and the other fifty percent (50%) of the membership interests in Holdco are held by CR Lakewood LLC ("CR"), an entity solely owned by Chana Ringel. An organizational chart is attached hereto as **Exhibit A**.

5. I, Benjamin Ringel, and Chana Ringel are the co-managers of both the Debtor and Holdco.

6. The Debtor purchased the Property in May 2011 from the David Ringel Revocable Trust and the Klara Ringel Revocable Trust in a structured transaction for $8 million in cash and annuity payments to Klara Ringel for life. David Ringel passed away in October 2008 and Klara Ringel passed away in June 2018.

## III. Events Leading to the Chapter 11 Case

### A. *Holdco Litigation*

7. In 2015, Chana Ringel filed a lawsuit in the Superior Court of New Jersey, Chancery Division, Ocean County (the "NJ Court") against BR and me in my individual capacity, claiming that I used $700,000 of Holdco funds to pay expenses and debt service for other properties owned jointly by Chana and me. By this lawsuit, Chana sought, among other relief, to take BR's ownership interest in Holdco as punitive damages for my alleged actions. The lawsuit is titled

2

*Chana Ringel et al. v. Benjamin Ringel, BR Lakewood, BCR Lakewood et al.*, Docket Nos. OCM-C-127-15 and OCM-C-152-16 (the "Holdco Litigation").

8.  The Holdco operating agreement sets forth a detailed dispute resolution process whereby the managers submit all of their disagreements to arbitration by a real estate owner, as described in Section 5.9 of that certain Limited Liability Company Agreement of BCR Lakewood Holdings LLC, dated as of December 23, 2010, a copy of which is attached hereto as **Exhibit B** (the "Holdco LLC Agreement"). Chana Ringel violated this provision of the Holdco LLC Agreement by instituting the Holdco Litigation.

9.  After years of motion practice, a trial began in February 2020. On February 27, 2020, Chana Ringel agreed to a settlement proffered by the NJ Court and my attorney, which culminated in a settlement agreement. A few days later, Chana reneged on the settlement agreement.

10. We engaged in months of litigation to enforce the settlement agreement until ultimately, on September 4, 2020, the NJ Court entered an order memorializing the February 27, 2020 settlement agreement, providing for Holdco to wind down by dividing assets and resolving remaining financial disputes. A copy of the settlement order is attached hereto as **Exhibit C**, with the revised and executed settlement agreement attached thereto as Exhibit A (the "Settlement Agreement").

11. Pursuant to the Settlement Agreement, in January 2022, two of the five properties owned by entities owned by Holdco were transferred to BR and two were transferred to CR. The remaining property, the Property, was to be sold to a third-party purchaser or to either myself or Chana Ringel, in accordance with the terms of the Settlement Agreement.

12. In June 2023, the arbitrator awarded Chana Ringel $1,230,000. An appeal is being filed with respect to $650,000 of the arbitration award. A copy of the arbitration award is attached hereto as **Exhibit D** (the "Arbitration Award"). Pursuant to Section 6 of the Settlement Agreement, upon the sale of the Property, $2.5 million of sales proceeds are to be set aside by each of Chana and me to be used to satisfy any arbitration award. Accordingly, Chana is a creditor in this Chapter 11 case with a non-recourse claim for the Arbitration Award due to her right to receive payment from the sale proceeds.

B. *Sale Process*

13. In April 2021, a purchase and sale agreement was agreed to in principle by and between the Debtor and Rushmore Capital, LLC ("Rushmore") for the purchase of the Property for $47,100,000 (the "Rushmore Sale Agreement"). A copy of the Rushmore Sale Agreement (as eventually executed on February 8, 2022) is attached hereto as **Exhibit E**. Section 11(E) of the Rushmore Sale Agreement provides that Rushmore represents that it has all of the funds to complete the purchase of the Property.

14. On July 28, 2021, BR bid $46,391,000 for the Property in a fully financed offer, on a net basis pursuant to Section 2.i. of the Settlement Agreement, rendering BR's bid the superior offer. However, Chana Ringel initiated motion practice to sell the Property to Rushmore.

15. On August 25, 2021, the NJ Court entered an order awarding the Property to Rushmore, which order BR promptly appealed. Pending the appeal, Rushmore requested that its non-refundable $2,500,000 deposit be returned and the closing of the sale be delayed until the appeal was decided. BR agreed to extend the closing, reaching a stipulation dated April 13, 2022 between BR and Rushmore, a copy of which is attached hereto as **Exhibit F**.

4

16. On October 20, 2022, the appellate court ruled in favor of Rushmore, requiring the sale of the Property to occur by December 19, 2022, pursuant to the terms of the stipulation. After BR filed an additional appeal, Rushmore moved for an extension of the closing deadline pending that appeal, providing a new closing deadline of October 10, 2023.

17. On August 9, 2023, Rushmore filed yet another motion to further delay the closing of the Property. Upon information and belief, due to the changing interest rate environment and Rushmore's existing assets, Rushmore does not have sufficient cash on hand to close and has no intention of ever closing on the sale pursuant to the Sale Agreement.

18. If the sale is closes, the Debtor will receive close to $40 million in cash.

C. *Miscellaneous Litigation*

19. During the period from July 2015 through and including July 2020, three default judgments were entered against me and a separate, non-Debtor entity, AC I Toms River LLC ("AC I"), which is partially owned by me and Chana through other entities. Specifically, AC I is owned by AC I MZ Toms River LLC ("AC I MZ"), which is owned thirty percent (30%) by me, twenty-five percent (25%) by Chana, and forty-five percent (45%) owned by two other individuals.

