**EXHIBIT B**

# LIMITED LIABILITY COMPANY AGREEMENT

## OF

## BCR LAKEWOOD HOLDINGS LLC

**Dated as of December 23, 2010**

# TABLE OF CONTENTS

Page

**Article I DEFINED TERMS**................................................................................1

**Article II ORGANIZATION AND TERM** ......................................................3

    **Section 2.1**    **Formation** ..........................................................................3
    **Section 2.2.**    **Term**.................................................................................3
    **Section 2.3**    **Registered Agent and Office**........................................3
    **Section 2.4**    **Principal Place of Business** ..........................................4

**Article III PURPOSE AND POWERS OF THE COMPANY** ........................4

    **Section 3.1**    **Purposes**..........................................................................4
    **Section 3.2**    **Powers of the Company** ................................................4

**Article IV MEMBERS' CAPITAL CONTRIBUTIONS AND INTERESTS**...........................4

    **Section 4.1**    **Capital Contributions**....................................................4
    **Section 4.2**    **Interests** .........................................................................4
    **Section 4.3**    **Additional Contributions**..............................................4
    **Section 4.4**    **Withdrawals and Interest** ..............................................4
    **Section 4.5**    **Return of Capital** ..........................................................5
    **Section 4.6**    **Capital Accounts**...........................................................5
    **Section 4.7**    **Liability**..........................................................................5

**Article V RIGHTS AND DUTIES OF MEMBERS** .......................................5

    **Section 5.1**    **Management**....................................................................5
    **Section 5.2**    **No Management Powers of the Members**........................6
    **Section 5.3**    **Bank Accounts** ..............................................................7
    **Section 5.4**    **Indemnity** ......................................................................7
    **Section 5.6**    **Reliance on Authority of Manager**................................7
    **Section 5.7**    **Compensation of the Manager** .....................................7
    **Section 5.8**    **Meetings**.........................................................................7

**Article VI ALLOCATIONS and DISTRIBUTIONS** ....................................9

    **Section 6.1**    **Allocations** ....................................................................9
    **Section 6.3**    **Distributions**..................................................................9
    **Section 6.4**    **Tax Withholding** .........................................................10

**Article VII TRANSFERABILITY** ...............................................................10

    **Section 7.1**    **Restrictions on Transferability**....................................10

i

**Article VIII ADDITIONAL MEMBERS** ................................................................................... 11

    **Section 8.1**   **Admission of New Members** ................................................. 11
    **Section 8.2**   **Allocations to New Members** ............................................... 11

**Article IX DISSOLUTION AND TERMINATION** ............................................................... 11

    **Section 9.1**   **Dissolution** ............................................................................. 11
    **Section 9.2**   **Distribution of Assets Upon Dissolution** ............................. 11
    **Section 9.3**   **Winding Up** ............................................................................. 12
    **Section 9.4**   **Articles of Dissolution** .......................................................... 12

**Article X FINANCIAL STATEMENTS, BOOKS, RECORDS, TAX RETURNS, ETC.** ..... 12

    **Section 10.1**  **Books of Account** ................................................................... 12
    **Section 10.2**  **Financial Statements and Reports** ......................................... 12
    **Section 10.3**  **Returns and Other Elections** .................................................. 13
    **Section 10.4**  **Tax Matters** ........................................................................... 13

**Article XI REPRESENTATIONS AND WARRANTIES** ..................................................... 13

    **Section 11.1**  **Representations and Warranties** ............................................. 13

**Article XII MISCELLANEOUS** .............................................................................................. 14

    **Section 12.1**  **Notices** .................................................................................... 14
    **Section 12.2**  **Complete Agreement** ............................................................. 14
    **Section 12.3**  **Amendments** ........................................................................... 14
    **Section 12.4**  **Severability** ............................................................................ 14
    **Section 12.5**  **Ratification** ............................................................................. 14
    **Section 12.6**  **Binding Upon Successors** ...................................................... 14
    **Section 12.7**  **Rights of Third Parties** ........................................................... 14
    **Section 12.8**  **Governing Law** ...................................................................... 15
    **Section 12.9**  **Captions** ................................................................................. 15
    **Section 12.10 Counterparts** ...................................................................... 15
    **Section 12.11 Sense, Gender, and Number** ............................................... 15

## EXHIBITS

**Exhibit A - Capital Contributions** ............................................................................................. A-1

**Exhibit B - Members' Interests in the Company** ...................................................................... B-1

## LIMITED LIABILITY COMPANY AGREEMENT

### OF

### BCR LAKEWOOD HOLDINGS LLC

AGREEMENT (this "**Agreement**") effective as of this 23rd day of December, 2010, by and between, **BR LAKEWOOD LLC**, a Delaware limited liability company, with an address c/o Armstrong Capital Management LLC, 360 Madison Avenue, 20th Floor, New York, New York  10017 ("**BR**") and **CR LAKEWOOD LLC,** a Delaware limited liability company, with an address at 247 West 87th Street, Apt. 16a, New York, New York  10024 ("**CR**") (CR, together with BR are each a "**Member**", and collectively, the "**Members**").