20. In the last year, while the Rushmore sale has been pending, all three counterparties in each of these default judgment actions have moved in the NJ Court to attach their judgments to the Property's cash flow and the proceeds of the sale of the Property through charging orders and real property liens. In connection with these actions, Chana's attorney has described her as a creditor entitled to payment on account of the Arbitration Award and, consequently, the eventual sale of the Property. *See* Letter from Matthew N. Fiorovanti, Esq. to the Honorable Francis R. Hodgson, Jr., A.J.S.C (June 29, 2023) (attached hereto as **Exhibit G**).

21. The three counterparties (and creditors of the Debtor) are Atalaya Asset Management ("Atalaya"), JDWC LLC ("JDWC") and Ladder Capital ("Ladder").

22. Atalaya received a default judgment against me and other non-Debtor affiliates in the amount of $13,177,056.64. In January 2023, Atalaya filed an affidavit that a $9,000,000 partial payment was made which reduced the judgment to $4,177,056.64 plus interest from the date of the judgment. The Debtor is reviewing the basis of the partial payment affidavit to confirm the amount is correct.

23. JDWC's predecessor, RCG Longview REIT Holdings LLC ("RCG"), obtained a deficiency judgment against me in 2018. The JDWC judgment arises out of a carveout I executed as manager of AC I to procure a loan to refinance a shopping center located in Toms River, New Jersey. The origin of the JDWC judgment was a 2015 default judgment against AC I and myself, as neither party had counsel at that time.

24. Under Section 5.5 of the AC I MZ operating agreement, I am indemnified by AC I MZ for any losses I suffer in connection with my position as the manager of AC I MZ. A copy of the AC I MZ operating agreement is attached hereto as **Exhibit H**.

25. In 2016, Chana retained Giordano, Halleran & Ciesla, P.C. ("GHC") as her counsel in the Holdco Litigation. GHC also represented RCG, the lender to AC I, in RCG's action against AC I and me in the action entitled *RCG LV Debt IV Non-Reit Asset Holdings, LLC v. AC I Toms River, LLC, et al.* Chana was a beneficial member of AC I during the lawsuit through her ownership interest in AC I MZ. GHC was accordingly representing both a lender and a beneficial owner of the borrower entity it was suing for foreclosure and a money judgment. Upon information and belief, Chana entered into a fee payment or fee guaranty agreement with RCG and then with JDWC, providing for the payment of her GHC fees in exchange for taking certain

6

actions against AC I which benefited RCG and ultimately JDWC. As of today, both Chana and JDWC are represented by GHC. RCG was dissolved in 2017, and RCG apparently assigned its interest in the AC I action and judgment against me to JDWC.

26. In 2022, Chana again violated the Settlement Order by bringing an action in New York state court against me and the Ringel Children's Trust, which jointly own BR. By this action, Chana sought to void allegedly fraudulent transfers I made to my children and represented to the court that the Settlement Order was not final. BR and I filed an order to show cause (the "OSC"), seeking enforcement of the Settlement Order by assessing punitive monetary damages or, alternatively, voiding the Settlement Order. The OSC, a copy of which is attached hereto as **Exhibit I**, remains pending as of the date hereof.

IV. **Intentions for the Chapter 11 Case**

27. The Debtor intends to assume the Rushmore Sale Agreement and effectuate the sale of the Property to maximize value for the benefit of the Debtor and all of its stakeholders. In the event that the Rushmore sale does not close, the Debtor intends to keep Rushmore's $2,500,000 deposit, which will be used to satisfy creditors' claims.

28. In preparation for the possibility that the Rushmore sale does not close, the Debtor has already begun having discussions with Jones Lang LaSalle ("JLL") to market the Property and effectuate a sale pursuant to Section 363 of the Bankruptcy Code. The Debtor's goal is to achieve consummation of a sale by the first quarter of 2024 for at least $46.5 million.

29. My twenty percent (20%) ownership interest in the Property is my largest asset, and I intend on utilizing it in its entirety to satisfy creditors' claims.

30. Through either the Rushmore sale closing or a Section 363 sale to a new purchaser, the Debtor will receive close to $40 million, which will more than satisfy the Debtor's estimated claims pool.

31. The Debtor, along with its advisors, has been working diligently toward a value-maximizing transaction to swiftly exit Chapter 11 through an expeditious sale process. To that end, the Debtor anticipates filing a Chapter 11 plan of reorganization within the next month.

32. Given the complexity of the claims at issue and the creditors' competing interests and priorities, it is my belief that filing this Chapter 11 case is the most value-maximizing and efficient method for resolving these claims with the assistance and oversight of the Bankruptcy Court. Not only will this Chapter 11 case provide for a global resolution of all of these disputes, it will allow the Debtor to preserve value for the benefit of all of its stakeholders by streamlining these various actions in one forum and benefitting from the provisions of the Bankruptcy Code in connection with the ultimate Section 363 sale of the Property.

[*Signature Page to Follow*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: September 7, 2023
New York, New York

By: */s/ Benjamin Ringel*
Benjamin Ringel
Co-Managing Member
**BCR PINEWOOD REALTY LLC**
*Debtor and Debtor-in-Possession*