### W I T N E S S E T H:

**WHEREAS,** BR and CR desire to adopt this Limited Liability Company Agreement on the terms, conditions and provisions set forth herein; and

**NOW, THEREFORE,** in consideration of the agreements and obligations set forth herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows effective as of the date first written above.

### ARTICLE I
### DEFINED TERMS

The following terms shall have the following meanings:

"**Act**" means the Delaware Limited Liability Company Act, 6 Del. C. § 18-101, *et seq.*

"**Additional Member**" means any person or entity who acquires an Interest in the Company pursuant to the terms of this Agreement, other than the parties hereto.

"**Affiliate**" means with respect to any Person (the "**Subject Person**"), (i) any other person that directly or indirectly controls or is controlled by or is under common control with the Subject Person, (ii) any person owning or controlling, directly or indirectly, through one or more intermediaries, 25% or more of the outstanding voting securities of, or other ownership interests in, the Subject Person, (iii) any other person in which the Subject Person (or any Affiliate of the Subject Person under the terms hereof), directly or indirectly through one or more intermediaries, is a Member or a managing member or a joint venturer or otherwise acts in a similar capacity, (iv) any officer, director or Member of the Subject Person, and (v) if the Subject Person is an officer, director or Member, any company for which the Subject Person acts in the same or similar capacity.

**"Agreement"** means this Limited Liability Company Agreement as originally executed and as amended, modified, supplemented or restated from time to time, as the context requires.

**"Capital Account"** shall mean the accounts maintained for each Member as set forth in **Section 4.6**.

**"Capital Contribution"** means the total amount of cash or property contributed to the capital of the Company by a Member, or Members, as the case may be pursuant to the provisions of Article IV.

**"Certificate of Formation"** means the Certificate of Formation of the Company filed with the Secretary of State of the State of Delaware, pursuant to the Act to form the Company, as originally executed and as amended, modified, supplemented or restated from time to time, as the context requires.

**"Code"** means the Internal Revenue Code of 1986, as amended.

**"Company"** means **BCR LAKEWOOD HOLDINGS LLC**.

**"Interest"** shall mean an interest in the Company as described in **Section 4.2**.

**"Investment"** means the acquisition of or investment in, whether in the form of debt or equity, a corporation, partnership, limited liability company or other entity, or a group of assets purchased in a single transaction or group of related transaction, or any other asset, including short term investments of cash and loans.

**"Major Decisions"** means the management decisions set forth in **Section 5.2**.

**"Manager"** means a person or entity elected to act on behalf of the Members as the Manager of the Company pursuant to **Section 5.1**. Manager or Managers, in either the singular or the plural, include both the singular and the plural as determined by the number of persons and entities currently acting on behalf of the Members as a Manager of the Company pursuant to **Section 5.1**.

**"Member"** means each of the parties that have executed this Agreement and each of the parties that may hereafter become Additional Members pursuant to this Agreement.

**"Net Cash Flow"** means the gross receipts and other miscellaneous revenue derived from Company operations less all cash operating expenses of the Company including, without limitation, (i) debt service on any Company loans, (ii) taxes and other fees incurred in connection with the operation of the Company, and (iii) increases, if any, in reserves reasonably established by the Managers from time to time for working capital and other purposes.

**"Net Profit"** and **"Net Loss"** means the net income (including items of income exempt from tax) and net loss (including expenditures that can neither be capitalized nor

2

deducted), respectively, of the Company, determined in accordance with the method of accounting used by the Company for Federal income tax purposes.

**"Person"** means any individual, partnership, association, trust, corporation, limited liability company or other entity.

"**Property**" means all real, personal and mixed properties, cash, investments, assets, interests and rights of any type owned by the Company.   All assets acquired with Company funds or in exchange for Company Property shall be Company Property.

**"Treasury Regulations"** mean regulations promulgated under the Code.

## ARTICLE II
## ORGANIZATION AND TERM

**Section 2.1    Formation**.   The Members and Company hereby agree that the Company, **BCR LAKEWOOD HOLDINGS LLC**, has been formed for the purpose and scope set forth herein.   Pursuant to the provisions of the Act, the formation of the Company shall be effective from the time of the filing of the Certificate of Formation.

In order to maintain the Company as a limited liability company under the laws of the State of Delaware, the Company shall from time to time take appropriate action, including the preparation and filing of such amendments to the Certificate of Formation and such other assumed name certificates, documents, instruments and publications as may be required by law, including, without limitation, action to reflect:

(i)    a change in the Company name;

(ii)    a correction of a defectively or erroneously executed Certificate of Formation;

(iii)    a correction of false or erroneous statements in the Certificate of Formation or the desire of the Members to make a change in any statement therein in order that it shall accurately represent the agreement among the Members; or

(iv)    change in the time for dissolution of the Company as stated in this Agreement.

**Section 2.2.    Term.**   The term of the Company shall commence upon filing the Certificate of Formation and shall continue in full force and effect until the earliest of the following: (i) upon the happening of an event described in Section 9.1 hereof; or (ii) the entry of a decree of judicial dissolution under Section 18-202 of the Act.

**Section 2.3    Registered Agent and Office**.   The Company's registered office in Delaware shall be c/o National Registered Agents, Inc., 160 Greentree Drive, Suite 101, in the City of Dover, County of Kent, Delaware 19904.   The Company may, at any time, designate another registered agent and/or office.

3

**Section 2.4**   **Principal Place of Business**.  The principal place of business of the Company shall be located at c/o Armstrong Capital Management LLC, 360 Madison Avenue, 20th Floor, New York, New York 10017.  The Company may, at any time, change the location of its principal place of business and may establish additional offices.

### ARTICLE III
### PURPOSE AND POWERS OF THE COMPANY

**Section 3.1**   **Purposes**.  The business purpose of the Company is (a) to act as a sole member of each of **BCR Pinewood Realty LLC**, **BCR Gertners Realty LLC**, **BCR 12th Carey Realty LLC, BCR Clifton Center Realty LLC,** and **BCR Clifton Avenue Realty LLC** and to do all acts necessary, appropriate and incidental in connection therewith, and (b) to engage in any and all other business activities permitted under the laws of the State of Delaware as approved by all of the Members.

**Section 3.2**   **Powers of the Company**.  In furtherance of the purpose of the Company as set forth in **Section 3.1**, the Company shall have the power and authority to take in its name all actions necessary, useful or appropriate in the Members' discretion to accomplish its purpose and take all actions necessary, useful or appropriate in connection therewith.

### ARTICLE IV
### MEMBERS' CAPITAL CONTRIBUTIONS AND INTERESTS

### Section 4.1   Capital Contributions.

(a)      The Members hereby agrees to contribute as its initial capital contribution the property listed on **Exhibit A** attached hereto ("**Initial Capital Contribution**"). Within 20 calendar days after execution of this Agreement, the Members shall contribute to the capital of the Company their Initial Capital Contribution.

(b)      The Initial Capital Contribution of any Additional Member shall be specified by the Company at the time of admission of such Additional Member.

**Section 4.2**   **Interests**.   The allocation of the Members' Interests in the Company is as set forth in **Exhibit B** annexed hereto.

**Section 4.3**   **Additional Contributions**.  Except as provided in this Agreement or as required by law, no Member shall be required to make any additional contributions to the capital of the Company.   Without limiting the foregoing, no Member shall be required to contribute to the capital of the Company to restore a deficit in the Member's Capital Account existing at any time.  No Member will be bound by, or be personally liable for, the expenses, liabilities or obligations of the Company.

**Section 4.4**   **Withdrawals and Interest**.  No Member shall have the right to withdraw from the Company or receive any return or interest on any portion of its Capital Contribution except as otherwise provided herein.

4

**Section 4.5**      **Return of Capital**.  No Member shall be entitled to the return of all or any part of its Capital Contribution except in accordance with the provisions of this Agreement.

**Section 4.6**      **Capital Accounts**.

(a)      A separate Capital Account will be maintained for each Member in accordance with Treasury Regulation Sections 1.704-1(b) and 1.704-2.  To each Member's Capital Account there shall be credited such Member's Capital Contributions and such Member's distributive share of profits; and to such Member's Capital Account there shall be debited the amount of cash and the fair market value of any Company assets distributed to such Member pursuant to any provision of this Agreement, and such Member's distributive share of losses.

(b)      The original Capital Account established for any Person who acquires an Interest by virtue of an assignment in accordance with the terms of this Agreement shall be in the same amount as, and shall replace, the Capital Account of the assignor of such Interest, and, for purposes of this Agreement, such assignee shall be deemed to have made the Capital Contributions made by the assignor of such Interest (or made by such assignor's predecessor in interest). To the extent such assignee acquires less than the entire Interest of the assignor of the Interest so acquired by such Member, the original Capital Account of such Member and its Capital Contributions shall be in proportion to the Interest it acquires, and the Capital Account of the assignor who retains a partial Interest, and the amount of its Capital Contributions, shall be reduced in proportion to the Interest it retains.

(c)      It is the intention of the initial Members that the Company be treated as a "partnership" for federal and state income tax purposes and neither the Company nor any Member shall make any election (for tax purposes or otherwise) inconsistent with such treatment without the consent of all Members.

**Section 4.7**      **Liability**.  No Member shall be liable under a judgment, decree or order of a court, or in any other manner for a debt, obligation or liability of the Company. Additionally, no Member shall be required to lend any funds to the Company or to pay any contributions, assessments or payments to the Company except the initial Capital Contributions provided for in this Article IV.

## ARTICLE V
## RIGHTS AND DUTIES OF MEMBERS

**Section 5.1**      **Management.**

(a)      The management, operation, and control of the Company and the day-to-day business and affairs of the Company shall vest solely in the Managers.  The Members hereby elect and appoint Benjamin Ringel and Chana Ringel as the initial Managers of the Company. Any decision, action, consent or approval of the initial Managers under this Agreement shall require all of the initial Managers acting jointly.  The Managers and sometimes referred to herein

5

as the **"Co-Managers"** and each a **"Co-Manager"** and may use such title when acting on behalf of the Company.

(b)    Benjamin Ringel and Chana Ringel shall each have the right to independently appoint and designate a successor to serve as Manager in their respective place and stead in the event that either or both cease to act as a Manager for any reason whatsoever (hereinafter a "**Successor Manager**").   Upon the appointment of a Successor Manager, such Successor Manager shall designate another individual to serve as a Successor Manager in his or her place and stead in the event he or she ceases to act as a Manager for any reason whatsoever. In the event that any Manager fails to designate a Successor Manager to take his or her place, the Members shall elect the Successor Manager.  Every individual named as a Manager or Successor Manager pursuant to this **Section 5.1** shall acknowledge same by executing a copy of this Agreement at the time they are appointed as such.

(c)    Benjamin Ringel and Chana Ringel shall each have the right to remove any Successor Manager they appoint and any time. Any Manager or Successor Manage may be removed for cause by the unanimous vote of the Members.

(d)    The Managers shall use ordinary care and reasonable diligence in carrying out the affairs of the Company.  The Managers shall not be liable to the Members for any mistake of judgment, any action or action omitted to be taken in good faith on behalf of the Company or for any loss due to negligence, fraud or willful misconduct of any employee, broker or agent of the Company who was selected, engaged, or employed by the Managers; provided that such employee, broker or agent was selected, engaged or retained by the Managers with reasonable care and in accordance with the terms of this Agreement.  The Managers may consult with legal counsel selected by them on matters relating to the Company, and any action taken or omitted to be taken by them in good faith, in reliance and in accordance with the opinion or advice of such counsel shall be full protection and justification to them with respect to the action taken or omitted to be taken.

(e)    The Managers shall carry on, manage and conduct the Company business and shall devote so much of their time thereto as shall be reasonably necessary.  The Managers shall not be obligated to devote all of their time and effort to the Company and its affairs.  The compensation of a Manager, if any, shall be determined in accordance with **Section 5.6** of this Agreement.

(f)    All contracts, documents, agreements, instruments or other writings intended to bind the Company shall bind the Company and be effective for all uses and purposes if signed on behalf of the Company by (i) all of the then serving Managers or (ii) by any Manager acting alone if all other Managers then serving have delegated their authority to sign on behalf of the Company to such Manager, such delegation has been approved by a majority of the Members and has not been revoked by the delegating Manager.

**Section 5.2    No Management Powers of the Members**.  The Members in such capacity shall have no voice or participation in the management of the Company business, and

6

no power to bind the Company or to act on behalf of the Company in any manner whatsoever, except as specifically provided in this Agreement.

**Section 5.3      Bank Accounts**.      The Company shall establish and maintain accounts in financial institutions (including, without limitation, national or state banks, trust companies or savings and loan institutions) in such amounts as the Managers may deem necessary from time to time. The funds of the Company shall be deposited in such accounts and shall not be commingled with the funds of a Manager or any Affiliates thereof.  All Company disbursements must be approved by the Managers; however, Company checks may be signed by any individual authorized by the Managers to sign checks on behalf of the Company.

**Section 5.4      Indemnity**.  The Company shall indemnify and hold harmless the Members (and the Managers, if not a Member) and their respective directors, officers, agents, members, shareholders and employees from any loss or damage incurred by them (including reasonable attorney's fees and costs) by reason of any acts performed or omitted by them for or on behalf of the Company, unless they committed such acts in bad faith or such acts were the results of active and deliberate dishonesty and were material to the cause of action so adjudicated or such Members or their respective directors, officers, agents, members, shareholders or employees shall have personally gained in fact a financial profit or other advantage to which he or she was not legally entitled.

**Section 5.6      Reliance on Authority of Manager**.  Any Person dealing with the Company, other than a Member, may rely on the authority of a Manager without inquiry into the provisions of this Agreement or compliance herewith, regardless of whether that action actually is taken in accordance with the provisions of this Agreement.

**Section 5.7      Compensation of the Manager**.   The Managers shall not be entitled to compensation for acting as a Manager of the Company.  A Manager, however, shall be entitled to reimbursement for any reasonable out of pocket costs and expenses incurred and paid to her in connection with the performance of duties as a Manager.  Any change in the compensation arrangement of a Manager shall be approved by the unanimous consent of the Members.

**Section 5.8      Meetings**.  Meetings of the Members shall not be held unless the Managers, in their sole discretion, decide to call a meeting of the Members for any purpose. The Members may adopt such rules and regulations for the conduct of their meetings and the management of the Company not inconsistent with this Agreement and the Act.

**Section 5.9      Management Disputes**.  In the event there are at any time more than one party serving as Manager and a dispute arises with respect to the management of the Company, then the provisions of this **Section 5.9** shall apply:

5.9.1 **Statement of the Dispute**.  If at any time the parties serving as the Manager fail to agree on any matter relating to the management of the Company which requires unanimous consent, then either Manager may give to the other party or parties serving as the

Manager a written statement (the "**Manager's Statement**") setting forth in reasonable detail the action such Manager (the "**Initiating Manager**"*)* is seeking the Company to take and the reasons for taking such action. The other party or parties serving as the Manager (the "**Other Manager**"*)* shall have ten (10) Business Days to respond (the "**Other Manager's Response**") to the Manager's Statement, failing which the initiating Manager may unilaterally cause the Company to take all necessary action to carry out the action set forth in the Manager's Statement and all matters reasonably related thereto, If the Other Manager timely gives the Other Manager's Response to the Initiating Manager and the Initiating Manager and Other Manager, in the five (5) Business Day period thereafter, fail to resolve the dispute, then the Initiating Manager may submit the Manager's Statement and the Other Manager's Response to the Arbitrator (as defined in **Section 5.9.3** below), with a copy to the Other Manager, and request that the Arbitrator decide whether the Initiating Manager's or the Other Manager's position is in the best interest of the Members having a majority in interest of the Percentage Interests.

5.9.2 **Arbitration**. The Arbitrator's ruling shall be in writing and be binding on each party serving as a Manager, the Members and the Company. If requested by the Arbitrator, the Initiating Manager and the Other Manager will meet with the Arbitrator to present and discuss their respective positions and furnish the Arbitrator with such information as the Arbitrator reasonably requests in order to rule on the dispute. Prior to and during any such discussions, the Initiating Manager and the Other Manager may modify their positions by notifying the other party and the Arbitrator of such modification. The Arbitrator, in his sole discretion, shall decide what information and discussion, if any, is necessary to rule on the dispute. The Arbitrator shall only be authorized to accept either the Initiating Manager's position, as set forth in the Manager's Statement, or the Other Manger's position, as set forth in the Other Manager's Response, in each case as such positions may have been modified in accordance with this **Section 5.9.2**. If the Arbitrator determines that the Initiating Manager's position is in the best interest of the Members, than the Initiating Manager shall be authorized unilaterally to take all necessary action, or cause the Company to take such action, to carry out the position set forth in the Manager's Statement, as same may have been modified, and all matters reasonably related thereto, If the Arbitrator determines that the Other Manager's position is in the best interests of the Members, then the Initiating Manager shall not be authorized to take the action's objected to in the Other Manager's Response, as same may have been modified.

5.9.3 **Arbitrator**. Benjamin Ringel and Chana Ringel shall designate an Arbitrator (as defined herein) mutually acceptable to both Benjamin Ringel and Chana Ringel. If they are unable to so agree, then each shall designate their own arbitrator and those two arbitrators shall then select a third arbitrator who shall be the "Arbitrator" for purposes of resolution of the dispute hereunder. The term "**Arbitrator**" shall mean such individual or his successors appointed in accordance with the terms of this **Section 5.9.3**. By a written instrument signed by each party serving as a Manager, the designated Arbitrator may be replaced with another person. If the then designated Arbitrator dies, becomes disabled or is unwilling or otherwise unable to act as the Arbitrator hereunder (each such event is herein called a "**Termination Event**"), each party serving as the Manger shall act in good faith to select a

8

replacement Arbitrator. If they are unable to agree on a replacement Arbitrator within twelve (12) Business Days after becoming aware of the Termination Event, then within seven (7) Business Days thereafter each party serving as a Manager shall select a person who has an ownership interest in and management rights over at least two (2) million square feet of retail space in the State of New Jersey to work together to designate the replacement Arbitrator. If either party fails timely to designate such a person, the person timely designated shall have the sole right to designate the replacement Arbitrator. If the designees do not reach agreement within seven (7) Business Days after the date that the last designee has been designated, then such designees shall designate another person, having the same minimum qualifications as required above for the first designees, to designate the replacement Arbitrator.   If the designees fail to agree upon the designation of another person to designate the Arbitrator, then such person shall be appointed by a judge sitting on a state or federal court in the jurisdiction in which the dispute arose to the extent the dispute is a property-level dispute, or a judge sitting on a state or federal court in New York County to the extent the dispute concerns a non-property-level related dispute. The decision of the person designated in accordance with the foregoing, shall be in writing and shall be binding upon each party serving as the Manager, the Company and the Members.

## ARTICLE VI
## ALLOCATIONS AND DISTRIBUTIONS

**Section 6.1**   **Allocations**.   Except as otherwise provided in **Section 6.2**, all items of income, gain, deduction, loss or credit, and items thereof, shall be allocated to the Members in accordance with their Interests.

**Section 6.2**   **Section 704 Compliance**   Income, gain, loss and deduction with respect to any Company asset contributed (or deemed contributed) to the capital of the Company, including the Property, shall, solely for federal income tax purposes, be allocated among the Members in accordance with Sections 704(b) and 704(c) of the Internal Revenue Code of 1986, as amended, and the Treasury Regulations thereunder.   Any elections or decisions relating to such allocations shall be made by the Manager.

### Section 6.3   Distributions.

(a)   The Managers shall distribute Net Cash Flow to the Members as follows and at such times as the Managers shall determine.   Except as otherwise provided in this Agreement, all distributions from Net Cash Flow shall be distributed to the Members, *pro rata*, in proportion to their Interests.

(b)   At the discretion of the Managers, the Company may distribute to each Member an amount (a "**Tax Distribution**") equal to the amount by which such Member's Tax Liability (as defined below) exceeds the aggregate distributions made to such Member since the last date on which a Tax Distribution was made. For purposes of this Agreement, a "**Member's Tax** Liability" shall equal the product of (i) the Tax Rate (as defined below) times (ii) such Member's distributive share of the Company's net taxable income, if any, for the period (as determined under Section 703(a) of the Code but including separately stated items described in

9

Section 702(a) of the Code); provided, that items of income, gain, loss and deduction attributable to the sale or exchange of all or substantially all of the assets of the Company shall be excluded from such calculation. For purposes of this Agreement, "**Tax Rate**" means, for any period, forty percent (40%). Distributions to a Member under this Section 6.3(b) shall be applied in reduction of any future distributions to that Member under Section 6.3(a).

            **Section 6.4**    **Tax Withholding**. In the event the Company is required to deduct and withhold, pursuant to the Code or any other federal, state or local law, rule or regulation which is currently in effect or which may be promulgated hereafter ("**Applicable Law**"), any amount from an actual distribution to a Member, the amount so deducted and withheld from such distribution shall, for all purposes of this Agreement, be treated as a distribution to such Member of the same type as the distribution giving rise to the obligation. In the event Applicable Law requires the Company to pay or withhold any amount on behalf of a Member (including any federal, state or local taxes) measured by a Member's distributive share of the Company's Net Profits, gain or any other Company item, other than any amount required to be deducted and withheld from actual distributions to a Member, then the payment or withholding of any such amount shall be considered a loan ("**Tax Loan**") by the Company to such Member (the "**Borrowing Member**"). The Borrowing Member shall repay any such Tax Loan within 30 days after the Managers (or if the Managers fail to do so any Member) delivers a written demand therefor, together with interest at an annual rate equal to two percent (2%) per annum in excess of the rate announced from time to time in the Wall Street Journal as the "prime rate" from the date such loan was made until the date of the repayment thereof. In addition to any other rights of the Company to enforce its entitlement to receive payment of the Tax Loan, plus any accrued interest thereon, the Company may deduct from any distribution to be made to a Borrowing Member an amount not greater than the outstanding balance of any Tax Loan, plus any accrued interest thereon, as a payment in total or partial satisfaction thereof.

## ARTICLE VII
## TRANSFERABILITY

            **Section 7.1**    **Restrictions on Transferability**. No Member shall transfer or assign its Interest in the Company without the prior consent of the Managers and all of the other Members, which consent may be withheld, delayed, denied or conditioned in any manner such persons so decide. If the Managers and the Members do not approve of the proposed sale, transfer or assignment of a selling Member's Interest, the proposed purchaser, transferee or assignee of the selling Member's Interest shall have no right to be admitted as a Member and no right to participate in the management of the business and affairs of the Company or to become an Additional Member. Notwithstanding the foregoing, a Member may, without the Managers' consent, assign, convey, sell or otherwise transfer or dispose of all or any portion of his Interest in the Company to any one or more members of his immediate family or families (defined for the purposes of this Agreement as a mother, father, sister, brother, son, daughter, spouse or any lineal descendant (in each instance whether by marriage or otherwise)) and/or to a trust or other entity for the benefit thereof or themselves and/or by a trust to such trust's beneficiaries, by a written instrument of assignment and assumption, provided that the instrument of transfer provides for the assumption of the assignor's liabilities and obligations hereunder and has been duly executed by the assignor of such interest and by the assignee/transferee. The Member shall

10

notify the Managers of any permitted assignment, transfer or disposition of any beneficial interest in any Interest of a Member which occurs without a transfer of record ownership. No transfer of a Member's Interest in the Company (including the transfer of any rights to receive or share in profits, losses, income or the return of contributions) shall be effective unless and until written notice (including the name and address of the proposed purchaser, transferee, or assignee and the date of such transfer) has been provided to the Managers.

## ARTICLE VIII
## ADDITIONAL MEMBERS

**Section 8.1    Admission of New Members**. From the date of the formation of the Company, any person or entity may, with the consent of the Managers and all of the other Members subject to the terms and conditions of this Agreement, become an Additional Member in this Company by the sale of new Company Interests for such consideration as the Managers shall determine or as a transferee of a Member's Interest or any portion thereof.

**Section 8.2    Allocations to New Members**. The Managers may, in their sole discretion, at the time an Additional Member is admitted, close the Company books (as though the Company's tax year had ended) or make pro-rata allocations of loss, income and expense deductions to an Additional Member for that portion of the Company's tax year in which an Additional Member was admitted, in accordance with the provisions of Section 706(d) of the Code and the Treasury Regulations promulgated thereunder.

## ARTICLE IX
## DISSOLUTION AND TERMINATION

**Section 9.1    Dissolution**. The Company shall be dissolved upon the occurrence of any of the following events:

(a)    By the unanimous written consent of all Members;

(b)    The entry of a decree of judicial dissolution under Section 18-802  of the Act; or

(c)    Upon the sale of all or substantially all of the Company Property or any other event that terminates the Company.

**Section 9.2    Distribution of Assets Upon Dissolution**. In settling accounts after dissolution, the liabilities of the Company shall be entitled to payment in the following order:

(d)    To creditors including Members who are creditors to the extent otherwise permitted by law, other than liabilities for distributions to Members;

(e)    Reasonable reserves necessary in connection with the winding up of the Company's affairs as determined by the Manager; and

11

(f)    To Members of the Company in proportion to their Interests; provided, however, that no Member shall receive distributions in excess of such Member's positive Capital Account balance after its Capital Account has been adjusted to reflect all allocations of income, gain, loss and deductions attributable to the dissolution event pursuant to **Section 9.1**.

**Section 9.3    Winding Up**.  Except as provided by law, upon dissolution, each Member shall look solely to the assets of the Company for the return of its Capital Contribution. If the Company's Investment remaining after the payment or discharge of the debts and liabilities of the Company is insufficient to return the Capital Contribution of each Member, such Member shall have no recourse against any other Member.  The winding up of the affairs of the Company and the distribution of its assets shall be conducted exclusively by the Members, who are hereby authorized to take all actions necessary to accomplish such distribution including, without limitation, selling any Company assets the Members deem necessary or appropriate to sell.

**Section 9.4    Articles of Dissolution**.  When all debts, liabilities and obligations have been paid and discharged or adequate provisions have been made therefor and all of the remaining property and assets have been distributed to the Members, a Cancellation of Certificate shall be executed and filed pursuant to Section 18-203 of the Act, and shall contain the information required by the Act.

## ARTICLE X
## FINANCIAL STATEMENTS, BOOKS, RECORDS, TAX RETURNS, ETC.

**Section 10.1    Books of Account**.  The Managers shall maintain, at the principal office of the Company, complete books of account, in which there shall be entered, fully and accurately, every transaction of the Company and shall include the following:

(a)    A current list of the full name and last known business address of each Member and Manager;

(b)    A copy of the Certificate of Formation of the Company and all amendments thereto;

(c)    Copies of the Company's Federal, state, and local income tax returns and reports, if any, for the three most recent years; and

(d)    Copies of the Company's currently effective written Agreement and copies of any financial statements of the Company for the three most recent years.  The fiscal year of the Company shall be the calendar year.  The books of account of the Company shall be kept in accordance with generally accepted accounting principles applied in a consistent manner. Any Member shall have the right, from time to time, at its own expense, to cause its accountants and representatives to examine, audit and copy the books and records of the Company; the Managers upon not less than five days' written notice from any Member shall make such books and records available for such examinations and audits at reasonable hours during business days.

**Section 10.2    Financial Statements and Reports**.  The Managers shall furnish the Member with a report setting forth such Member's share of the Company's profit or loss for

each year and such Member's allocable share of all items of income, gain, loss, deduction and credit, for Federal income tax purposes.

**Section 10.3 Returns and Other Elections**. The Managers shall cause the preparation and timely filing of all tax returns required to be filed by the Company pursuant to the Code and all other tax returns deemed necessary and required in each jurisdiction in which the Company does business. Copies of any such returns, or pertinent information therefrom, shall be furnished to the Members within a reasonable time after the end of the Company's fiscal year, but not later than April 15th.

### Section 10.4 Tax Matters.

(a) The Tax Matters Partner shall cause all Company tax returns to be timely filed with the applicable government authorities within allowable time periods, including extensions, and shall use reasonable efforts to provide such tax returns in a timely manner to the Members with the necessary information, including Schedule K-1s, with respect to the operations of the Company to allow the Members to file their own tax returns.

(b) It is intended that the Company be treated as a partnership for federal income tax purposes and neither the Company nor any Member shall make any election (for tax purposes or otherwise) inconsistent with such treatment without the consent of all Members.

(c) Benjamin Ringel shall be the "**Tax Matters Partner**" of the Company for purposes of Section 6231(a)(7) of the Code. The Tax Matters Partner is authorized to represent the Company, at the Company's expense, in connection with all examinations of the Company's affairs by tax authorities, including administrative and judicial proceedings, and to expend Company funds for professional services and costs associated therewith. Any direct or indirect costs and expenses incurred by the Tax Matters Partner, acting in his, her or its capacity as such, shall be deemed costs and expenses of the Company, and the Company shall reimburse the Tax Matters Partner for such amounts. The Tax Matters Partner shall not take any material action as Tax Matters Partner without the prior consent of the Members, and in any event shall not have any right to settle or compromise any matter raised by the Internal Revenue Service without the approval of a Member who would be adversely effected, not to be unreasonably withheld. The Tax Matters Partner shall keep the other Members informed of, and be given an opportunity to participate in a non-binding manner in, all such matters.

### ARTICLE XI
### REPRESENTATIONS AND WARRANTIES

**Section 11.1 Representations and Warranties**. The Members and any Additional Members prior to admittance to the Company in accordance with **Section 7.1** shall, represent, warrant, and agree that each has full right, power and authority to execute and deliver this Agreement; this Agreement has been duly executed and delivered by the Member and constitutes the valid and binding obligation of the Member in accordance with its terms; and the Member is not subject to any restriction or agreement which prohibits or would be violated by the execution and delivery hereof or the consummation of the transactions contemplated herein

13

or pursuant to which the consent of any third person, firm or corporation is required in order to give effect to the transactions contemplated herein.

## ARTICLE XII
## MISCELLANEOUS

**Section 12.1   Notices**.   Any notice, demand, election or other communication (hereinafter called a "**notice**") that, under the terms of this Agreement or under any statute, must be or may be given by the parties hereto shall be in writing and shall be given by mailing the same by certified or registered mail, return receipt requested, postage-prepaid or by reputable overnight courier, in either case, to the address set forth in the heading of this Agreement.   All copies of notices to be sent to any party hereunder shall be sent in the same manner as required for notices.   Any party may designate, by notice in writing to the other, a new or other address to which notices shall thereafter be given.   Any notice given hereunder shall be deemed given three (3) business days after same was sent if delivered by U.S. mail, and one (1) business day after same was sent if delivered by reputable overnight courier.

**Section 12.2   Complete Agreement**.   This Agreement fully sets forth all of the agreements and understandings of the parties with respect to the Company and supersedes any prior agreements of the parties.   There are no representations, agreements, arrangements or understandings, oral or written, other than contemporaneous agreements, among the parties relating to the subject matter of this Agreement which are not expressly set forth herein.

**Section 12.3   Amendments**. This Agreement may be amended only with the unanimous consent of the Members.

**Section 12.4   Severability**. This Agreement is intended to be performed in accordance with, and only to the extent permitted by, the applicable laws, ordinances, rules and regulations of the jurisdictions in which the Company engages in business.   If any provision of this Agreement, or the application thereof to any person or circumstance, shall, for any reason and to any extent, be held to be invalid or unenforceable, the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected, but rather shall be enforced to the full extent permitted by law.

**Section 12.5   Ratification**.   Each Person who becomes a Member in the Company after the execution and delivery of this Agreement shall, by becoming a Member, be deemed thereby to ratify and agree to all prior actions taken by the Company and the Managers.

**Section 12.6   Binding Upon Successors**.   This Agreement shall be binding upon the parties hereto and their respective heirs, executors, administrators, successors and assigns, and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and permitted assigns.   This Agreement shall become effective upon its execution and delivery by the Members.

**Section 12.7   Rights of Third Parties**.   None of the provisions of this Agreement shall be construed as having been made for the benefit of any creditor of either the

Company or any of the Members, nor shall any of such provisions be enforceable (except as otherwise required by law) by any person not a party hereto.

**Section 12.8  Governing Law**.   Irrespective of the place of execution or performance, the validity and construction of this Agreement shall be governed by the laws of Delaware without regard to conflict of laws principles. The parties hereto hereby waive the right to trial by jury and hereby consent to the jurisdiction of the courts of the State of Delaware over all disputes arising in connection with this Agreement.

**Section 12.9  Captions**.   The captions, headings and titles contained in this Agreement are solely for convenience of reference and shall not affect the interpretation of this Agreement or of any provision hereof.

**Section 12.10  Counterparts**. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall together constitute one instrument.

**Section 12.11  Sense, Gender, and Number**. All terms and words used in this Agreement, regardless of the sense or gender in which they are used, shall be deemed to include each other sense and gender unless the context requires otherwise. Whenever the context may require, the singular forms of nouns, pronouns, and verbs shall include the plural and vice versa.

**Section 12.12  Recitals**. All of the Recitals set forth on the first page of this Agreement are hereby incorporated herein by reference and form a part of this Agreement.

*[Remainder of Page Intentionally Left Blank]*

*[Signature to follow on next page]*

**IN WITNESS WHEREOF,** the parties hereto have executed and acknowledged this Agreement as of the date first above written.

**MEMBERS:**

**BR LAKEWOOD LLC**

By: _____

Benjamin Ringel, Manager

**CR LAKEWOOD LLC**

By: _____

Chana Ringel, Manager

**MANAGERS:**

By: _____

Benjamin Ringel

By: _____

Chana Ringel

16

## EXHIBIT A

## Member's Initial Capital Contribution Commitments Pursuant to Section 4.1(a)

**BR LAKEWOOD LLC**                                          $1,000.00

**CR LAKEWOOD LLC**                                          $1,000.00

A-1

## EXHIBIT B

**Members' Interest in the Company**

**Member**                         **Interest**


**BR LAKEWOOD LLC**                    50%


**CR LAKEWOOD LLC**                    50%