## EXHIBIT I

|  |  |
|---|---|
| CHANA RINGEL AND CR LAKEWOOD, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR LAKEWOOD HOLDINGS, LLC, | **SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: OCEAN COUNTY** |
| Plaintiffs, | Civil Action |
| vs. | |
| BR LAKEWOOD, LLC AND BENJAMIN RINGEL, | Docket No. OCN-C-127-15 |
| Defendants, | |
| CHANA RINGEL, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR OAKRIDGE, LLC, | Docket No. OCN-C-152-16 |
| Plaintiffs, | **ORDER TO SHOW CAUSE** |
| vs. | |
| BENJAMIN RINGEL, SUNSET HILL OAKRIDGE PLAZA, LLC, JOHN DOES 1-10, AND ABC CORPORATION 1-10, | |
| Defendants. | |

**THIS MATTER HAVING BEEN OPEN TO THE COURT** by Defendants Benjamin Ringel, BR Lakewood, LLC, and Sunset Hill Oakridge Plaza, LLC ("Defendants"), by and through their counsel, Patterson Belknap Webb & Tyler LLP (Peter C. Harvey, Esq., appearing) seeking relief pursuant to and *R. 4:1:10-3* by way of Order to Show Cause, and it appearing that Chana Ringel and CR Lakewood, LLC,

individually, and derivatively on behalf of BCR Lakewood Holdings, LLC and BCR Oakridge, LLC ("Plaintiffs") have notice of this application, and based upon the pleadings and proceedings had to date herein; and good cause having been shown;

It is on this _____ day of March 2022:

**ORDERED** that Plaintiffs appear and show cause before the Superior Court at the Ocean County Courthouse in Toms River, New Jersey, on March __, 2022, at 9:00 o'clock in the forenoon or as soon thereafter as counsel can be heard, why an order should not be issued:

1. Ordering that Plaintiffs Chana Ringel and CR Lakewood, LLC, individually, and derivatively on behalf of BCR Lakewood Holdings, LLC and BCR Oakridge, LLC ("Plaintiffs") withdraw the action filed in New York Supreme Court on May 30, 2021 (the "New York Action");

2. Ordering and declaring that, having filed the New York Action, Plaintiffs have breached and violated the Term Sheet, dated October 26, 2020, memorializing the parties' settlement in this case;

3. Ordering and declaring that, as a result of such breach, the Term Sheet is now null and void;

4. Ordering that the Pinewood Property shall be transferred to Defendant BR Lakewood, LLC, who shall purchase Chana Ringel's share in the Pinewood Property for the amount proposed in Defendants' letter to Plaintiffs, dated January 7, 2022;

5. Ordering that Plaintiffs shall pay Defendants their
   reasonable attorneys' fees and costs incurred in
   connection with enforcing the Term Sheet and defending
   against the improperly filed New York Action, in an
   amount to be determined by the Court; and

6. Granting such other relief as the Court deems equitable
   and just; and it is further

**ORDERED** that Plaintiffs shall file any opposition papers to

Defendants' application no later than March __, 2022; and

**ORDERED** that Defendants shall file any reply papers no

later than _____, 2022.


_____
HON. FRANCIS R. HODGSON, JR.
Presiding Judge
Chancery Division

OCN-C-00127-15 08/09/2023 3:11:43 PM Pg 1 of 3 Trans ID: CHC2023636690

CHANA RINGEL AND CR
LAKEWOOD, INDIVIDUALLY,
AND DERIVATIVELY ON BEHALF
OF BCR LAKEWOOD HOLDINGS,
LLC,

     Plaintiffs,

        vs.

BR LAKEWOOD, LLC AND
BENJAMIN RINGEL,

     Defendants,

CHANA RINGEL,
INDIVIDUALLY, AND
DERIVATIVELY ON BEHALF OF
BCR OAKRIDGE, LLC,

     Plaintiffs,

        vs.

BENJAMIN RINGEL, SUNSET
HILL OAKRIDGE PLAZA, LLC,
JOHN DOES 1-10, AND ABC
CORPORATION 1-10,

     Defendants.

**SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION:OCEAN COUNTY**

Civil Action

Docket No. OCN-C-127-15

Docket No. OCN-C-152-16

**CERTIFICATION OF PETER C. HARVEY
IN SUPPORT OF DEFENDANTS'
ORDER TO SHOW CAUSE**

     I, **PETER C. HARVEY**, being of full age, certify as follows:

     1.   I am an attorney at law of the State of New Jersey and a partner at the law firm of Patterson Belknap Webb & Tyler LLP, counsel for Defendants-Appellants Benjamin Ringel, BR Lakewood, LLC, and Sunset Hill Oakridge Plaza, LLC (collectively, "Defendants") in connection with the above-captioned matter and the related, pending appeal.  I submit this Certification in

support of Defendants' Order to Show Cause, pursuant to Rule 4:52.
I am familiar with the facts set forth in this Certification and
documents attached hereto.

2.    Attached hereto as **EXHIBIT A** is a true and accurate copy
of the trial docket of Case Number OCN-C-152-16.

3.    Attached hereto as **EXHIBIT B** is a true and accurate copy
of Defendants' Motion to Enforce the Settlement, dated March 10,
2020.

4.    Attached hereto as **EXHIBIT C** is a true and accurate copy
of this Court's Order, dated May 8, 2020.

5.    Attached hereto as **EXHIBIT D** is a true and accurate copy
of the Term Sheet executed by both parties, dated October 26, 2020.

6.    Attached hereto as **EXHIBIT E** is a true and accurate copy
of this Court's Order, dated August 25, 2021.

7.    Attached hereto as **EXHIBIT F** is a true and accurate copy
of Plaintiffs' Order to Show Cause, dated August 11, 2021.

8.    Attached hereto as **EXHIBIT G** is a true and accurate copy
of Defendants' Opposition to Plaintiffs' Order to Show Cause and
in support of Defendants' Cross-Motion for an Order declaring BR
Lakewood LLC the highest bidder, dated August 17, 2021.

9.    Attached hereto as **EXHIBIT H** is a true and accurate copy
of Defendants' Notice of Docketing, dated October 7, 2021.

10.  Attached hereto as **EXHIBIT I** is a true and accurate copy of proof of service of Defendants-Appellants' opening brief in the Appellate Division, dated January 20, 2022.

11.  Attached hereto as **EXHIBIT J** is a true and accurate copy of Defendants' Motion for a Stay of Proceedings Pending Appeal, dated January 26, 2022.

12.  Attached hereto as **EXHIBIT K** is a true and accurate copy of the Brief on Behalf of Plaintiffs in support of Order to Show Cause, dated January 27, 2022.

13.  Attached hereto as **EXHIBIT L** is a true and accurate copy of the letter from Peter Harvey to Efrem Schwalb and Matthew Fiorovanti, dated January 7, 2022.

14.  Attached hereto as **EXHIBIT M** is a true and accurate copy of Rushmore Capital, LLC's Order to Show Cause, dated January 19, 2022.

I hereby certify that the above statements made by me are true.  I am aware that if any of the above statements made by me are willfully false, I am subject to punishment.

DATED:  March 9, 2022

                                    _/s/ Peter C. Harvey_

                                        Peter C. Harvey

                            PATTERSON BELKNAP WEBB & TYLER LLP
                            1133 Avenue of Americans
                            New York, NY  10036-6710
                            Tel: (212) 336-2000
                            Fax: (212) 336-2222
                            E-Mail:  pcharvey@pbwt.com

3

# EXHIBIT A

# Chancery Case Summary

**Case Number:** OCN C-000152-16

**Case Caption:** Ringel Vs Ringel

**Court:** General Equity      **Venue:** Ocean      **Case Initiation Date:** 07/05/2016

**Case Type:** Other General Equity      **Case Status:** Closed

**Case Track:**      **Judge:** Francis  Hodgson

## Plaintiffs

### Chana  Ringel AKA  Bcr Oakridge Llc

| | | |
|---|---|---|
| **Party Description:** Individual | | **Attorney Name:** Efrem Tobias Schwalb |
| **Address Line 1:** 225 West 83Rd Street | **Address Line 2:** Apt 3T | **Attorney Bar ID:** 031261995 |
| **City:** New York   **State:** NY | **Zip:** 10024 | **Phone:** |
| **Attorney Email:** ESCHWALB@KOFFSKYSCHWALB.COM | | |

### Benjamin  Ringel AKA  Bcr Oakridge Llc

| | | |
|---|---|---|
| **Party Description:** Individual | | **Attorney Name:** |
| **Address Line 1:** | **Address Line 2:** | **Attorney Bar ID:** |
| **City:**   **State:** | **Zip:** 00000 | **Phone:** |
| **Attorney Email:** | | |

## Defendants

### Sunset Hill Oakridgeplaza Llc

| | | |
|---|---|---|
| **Party Description:** Corp | | **Attorney Name:** Peter Charles Harvey |
| **Address Line 1:** 90 Merrall Drive | **Address Line 2:** | **Attorney Bar ID:** 035131989 |
| **City:** Lawrence   **State:** NY | **Zip:** 11559 | **Phone:** |
| **Attorney Email:** PCHARVEY@PBWT.COM | | |

### Benjamin  Ringel

| | | |
|---|---|---|
| **Party Description:** Individual | | **Attorney Name:** Peter Charles Harvey |
| **Address Line 1:** 90 Merrall Drive | **Address Line 2:** | **Attorney Bar ID:** 035131989 |
| **City:** Lawrence   **State:** NY | **Zip:** 11559 | **Phone:** |
| **Attorney Email:** PCHARVEY@PBWT.COM | | |

### Chana  Ringel

| | | |
|---|---|---|
| **Party Description:** Individual | | **Attorney Name:** Efrem Tobias Schwalb |
| **Address Line 1:** | **Address Line 2:** | **Attorney Bar ID:** 031261995 |
| **City:**   **State:** | **Zip:** 00000 | **Phone:** |
| **Attorney Email:** ESCHWALB@KOFFSKYSCHWALB.COM | | |

### Abc Corp 1-10

| | | |
|---|---|---|
| **Party Description:** Fictitious | | **Attorney Name:** |
| **Address Line 1:** | **Address Line 2:** | **Attorney Bar ID:** |
| **City:**   **State:** | **Zip:** 00000 | **Phone:** |
| **Attorney Email:** | | |

### John  Does 1-10

| | | |
|---|---|---|
| **Party Description:** Fictitious | | **Attorney Name:** |
| **Address Line 1:** | **Address Line 2:** | **Attorney Bar ID:** |
| **City:**   **State:** | **Zip:** 00000 | **Phone:** |
| **Attorney Email:** | | |

### Jdwc Llc

| | | |
|---|---|---|
| **Party Description:** Corp | | **Attorney Name:** Donald F Campbell |
| **Address Line 1:** | **Address Line 2:** | **Attorney Bar ID:** 030402001 |
| **City:**   **State:** | **Zip:** 00000 | **Phone:** |

**Attorney Email:** DCAMPBELL@GHCLAW.COM

## Rushmore Capital Llc

**Party Description:** Corp

**Address Line 1:**

**City:**  **State:**

**Attorney Email:** ANGELO.STIO@TROUTMAN.COM

**Attorney Name:** Angelo Anthony Stio

**Address Line 2:**  **Attorney Bar ID:** 014791997

**Zip:** 00000  **Phone:**

### Case Proceeding

| Created Date | Scheduled Time | Court Room | Judge Name | Proceeding Description | Motion Type | Proceeding Status | Motion Status |
|---|---|---|---|---|---|---|---|
| 07/05/2016 | 09:00 | 018 | FRANCIS  HODGSON | MOTION HEARING | MOTION FOR ORDER TO SHOW CAUSE HEARING | RSCHED | |
| 07/12/2016 | 02:00 | 018 | FRANCIS  HODGSON | PROCEEDING | | COMPLETED | |
| 08/19/2016 | 09:00 | 018 | FRANCIS  HODGSON | MOTION HEARING | MOTION FOR ORDER TO SHOW CAUSE HEARING | COMPLETED | CM |
| 10/14/2016 | 09:00 | 018 | FRANCIS  HODGSON | MOTION HEARING | MOTION TO RELIEVE COUNSEL | COMPLETED | CM |
| 11/28/2016 | 09:00 | 018 | FRANCIS  HODGSON | CASE MANAGEMENT CONFERENCE | | ADJ DISC INC | |
| 12/05/2016 | 09:00 | 018 | FRANCIS  HODGSON | CASE MANAGEMENT CONFERENCE | | ADJ NO JUDGE | |
| 01/09/2017 | 09:00 | 018 | FRANCIS  HODGSON | CASE MANAGEMENT CONFERENCE | | COMPLETED | |
| 02/17/2017 | 09:00 | 018 | FRANCIS  HODGSON | MOTION HEARING | | ADJOURNED | AJ |
| 03/03/2017 | 09:00 | 018 | FRANCIS  HODGSON | MOTION HEARING | | CANCEL | CC |
| 04/28/2017 | 09:00 | 018 | FRANCIS  HODGSON | MOTION HEARING | | COMPLETED | CM |
| 05/01/2017 | 11:00 | 018 | FRANCIS  HODGSON | TRIAL READINESS CONFERENCE | | RSCHED | |
| 07/31/2017 | 11:00 | 018 | FRANCIS  HODGSON | CASE MANAGEMENT CONFERENCE | | COMPLETED | |
| 08/04/2017 | 09:00 | 018 | FRANCIS  HODGSON | MOTION HEARING | | RSCHED | |
| 08/18/2017 | 09:00 | 018 | FRANCIS  HODGSON | MOTION HEARING | | ADJOURNED | AJ |
| 09/01/2017 | 09:00 | 018 | FRANCIS  HODGSON | MOTION HEARING | | ADJOURNED | AJ |
| 09/15/2017 | 09:00 | 018 | FRANCIS  HODGSON | MOTION HEARING | | COMPLETED | CM |
| 11/28/2017 | 11:00 | 018 | FRANCIS  HODGSON | CASE MANAGEMENT CONFERENCE | | COMPLETED | |
| 02/02/2018 | 09:00 | 018 | FRANCIS  HODGSON | CASE MANAGEMENT CONFERENCE | | RSCHED | |
| 02/16/2018 | 09:00 | 018 | FRANCIS  HODGSON | CASE MANAGEMENT CONFERENCE | | RSCHED | |
| 03/02/2018 | 09:00 | 018 | FRANCIS  HODGSON | CASE MANAGEMENT CONFERENCE | | COMPLETED | |
| 06/08/2018 | 09:00 | 018 | FRANCIS  HODGSON | MOTION HEARING | MISCELLANEOUS MOTION | ADJOURNED | AJ |
| 06/22/2018 | 09:00 | 018 | FRANCIS  HODGSON | MOTION HEARING | MISCELLANEOUS MOTION | COMPLETED | CM |
| 06/22/2018 | 09:00 | 018 | FRANCIS  HODGSON | MOTION HEARING | | COMPLETED | CM |
| 08/17/2018 | 09:00 | 018 | FRANCIS  HODGSON | MOTION HEARING | MOTION TO STRIKE ANSWER | ADJOURNED | AJ |
| 08/20/2018 | 09:00 | 018 | FRANCIS  HODGSON | CASE MANAGEMENT CONFERENCE | | RSCHED | |
| 09/28/2018 | 09:00 | 018 | FRANCIS  HODGSON | MOTION HEARING | MOTION TO STRIKE ANSWER | ADJOURNED | AJ |
| 10/09/2018 | 09:00 | 018 | FRANCIS  HODGSON | CASE MANAGEMENT CONFERENCE | | RSCHED | |
| 10/26/2018 | 09:00 | 018 | FRANCIS  HODGSON | MOTION HEARING | MOTION TO STRIKE ANSWER | COMPLETED | CM |
| 11/05/2018 | 09:00 | 018 | FRANCIS  HODGSON | CASE MANAGEMENT CONFERENCE | | CANCEL | |
| 11/30/2018 | 09:00 | 018 | FRANCIS  HODGSON | MOTION HEARING | | ADJOURNED | AJ |
| 11/30/2018 | 09:00 | 018 | FRANCIS  HODGSON | MOTION HEARING | MISCELLANEOUS MOTION | ADJOURNED | AJ |
| 11/30/2018 | 09:00 | 018 | FRANCIS  HODGSON | MOTION HEARING | | ADJOURNED | AJ |
| 12/07/2018 | 09:00 | 018 | FRANCIS  HODGSON | MOTION HEARING | | COMPLETED | CM |
| 12/07/2018 | 09:00 | 018 | FRANCIS  HODGSON | MOTION HEARING | MISCELLANEOUS MOTION | COMPLETED | CM |
| 12/07/2018 | 09:00 | 018 | FRANCIS  HODGSON | MOTION HEARING | | COMPLETED | CM |
| 12/07/2018 | 09:00 | 018 | FRANCIS  HODGSON | MOTION HEARING | | COMPLETED | CM |
| 12/07/2018 | 09:00 | 018 | FRANCIS  HODGSON | MOTION HEARING | | COMPLETED | CM |
| 01/25/2019 | 09:00 | 018 | FRANCIS  HODGSON | MOTION HEARING | | COMPLETED | CM |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 04/26/2019 | 09:00 | 018 | FRANCIS | HODGSON | MOTION HEARING | MOTION TO WITHDRAW AS COUNSEL | COMPLETED | CM |
| 05/06/2019 | 10:00 | 018 | FRANCIS | HODGSON | TRIAL READINESS CONFERENCE | | COMPLETED | |
| 06/17/2019 | 01:30 | 018 | FRANCIS | HODGSON | CASE MANAGEMENT CONFERENCE | | COMPLETED | |
| 06/25/2019 | 09:00 | 018 | FRANCIS | HODGSON | TRIAL | | RSCHED | |
| 07/01/2019 | 01:30 | 025 | FRANCIS | HODGSON | CASE MANAGEMENT CONFERENCE | | COMPLETED | |
| 07/01/2019 | 09:00 | 025 | FRANCIS | HODGSON | CASE MANAGEMENT CONFERENCE | | RSCHED | |
| 07/23/2019 | 09:00 | 025 | FRANCIS | HODGSON | TRIAL | | RSCHED | |
| 09/27/2019 | 08:59 | 025 | FRANCIS | HODGSON | MOTION HEARING | MOTION FOR SUMMARY JUDGMENT | ADJOURNED | AJ |
| 10/11/2019 | 08:59 | 025 | FRANCIS | HODGSON | MOTION HEARING | MOTION FOR SUMMARY JUDGMENT | COMPLETED | CM |
| 10/28/2019 | 01:30 | 025 | FRANCIS | HODGSON | TRIAL | | RSCHED | |
| 10/29/2019 | 09:00 | 025 | FRANCIS | HODGSON | TRIAL | | RSCHED | |
| 02/21/2020 | 09:00 | 025 | FRANCIS | HODGSON | TRIAL | | RSCHED | |
| 02/25/2020 | 09:00 | 025 | FRANCIS | HODGSON | TRIAL | | ADJRN ILL | |
| 03/27/2020 | 09:00 | 025 | FRANCIS | HODGSON | MOTION HEARING | | ADJOURNED | AJ |
| 04/01/2020 | 09:30 | 025 | FRANCIS | HODGSON | TRIAL | | CANCEL | |
| 04/24/2020 | 09:00 | 025 | FRANCIS | HODGSON | MOTION HEARING | | ADJOURNED | AJ |
| 05/08/2020 | 09:00 | 025 | FRANCIS | HODGSON | MOTION HEARING | | COMPLETED | CM |
| 07/24/2020 | 09:00 | REMOT | FRANCIS | HODGSON | MOTION HEARING | | COMPLETED | CM |
| 07/24/2020 | 09:00 | REMOT | FRANCIS | HODGSON | MOTION HEARING | | COMPLETED | CM |
| 10/16/2020 | 09:00 | REMOT | FRANCIS | HODGSON | MOTION HEARING | | COMPLETED | CM |
| 01/29/2021 | 10:30 | VIDEO | FRANCIS | HODGSON | CASE MANAGEMENT CONFERENCE | | COMPLETED | |
| 05/20/2021 | 11:30 | VIDEO | FRANCIS | HODGSON | CASE MANAGEMENT CONFERENCE | | COMPLETED | |
| 06/04/2021 | 09:00 | VIDEO | FRANCIS | HODGSON | MOTION HEARING | | COMPLETED | CM |
| 07/07/2021 | 02:00 | VIDEO | FRANCIS | HODGSON | CASE MANAGEMENT CONFERENCE | | CANCEL | |
| 01/20/2022 | 10:00 | VIDEO | FRANCIS | HODGSON | MOTION HEARING | MOTION FOR ORDER TO SHOW CAUSE HEARING | ADJOURNED | AJ |
| 01/28/2022 | 10:00 | VIDEO | FRANCIS | HODGSON | MOTION HEARING | MOTION FOR ORDER TO SHOW CAUSE HEARING | ADJOURNED | AJ |
| 02/04/2022 | 09:00 | VIDEO | FRANCIS | HODGSON | MOTION HEARING | MOTION FOR ORDER TO SHOW CAUSE HEARING | COMPLETED | CM |
| 02/04/2022 | 09:00 | VIDEO | FRANCIS | HODGSON | MOTION HEARING | MOTION FOR ORDER TO SHOW CAUSE HEARING | COMPLETED | CM |
| 03/11/2022 | 09:00 | REMOT | FRANCIS | HODGSON | MOTION HEARING | | RSCHED | |
| 03/11/2022 | 09:00 | VIDEO | FRANCIS | HODGSON | MOTION HEARING | | PENDING | PG |

**Case Actions**

| Filed Date | Docket Text | Transaction ID | Entry Date |
|---|---|---|---|
| 09/10/2021 | Letter/Correspondence submitted by Aurora Cassirer of TROUTMAN PEPPER HAMILTON SANDERS LLP. JEDS EF-944681 | CHC2021178692 | 09/10/2021 |
| 09/13/2021 | Miscellaneous Order submitted by Court | CHC2021180599 | 09/14/2021 |
| 05/14/2020 | Correspondence uploaded by Case Management Staff submitted by MATTHEW NICHOLAS FIOROVANTI | CHC2020135850 | 06/03/2020 |
| 07/07/2020 | Motion To Reconsider Order uploaded by Case Management Staff submitted by BENJAMIN RINGEL | CHC2020176962 | 07/10/2020 |
| 07/16/2020 | Motion For Cross Motion uploaded by Case Management Staff submitted by MATTHEW NICHOLAS FIOROVANTI | CHC2020181660 | 07/20/2020 |
| 07/20/2020 | Objection To Motion uploaded by Case Management Staff submitted by BENJAMIN RINGEL | CHC2020182184 | 07/20/2020 |
| 09/09/2020 | Letter/Correspondence submitted by BRUCE H NAGEL of NAGEL RICE LLP. JEDS EF-219405 | CHC2020215116 | 09/09/2020 |
| 09/04/2020 | Other Court Initiated Order submitted by Court | CHC2020216888 | 09/11/2020 |
| 09/04/2020 | Miscellaneous Order submitted by Court | CHC2020216893 | 09/11/2020 |
| 09/04/2020 | Miscellaneous Order uploaded by Case Management Staff submitted by MATTHEW NICHOLAS FIOROVANTI | CHC2020216898 | 09/11/2020 |
| 09/11/2020 | Motion submitted by BRUCE H NAGEL of NAGEL RICE LLP. JEDS EF-226038 | CHC2020217260 | 09/11/2020 |
| 10/01/2020 | Brief/Letter Brief submitted by MATTHEW NICHOLAS FIOROVANTI of GIORDANO HALLERAN & CIESLA, PC. JEDS EF-270732 | CHC2020232118 | 10/01/2020 |

| 10/12/2020 | Brief/Letter Brief submitted by BRUCE H  NAGEL of NAGEL RICE LLP. JEDS  EF-291060 | CHC2020238461 | 10/12/2020 |
| 10/16/2020 | Order To Reconsider Order uploaded by Case Management Staff submitted by BENJAMIN RINGEL | CHC2020242206 | 10/16/2020 |
| 01/28/2021 | Letter/Correspondence submitted by MATTHEW NICHOLAS  FIOROVANTI of GIORDANO HALLERAN & CIESLA, PC. JEDS  EF-509530 | CHC202118228 | 01/28/2021 |
| 02/11/2021 | Letter/Correspondence submitted by MATTHEW NICHOLAS  FIOROVANTI of GIORDANO HALLERAN & CIESLA, PC. JEDS  EF-535833 | CHC202127633 | 02/11/2021 |
| 04/20/2021 | Letter/Correspondence submitted by Michael J Canning of GIORDANO HALLERAN & CIESLA, PC. JEDS  EF-675003 | CHC202177453 | 04/20/2021 |
| 04/22/2021 | Correspondence uploaded by Case Management Staff submitted by BENJAMIN RINGEL | CHC202181050 | 04/26/2021 |
| 05/14/2021 | Letter/Correspondence submitted by Matthew Nicholas Fiorovanti of GIORDANO HALLERAN & CIESLA, PC. JEDS  EF-722742 | CHC202195769 | 05/14/2021 |
| 05/14/2021 | Correspondence uploaded by Case Management Staff submitted by BENJAMIN RINGEL | CHC202196699 | 05/17/2021 |
| 05/19/2021 | Letter/Correspondence submitted by Matthew Nicholas Fiorovanti of GIORDANO HALLERAN & CIESLA, PC. JEDS  EF-732056 | CHC202199064 | 05/19/2021 |
| 05/19/2021 | Letter/Correspondence submitted by Matthew Nicholas Fiorovanti of GIORDANO HALLERAN & CIESLA, PC. JEDS  EF-732163 | CHC202199169 | 05/19/2021 |
| 05/20/2021 | Other Court Initiated Order submitted by Court | CHC202199679 | 05/20/2021 |
| 05/26/2021 | Motion submitted by Matthew Nicholas Fiorovanti of GIORDANO HALLERAN & CIESLA, PC. JEDS  EF-745674 | CHC2021105976 | 05/26/2021 |
| 06/02/2021 | Letter/Correspondence submitted by Frederick R Gruen of GRUEN & GOLDSTEIN. JEDS  EF-753954 | CHC2021109596 | 06/02/2021 |
| 06/03/2021 | Letter/Correspondence submitted by Matthew Nicholas Fiorovanti of GIORDANO HALLERAN & CIESLA, PC. JEDS  EF-757173 | CHC2021110961 | 06/03/2021 |
| 06/03/2021 | Letter/Correspondence submitted by Frederick R Gruen of GRUEN & GOLDSTEIN. JEDS  EF-757387 | CHC2021111035 | 06/03/2021 |
| 06/03/2021 | Correspondence submitted by Court | CHC2021113204 | 06/07/2021 |
| 06/04/2021 | Other Court Initiated Order submitted by Court | CHC2021114008 | 06/07/2021 |
| 06/08/2021 | Letter/Correspondence submitted by Bruce H Nagel of NAGEL RICE LLP. JEDS  EF-770162 | CHC2021115056 | 06/08/2021 |
| 06/09/2021 | Letter/Correspondence submitted by Matthew Nicholas Fiorovanti of GIORDANO HALLERAN & CIESLA, PC. JEDS  EF-771074 | CHC2021115353 | 06/09/2021 |
| 06/09/2021 | Correspondence submitted by Court | CHC2021115656 | 06/09/2021 |
| 07/01/2021 | Letter/Correspondence submitted by Matthew Nicholas Fiorovanti of GIORDANO HALLERAN & CIESLA, PC. JEDS  EF-811801 | CHC2021130677 | 07/01/2021 |
| 07/19/2021 | Brief/Letter Brief submitted by Bruce H Nagel of NAGEL RICE LLP. JEDS  EF-840922 | CHC2021140835 | 07/19/2021 |
| 07/19/2021 | Objection to motion submitted by Matthew Nicholas Fiorovanti of GIORDANO HALLERAN & CIESLA, PC. JEDS  EF-842309 | CHC2021141218 | 07/19/2021 |
| 08/03/2021 | Correspondence submitted by Court | CHC2021155484 | 08/09/2021 |
| 08/11/2021 | Order to Show Cause submitted by Matthew Nicholas Fiorovanti of GIORDANO HALLERAN & CIESLA, PC. JEDS  EF-888164 | CHC2021157343 | 08/11/2021 |
| 08/17/2021 | Objection to motion submitted by Bruce H Nagel of NAGEL RICE LLP. JEDS  EF-898832 | CHC2021161062 | 08/17/2021 |
| 08/17/2021 | Motion submitted by Bruce H Nagel of NAGEL RICE LLP. JEDS  EF-898870 | CHC2021161085 | 08/17/2021 |
| 08/17/2021 | Motion submitted by Bruce H Nagel of NAGEL RICE LLP. JEDS  EF-898792 | CHC2021161183 | 08/17/2021 |
| 08/20/2021 | Reply brief submitted by Aurora  Cassirer of TROUTMAN PEPPER HAMILTON SANDERS LLP. JEDS  EF-907121 | CHC2021164470 | 08/20/2021 |
| 08/20/2021 | Reply brief submitted by Matthew Nicholas Fiorovanti of GIORDANO HALLERAN & CIESLA, PC. JEDS  EF-907237 | CHC2021164489 | 08/20/2021 |
| 08/23/2021 | Order To Show Cause uploaded by Case Management Staff submitted by MATTHEW NICHOLAS FIOROVANTI | CHC2021166700 | 08/24/2021 |
| 08/23/2021 | Miscellaneous Order uploaded by Case Management Staff submitted by BRUCE H NAGEL | CHC2021166738 | 08/24/2021 |
| 08/25/2021 | Proposed Form of Order submitted by Matthew Nicholas Fiorovanti of GIORDANO HALLERAN & CIESLA, PC. JEDS  EF-915131 | CHC2021167647 | 08/25/2021 |
| 11/05/2021 | Miscellaneous Order submitted by Court | CHC2021221459 | 11/09/2021 |
| 01/19/2022 | Notice of Appearance submitted by Angelo Anthony Stio of TROUTMAN PEPPER HAMILTON SANDERS LLP. JEDS  EF-1154518 | CHC202214073 | 01/19/2022 |
| 01/19/2022 | Order to Show Cause submitted by Angelo Anthony Stio of TROUTMAN PEPPER HAMILTON SANDERS LLP. JEDS  EF-1154523 | CHC202214075 | 01/19/2022 |
| 01/25/2022 | Notice of Appearance submitted by Donald F Campbell of GIORDANO HALLERAN & CIESLA, PC. JEDS  EF-1163237 | CHC202218399 | 01/25/2022 |
| 01/25/2022 | Notice of Appearance submitted by Steven W Ward of GIORDANO HALLERAN & CIESLA, PC. JEDS  EF-1163336 | CHC202218419 | 01/25/2022 |
| 01/26/2022 | Notice of Appearance submitted by Peter Charles Harvey of PATTERSON BELKNAP WEBB & TYLER LLP. JEDS  EF-1166146 | CHC202219677 | 01/26/2022 |
| 01/26/2022 | Motion submitted by Peter Charles Harvey of PATTERSON BELKNAP WEBB & TYLER LLP. JEDS  EF-1166148 | CHC202219678 | 01/26/2022 |
| 01/27/2022 | Order to Show Cause submitted by Matthew Nicholas Fiorovanti of GIORDANO HALLERAN & CIESLA, PC. JEDS  EF-1167907 | CHC202220640 | 01/27/2022 |
| 01/28/2022 | Letter/Correspondence submitted by Matthew Nicholas Fiorovanti of GIORDANO HALLERAN & CIESLA, PC. JEDS  EF-1168657 | CHC202221154 | 01/28/2022 |
| 01/28/2022 | Letter/Correspondence submitted by Bruce H Nagel of NAGEL RICE LLP. JEDS  EF-1169310 | CHC202221499 | 01/28/2022 |
| 01/31/2022 | Order To Show Cause uploaded by Case Management Staff submitted by MATTHEW NICHOLAS FIOROVANTI | CHC202222533 | 01/31/2022 |
| 02/01/2022 | Letter/Correspondence submitted by Peter Charles Harvey of PATTERSON BELKNAP WEBB & TYLER LLP. JEDS  EF-1173485 | CHC202223435 | 02/01/2022 |

| 02/02/2022 | Reply brief submitted by Angelo Anthony Stio of TROUTMAN PEPPER HAMILTON SANDERS LLP. JEDS  EF-1175545 | CHC202224419 | 02/02/2022 |
|---|---|---|---|
| 02/03/2022 | Objection to motion submitted by Matthew Nicholas Fiorovanti of GIORDANO HALLERAN & CIESLA, PC. JEDS  EF-1178346 | CHC202225744 | 02/03/2022 |
| 02/03/2022 | Reply brief submitted by Matthew Nicholas Fiorovanti of GIORDANO HALLERAN & CIESLA, PC. JEDS  EF-1178362 | CHC202225759 | 02/03/2022 |
| 02/04/2022 | Miscellaneous Order uploaded by Case Management Staff submitted by ANGELO ANTHONY STIO III | CHC202228081 | 02/07/2022 |
| 02/14/2022 | Other submitted by Peter Charles Harvey of PATTERSON BELKNAP WEBB & TYLER LLP. JEDS  EF-1195598 | CHC202233535 | 02/14/2022 |
| 03/03/2022 | Objection to motion submitted by Peter Charles Harvey of PATTERSON BELKNAP WEBB & TYLER LLP. JEDS  EF-1226032 | CHC202247049 | 03/03/2022 |
| 03/03/2022 | Objection to motion submitted by Angelo Anthony Stio of TROUTMAN PEPPER HAMILTON SANDERS LLP. JEDS  EF-1226234 | CHC202247159 | 03/03/2022 |

# EXHIBIT B

NAGEL RICE, LLP
Bruce H. Nagel, Esq. (025931977)
103 Eisenhower Parkway, Suite 103
Roseland, New Jersey 07068
Attorneys for Defendants BR Lakewood, LLC and Benjamin Ringel
and Sunset Hill Oakridge Plaza, LLC and Benjamin Ringel

|  |  |
|---|---|
| ─────────────────────────────── | : SUPERIOR COURT OF NEW JERSEY |
| CHANA RINGEL AND CR LAKEWOOD, | : CHANCERY DIVISION |
| INDIVIDUALLY, AND DERIVATIVELY | OCEAN COUNTY |
| ON BEHALF OF BCR LAKEWOOD | : |
| HOLDINGS, LLC, | : DOCKET NO. OCN-C-127-15 |
|  | : |
| Plaintiffs/Respondents, | : |
|  | : |
| vs. | : Civil Action |
|  | : |
| BR LAKEWOOD, LLC AND BENJAMIN | : |
| RINGEL, | : |
|  | : |
| Defendants. | : |
| ─────────────────────────────── | : |
| CHANA RINGEL, INDIVIDUALLY, AND |  |
| DERIVATIVELY ON BEHALF OF BCR | : DOCKET NO. OCN-C-152-16 |
| OAKRIDGE, LLC, | : |
|  | : |
| Plaintiffs/Respondents, | : |
|  | : Civil Action |
| vs. | : |
|  | : |
| BENJAMIN RINGEL, SUNSET HILL | : NOTICE OF MOTION TO |
| OAKRIDGE PLAZA, LLC, JOHN | : ENFORCE SETTLEMENT |
| DOES 1-10, AND ABC | : |
| CORPORATION 1-10, | : |
|  | : |
| Defendants/Appellants. | : |
| ─────────────────────────────── | : |

Matthew Fiorovanti, Esq.
Giordano Halleran & Ciesla, PC
125 Half Mile Road Suite 300
Red Bank, NJ 07701

Efrem Schwalb, Esq.
Koffsky Schwalb LLP
349 Fifth Avenue, Suite 733
New York, NY 10016


PLEASE TAKE NOTICE that on March 27, 2020 at 9:00 a.m. or an earlier date set by the Court, Nagel Rice, LLP, attorneys for Defendants in both the Lakewood matter and the Oakridge matter, will move before the Superior Court of New Jersey, Ocean County, Chancery Division, for an Order granting Defendants' motion to enforce the settlement reached by the parties.

PLEASE TAKE FURTHER NOTICE that, in support of this application, Plaintiffs will rely upon the Certification of Counsel and letter brief submitted herewith.

A proposed form of Order is submitted herewith.

Oral argument is requested.

NAGEL RICE, LLP
Attorney for Defendants


By: *s/Bruce H. Nagel*
BRUCE H. NAGEL

Dated: March 10, 2020

NAGEL RICE, LLP
Bruce H. Nagel, Esq. (025931977)
103 Eisenhower Parkway, Suite 103
Roseland, New Jersey 07068
Attorneys for Defendants BR Lakewood, LLC and Benjamin Ringel
and Sunset Hill Oakridge Plaza, LLC and Benjamin Ringel

|  |  |
|---|---|
| CHANA RINGEL AND CR LAKEWOOD, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR LAKEWOOD HOLDINGS, LLC, | : SUPERIOR COURT OF NEW JERSEY : CHANCERY DIVISION : OCEAN COUNTY : : DOCKET NO. OCN-C-127-15 |
| Plaintiffs/Respondents, | : : |
| vs. | : Civil Action : |
| BR LAKEWOOD, LLC AND BENJAMIN RINGEL, | : : : |
| Defendants. | : : |
| CHANA RINGEL, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR OAKRIDGE, LLC, | : DOCKET NO. OCN-C-152-16 : : |
| Plaintiffs/Respondents, | : : Civil Action |
| vs. | : : |
| BENJAMIN RINGEL, SUNSET HILL OAKRIDGE PLAZA, LLC, JOHN DOES 1-10, AND ABC CORPORATION 1-10, | : CERTIFICATION OF BRUCE : NAGEL IN SUPPORT OF MOTION : TO ENFORCE SETTLEMENT : |
| Defendants/Appellants. | : |

I, BRUCE H. NAGEL hereby certify as follows:

1.    I am a partner with the firm of Nagel Rice, LLP, attorneys for Defendants BR Lakewood, LLC and Benjamin Ringel in

the Lakewood matter and Sunset Hill Oakridge Plaza, LLC and Benjamin Ringel in the Oakridge matter. This certification is submitted in support of Defendants' motion to enforce the settlement reached by the parties in both the Lakewood and Oakridge matters.

2. After three days of trial, Judge Hodgson invited all parties to discuss settlement in chambers. While in chambers, the Judge urged all parties to consider settling the matter. After some discussion, with the Judge's involvement, the attorneys reached agreement on the material terms of a settlement, subject to client approval. The Judge requested that we consult with our clients for approval of the terms and then inform His Honor if those terms were acceptable. We then spent approximately 25 minutes discussing the settlement terms with our clients and came back to chambers at approximately 4:30 p.m. to confirm with the Judge that the terms were acceptable. Both Mr. Schwalb and Mr. Fiorovanti advised the Judge that their client had accepted the terms.

3. The material terms that were accepted by both parties are as follows:

> a. The Pinewood property would be listed for sale with a broker and publicly sold, with each party retaining the right to bid on the property. The parties would request that the broker exempt the parties from the listing agreement.

> b. The four remaining properties comprising BCR Lakewood
> would be divided into two groups and Chana would have
> the right to select one of the two groups. Ben would get
> the other group.
>
> c. All remaining issues in the case would be resolved in
> arbitration. The parties would attempt to choose an
> arbitrator and if they were unable to do so, the court
> would select the arbitrator.
>
> d. Pinewood management would stay in place until the sale.
>
> e. The parties would escrow funds from Pinewood to secure
> the claims to be resolved in arbitration and the court
> would protect these funds from other creditors.

4. I suggested that Mr. Schwalb draft the term sheet confirming these material terms. I received from him on March 1, 2020 a term sheet which provided for the sale of Pinewood by way of a private auction, a material term which was not discussed in chambers or agreed upon by either party. See term sheet annexed hereto as Ex. A. In fact, both sides accepted the proposed settlement which provided for the public sale of Pinewood.

5. We know that Chana understood and agreed that the Pinewood property would be sold at public sale as she confirmed to Charles Kushner only minutes after she agreed to the deal in court that the property would be sold at public sale. See email from Chana to Mr. Kushner sent on February 27, 2020 at 5:29 p.m. annexed

hereto as Ex. B where she stated, "The judge urged us to settle and suggested we sell Pinewood on the market as that is the largest property and the one we both want, split the others and have a trial on the financial piece". Chana clearly knew that the deal involved the public sale of Pinewood and she even asked Mr. Kushner "… if you are interested in partnering I would be happy to speak with you." Nowhere in her email does Chana mention that the Pinewood property would be sold at a private auction between the two parties to the litigation.

6.   I annex hereto as Ex. C the Stipulation of Settlement that my office prepared which confirmed the material terms of the settlement. In forwarding this stipulation, I informed Mr. Schwalb that his term sheet "included many items that were not discussed or agreed upon." See Ex. D. I then had a conference call with Chana's attorneys who asked for changes/clarifications. I annex hereto as Ex. E the revised Stipulation which clarified some of the issues which Chana's counsel raised in the conference call.

7.   It is high time to end this destructive family dispute. The parties have agreed upon material terms and have reserved all open issues to be resolved with arbitration. We ask that the court enforce the terms agreed upon directly with the court after each party had the opportunity to review those terms with counsel.

 

I certify that the foregoing statements made by me are true. I understand that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

By: *Bruce H. Nagel*
BRUCE H. NAGEL

Dated: March 10, 2020

# EXHIBIT C

NAGEL RICE, LLP
Bruce H. Nagel, Esq. (025931977)
103 Eisenhower Parkway, Suite 103
Roseland, New Jersey 07068
Attorneys for Defendants BR Lakewood, LLC and Benjamin Ringel
and Sunset Hill Oakridge Plaza, LLC and Benjamin Ringel

**FILED**

MAY - 8 2020

CHAMBERS OF
FRANCIS R. HODGSON, JR. P.J. Ch.
SUPERIOR COURT OCEAN COUNTY

| | |
|---|---|
| CHANA RINGEL AND CR LAKEWOOD, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR LAKEWOOD HOLDINGS, LLC, : | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIVISION<br>OCEAN COUNTY<br><br>DOCKET NO. OCN-C-127-15 |
| Plaintiffs/Respondents, : | |
| vs. : | Civil Action |
| BR LAKEWOOD, LLC AND BENJAMIN RINGEL, : | |
| Defendants. : | |
| CHANA RINGEL, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR OAKRIDGE, LLC, : | DOCKET NO. OCN-C-152-16 |
| Plaintiffs/Respondents, : | |
| vs. : | Civil Action |
| BENJAMIN RINGEL, SUNSET HILL OAKRIDGE PLAZA, LLC, JOHN DOES 1-10, AND ABC CORPORATION 1-10, : | ORDER |
| Defendants/Appellants. : | |

THIS MATTER having been brought before the court on the motion of Defendants BR Lakewood, LLC and Benjamin Ringel in the Lakewood matter and Sunset Hill Oakridge Plaza, LLC and Benjamin Ringel in

the Oakridge matter for an Order enforcing the settlement reached by the parties.

IT IS on this *8th* day of ~~June~~ *May* 2020;

ORDERED that:

1.    The motion by Defendants BR Lakewood, LLC and Benjamin Ringel in the Lakewood matter and Sunset Hill Oakridge Plaza, LLC and Benjamin Ringel in the Oakridge matter to enforce the settlement reached by the parties is hereby granted.

2.    The settlement reached by the all the parties on February 27, 2020 is hereby enforced.

3.    The terms of the settlement are set forth in the *Term Sheet (with Exceptions below)* Exhibit *A* to the March 10, 2020 Certification of Bruce Nagel.

4.    A copy of this Order be served on all parties within seven days of Defendants' receipt.

_____ , J.S.C.
FRANCIS R. HODGSON, JR. P.J. Ch

This motion was:
☒ Opposed
____ Unopposed

5. ¶ 3 i - iii is excized - the parties agreed to public sale; and

6. ¶ V is amended - Tax efficiencies are agreed to - to the extent they benefit both parties.

FOR THE REASONS
EXPRESSED ON THE RECORD
5 | 8 | 2020

GEN-C 000027-15 02/09/2023 03 11:45 PM Rr 01 of 2267 Transol ID: CHC2023526(0

# EXHIBIT D

## TERM SHEET

1. **Signatories** -- executed by the CR Parties and the BR Parties including the Ringel Children Trusts trustees.

2. **Pinewood Complex** --

    i.    The Parties agree to sell the Pinewood Complex to a third party purchaser or to either Chana Ringel or Benjamin Ringel, solely or in partnership or conjunction with any person or entity, via an arm's length sales process ("**Sale Process**") intended to maximize the value of the Pinewood Complex, to be brokered by a mutually acceptable real estate broker (the "**Broker**") pursuant to a listing agreement with the Broker in a form mutually acceptable to the Parties. Within fourteen (14) days from the date of the full execution of the Term Sheet, the Parties shall select the Broker. In the event the Parties cannot agree on the Broker within this fourteen (14) day period, the CR Parties shall propose the names of three (3) brokers to the BR Parties, who shall select one of the proposed brokers to serve as the Broker within seven (7) days. The Sale Process shall provide for the sale of the Pinewood Complex to the highest bidder pursuant to a binding agreement without any contingencies to closing including without limitation any due diligence or mortgage contingency. The proceeds of such sale (net of any customary closing costs, apportionment of Property Expenses, and out of pocket costs and expenses associated with the sale incurred by, or payable to, the Broker) shall be split equally between the CR Parties and the BR Parties, subject to the amount to the $2.5 million of escrowed funds from each side ($5 million in total). In the event of such contingency, the Parties agree to fully cooperate with the sale of the Pinewood Complex, including signing all necessary documents, facilitating access to the Pinewood Complex to the Broker, other brokers, and prospective buyers, and promptly providing or authorizing the provision of such financial and other information as may be requested by prospective buyers. The Parties shall have no discretion over the terms and consideration of any sale by the Broker other than that such sale shall comply with this provision and the Sale Process.

    ii.   With respect to the disposition of the Pinewood Complex or any ownership interests therein, the Parties shall cooperate with each other in good faith and in a timely manner to take advantage of any tax savings or tax deferral strategies to maximize realization of the value of the Pinewood Complex.

    iii.  The Sales Process shall be under the auspices of the Court, and the Parties agree to present any issues or disputes regarding the Sales Process to the Court for resolution in the Court's sole discretion and authority. The Court's rulings with regard to the Sales Process shall be binding upon the Parties.

3. **Until Closed Affiliated Manages** --Prior to the closing of the sale of the Pinewood Complex, the Pinewood Complex will continue to be managed by the current management company under the Court's existing order consistent with past practice and the distributions will continue as they currently exist at the discretion of the current management company.

4.   <u>Gertners Complex, Carey Complex, Clifton Center, and Clifton Property</u> -- The BR
Parties have divided the four remaining properties into two packages with Gertners
Complex and Carey Complex with any existing mortgages on those properties in one
package (to be satisfied by the party taking the first package within 60 days of receiving
the properties), and Clifton Center and Clifton Property with any existing mortgages in the
second package (to be satisfied by the party taking the second package within 60 days of
receiving the properties). Immediately after the execution of the Settlement Agreement
(the "<u>Selection Date</u>"), Chana shall make the election to take title to the properties in one
of the packages by written notice to Benjamin. The package selected by Chana shall be
deemed the "<u>Selected Package</u>," the package not selected by Chana shall be deemed the
"<u>Non-Selected Package</u>," and the date on which Chana makes her selection shall be
deemed the "<u>Selection Date</u>." Within 60 days of the Selection Date, the BR Parties shall
use good faith and diligent efforts to cause the transfer of exclusive title to the Packaged
Properties in the Selected Package to CR Lakewood or whoever Chana designates to
receive the properties in the Selected Package, and the CR Parties shall use good faith and
diligent efforts to cause the transfer of exclusive title to the Packaged Properties in the Non-
Selected Package to the BR Parties or whoever Benjamin designates to receive the
properties in the Non-Selected Package (the "<u>Packaged Properties Closing Date</u>"). The
transfer of the foregoing properties shall be structured in such a way as to constitute a
distribution under Section 731 of the Internal Revenue Code (the "<u>Code</u>"). The Parties
hereby instruct the accountants and management company of BCR Lakewood, Affiliated
Management, to ensure that the books and records and tax filings of BCR Lakewood and
the Companies be consistent with the foregoing treatment and intent.

In the event either of the Parties does not close or fulfill any of the transactions or transfers
contemplated by this Agreement, the Parties agree to present any issues or disputes to the
Court for resolution in the Court's sole discretion and authority. The Court's rulings with
regard to the Packaged Properties shall be binding upon the Parties.

5.   <u>Arbitration of Remaining Claims in the Actions</u>. The Parties shall submit all remaining
claims in the Actions (the "<u>Remaining Claims</u>") including the parties' respective claims
for monetary damages in the BCR Lakewood action, and the parties' respective claims in
the Oakridge action including Chana's claims for equitable relief with respect to the
Oakridge property owned by Sunset to binding arbitration ("<u>Arbitration</u>"), which shall
occur at a mutually acceptable location in New Jersey. Within fourteen (14) days from the
date of the full execution of the Settlement Agreement, the Parties shall select a mutually
acceptable arbitrator ("<u>Arbitrator</u>"). In the event the Parties cannot agree on an arbitrator
within this fourteen (14) day period, the CR Parties shall propose three (3) arbitrators to
the BR Parties, who shall select one of the proposed arbitrators to serve as Arbitrator within
seven (7) days. The Arbitrator shall have the right to award all of the equitable and legal
relief as requested by the Parties in the Actions. The Arbitration shall take place within
two (2) months from the date of the selection of the Arbitrator. In the event the Arbitration
does not begin within two (2) months (6) from the date of the selection of the Arbitrator,
the Actions shall continue to be tried before Honorable Francis R. Hodgson, Jr., P.J.Ch.,
Superior Court of New Jersey, on dates set by the Court.

2

6. **Escrowed Funds**. In the event the sale of the Pinewood Complex occurs prior to the issuance of a final arbitration award in the Arbitration or the entry of final judgment in the Actions, the CR Parties and the BR Parties shall each escrow with the Court the sum of $2.5 million (*i.e.*, $5 million in total) ("**Escrowed Funds**") as discussed above. The Parties shall submit a Consent Order to the Court for filing which provides that the Escrowed Funds shall be used solely to satisfy any claim for monetary relief by any Party in the Actions, and that the Escrowed Funds shall not be subject to execution by any judgment creditor of the Parties.

7. **Jurisdiction of the Court**. The Court shall maintain jurisdiction over the Parties to enforce the terms of the Settlement Agreement.

--- SIGNATURE PAGE TO FOLLOW ---

**IN WITNESS WHEREOF**, the Parties have caused this Term Sheet to be duly executed as of the date set forth with their respective signatures below.

Dated: July ___, 2020

_____
**CHANA RINGEL**


**CR LAKEWOOD, LLC**

Dated: July ___, 2020

_____
By: Chana Ringel
Title: Manager


Dated: July ___, 2020

_____
**BENJAMIN RINGEL**


**BR LAKEWOOD, LLC**

Dated: July ___, 2020

_____
By:
Title:


**SUNSET HILL OAKRIDGE PLAZA, LLC**

Dated: July ___, 2020

_____
By:
Title:

4

IN WITNESS WHEREOF, the Parties have caused this Term Sheet to be duly executed as of the date set forth with their respective signatures below.

Dated: July ___, 2020

CHANA RINGEL

_____

CR LAKEWOOD, LLC

Dated: July ___, 2020

_____
By: Chana Ringel
Title: Manager

Dated: ~~July~~ Oct 26, 2020

_____
BENJAMIN RINGEL

BR LAKEWOOD, LLC

Dated: ~~July~~ Oct 26, 2020

_____
By: Benjamin Ringel
Title: Managing Member

SUNSET HILL OAKRIDGE PLAZA, LLC

Dated: ~~July~~ Oct 26, 2020

_____
By: Benjamin Ringel
Title: Manager

4

Dated: Sept 14, 2020

Dated: Sept 10, 2020

Docs #4367852-v1

RINGEL CHILDREN TRUST I

By: Yael Ringel
Title: Trustee

By: David Schreiber
Title: Trustee

# EXHIBIT E

**GIORDANO, HALLERAN & CIESLA, P.C.**
125 Half Mile Road, Suite 300
Red Bank, N.J. 07701
(732) 741-3900
Matthew N. Fiorovanti, Esq. (027332006)

**KOFFSKY SCHWALB LLC**
500 Seventh Avenue, 8th Floor
New York, NY 10018

Attorneys for Plaintiffs, Chana Ringel and CR Lakewood, LLC, individually, and derivatively on behalf of BCR Lakewood Holdings, LLC and Chana Ringel, individually and derivatively on behalf of BCR Oakridge, LLC

| | |
|---|---|
| CHANA RINGEL and CR LAKEWOOD, LLC, individually, and derivatively on behalf of BCR LAKEWOOD HOLDINGS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> BR LAKEWOOD, LLC and BENJAMIN RINGEL, <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION OCEAN COUNTY <br><br> DOCKET NO. OCN-C-127-15 <br><br> <u>Civil Action</u> |
| CHANA RINGEL, individually, and derivatively on behalf of BCR OAKRIDGE, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> BENJAMIN RINGEL, SUNSET HILL OAKRIDGE PLAZA, LLC, JOHN DOES 1-10, and ABC CORPORATIONS 1-10, <br><br> Defendants. | DOCKET NO. OCN-C-152-16 <br><br> <u>Civil Action</u> <br><br> **ORDER** |

**THIS MATTER** having been brought to the attention of court by plaintiffs, Chana Ringel

("*Chana*") and CR Lakewood, LLC, individually, and derivatively on behalf of BCR Lakewood

Holdings, LLC and Chana Ringel, individually and derivatively on behalf of BCR Oakridge, LLC

OCN-C-000127-15    08/25/2021 1:45 PM Pg 2 of 2 Trans ID: CHC2021168245

(collectively, "*Plaintiffs*"), seeking injunctive relief pursuant to R. 4:52 by way of order to show cause, and the court having read the papers filed in support thereof and in opposition thereto, and oral argument, if any, and good cause having been shown;

      **IT IS** on this ___25___ day of August, 2021;

      **ORDERED** and declared that Rushmore Capital, LLC ("*Rushmore Capital*") is the highest bidder for the real property located at 1703 Lexington Avenue in Lakewood, New Jersey (the "*Pinewood Property*") under the terms of the parties' settlement agreement for the purchase price of $47,100,000;

      **IT IS FURTHER ORDERED** that Mr. Mandelbaum is authorized to finalize the written contract for the sale of the Pinewood Property to Rushmore Capital within a reasonable time after the date of this Order; and

      **IT IS FURTHER ORDERED** that a copy of this Order shall be served on all parties by electronic filing.

/s/ *Francis R. Hodgson*
_____
HON. FRANCIS J. HODGSON, JR., P.J.Ch.

___X___ Opposed

_____ Unopposed

Docs #5270409-v1

BCN-C 000427-15 02/09/2023/09 11:45 PM Pg 91 of 223 Trans ID: CHC2023526610

# EXHIBIT F

**GIORDANO, HALLERAN & CIESLA, P.C.**
125 Half Mile Road, Suite 300
Red Bank, N.J. 07701
(732) 741-3900
Matthew N. Fiorovanti, Esq. (027332006)

**KOFFSKY SCHWALB LLC**
500 Seventh Avenue, 8th Floor
New York, NY 10018

Attorneys for Plaintiffs, Chana Ringel and CR Lakewood, LLC, individually, and derivatively on behalf of BCR Lakewood Holdings, LLC and Chana Ringel, individually and derivatively on behalf of BCR Oakridge, LLC

| | |
|---|---|
| CHANA RINGEL and CR LAKEWOOD, LLC, individually, and derivatively on behalf of BCR LAKEWOOD HOLDINGS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> BR LAKEWOOD, LLC and BENJAMIN RINGEL, <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY <br> CHANCERY DIVISION <br> OCEAN COUNTY <br><br> DOCKET NO. OCN-C-127-15 <br><br> <u>Civil Action</u> |
| CHANA RINGEL, individually, and derivatively on behalf of BCR OAKRIDGE, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> BENJAMIN RINGEL, SUNSET HILL OAKRIDGE PLAZA, LLC, JOHN DOES 1-10, and ABC CORPORATIONS 1-10, <br><br> Defendants. | DOCKET NO. OCN-C-152-16 <br><br> <u>Civil Action</u> <br><br> **ORDER TO SHOW CAUSE** |

This matter being brought before the Court by Matthew N. Fiorovanti, Esq. of Giordano,

Halleran & Ciesla, P.C., attorneys for Plaintiffs, Chana Ringel ("*Chana*") and CR Lakewood, LLC,

individually, and derivatively on behalf of BCR Lakewood Holdings, LLC and Chana Ringel,

individually and derivatively on behalf of BCR Oakridge, LLC (collectively, "*Plaintiffs*"), seeking relief by way of injunctive relief pursuant to R. 4:52; and it appearing that defendants BR Lakewood, LLC, Benjamin Ringel ("*Benjamin*") and Sunset Hill Oakridge Plaza, LLC (collectively, "*Defendants*") have notice of this application; and for good cause shown;

It is on this _____ day of August, 2021, *ORDERED* that Defendant appear and show cause before the Superior Court at the Ocean County Courthouse in Toms River, New Jersey at 2:00 o'clock in the afternoon or as soon thereafter as counsel can be heard, on the __ day of August, 2021, why an order should not be issued:

A.  Declaring and adjudging that Rushmore Capital, LLC is the highest bidder for the real property located at 1703 Lexington Avenue in Lakewood, New Jersey (the "*Pinewood Property*") under the terms of the parties' settlement agreement for the purchase price of $47,100,000;

B.  Authorizing Mr. Mandelbaum to finalize the written contract for the sale of the Pinewood Property to Rushmore Capital within a reasonable time after the date of the decision on this motion; and

C.  Granting such other relief as the Court deems equitable and just.

_____
HON. FRANCIS J. HODGSON, JR., P.J.Ch.

Docs #5241955-v1

# EXHIBIT G

NAGEL RICE, LLP
Bruce H. Nagel, Esq. (025931977)
103 Eisenhower Parkway, Suite 103
Roseland, New Jersey 07068
Attorneys for Defendants BR Lakewood, LLC and Benjamin Ringel
and Sunset Hill Oakridge Plaza, LLC and Benjamin Ringel

|  |  |
|---|---|
| CHANA RINGEL AND CR LAKEWOOD, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR LAKEWOOD HOLDINGS, LLC, | : SUPERIOR COURT OF NEW JERSEY<br>: CHANCERY DIVISION<br>OCEAN COUNTY<br>:<br>: DOCKET NO. OCN-C-127-15<br>: |
| Plaintiffs/Respondents, | :<br>: |
| vs. | :<br>:       <u>Civil Action</u><br>: |
| BR LAKEWOOD, LLC AND BENJAMIN RINGEL, | :<br>:<br>: |
| Defendants. | :<br>: |
| CHANA RINGEL, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR OAKRIDGE, LLC, | :<br>:   DOCKET NO. OCN-C-152-16<br>:<br>: |
| Plaintiffs/Respondents, | :<br>:       <u>Civil Action</u> |
| vs. | :<br>: |
| BENJAMIN RINGEL, SUNSET HILL OAKRIDGE PLAZA, LLC, JOHN DOES 1-10, AND ABC CORPORATION 1-10, | :   NOTICE OF CROSS-MOTION<br>:<br>:<br>:<br>: |
| Defendants/Appellants. | :<br>: |

Matthew Fiorovanti, Esq.
Giordano Halleran & Ciesla, PC
125 Half Mile Road Suite 300
Red Bank, NJ 07701

Efrem Schwalb, Esq.
Koffsky Schwalb LLP
349 Fifth Avenue, Suite 733
New York, NY  10016


     **PLEASE TAKE NOTICE** that on August 23, 2021 at 3:30 p.m. or
any later date set by the Court, Nagel Rice, LLP, attorneys for
Defendants in both the Lakewood matter and the Oakridge matter,
will move before the Superior Court of New Jersey, Ocean County,
Chancery Division, for an Order (i) declaring and adjudging that
BR Lakewood, LLC is the highest and best bidder for the real
property located at 1703 Lexington Avenue in Lakewood, New Jersey
(the "Pinewood Property") under the terms of the parties'
settlement agreement with a bid of $46,391,000; (ii) authorizing
Barry Mandelbaum to finalize the written contract for the sale of
the Pinewood Property to BR Lakewood LLC within a reasonable time
after the date of the decision of this motion; and (iii) granting
such other relief as the Court deems equitable and just.

     **PLEASE TAKE FURTHER NOTICE** that, in support of this cross-
motion, Defendants will rely upon the Certification and letter
brief submitted herewith.

A proposed form of Order is submitted herewith.

Oral argument is requested.

NAGEL RICE, LLP
Attorney for Defendants


By: _s/Bruce H. Nagel_____
        BRUCE H. NAGEL

Dated: August 17, 2021

NAGEL RICE, LLP
Bruce H. Nagel, Esq. (025931977)
103 Eisenhower Parkway, Suite 103
Roseland, New Jersey 07068
Attorneys for Defendants BR Lakewood, LLC and Benjamin Ringel
and Sunset Hill Oakridge Plaza, LLC and Benjamin Ringel

| | |
|---|---|
| CHANA RINGEL AND CR LAKEWOOD, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR LAKEWOOD HOLDINGS, LLC,<br><br>          Plaintiffs,<br><br>               vs.<br><br>BR LAKEWOOD, LLC AND BENJAMIN RINGEL,<br><br>          Defendants. | : SUPERIOR COURT OF NEW JERSEY<br>: CHANCERY DIVISION<br>: OCEAN COUNTY<br>:<br>: DOCKET NO. OCN-C-127-15<br>:<br>:<br>:<br>:          Civil Action<br>:<br>:<br>:<br>:<br>:<br>:<br>: |
| CHANA RINGEL, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR OAKRIDGE, LLC,<br><br>          Plaintiffs,<br><br>               vs.<br><br>BENJAMIN RINGEL, SUNSET HILL OAKRIDGE PLAZA, LLC, JOHN DOES 1-10, AND ABC CORPORATION 1-10,<br><br>          Defendants. | :<br>: DOCKET NO. OCN-C-152-16<br>:<br>:<br>:<br>:          Civil Action<br>:<br>:<br>:<br>:<br>: CERTIFICATION OF<br>: KEVIN N. STARKEY<br>:<br>: |

     I, KEVIN N. STARKEY, being of full age, hereby certify as

follows:

     1.   I have been practicing law for over 30 years and am a

partner of Starkey, Kelly, Kenneally, Cunningham & Turnbach.  I

have substantial experience in both real estate transactions and
civil litigation.

2.    Our client BR Lakewood LLC ("BR Lakewood") submitted the
bid regarding purchasing the real property located at 1703
Lexington Avenue in Lakewood, New Jersey (the "Pinewood
Property"). A copy of the bid is attached hereto as Exhibit A.

3.    Rushmore Management, a third-party potential purchaser
not affiliated with BR Lakewood, submitted a bid to purchase the
Pinewood Property. See bid attached hereto as Exhibit B.

4.    Madison Title Agency, LLC, a leading title insurance
agency and closing agent in the Northeast was asked by my client
Benjamin Ringel to prepare a draft closing statement based on the
BR Lakewood offer and the Rushmore offer. The closing statements
take into account the closing costs including the existing
mortgage, legal fees, etc. The draft closing statement based on
the BR Lakewood bid is attached hereto as Exhibit C. The draft
closing statement based on the Rushmore bid is attached hereto as
Exhibit D.

5.    Gebroe Hammer is the real estate broker regarding the
sale of the Pinewood Property. Attached hereto as Exhibit E is the
Gebroe Hammer brokerage agreement which was executed by BR
Lakewood, CR Lakewood and Gebroe Hammer. Pursuant to the Gebroe
Hammer brokerage agreement, Gebroe Hammer only collects a
commission of .85% of the sales price if BR Lakewood or CR Lakewood

buys Pinewood Apartments. If a third party buys the Pinewood Property, a 1.85% commission is due to Gebroe Hammer.

6.    Attached hereto as Exhibit F is the Organizational Chart of BCR Lakewood as of today.

7.    Due to BR Lakewood and CR Lakewood each owning 50% of BCR Lakewood Holdings LLC which owns the Pinewood Property, if either BR Lakewood or CR Lakewood buys out the other there will be no transfer tax due to the state of New Jersey.

8.    According to the Madison Title Agency draft closing statement (Exh. C), if BR Lakewood purchases the Pinewood Property, the sellers will net the following:

> $46,391,000 – Sale Price
>
> $6,446,339.53 – Mortgage payoff
>
> $25,000 – Legal fee
>
> $394,323.50 - Gebroe Hammer brokerage commission
>
> **$39,525,336.97** – MONIES TO SELLERS

9.    According to the Madison Title Agency draft closing statement (Exh. D), if Rushmore purchases the Pinewood Property, the sellers will net the following:

> $47,100,000 – Sale Price
>
> $6,446,339.53 – Mortgage payoff
>
> $567,385 – New Jersey Transfer Tax
>
> $25,000 – Legal fee

$871,350 – Gebroe Hammer brokerage commission

**$39,189,925.47** – MONIES TO SELLERS

10.  As a result, BR Lakewood's bid results in the sellers receiving $335,411.50 more than the Rushmore bid.

I certify that the foregoing statements made by me are true.

I understand that if any of the foregoing statements made by me

are willfully false, I am subject to punishment.

By: _____
        KEVIN STARKEY

Dated: August 16, 2021

# EXHIBIT

# "A"

## OFFER

| | |
|---|---|
| **Property:** | Pinewood Apartments<br>Lexington Avenue and Monmouth Avenue<br>Lakewood, NJ 08701 |
| **Description:** | The Property is a 284 garden style rental apartment complex. |
| **Seller:** | BCR Lakewood Holdings LLC & BCR Pinewood LLC |
| **Purchaser:** | BR Lakewood LLC |
| **Purchaser's Counsel:** | Brach Eichler<br>101 Eisenhower Parkway<br>Roseland, New Jersey<br>Alan Hammer, Esq.<br>(973) 403-3113 |
| **Purchase Price:** | $46,391,000 |
| **Deposit:** | $2,351,000. This deposit will become non-refundable upon a fully executed contract of sale. Deposit to be held in attorney escrow by Barry Mandelbaum |
| **Due Diligence:** | None. |
| **Tax Free Exchange:** | Purchaser agrees to reasonably cooperate with any 1031 requirements the sellers may have. |
| **Financing:** | No financing contingency. |
| **Broker:** | Purchaser and Seller agree that the only Broker involved in this transaction is Gebroe Hammer. |



The above are the basic terms between Seller and Purchaser. Seller shall draft the PSA based on the above terms and with all basic representations and warranties found in New Jersey agreements.

**July 28, 2021**

**Purchaser:**

**BR Lakewood LLC**

By: _____
Benjamin Ringel, Manager

Agreed this _____ day of _____, 2021

Seller:

By: _____
    Seller's authorized signer

By: _____
    Seller's authorized signer

# EXHIBIT "B"

OCN-C-000152-16  08/11/2021 03:55:52 PM Pg 15 of 32 Trans ID: CHC2021157343



# R U S H M O R E

## M A N A G E M E N T

July 28th 2021,

Attention: Barry Mandelbaum

Mandelbaum Salsburg P.C.

3 Becker Farm Road

Roseland, NJ 07068

Dear Barry,

Attached please find the LOI for Pinewood Apartments.

Sincerely,

Rushmore Management



**Rushmore Capital**

July 28th, 2021

Joseph Brecher
Gebroe-Hammer Associates
2 West Northfield Road
Livingston, NJ 07039

   Re: (the "Property") Pinewood Apartments 284 legal multi-family
   apartments located at 1703 Lexington Avenue Lakewood, New Jersey
   08701.

Dear Joseph:

Rushmore Capital ("Buyer") is interested in acquiring the Property from ("Seller")
and makes the following offer under the terms and conditions described below.

1. Buyer: Rushmore Capital or assigns.

2. Purchase Price: Forty-Seven Million One Hundred Thousand Dollars
($47,100,000).

3. Purchase Agreement: A mutually acceptable Purchase Agreement shall be
executed within 10 business days of Buyer's receipt of Seller's proposed Agreement
with an anticipated closing date of 60 days after execution of the purchase
agreement.

4. Deposit: Two Million Five Hundred Tousand Dollars ($2,500,000.00)

Page 2 of 3

5. Due Diligence Contingency: None

6. Financing Contingency: The Purchase Agreement will not include a Financing Contingency.

7. Buyer can extend the closing date for a period of thirty (30) days by payment of an additional deposit of $500,000 to be applied against the Purchase Price.

8. The Property to be purchased consists of the land and all improvements located thereon and shall include all personal property used in the ownership or operation of the Property that is located at the Property (which personal property shall be described on an inventory list approved by Seller and Buyer). After this Letter of Intent has been executed by the parties, Seller agrees to withdraw the Purchased Assets from the market and to negotiate from the date hereof in good faith exclusively with Purchaser. Seller agrees not to utilize this Letter of Intent to solicit other offers or to modify, renegotiate or otherwise improve the terms and conditions of any other offer heretofore or hereafter received by Seller.

9. Purchase Agreement. Seller and Buyer will negotiate diligently and in good faith to quickly execute a mutually agreeable purchase agreement. During this time Seller agrees not to agree to sell or negotiate the Property to any other buyer.

10. Title. Marketable and insurable title to the Property shall be conveyed to Buyer.

11. Broker. No person or entity is entitled to a commission arising out of this transaction other than Gebroe-Hammer Associates (the "Broker"). Seller shall be solely responsible for payment of fees or commission owed to the Broker.

12. Non-binding Agreement. This agreement is a non-binding letter of intent and no party is bound to anything. Therefore, except for the Exclusivity and No Solicitation provisions hereof, it is understood that (i) no liabilities or obligations are intended to be created by this Letter of Intent or the consent by the parties hereto; (ii) this Letter of Intent is not intended to constitute a legally binding agreement to consummate the transaction contemplated hereby or to enter into a legally binding agreement; and (iii) no binding obligation will be created unless and until a written agreement evidencing such obligation is duly executed and delivered by the parties.

Page 3 of 3

Please have the appropriate, authorized representative of the Seller complete and execute both counterparts of this offer as provided, and return one fully executed counterpart to the undersigned's attention.

Very truly yours,

By: _Yitzchak Schoinerman_____  Date___7/28/2021___
                    Buyer's authorized signer

Its Authorized Representative :_____
                                      Title

Agreed this _____ day of _____, 2021

Seller:

By: _____
        Seller's authorized signer

Its: _____
          Title

# EXHIBIT

# "C"

# Settlement Statement

Buyer:      BR Lakewood LLC
Seller:      BCR Lakewood Holdings LLC
Address:      Pinewood Apartments
Settlement Date:
File Number:

| Buyer Charge | Buyer Credit | Description | Seller Charge | Seller Credit |
|---|---|---|---|---|
| | | **Consideration:** | | |
| 46,391,000.00 | | Total Consideration | | 46,391,000.00 |
| | | **Earnest Money:** | | |
| | | Earnest Money Deposit | | |
| | | **Credit on behalf of buyer:** | | |
| | | | 0.00 | |
| | | | 0.00 | |
| | | | 0.00 | |
| | | **Credit on behalf of seller:** | | |
| | | | | 0.00 |
| | | | | 0.00 |
| | | | | 0.00 |
| | | | | 0.00 |
| | | **Loan Payoff(s):** | | |
| | | Investors Bank | 6,446,339.53 | |
| | | **Loan** | | |
| | | Loan | | |
| | | **Lender Fees:** | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | **Title Fees:** | | |
| | | Owner's Policy Premium | | |
| | | Loan Policy Premium | | |
| | | Endorsements | | |
| | | Search and Exam Fees | | |
| | | Settlement Fee | | |
| | | Closing Protection Letter | | |
| | | Notice of Settlement | | |
| | | Mortgage Satisfaction Service Fee | | |
| | | Proforma Owners Policy Preparation Fee | | |
| | | Proforma Loan Policy Preparation Fee | | |
| | | Estimated Recording Fees and Service Fee | | |
| | | Transfer Tax | | |
| | | Mansion Tax | | |

| | | Disbursements: | | |
|---|---|---|---|---|
| | | Legal Fee | 25,000.00 | |
| | | Broker Commission | 394,323.50 | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| 46,391,000.00 | 0.00 | Totals | 6,865,663.03 | 46,391,000.00 |
| 46,391,000.00 | | Cash from Buyer | | |
| | | Cash to Seller | | 39,525,336.97 |

The parties understand that Madison Title Agency, LLC has prepared the settlement statement (except for title charges) based on information provided to Madison Title Agency, LLC by the parties or their representatives and/or third party sources (such as tax and water/sewer searches).   Madison Title Agency, LLC is not in a position to confirm that this information is accurate or complete. Madison Title Agency, LLC's sole responsibility is to disburse the funds as set forth in the Settlement Statement.


Reviewed and approved by:

**Seller:**
*BCR Lakewood Holdings LLC*

By: _____
  Name:_____
  Title:_____

**Buyer:**
*BR Lakewood LLC*

By: _____
  Name:_____
  Title:_____

**Settlement Agent:**
*Settlement Statement*

By: _____
  Name:
  Title: Title Closer

# EXHIBIT "D"

# Settlement Statement

| | |
|---|---|
| Buyer: | Rushmore Manageemnt |
| Seller: | BCR Pinewood LLC/BCR Lakewood Holdings LLC |
| Address: | |
| Settlement Date: | Pinewood Apartments |
| File Number: | |

| Buyer Charge | Buyer Credit | Description | Seller Charge | Seller Credit |
|---|---|---|---|---|
| | | **Consideration:** | | |
| 47,100,000.00 | | Total Consideration | | 47,100,000.00 |
| | | **Earnest Money:** | | |
| | | Earnest Money Deposit | | |
| | | **Credit on behalf of buyer:** | | |
| | | | 0.00 | |
| | | | 0.00 | |
| | | | 0.00 | |
| | | **Credit on behalf of seller:** | | |
| | | | | 0.00 |
| | | | | 0.00 |
| | | | | 0.00 |
| | | | | 0.00 |
| | | **Loan Payoff(s):** | | |
| | | Investors Bank | 6,446,339.53 | |
| | | | | |
| | | **Loan** | | |
| | | Loan | | |
| | | **Lender Fees:** | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | **Title Fees:** | | |
| | | Owner's Policy Premium | | |
| | | Loan Policy Premium | | |
| | | Endorsements | | |
| | | Search and Exam Fees | | |
| | | Settlement Fee | | |
| | | Closing Protection Letter | | |
| | | Notice of Settlement | | |
| | | Mortgage Satisfaction Service Fee | | |
| | | Proforma Owners Policy Preparation Fee | | |
| | | Proforma Loan Policy Preparation Fee | | |
| | | Estimated Recording Fees and Service Fee | | |
| | | Transfer Tax | 567,385.00 | |
| | | Mansion Tax | | |

| | | Disbursements: | | |
|---|---|---|---|---|
| | | Legal Fees | 25,000.00 | |
| | | Broker Commission | 871,350.00 | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| 47,100,000.00 | 0.00 | Totals | 7,910,074.53 | 47,100,000.00 |
| 47,100,000.00 | | Cash from Buyer | | |
| | | Cash to Seller | | 39,189,925.47 |

The parties understand that Madison Title Agency, LLC has prepared the settlement statement (except for title charges) based on information provided to Madison Title Agency, LLC by the parties or their representatives and/or third party sources (such as tax and water/sewer searches).   Madison Title Agency, LLC is not in a position to confirm that this information is accurate or complete. Madison Title Agency, LLC's sole responsibility is to disburse the funds as set forth in the Settlement Statement.


Reviewed and approved by:


**Seller:**
*BCR Pinewood LLC/BCR Lakewood Holdings LLC*

By: _____
    Name:_____
    Title:_____


**Buyer:**
*Rushmore Manageemnt*

By: _____
    Name:_____
    Title:_____


**Settlement Agent:**
*Settlement Statement*

By: _____
    Name:
    Title: Title Closer

# EXHIBIT

# "E"



**GEBROE-HAMMER**
A·S·S·O·C·I·A·T·E·S
INVESTMENT REAL ESTATE

8 West Northfield Road, Livingston, NJ 07039
TEL (973) 994-4500 • FAX (973) 994-0799



PROPERTY LOCATION: Pinewood Apartments, located at 1708 Lexington Avenue in Lakewood, New Jersey

284 Apartments

### AGREEMENT FOR EXCLUSIVE RIGHT TO SELL OR EXCHANGE

In consideration for listing and endeavoring to sell or exchange above property, I (we) the undersigned, owner(s) or authorized Agent of owner(s), grant you the exclusive right to sell said property at the price and upon terms set forth herein or at any other terms or price the undersigned may agree to accept.

Upon your procuring a purchaser, I (we) agree to pay you a commission of 1.85% if purchased by any of the current owners, the commission shall be 0.85%.

Your commission shall be considered earned if the property is sold or exchanged by anyone during this exclusive period. If a sale or exchange is consummated by anyone within two years after the termination of this agreement to or on behalf of a party who was introduced to the property by you, you will also be entitled to the full commission. Further, in the event that any other property owned by the undersigned principal(s) is sold by anyone to a party to whom you introduced and sold the above property during or after the termination of this agreement, you will also be entitled to a full commission based on the same percentage of sales price.

As Seller, I (we) agree to refer to you all inquiries received regarding the purchase of said property and to permit you to exhibit the premises at reasonable hours during this exclusive period.

This exclusive shall remain in full force for a period of six months from the date specified above, up to and including August 9, 2021.

In the event of any litigation or arbitration proceedings arising from or relating to this Agreement, the parties agree that if Gebroe-Hammer is the prevailing party, Gebroe-Hammer shall be entitled, as part of any judgment or award entered in its favor, to an award of all costs and expenses actually incurred by Gebroe-Hammer in such litigation, proceeding or arbitration proceedings, including, but not limited to, attorneys' fees.

I (we) have received a fully executed copy at the time of the execution of this agreement. I (we) also acknowledge receipt of a copy of the Attorney General's memorandum with regard to New Jersey's law against discrimination, as required by the New Jersey Real Estate Commission.

GEBROE-HAMMER ASSOCIATES

BY: _____

Signed: BCR Pinewood LLC _____
Co-Manager

Phone: (B) _____ (H) _____
Phone: (Cell) 917-755-4566
Email: Bringel @ Armstrong-capital.com

---

To: Gas and/or Electric Co          Water & Sewer Co.          Oil Co.          Date_____

PROPERTY:
This will authorize you to supply GEBROE-HAMMER ASSOCIATES with the last 12 months consumption and cost covering the above captioned property.

Electric Account #          Gas Account #          Water/Sewer Account #          Oil Account #

Signed: _____

**GEBROE-HAMMER**
A S S O C I A T E S
INVESTMENT REAL ESTATE

Date: November 9, 2020

PROPERTY LOCATION: Pinewood Apartments, located at 1703 Lexington Avenue in Lakewood, New Jersey

284 Apartments

### AGREEMENT FOR EXCLUSIVE RIGHT TO SELL OR EXCHANGE

In consideration for listing and endeavoring to sell or exchange above property, I (we) the undersigned, owner(s) or authorized Agent of owner(s), grant you the exclusive right to sell said property at the price and upon terms set forth herein or at any other terms or price the undersigned may agree to accept.

Upon your procuring a purchaser, I (we) agree to pay you a commission of 0.85%, if purchased by any of the current owners, the commission shall be 0.85%.

Your commission shall be considered earned if the property is sold or exchanged by anyone during this exclusive period. If a sale or exchange is consummated by anyone within two years after the termination of this agreement to or on behalf of a party who was introduced to the property by you, you will also be entitled to the full commission. Further, in the event that any other property owned by the undersigned principal(s) is sold by anyone to a party to whom you introduced and sold the above property during or after the termination of this agreement, you will also be entitled to a full commission based on the same percentage of sales price.

As Seller, I (we) agree to refer to you all inquiries received regarding the purchase of said property and to permit you to exhibit the premises at reasonable hours during this exclusive period.

This exclusive shall remain in full force for a period of six months from the date specified above, up to and including May 9, 2021.

In the event of any litigation or arbitration proceedings arising from or relating to this Agreement, the parties agree that if Gebroe-Hammer is the prevailing party, Gebroe-Hammer shall be entitled, as part of any judgment or award entered in its favor, to an award of all costs and expenses actually incurred by Gebroe-Hammer in such litigation, proceeding or arbitration proceedings, including, but not limited to, attorneys' fees.

I (we) have received a fully executed copy at the time of the execution of this agreement. I (we) also acknowledge receipt of a copy of the Attorney General's memorandum with regard to New Jersey's law against discrimination, as required by the New Jersey Real Estate Commission.

GEBROE-HAMMER ASSOCIATES

BY: _____

Signed: BCR Pinewood LLC  Chaim Rugel
Chaim Rivcel (co-manager)
Phone (B): _____ (H): _____
Phone (Cell): 516 481 6220
Email: _____ 516 @gmail.com

*[handwritten margin notes:]* BR Lakewood LLC to CR Lakewood LLC or Chaim Rugel or any affiliated company.

*[handwritten:]* August 9, 2021

To: Gas and/or Electric Co.     Water & Sewer Co.     Oil Co.     Date

PROPERTY:
This will authorize you to supply GEBROE-HAMMER ASSOCIATES with the last 12 months consumption and cost covering the above captioned property.

Electric Account #     Gas Account #     Water/Sewer Account #     Oil Account #
Signed: BR Rugel

# EXHIBIT

# "F"



NAGEL RICE, LLP
Bruce H. Nagel, Esq. (025931977)
103 Eisenhower Parkway, Suite 103
Roseland, New Jersey 07068
Attorneys for Defendants BR Lakewood, LLC and Benjamin Ringel
and Sunset Hill Oakridge Plaza, LLC and Benjamin Ringel

|  |  |
|---|---|
| CHANA RINGEL AND CR LAKEWOOD, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR LAKEWOOD HOLDINGS, LLC, | : SUPERIOR COURT OF NEW JERSEY : CHANCERY DIVISION : OCEAN COUNTY : : DOCKET NO. OCN-C-127-15 |

      Plaintiffs/Respondents,   :

          vs.           :         <u>Civil Action</u>

BR LAKEWOOD, LLC AND BENJAMIN : RINGEL,              :

      Defendants.      :

CHANA RINGEL, INDIVIDUALLY, AND
DERIVATIVELY ON BEHALF OF BCR :   DOCKET NO. OCN-C-152-16
OAKRIDGE, LLC,          :

      Plaintiffs/Respondents,   :

          vs.           :         <u>Civil Action</u>

BENJAMIN RINGEL, SUNSET HILL   :    ORDER
OAKRIDGE PLAZA, LLC, JOHN      :
DOES 1-10, AND ABC          :
CORPORATION 1-10,         :

      Defendants/Appellants.   :

     THIS MATTER having been brought before the court on the cross-

motion of Defendants BR Lakewood, LLC and Benjamin Ringel in the

Lakewood matter and Sunset Hill Oakridge Plaza, LLC and Benjamin

Ringel in the above matters for an Order (i) declaring and adjudging that BR Lakewood, LLC is the highest and best bidder for the real property located at 1703 Lexington Avenue in Lakewood, New Jersey (the "Pinewood Property") under the terms of the parties' settlement agreement with a bid of $46,391,000; and (ii) authorizing Barry Mandelbaum to finalize the written contract for the sale of the Pinewood Property to BR Lakewood LLC within a reasonable time after the date of the decision of this motion, and for good cause shown:

IT IS on this _____ day of August 2021;

ORDERED that:

1.    The Cross-Motion filed by Defendants BR Lakewood, LLC, Benjamin Ringel and Sunset Hill Oakridge Plaza, LLC is hereby granted.

2.    It is hereby declared and adjudged that BR Lakewood, LLC is the highest and best bidder for the real property located at 1703 Lexington Avenue in Lakewood, New Jersey (the "Pinewood Property") under the terms of the parties' settlement agreement with a bid of $46,391,000.

3.    Barry Mandelbaum shall finalize the written contract for the sale of the Pinewood Property to BR Lakewood LLC within a reasonable time after the entry of this Order.

4.    A copy of this Order be served on all parties within seven days of Defendants' receipt.

_____

, J.S.C.

**This motion was:**
_____ Opposed
_____ Unopposed

# Nagel Rice, LLP

## COUNSELLORS AT LAW

BRUCE H. NAGEL*
JAY J. RICE*
ROBERT H. SOLOMON
DIANE E. SAMMONS◊
LORI I. MAYER◊
RANDEE M. MATLOFF
ANDREW L. O'CONNOR
GREG M. KOHN◊
SUSAN F. CONNORS
BRADLEY L. RICE◊

HARRY A. MARGOLIS
(1928-2002)

103 EISENHOWER PARKWAY
SUITE 103
ROSELAND, NEW JERSEY 07068
(973) 618-0400
FAX: (973) 618-9194
WWW.NAGELRICE.COM
————
230 PARK AVENUE
NEW YORK, NY 10169
(212) 551-1465
**PLEASE REPLY TO**
**ROSELAND OFFICE**

ANDREW I. PEPPER
MICHAEL J. PARAGANO◊
SCOTT M. JACOBSON◊
EMMA A. McELLIGOTT

*CERTIFIED BY THE SUPREME COURT OF
  NEW JERSEY AS A CIVIL TRIAL ATTORNEY
◊MEMBER OF NJ & NY BARS

**August 17, 2021**

*Via JEDS*
**The Honorable Francis R. Hodgson, Jr. P.J. Ch.**
**206 Court House Lane**
**Courtroom #25, 1st Floor**
**Toms River, NJ 08753**

> *Re:* *Chana Ringel v. Benjamin Ringel and Sunset Hill, et al*
> *Docket No.: OCN-C-152-16*
> *Chana Ringel, et al v. BR Lakewood, LLC and Benjamin*
> *Ringel*
> *Docket No.: OCN-C-127-15*

**Dear Judge Hodgson:**

We represent Benjamin Ringel ("Benjamin") and other defendants (collectively "Defendants") in the above two matters. This letter brief is submitted in opposition to the Order to Show Cause filed by Chana Ringel ("Chana") and others ("Plaintiffs") and in support of Defendants' cross-motion for an order declaring and adjudging that BR Lakewood LLC is the highest and best bidder for the Pinewood Property and authorizing Barry Mandelbaum to finalize the written contract for the sale of the Pinewood Property

1

to BR Lakewood LLC within a reasonable time after the date of the decision of this motion.

Pursuant to Your Honor's June 4, 2021 Order, Mr. Brecher implemented a "last and best" bid process. See Order at Exh. B to Certification of Matthew Fiorovanti. This "best" bid process included providing bidders with written procedures, a sealed bid process and a process to open the bids at Mr. Mandelbaum's office. Four bids were submitted and the bid by our client, BR Lakewood LLC ("BR Lakewood") was the "best" bid as it nets the sellers the most money.

The goal of the seller in any real estate deal is to obtain the most money. As a result, there is only one way to determine what is the "best" bid – the bid which nets the sellers the most money.

Here, BR Lakewood's gross bid was $46,391,000. See Exh. A to the Certification of Kevin Starkey. Rushmore's gross bid was $47,100,000. See Starkey Cert. at Exh. B. BR Lakewood owns half of Pinewood and therefore will not be buying its 50% share. It will only be buying CR Lakewood LLC's 50% share. A copy of the organizational chart of BCR Lakewood is attached as Exh. F to the Starkey Cert. Therefore, there will be no New Jersey State transfer taxes paid on the sale of Pinewood if BR Lakewood is the purchaser. See Starkey Cert. at ¶7. If Rushmore is the purchaser, the sellers will have to pay a transfer tax of $567,385. See

2

closing statement at Exhibit D to the Starkey Cert.; See Starkey Cert. at ¶9.

In addition, under the Gebroe Hammer brokerage agreement, if BR Lakewood or CR Lakewood buys Pinewood, only a .85% commission is due versus a 1.85% commission if Rushmore buys it.  Attached as Exh. E to the Starkey Cert. is the brokerage commission agreement. If BR Lakewood is the purchaser, the Gebroe Hammer brokerage commission would be $394,323 ($46,391,000 x .85%).  See Exh. C to the Starkey Cert.; See Starkey Cert. at ¶8.  If Rushmore is the purchaser, the Gebroe Hammer brokerage commission would be $871,350 ($47,100,000 x 1.85%). See Exh. D to the Starkey Cert.; See Starkey Cert. at ¶9.

As a result, if <u>BR Lakewood</u> is the purchaser, the sellers will net the following:

$46,391,000 – Sale price

$6,446,339.53 – Mortgage payoff

$25,000 – Legal fee

$394,323.50 - Gebroe Hammer brokerage commission

### $39,525,336.97 – CASH TO SELLERS

(See Exh. C to the Starkey Cert.; See Starkey Cert. at ¶8).

If <u>Rushmore</u> is the purchaser, the sellers will net the following:

$47,100,000 – Sale price

$6,446,339.53 – Mortgage payoff

3

$567,385 – New Jersey Transfer Tax

$25,000 – Legal fee

$871,350 - Gebroe Hammer brokerage commission

**$39,189,925.47** – CASH TO SELLERS

(See Exh. D to the Starkey Cert.; See Starkey Cert. at ¶9).

The math is simple. BR Lakewood's bid is the "best" as the sellers will receive $335,411.50 more with BR Lakewood as the buyer. See Starkey Cert. at ¶10.

Common sense leads to only once conclusion -- the "best" offer is the one that provides the most money to the sellers. Merriam-Webster dictionary defines "best" as "excelling all others" and "offering or producing the greatest advantage, utility or satisfaction". *Merriam-Webster.com.* 2011. https://www.merriam-webster.com (16 August 2011). Since BR Lakewood's bid produces "the greatest advantage [and] utility" –- the most money to sellers -- it is clearly the best.

Plaintiffs' argument that BR Lakewood's bid should be invalidated because it fails to satisfy the 5% deposit requirement is baseless. BR Lakewood's bid includes a deposit of $2,351,000 which is <u>more</u> than 5% of the bid. See Exh. A to Starkey Cert.

In footnote 3 of their brief, Plaintiffs argue that using Benjamin's straightforward position that "best" means the most money in seller's pocket, Rushmore's bid nets more than BR Lakewood's bid. The only support for this position is the

4

incompetent evidence submitted by counsel in their brief. Plaintiffs filed an Order to Show Cause and provided whatever support they had for their position. They provided no competent evidence that Rushmore's bid nets more than BR Lakewood's bid and thus the Court should not consider this issue.

Any attempt to present facts which are neither of record, judicially noticeable, nor stipulated, by way of statements of counsel made in supporting briefs, memoranda and oral argument are incompetent evidence and should be rejected by the court. Such statements do not constitute cognizable facts. Gonzalez v. Ideal Tile Importing Co., 371 N.J. Super. 349, 358 (App. Div. 2004), aff'd 184 N.J. 415 (2005); Templeton Arms v. Feins, 220 N.J. Super 1, 24 (App. Div. 1987); Albrect v. Correctional Medical, 422 N.J. Super. 265, 267 n.1 (App. Div. 2011)(court declined to consider uncertified information about defendant presented through its brief and its counsel at oral argument). This Court should not consider the facts and argument submitted by Plaintiffs.

Plaintiffs also argue that Benjamin is trying to derail the sale of Pinewood and harm sellers. Nothing could be farther from the truth. As the Court is aware, Benjamin previously filed an application arguing that the bidding process was not fair and was not producing the most money possible for the sellers, including Chana. Notwithstanding that Benjamin was trying to obtain more money for Chana and the sellers, Chana vigorously objected and

5

demanded that the sellers should not try and obtain a higher purchase price. Despite Chana's objections, the Court held a hearing and granted Benjamin's application and re-opened the bidding process. As a result of Benjamin's actions, the bids increased and sellers will now receive over $1.5 million more from the sale.

At the end of footnote 3 of her brief, Chana states that if the savings Ben describes are correct they also apply to the GM Equities bid because she is a partner in the GM Equities bid. This is not true. The GM Equities bid is disqualified because they failed to adhere to the bidding requirements. A copy of GM Equities bid is attached as Exhibit C to the Fiorovanti Cert. Both the Rushmore and BR Lakewood bids each waived any due diligence contingency. Id. The GM Equities bid, however, requires that the bidder be allowed a 15 day environmental due diligence. The inclusion of the due diligence period requires the bid to be rejected. Also, the GM Equities bid states that "This letter of intent shall be null and void if not signed by both parties on or before August 10, 2021." (emphasis added). It is undisputed that the GM Equities letter of intent was not signed by August 10, 2021 so by its terms the bid by GM Equities is "null and void". Also, Chana provides no proof that GM Equities is owned by CR Lakewood or partners with her or CR Lakewood.

6

We respectfully request that Your Honor deny the relief sought by Plaintiffs and order that the bid by BR Lakewood should proceed and that Mr. Mandelbaum should finalize the contract of sale to BR Lakewood.

Respectfully,

*Bruce H. Nagel*

BRUCE H. NAGEL

cc: Matthew N. Fiorovanti, Esq.(via e-mail)
    Efrem Schwalb, Esq. (via e-mail)

# EXHIBIT H

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
PO BOX 006
RICHARD J. HUGHES JUSTICE COMPLEX
TRENTON, N.J. 08625-0006

NOTICE OF DOCKETING

Date: October 07, 2021

ATTN: NAGEL RICE LLP - BRUCE H NAGEL
103 EISENHOWER PKWY
ROSELAND, NJ 07068

Title: CHANA RINGEL AND CR LAKEWOD, LLC, INDIVIDUALLY AND DERIVATIVELY ON
BEHALF OF BCR LAKEWOOD HOLDINGS, LLC V. BR LAKEWOOD, LLC AND BENJAMIN
RINGEL AND CHANA RINGEL, INDIVDUALLY AND DERIVATIVELY ON BEHALF OF BCR
OAKWOOD, LLC
Docket Number:    A-000370-21 TEAM 02           Appeal Filed: 10/05/2021

1.    The above docket number must appear on all documents submitted.

2.    Respondent shall file a case information statement within 15
      days after service of the notice of appeal. R. 2:5-1(a).

3.    IF YOUR APPEAL INCLUDES A TRANSCRIPT, IT WILL BE SUBJECT TO
      DISMISSAL IF THE TRANSCRIPT IS NOT FILED WITHIN 35 DAYS OF THE
      FILING OF THE NOTICE OF APPEAL.  UNLESS, PRIOR TO THAT DATE, YOU
      ADVISE THE CLERK'S OFFICE THAT THE TRANSCRIPT HAS NOT BEEN
      DELIVERED TO YOU AND INDICATE THE DATE YOU HAVE BEEN PROMISED
      FILING AND DELIVERY. THERE WILL BE NO FURTHER NOTICE.

4.    If this is an appeal of a state agency decision, the agency must
      submit a Statement of Items Comprising the Record within 30 days
      of service of the Notice of Appeal. R. 2:5-4(b). Upon receipt of
      the Statement of Items Comprising the Record and transcript (if
      applicable), a scheduling order for the brief and appendix will
      be issued.

5.    Certain civil and state agency appeals may be selected for the
      Civil Appeals Settlement Program (CASP).  Unless this appeal is
      selected for a settlement conference or unless otherwise stated
      in a scheduling order, the time limits provided by R. 2:6-11 for
      perfection of the appeal must be complied with by all parties.
      Upon appellant's failure to comply, the appeal will be subject
      to dismissal. Upon respondent's failure to comply, the brief
      will be subject to suppression.

https://www.njcourts.gov/courts/appellate.html?lang=eng

6.    If oral argument is desired, it must be requested timely by a separate captioned document. <u>R.</u> 2:11-1(b). If oral argument is requested, notify the Clerk's office of any period of time during which you expect to be unavailable.

**PLEASE REFER ALL INQUIRIES TO YOUR CASE MANAGER:**
**IWONA VARGAS (609-815-2950 x 52656) IWONA.VARGAS@NJCOURTS.GOV**


JOSEPH H. ORLANDO
CLERK OF THE APPELLATE DIVISION


Trial Court Docket No:              OCEAN    OCN-C-127-15
                                    OCN-C-152-16

cc:    GIORDANO HALLERAN & CIESLA, PC - MATTHEW NICHOLAS FIOROVANTI
       KOFFSKY SCHWALB LLC - EFREM TOBIAS SCHWALB

# EXHIBIT I

**PETER CHARLES HARVEY, Esq.**
**PATTERSON BELKNAP WEBB & TYLER LLP**
**1133 AVENUE OF THE AMERICAS**
**NEW YORK, NY 10036-6710**
**212-336-2000**
pcharvey@pbwt.com
mcolitigation@pbwt.com

Before Appellate Division,
Superior Court of New Jersey
DOCKET NO. **A-000370-21**

CIVIL

## CHANA RINGEL AND CR LAKEWOD, LLC, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF BCR LAKEWOOD HOLDINGS, LLC
## V.
## BR LAKEWOOD, LLC AND BENJAMIN RINGEL
## AND
## CHANA RINGEL, INDIVDUALLY AND DERIVATIVELY ON BEHALF OF BCR OAKWOOD, LLC

PROOF OF SERVICE

I hereby certify that an original of the following documents, **APPELLANTS BRIEF, APPELLANTS APPENDIX (Vol. 001), APPELLANTS APPENDIX (Vol. 002), APPELLANTS APPENDIX (Vol. 003), PROOF OF SERVICE** were submitted and transmitted to the parties listed below in the following format:

ELECTRONICALLY TO:
**ATTORNEY NAME: MATTHEW NICHOLAS FIOROVANTI, Esq.**
mfiorovanti@ghclaw.com
cthompson@ghclaw.com
sclark@ghclaw.com
**ATTORNEY NAME: EFREM TOBIAS SCHWALB, Esq.**
eschwalb@koffskyschwalb.com
partners@koffskyschwalb.com
**ATTORNEY NAME: MATTHEW NICHOLAS FIOROVANTI, Esq.**
mfiorovanti@ghclaw.com
cthompson@ghclaw.com
sclark@ghclaw.com
**ATTORNEY NAME: EFREM TOBIAS SCHWALB, Esq.**
eschwalb@koffskyschwalb.com
partners@koffskyschwalb.com
**ATTORNEY NAME: AURORA  CASSIRER, Esq.**
aurora.cassirer@troutman.com
litigationdocketrequests@troutman.com
daniel.gorman@troutman.com
**ATTORNEY NAME: AFIYFA HAKIM ELLINGTON, Esq.**
aellington@ghclaw.com
mangotti@ghclaw.com
fricci@ghclaw.com

BY MAIL:

I certify that the forgoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

**Attorney for APPELLANT**
**BENJAMIN RINGEL, BR LAKEWOOD, LLC,**
**SUNSET HILL OAKRIDGE PLAZA, LLC**

Dated: **01/20/2022**                    By:  **S/ PETER CHARLES HARVEY, Esq.**

# EXHIBIT J

**PATTERSON BELKNAP WEBB & TYLER LLP**
Peter C. Harvey, Esq. – NJ 035131989
1133 Avenue of the Americas
New York, New York 10036
Tel. (212) 336-2000
Fax (212) 336-2222
E-Mail:  pcharvey@pbwt.com

| | |
|---|---|
| CHANA RINGEL AND CR LAKEWOOD, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR LAKEWOOD HOLDINGS, LLC,<br><br>    Plaintiffs,<br><br>        vs.<br><br>BR LAKEWOOD, LLC AND BENJAMIN RINGEL,<br><br>    Defendants, | **SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: OCEAN COUNTY**<br><br>Civil Action<br><br><br><br>Docket No. OCN-C-127-15 |
| CHANA RINGEL, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR OAKRIDGE, LLC,<br><br>    Plaintiffs,<br><br>        vs.<br><br>BENJAMIN RINGEL, SUNSET HILL OAKRIDGE PLAZA, LLC, JOHN DOES 1-10, AND ABC CORPORATION 1-10,<br><br>    Defendants, | Docket No. OCN-C-152-16<br><br>**DEFENDANTS' NOTICE OF MOTION FOR A STAY OF PROCEEDINGS PENDING APPEAL** |

**TO:   ALL COUNSEL OF RECORD**

**PLEASE TAKE NOTICE** that, on February 18, 2022, or on another date and time to be set by the Court, the Defendants, Benjamin Ringel, BR Lakewood, LLC, and Sunset Hill Oakridge Plaza, LLC, by and through their counsel, Patterson Belknap Webb & Tyler LLP, shall move before the Honorable Francis J. Hodgson, Jr., Presiding Judge, Chancery Division, Superior Court of New Jersey, Ocean County, for the entry of an Order staying all proceedings in this action pending the Appellate Division's ruling on the Defendants' appeal of the Chancery Court's Orders entered on June 4, 2021, August 23, 2021 and August 25, 2021.

**PLEASE TAKE FURTHER NOTICE** that, in support of this motion, the Defendants shall rely upon the Memorandum of Law in support of the motion, the Certification of Peter C. Harvey, and the pleadings and proceedings had to date herein.

2

**PLEASE TAKE FURTHER NOTICE** that, pursuant to *R*.1:6-2(a),

the Defendants have submitted a proposed order.


DATED:  January 26, 2022

       Respectfully submitted,


       By:    */s/ Peter C. Harvey*
       _____
           Peter C. Harvey, Esq.

       PATTERSON BELKNAP WEBB & TYLER LLP
       1133 Avenue of Americans
       New York, NY  10036-6710
       Tel: (212) 336-2000
       Fax: (212) 336-2222
       E-Mail:  pcharvey@pbwt.com

| | |
|---|---|
| CHANA RINGEL AND CR LAKEWOOD, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR LAKEWOOD HOLDINGS, LLC, | **SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: OCEAN COUNTY** |
| Plaintiffs, | Civil Action |
| vs. | |
| BR LAKEWOOD, LLC AND BENJAMIN RINGEL, | Docket No. OCN-C-127-15 |
| Defendants, | |
| CHANA RINGEL, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR OAKRIDGE, LLC, | |
| Plaintiffs, | Docket No. OCN-C-152-16 |
| vs. | **CERTIFICATION OF PETER C. HARVEY IN SUPPORT OF DEFENDANTS' MOTION FOR A STAY OF PROCEEDINGS PENDING APPEAL AND IN OPPOSITION TO RUSHMORE CAPITAL LLC'S ORDER TO SHOW CAUSE** |
| BENJAMIN RINGEL, SUNSET HILL OAKRIDGE PLAZA, LLC, JOHN DOES 1-10, AND ABC CORPORATION 1-10, | |
| Defendants, | |

I, **PETER C. HARVEY,** being of full age, certify as follows:

1.   I am an attorney at law of the State of New Jersey and a partner at the law firm of Patterson Belknap Webb & Tyler LLP, counsel for Defendants-Appellants Benjamin Ringel, BR Lakewood, LLC, and Sunset Hill Oakridge Plaza, LLC (collectively, "Defendants") in connection with the above-captioned matter and

the related, pending appeal. I submit this Certification in

Support of Defendants' Motion for a Stay of Proceedings Pending

Appeal and in Opposition to Rushmore Capital, LLC's ("Rushmore")

Order To Show Cause. I am familiar with the facts stated herein.

2. The appeal of the Orders entered in this action arise

from two lawsuits filed by Chana Ringel and related entities

("Plaintiffs"), against her brother, Ben Ringel, and related

entities ("Defendants"). The first suit was filed in 2015 and

captioned as Chana Ringel v. BR Lakewood, LLC, Docket No. OCN-C-

127-15. The second was filed in 2016 and captioned as Chana

Ringel, et al. v. Benjamin Ringel, et al., Docket No. OCN-C-152-

16.

3. In October 2020, the parties settled both lawsuits by

executing a Term Sheet (hereafter, "Term Sheet" or "Agreement").

(See **EXHIBIT A.**) The Term Sheet provided that, as part of the

settlement, the parties agreed to sell the Pinewood Property

through a competitive bidding process and split the proceeds

from that sale. (Id. at 1.) This Court retained jurisdiction

to implement the terms of the Term Sheet, which involved, among

other things, a court-ordered sale of the Pinewood Property.

(Id. at 3.)

4. Over the course of the execution of the parties'

Agreement, Defendants asserted a number of objections to the

procedure and substance of the sale proceedings. Defendants

2

moved to disqualify the broker because of a pre-existing
financial and familial conflict of interest with Rushmore.  (See
**EXHIBIT B at 1-2**.)

5.   Defendants also argued that the meaning of "highest
bidder," within the context of the Term Sheet, referred to the
bidder who would offer the highest net proceeds to each party.
(See generally **EXHIBIT C.**)  Defendants presented evidence that
Defendant BR Lakewood, LLC, and not Rushmore, should be declared
the "highest bidder."  (Id., Cert. of Kevin N. Starkey at 1-5.)

6.   This Court ruled against Defendants on both of the
above arguments.  (See **EXHIBIT D; EXHIBIT E.**)

7.   In an Order dated August 25, 2021, this Court declared
Rushmore the winning bidder.  (See **EXHIBIT F.**)  The Order called
for Mr. Mandelbaum to "finalize the written contract for the
sale of the Pinewood Property . . . within a reasonable time
after the date of this Order."  (Id. at 2.)

8.   On September 13, 2021, this Court entered an Order
granting Rushmore the ability to intervene for the limited
purpose of resolving the parties' dueling motions seeking to
establish the "highest bidder" on the Pinewood Property.  The
Order stated that, "upon completion of the motion, [Rushmore's]
participation will be ended and dismissed."  (See **EXHIBIT O.**)

9.   On October 5, 2021, Defendants filed a timely Notice
of Appeal.  (See **EXHIBIT G.**)

3

10.   Defendants presented two issues for the Appellate Division's consideration, namely, whether this Court erred by (1) denying Defendants' motion to disqualify the broker, and (2) ruling that Rushmore properly won the bid for the Pinewood Property as the highest bidder within the meaning of the Term Sheet.  (See **EXHIBIT H at 1.**)

11.   A notice of docketing regarding the appeal was filed on October 7, 2021.  (See **EXHIBIT I.**)

12.   Subsequently, on October 11, 2021, Defendants filed an Amended Notice of Appeal.  (See **EXHIBIT J.**)

13.   On October 20, 2021, the Appellate Division initially issued a briefing schedule requiring Defendants to file their opening brief on December 6, 2021.  (See **EXHIBIT K.**)  Defendants hired new counsel – this firm – and filed a Motion seeking a brief extension of time to file their opening brief.

14.   On January 4, 2022, the Appellate Division granted Defendants' Motion to extend the time for Appellants to file their brief and issued a modified Scheduling Order permitting Appellants to file their opening brief by January 20, 2022.  (See **EXHIBIT L; EXHIBIT M.**)

15.   Defendants filed their opening appellate brief on January 20, 2022.  (See **EXHIBIT N.**)

16.   Rushmore filed its improper Order To Show Cause on January 19, 2022, literally the night before Defendants'

4

appellate brief was due.  Defendants received an e-mail copy of

the Order To Show Cause papers on January 19, 2022 at

approximately 8:26 p.m.

I hereby certify that the above statements made by me are

true.  I am aware that if any of the above statements made by me

are willfully false, I am subject to punishment.

DATED:  January 26, 2022

                              /s/ Peter C. Harvey

                              Peter C. Harvey

                    PATTERSON BELKNAP WEBB & TYLER LLP
                    1133 Avenue of Americans
                    New York, NY  10036-6710
                    Tel: (212) 336-2000
                    Fax: (212) 336-2222
                    E-Mail:  pcharvey@pbwt.com

5

GEN-G 000427-15 03/09/2023/23 11:43 PM Pg 07 of 272 Trans ID: CHC20235260

# Exhibit A

### TERM SHEET

1. **Signatories** -- executed by the CR Parties and the BR Parties including the Ringel Children Trusts trustees.

2. **Pinewood Complex** --

   i.  The Parties agree to sell the Pinewood Complex to a third party purchaser or to either Chana Ringel or Benjamin Ringel, solely or in partnership or conjunction with any person or entity, via an arm's length sales process ("**Sale Process**") intended to maximize the value of the Pinewood Complex, to be brokered by a mutually acceptable real estate broker (the "**Broker**") pursuant to a listing agreement with the Broker in a form mutually acceptable to the Parties. Within fourteen (14) days from the date of the full execution of the Term Sheet, the Parties shall select the Broker. In the event the Parties cannot agree on the Broker within this fourteen (14) day period, the CR Parties shall propose the names of three (3) brokers to the BR Parties, who shall select one of the proposed brokers to serve as the Broker within seven (7) days. The Sale Process shall provide for the sale of the Pinewood Complex to the highest bidder pursuant to a binding agreement without any contingencies to closing including without limitation any due diligence or mortgage contingency. The proceeds of such sale (net of any customary closing costs, apportionment of Property Expenses, and out of pocket costs and expenses associated with the sale incurred by, or payable to, the Broker) shall be split equally between the CR Parties and the BR Parties, subject to the amount to the $2.5 million of escrowed funds from each side ($5 million in total). In the event of such contingency, the Parties agree to fully cooperate with the sale of the Pinewood Complex, including signing all necessary documents, facilitating access to the Pinewood Complex to the Broker, other brokers, and prospective buyers, and promptly providing or authorizing the provision of such financial and other information as may be requested by prospective buyers. The Parties shall have no discretion over the terms and consideration of any sale by the Broker other than that such sale shall comply with this provision and the Sale Process.

   ii.  With respect to the disposition of the Pinewood Complex or any ownership interests therein, the Parties shall cooperate with each other in good faith and in a timely manner to take advantage of any tax savings or tax deferral strategies to maximize realization of the value of the Pinewood Complex.

   iii.  The Sales Process shall be under the auspices of the Court, and the Parties agree to present any issues or disputes regarding the Sales Process to the Court for resolution in the Court's sole discretion and authority. The Court's rulings with regard to the Sales Process shall be binding upon the Parties.

3. **Until Closed Affiliated Manages** --Prior to the closing of the sale of the Pinewood Complex, the Pinewood Complex will continue to be managed by the current management company under the Court's existing order consistent with past practice and the distributions will continue as they currently exist at the discretion of the current management company.

4. **Gertners Complex, Carey Complex, Clifton Center, and Clifton Property** -- The BR Parties have divided the four remaining properties into two packages with Gertners Complex and Carey Complex with any existing mortgages on those properties in one package (to be satisfied by the party taking the first package within 60 days of receiving the properties), and Clifton Center and Clifton Property with any existing mortgages in the second package (to be satisfied by the party taking the second package within 60 days of receiving the properties). Immediately after the execution of the Settlement Agreement (the "**Selection Date**"), Chana shall make the election to take title to the properties in one of the packages by written notice to Benjamin. The package selected by Chana shall be deemed the "**Selected Package**," the package not selected by Chana shall be deemed the "**Non-Selected Package**," and the date on which Chana makes her selection shall be deemed the "**Selection Date**." Within 60 days of the Selection Date, the BR Parties shall use good faith and diligent efforts to cause the transfer of exclusive title to the Packaged Properties in the Selected Package to CR Lakewood or whoever Chana designates to receive the properties in the Selected Package, and the CR Parties shall use good faith and diligent efforts to cause the transfer of exclusive title to the Packaged Properties in the Non-Selected Package to the BR Parties or whoever Benjamin designates to receive the properties in the Non-Selected Package (the "**Packaged Properties Closing Date**"). The transfer of the foregoing properties shall be structured in such a way as to constitute a distribution under Section 731 of the Internal Revenue Code (the "**Code**"). The Parties hereby instruct the accountants and management company of BCR Lakewood, Affiliated Management, to ensure that the books and records and tax filings of BCR Lakewood and the Companies be consistent with the foregoing treatment and intent.

In the event either of the Parties does not close or fulfill any of the transactions or transfers contemplated by this Agreement, the Parties agree to present any issues or disputes to the Court for resolution in the Court's sole discretion and authority. The Court's rulings with regard to the Packaged Properties shall be binding upon the Parties.

5. **Arbitration of Remaining Claims in the Actions.** The Parties shall submit all remaining claims in the Actions (the "**Remaining Claims**") including the parties' respective claims for monetary damages in the BCR Lakewood action, and the parties' respective claims in the Oakridge action including Chana's claims for equitable relief with respect to the Oakridge property owned by Sunset to binding arbitration ("**Arbitration**"), which shall occur at a mutually acceptable location in New Jersey. Within fourteen (14) days from the date of the full execution of the Settlement Agreement, the Parties shall select a mutually acceptable arbitrator ("**Arbitrator**"). In the event the Parties cannot agree on an arbitrator within this fourteen (14) day period, the CR Parties shall propose three (3) arbitrators to the BR Parties, who shall select one of the proposed arbitrators to serve as Arbitrator within seven (7) days. The Arbitrator shall have the right to award all of the equitable and legal relief as requested by the Parties in the Actions. The Arbitration shall take place within two (2) months from the date of the selection of the Arbitrator. In the event the Arbitration does not begin within two (2) months (6) from the date of the selection of the Arbitrator, the Actions shall continue to be tried before Honorable Francis R. Hodgson, Jr., P.J.Ch., Superior Court of New Jersey, on dates set by the Court.

2

6. **Escrowed Funds.** In the event the sale of the Pinewood Complex occurs prior to the issuance of a final arbitration award in the Arbitration or the entry of final judgment in the Actions, the CR Parties and the BR Parties shall each escrow with the Court the sum of \$2.5 million (*i.e.*, \$5 million in total) ("**Escrowed Funds**") as discussed above. The Parties shall submit a Consent Order to the Court for filing which provides that the Escrowed Funds shall be used solely to satisfy any claim for monetary relief by any Party in the Actions, and that the Escrowed Funds shall not be subject to execution by any judgment creditor of the Parties.

7. **Jurisdiction of the Court.** The Court shall maintain jurisdiction over the Parties to enforce the terms of the Settlement Agreement.

--- SIGNATURE PAGE TO FOLLOW ---

3

**IN WITNESS WHEREOF**, the Parties have caused this Term Sheet to be duly executed as of the date set forth with their respective signatures below.

Dated: ~~July~~ Sep 11 , 2020

_Chana Ringel_
CHANA RINGEL

CR LAKEWOOD, LLC

Dated: ~~July~~ Sep 11 , 2020

_Chana Ringel_
By: Chana Ringel
Title: Manager

Dated: July ___, 2020

BENJAMIN RINGEL

BR LAKEWOOD, LLC

Dated: July ___, 2020

By:
Title:

SUNSET HILL OAKRIDGE PLAZA, LLC

Dated: July ___, 2020

By:
Title:

4



IN WITNESS WHEREOF, the Parties have caused this Term Sheet to be duly executed as of the date set forth with their respective signatures below.

Dated: July ___, 2020

CHANA RINGEL

CR LAKEWOOD, LLC

Dated: July ___, 2020

By: Chana Ringel
Title: Manager

Oct
Dated: ~~July~~ 26, 2020

BENJAMIN RINGEL

BR LAKEWOOD, LLC

Oct
Dated: ~~July~~ 26, 2020

By: Benjamin Ringel
Title: Mangng Member

SUNSET HILL OAKRIDGE PLAZA, LLC

Oct
Dated: ~~July~~ 26, 2020

By: Benjamin Rngd
Title: Manager

4

Dated: ~~July~~ Sept _14_, 2020


Dated: ~~July~~ Sept _17_, 2020


Docs #4367852-v1

RINGEL CHILDREN TRUST I

By: _____
Title: Trustee    Yael Ringel

By: _____
Title: Trustee    DAVID Schreiber

# Exhibit B

# NAGEL RICE, LLP

### COUNSELLORS AT LAW

BRUCE H. NAGEL*
JAY J. RICE*
ROBERT H. SOLOMON
DIANE E. SAMMONS°
LORI I. MAYER°
RANDEE M. MATLOFF
ANDREW L. O'CONNOR
GREG M. KOHN°
SUSAN F. CONNORS
BRADLEY L. RICE°

HARRY A. MARGOLIS
(1928-2002)

103 EISENHOWER PARKWAY
SUITE 103
ROSELAND, NEW JERSEY 07068
(973) 618-0400
FAX: (973) 618-9194
WWW.NAGELRICE.COM

─────────

230 PARK AVENUE
NEW YORK, NY 10169
(212) 551-1465
PLEASE REPLY TO
ROSELAND OFFICE

ANDREW I. PEPPER
MICHAEL J. PARAGANO°
SCOTT M. JACOBSON°
EMMA A. McELLIGOTT

*CERTIFIED BY THE SUPREME COURT OF
NEW JERSEY AS A CIVIL TRIAL ATTORNEY
°MEMBER OF NJ & NY BARS

May 14, 2021

*Via JEDS*
The Honorable Francis R. Hodgson, Jr. P.J. Ch.
206 Court House Lane
Courtroom #25, 1ˢᵗ Floor
Toms River, NJ 08753

      Re:   *Chana Ringel v. Benjamin Ringel and Sunset Hill, et al*
             *Docket No.: OCN-C-152-16*
             *Chana Ringel, et al v. BR Lakewood, LLC and Benjamin*
             *Ringel*
             *Docket No.: OCN-C-127-15*

Dear Judge Hodgson:

    We represent Benjamin Ringel and other defendants ("Ben") in the above two matters. This letter responds to the May 14, 2021 letter from Mr. Fiorovanti on behalf of Chana Ringel ("Chana") regarding the sale of the Pinewood property.

    In response to Mr. Fiorovanti's recent letter seeking approval of Joseph Brecher's recommendation to enter into a contract for the sale of Pinewood with Rushmore Capital, we advise the Court of new facts. We recently learned that Mr. Brecher has a conflict of interest requiring that Rushmore Capital ("Rushmore") be eliminated as a potential purchaser of Pinewood. Joseph Brecher is the broker Chana selected to market the Pinewood property. Mr. Brecher is partners with Rushmore. See email from

Mr. Brecher attached as Exhibit A. Rushmore is helmed by Isaac
Schienerman. Pelham Court is a property owed by Rushmore. See
www.pelhamcourtapts.com. We believe Mr. Brecher and Rushmore are
partners on other properties. Mr. Brecher never disclosed to anyone
that he is partners with the bidder (Rushmore) and what information
he provided to Rushmore to guide them to be the highest bidder.
Our client received phone calls from one of the largest owners of
apartment units in the tri-state area and a bidder's counsel
stating they were "frozen out of the process" and Mr. Brecher is
partners with Mr. Scheinerman. We are very concerned that Mr.
Brecher may have been promised ownership in Pinewood, on top of
the brokerage fee, for steering the deal to Mr. Scheinerman.

Additionally, as we set forth in our April 22, 2021 letter to
Your Honor, the court ordered settlement agreement requires Chana
to satisfy the $1.2 million mortgage on the BCR Clifton Center
property "within 60 days of receiving the properties." It is
undisputed that Chana has failed to do this. While this breach of
the agreement by Chana needs to be resolved, the recent conflict
of interest involving Mr. Brecher rises to a different level.

The Rushmore bid should be disqualified. Attached as Exhibits
B and C is a process Ben sent to Chana and her counsel, and a
letter we sent to Mr. Fioravanti supporting Ben's concept of
sending a "hard contract" out to the four top bidders.  This will
guaranty a "clean process" and is needed especially given the
conflicts of interest that have arisen. Further, to move the
process forward, attached as Exhibit D is a draft contract prepared
by Brach Eichler for the sale of Pinewood.

We respectfully request that the Court hold a conference call
to address the issues regarding the sale of the Pinewood property.

Respectfully,

*Bruce H. Nagel*

BRUCE H. NAGEL

cc: Matthew N. Fiorovanti, Esq.(via e-mail)
    Efrem Schwalb, Esq. (via e-mail)

# EXHIBIT A

**From:** Joseph Brecher <jbrecher@gebroehammer.com>
**Sent:** Thursday, May 13, 2021 12:28 PM
**To:** Benjamin Ringel <bringel@armstrong-capital.com>
**Cc:** Alan Hammer (ahammer@bracheichler.com) <ahammer@bracheichler.com>
**Subject:** Re: Pelham Court Apartments, PA

My family is

Joseph Brecher


Executive Managing Director
Gebroe-Hammer Associates
2 W Northfield Rd Livingston NJ 07039
Tel:  973 994 4500 Fax: 973 994 9752
Cell: 732 859 4843
Jbrecher@gebroehammer.com

> On May 13, 2021, at 12:26 PM, Benjamin Ringel <bringel@armstrong-capital.com> wrote:

> Yossi:

> Are you a partner in this property in Phillie?

> Thanks

> Benji

# EXHIBIT B

**From:** Benjamin Ringel <bringel@armstrong-capital.com>
**Sent:** Sunday, May 2, 2021 11:58 AM
**To:** Jennivere L. Kenlon <jkenlon@ghclaw.com>
**Cc:** Hammer, Alan <ahammer@bracheichler.com>; Bruce Nagel (bnagel@nagelrice.com) <bnagel@nagelrice.com>;
Robert Solomon <rsolomon@nagelrice.com>; Davis, Jonathan S. <jdavis@bracheichler.com>; Efrem Schwalb
<eschwalb@koffskyschwalb.com>
**Subject:** Pinewood Apartments - P&S Agreement

Jennivere:

I hope all is well.  We are coming to the next phase of executing the February 2020 Settlement Agreement between me
and your client.

The next phase deals with Pinewood Apartment, which is to be sold in a tax efficient manner (a) to my entity, or (b) your
client's entity or (c) a third party. We have received bids for 5 third parties, of which 3 are qualified and my entity BR
Lakewood LLC has submitted our bid.

Under separate cover I will forward you the qualified bids.

In anticipation of fulfilling the next phase, Alan and I discussed the best way to implement same, important terms in any
contract to a third party and having a due diligence period for any potential purchasers.  I have also had separate
meetings with tax advisors to explore various tax efficient structures.

1

We believe that (a) all qualified purchasers be given access to a virtual "war room" which will contain all due diligence items for a period of 2 weeks before any contract is circulated, (b) all qualified purchasers will receive the same form contract which you and Jon will work through all the terms and create a form contract together. The notice provisions should be to both Brach Eichler and GHC so both me and Chana are kept in the loop fully.

Brach Eichler has worked with every qualified purchaser and I believe has a form contract which we can use as the template and you and Jon can modify it to reflect the deal here and any comments Chana or I may have.

Regarding the tax structuring, we will be bringing it up with the arbitrator on May 13, 2021 which is a day set for mediation to begin working through the tax issues. As you can imagine with Joe Biden's proposed changes to the 1031 law everything has gotten more complicated and delicate.

Therefore, it is probably best for you and Jon to have a call sometimes this week and Jon will get you the Brach form contract which all the qualified purchasers are familiar with. After our Mediation on May 13, 2021 we will have guidance regarding the tax structuring.

All the best

Ben

**From:** Davis, Jonathan S. <jdavis@bracheichler.com>
**Sent:** Wednesday, January 13, 2021 2:15 PM
**To:** 'Efrem Schwalb' <eschwalb@koffskyschwalb.com>; Jennivere L. Kenlon <jkenlon@ghclaw.com>
**Cc:** Benjamin Ringel <bringel@armstrong-capital.com>; Hammer, Alan <ahammer@bracheichler.com>
**Subject:** Redline BCR to CR Lakewood LLC CLifton (003) - Redline BCR to CR Lakewood LLC CLifton (003)

Attached are our comments in the form of a revised document, marked to show changes from your last version and clean. I am sending this out to you before my client has had a chance to review it, so it is subject to any comments my client may have. Please feel free to call me if you have any questions.
Jonathan

**Jonathan S. Davis, Esq.**
B R A C H | E I C H L E R ʟʟᴄ
101 Eisenhower Parkway | Roseland, New Jersey 07068
Direct: 973-403-3118 | Firm: 973-228-5700 | Fax: 973-618-5518
bio | email | vcard | website
New York City | Roseland | Palm Beach

This email is from Brach Eichler LLC, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute this e-mail or any attachments. Instead, please notify the sender and delete this e-mail and any attachments.

# EXHIBIT C

NAGEL RICE, LLP

COUNSELLORS AT LAW

BRUCE H. NAGEL*
JAY J. RICE*
ROBERT H. SOLOMON
DIANE E. SAMMONS°
LORI I. MAYER°
RANDEE M. MATLOFF
ANDREW L. O'CONNOR
GREG M. KOHN°
SUSAN F. CONNORS
BRADLEY L. RICE°

HARRY A. MARGOLIS
(1928-2002)

103 EISENHOWER PARKWAY
SUITE 103
ROSELAND, NEW JERSEY 07068
(973) 618-0400
FAX: (973) 618-9194
WWW.NAGELRICE.COM

———

230 PARK AVENUE
NEW YORK, NY 10169
(212) 551-1465
PLEASE REPLY TO
ROSELAND OFFICE

ANDREW I. PEPPER
MICHAEL J PARAGANO°
SCOTT M. JACOBSON°
EMMA A. MCELLIGOTT

*CERTIFIED BY THE SUPREME COURT OF
  NEW JERSEY AS A CIVIL TRIAL ATTORNEY
°MEMBER OF NJ & NY BARS

May 5, 2021

Via E-Mail
Matthew N. Fiorovanti, Esq.
Giordano, Halleran & Ciesla, P.C.
125 Half Mile Road
Suite 300
Red Bank, New Jersey 07701

Re: Chana Ringel v. Benjamin Ringel and Sunset Hill, et al
    Docket No.: OCN-C-152-16
    Chana Ringel, et al v. BR Lakewood, LLC and Benjamin Ringel
    Docket No.: OCN-C-127-15

Dear Matt:

    This letter responds to your letter of May 3, 2021 regarding
the sale of Pinewood. First, the Rushmore bid was $45,625,000 not
$46,625,000.

    There are 4 bidders (Rushmore, AJH, Capstone and BR Lakewood)
which are all within $1,000,000 in price which equals a 2.5%
difference. I have been involved in many of these partnership
dissolutions and Ben's suggestion about sending out a form contract
to 4 bidders is standard. The "virtual" war room allows all the
prospective purchasers to review everything before a contract is
signed and also prevents the Seller (your client and Ben) from
making representations which the Purchaser can thereafter say was
inaccurate and attempt to re-trade the purchase price.

    Regarding who can be involved and not, both Chana and Ben are
to be involved, as it's their property. Efrem fought hard and won
on inserting a tax provision in the Settlement Agreement which

both parties should utilize to reduce their tax burden.   Ben's offer net effective sales price is $45,500,000 which puts his offer right between Rushmore and AJH.

I understand that Jennivere and Jon have a good working relationship as does Alan Hammer and Michael Bruno who have worked together. There is no reason to bring in another law firm who is unfamiliar with the issues.

If you would like to discuss any of the offers, tax structuring or a form contract please feel free to call me.

This letter is without prejudice and is not to be used in any litigation or arbitration.

Very truly yours,

*Bruce H. Nagel*

BRUCE H. NAGEL

cc: Efrem Schwalb, Esq.

# EXHIBIT D

## AGREEMENT OF SALE

**THIS AGREEMENT OF SALE** (this "**Agreement**") made this _____ day of \_\_\_\_\_, 2021 (the "**Effective Date**") by and between: **BR LAKEWOOD LLC AND CR LAKEWOOD LLC, AS TENANTS IN COMMON,** having an address at 1200 West Broadway, Hewlett, New York and c/o Kofsky and Schwalb, 349 Fifth Avenue, New York, New York, respectively ("**Seller**"), and _____, having an address at _____ ("**Purchaser**").

### W I T N E S S E T H :

1. **Purchase and Sale.** In consideration of the sum of _____ DOLLARS (the "**Purchase Price**") and also in consideration of the covenants and agreements herein contained, Seller shall convey to the Purchaser by Bargain and Sale Deed With Covenants against Grantors Acts (the "**Deed**"), free and clear of all encumbrances except as hereinafter mentioned, (a) the lot, tract or parcel of land together with the buildings and improvements thereon located at 1703 Lexington Avenue, Lakewood, New Jersey, known as Pinewood Apartments (and more particularly described on **Exhibit A** attached hereto (the "**Real Property**"); (b) all right, title and interest of Seller, if any, in and to the fixtures, equipment and other personal property (the "**Personal Property**") attached or appurtenant to the improvements upon the Real Property and (c) all right, title and interest of Seller in and to all leases for the Real Property and to all assignable service contracts set forth on **Exhibit B** attached hereto (all of the foregoing hereinafter collectively referred to as the "**Premises**" or "**Property**").

2. **Personal Property.** All furniture, fixtures, equipment, appliances and other items of personal property located at the Premises and owned by the Seller are included in this sale[1].

3. **Payment.** The Purchaser will pay Seller the Purchase Price as and for the Premises in the following manner:

Upon the Effective Date in the form of wire transfer of immediately available federal funds and to be held in escrow by _____ (the "**Escrow Agent**"), an amount equal to ten (10%) percent of the Purchase Price $_____ (hereinafter the "**Deposit**"):        $_____

At Closing (as hereinafter defined), the balance of the Purchase Price by wire transfer of immediately available federal funds, subject to adjustments as set forth below, approximately the sum of:        $_____

**TOTAL:**        $_____

---

[1] Carveout any items specifically requested by client, such as vehicles, computers, etc.

The Deposit shall be held in escrow by the Escrow Agent, who shall hold the Deposit in an interest bearing account until Closing or termination of this Agreement. The Deposit shall be credited against payment of the Purchase Price at Closing. Interest, if any, earned on the Deposit shall follow and shall become part of the Deposit, and shall be credited against payment of the Purchase Price.

4.      **Release of Deposit**. Seller shall have the option to have the Deposit released from Escrow for the sole and exclusive purpose of utilizing the funds, along with funds to be contributed by Seller, to completely satisfy and pay off the existing financing on the Property. In the event Seller exercises such option, as a condition of the exercise, it shall secure Purchaser's interest in the Deposit to the reasonable satisfaction of Purchaser.

5.      **Financing.** This transaction is not contingent upon Purchaser obtaining financing.

6.      **Adjustments.**   The rents, security deposits, water, sewer, taxes, and all other items normally adjusted at the closing of a residential apartment complex in the State of New Jersey shall be apportioned and allowed as of 12:01 am of the Closing Date, as if Purchaser was the owner of the Premises on the Closing Date. All rent payments actually collected in the month of Closing shall be prorated between the parties as of the Closing. All rent collected after Closing for any period prior to Closing shall belong to Seller, and if paid to Purchaser, subject to the provisions of the following sentence, Purchaser shall promptly send such rent to Seller. All rent collected after Closing shall be applied first to the month of Closing, then to current rent payments due and owing and then to pay any arrearages (in inverse order/most recent arrearages paid first). Any current deposits with utility companies shall remain the property of Seller and shall not be assigned or credited at Closing. Any error in the calculation of Closing adjustments shall be corrected after the Closing with appropriate credits to be given based upon verified information; provided, however, that the adjustments (except if errors are caused by misrepresentation) shall be final upon expiration of the sixtieth (60th) day after Closing. Seller shall pay the realty transfer tax. Seller shall give Purchaser a credit for all tenant security deposits which tenants have paid, including interest.

7.      **Seller's Documents**. At Closing, Seller will deliver to Purchaser the following documents, duly executed and where appropriate, acknowledged, and in form reasonably acceptable to Purchaser's counsel, and Purchaser's title company:

(a)      The Deed and a standard Affidavit of Title.

(b)      A certification that Seller is not a foreign person within the meaning of Sections 1445 and 7701(a)(i) of the Internal Revenue Code of 1986;

(c)      A bill of sale, in the form attached hereto as **Exhibit C**, conveying Seller's interest in and to the Personal Property;

(d)      A consent or resolution authorizing the sale of the Premises pursuant to the terms of this Agreement;

- 2 -

(e)     Such other forms required under applicable law in connection with the conveyance of the Premises, including, without limitation, Seller's affidavit of consideration and Seller's Residency Certificate;

(f)     An assignment of Seller's interest in the leases and tenancies then in effect at the Property, as well as an agreement with respect to security deposits in the form attached hereto as **Exhibit E**.

(g)     A notice to the tenants, in a form reasonably satisfactory to Purchaser, advising of the sale of the Property to Purchaser.

(h)     An updated rent roll, certified to be true and correct in all material respects.

(i)     Information for Real Estate 1099-S Report Filing in accordance with Section 6045 of the Internal Revenue Code, as amended. Seller and Purchaser hereby designate Purchaser's title company as the entity that will be responsible for the compliance with such reporting requirements.

(j)     Any other documents which Seller is obligated to deliver to Purchaser pursuant to this Agreement.

(k)     At closing, Seller shall also deliver to Purchaser all keys, security codes, tenant files, operation and maintenance manuals, and such other items located at the Premises and used in the conduct of the business of the Property.

8.     **Damage and Condemnation.**  (a) The risk of loss from casualty or condemnation shall be on the Seller until Closing.  In the event that all or any substantial portion of the Premises shall be damaged before the Closing Date (as hereinafter defined), or a condemnation proceeding seeking to take a substantial portion of the Premises shall be threatened before the Closing Date, Purchaser may, at its option, either (i) terminate this Agreement by delivering written notice to Seller within ten (10) days of Seller's notification of such damage or condemnation, or (ii) proceed to the Closing pursuant to the terms hereof, in which event Seller shall assign to Purchaser at the Closing any insurance or condemnation proceeds (and pay to Purchaser any applicable insurance deductible) attributable to the Premises from such damage or condemnation, with no reduction in the Purchase Price.  For the purpose of this provision, a "substantial portion" of the Premises shall be deemed to include any damage or taking, the cost of repair for which is greater than Two Million Five Hundred Thousand ($2,500,000.00) Dollars.

(b)     Seller shall notify Purchaser of the occurrence of a casualty or condemnation within five (5) business days after Seller receives knowledge thereof, and if Seller fails to do so, Purchaser shall have the right to terminate this Agreement upon notice to Seller, and receive a refund of the Deposit.

(c)     If less than a substantial portion (as defined above) of the Premises shall be damaged or condemned before the Closing, then the parties shall proceed to Closing, provided that Seller shall either repair the damage before the Closing or assign to Purchaser any insurance proceeds (along

with a Closing credit equal to the deductible) or just compensation proceeds attributable to the Premises from such casualty or condemnation.

9. **Title.**

  (a) Title to the Premises shall be good and marketable, and insurable at regular rates, by any reputable title insurance company licensed to do business in the State of New Jersey, subject only to the Permitted Exceptions. The term "**Permitted Exceptions**" are set forth on Schedule 1 attached hereto and shall also mean: (i) utility easements for services to the Property; (ii) such state of facts as may be shown on an accurate survey; (iii) all present and future zoning ordinances and other governmental regulations, specifically excluding current zoning or building code violations; (iv) the standard printed exceptions and exclusions in the form of an owner's title insurance policy; (v) all presently existing and future liens for unpaid real estate taxes and water and sewer charges not due and payable as of the Closing Date, subject to adjustment as provided herein; (vi) minor encroachments, if any, upon the Property of walls, foundations or appurtenances of buildings located on adjoining premises as well as minor encroachments, if any, of building walls, foundations or appurtenances belonging to the Property upon adjoining premises; (vii) the leases; (viii) any lien, encumbrance or other matter affecting title to the Property arising out of the acts or omissions of Purchaser or any Purchaser related party; and (ix) such other matters of record on the Effective Date that (y) do not render title unmarketable or (z) do not materially adversely affect the use and/or operation of the Property.

  (b) Purchaser shall order, at its sole cost and expense, a title commitment with respect to the Premises (the "**Title Commitment**") from a reputable title insurance company licensed to do business in the State of New Jersey (the "**Title Company**") and shall cause the Title Commitment, together with all title exceptions referred to therein, to be delivered promptly, but no later than twenty (20) days from the Effective Date (the "**Title Review Period**").

  (c) If the Premises do not comply with the quality of title provision contained herein, then Purchaser shall notify Seller in writing prior to the expiration of the Title Review Period of the title defect(s) to which Purchaser objects (the "**Title Objection Notice**") and Seller will be given until the Closing Date to render title insurable and in compliance herewith. Seller shall not be required to institute a legal proceeding or action to render title insurable or in compliance, provided, however, that Seller shall be required to cause the release of any mortgage or other monetary lien placed on the Property by Seller or as a result of the actions or inactions of Seller; provided, however, that Seller shall not be required to cure or remove any outstanding mechanic's or materialman's lien encumbering the Property that is being disputed in good faith by Seller. Seller shall send a written notice to Purchaser within ten (10) days of receipt of Purchaser's Title Objection Notice, advising Purchaser whether it is electing to (i) attempt to remove any encumbrance or other title exception or matter which is not a Permitted Exception, or (ii) choosing not to remove any such encumbrance or other title exception or matter, in which event Purchaser shall have the rights set forth in the last sentence of this paragraph. If Seller fails to send the written notice provided for in the prior sentence, Seller shall have been deemed to have chosen not to attempt to remove any such encumbrance or other title exception or matter. In addition, if Seller has elected to proceed under (i) above, but Seller cannot cure the defect in title, then, subject to the provisions of the last sentence of this Paragraph 8(c), Purchaser may elect to either (x) terminate this Agreement by written notice to Seller, in which event this Agreement shall terminate

- 4 -

and be of no force and effect, or (y) to waive any defect of Seller's title and proceed to Closing
without abatement or diminution of the Purchase Price.

(d)     If, on the Closing Date, there are any liens or encumbrances that Seller is
obligated to discharge under this Agreement, Seller shall either (i) arrange, at Seller's cost and
expense, for affirmative title insurance or special endorsements insuring against loss or damage
resulting from enforcement of such liens or encumbrances against, or collection of the same out
of, the Property, and/or (ii) use any portion of the Purchase Price to pay and discharge the same,
either by way of payment or by alternative manner reasonably satisfactory to the Title Company,
including, without limitation, escrow or bond over same.

10.     **Property Delivered in "AS IS" Condition.**  This Agreement contains all of the terms of
the contract between the parties for the sale of the Premises, and Purchaser acknowledges that it
has inspected or will inspect the Premises and is thoroughly, or will be familiar with the Premises,
having made such inquiries and investigations as Purchaser has deemed necessary, desirable or
appropriate, and that the Seller has held out no inducements and made no representations other
than as may be specifically set forth herein.  EXCEPT AS MAY BE SPECIFICALLY SET
FORTH IN THIS AGREEMENT, AND SUBJECT TO SELLER'S COMPLIANCE WITH ITS
OBLIGATIONS HEREUNDER, PURCHASER ACKNOWLEDGES AND AGREES THAT IT
IS PURCHASING THE PREMISES IN "AS IS" AND "WHERE IS" CONDITION, WITH ANY
AND ALL FAULTS AND DEFECTS, WHETHER LATENT OR PATENT, AND SUBJECT TO
ORDINARY WEAR AND TEAR FROM THE EFFECTIVE DATE THROUGH THE CLOSING
DATE.  PURCHASER ACKNOWLEDGES THAT IT IS NOT RELYING UPON, AND THAT
SELLER IS NOT LIABLE FOR OR BOUND BY, ANY EXPRESS OR IMPLIED
WARRANTIES, GUARANTEES, PROMISES, BROKER'S "SET-UPS", STATEMENTS,
REPRESENTATIONS OR INFORMATION REGARDING THE PREMISES' PHYSICAL OR
ENVIRONMENTAL    CONDITION,    INCOME,    EXPENSES,    OPERATION,    USE,
COMPLIANCE WITH LAWS, HABITABILITY, MERCHANTABILITY, OR FITNESS FOR
A PARTICULAR PURPOSE, EXCEPT AS MAY BE SPECIFICALLY SET FORTH IN THIS
AGREEMENT.

11.     **Due Diligence.**  Purchaser has examined the Property and the necessary financial
information and is satisfied with the condition of the Property and its finances.

12.     **Mutual Representations and Warranties.**  Each party warrants and represents to the
other, as of the Effective Date and as of the Closing Date, knowing that the other party shall rely
therein in consummating this transaction, that:

(a)     It has full power and authority under all applicable laws and all agreements
to which it is a party or by which it is bound to enter into this Agreement and perform all of the
terms and conditions and covenants set forth herein.

(b)     The execution and delivery of this Agreement and the performance of all
the terms, conditions and covenants set forth herein are neither prohibited by, nor would constitute
presently or after the passage of time, a breach or violation of any agreement or other instrument
to which it is a party or by which it is bound, nor result in the creation or imposition of any lien on

- 5 -

any of such party's assets or property which would materially and adversely affect the ability of
such party to carry out the terms of this Agreement.

(c)     This Agreement, when executed and delivered on behalf of each party will
be legal, valid, binding and enforceable against it in accordance with its terms, subject as to
enforceability only, to applicable laws relating to bankruptcy, creditors' rights and equitable rights
and remedies.

13.     **Seller's Representations**. Seller represents to Purchaser, as of the Effective Date and as
of the Closing Date, which representations shall not survive Closing, that:

(a)     Seller is not a "foreign person" within the meaning of Sections 1445 and
7701(a)(i) of the Internal Revenue Code of 1986.

(b)     There are no actions, suits or proceedings pending, or, to Seller's actual
knowledge, threatened in writing, involving or relating to the Property or that could have an
adverse effect on the Property or Seller (but this representation does not include possible actions
which are covered by insurance).

(c)     Seller has received no written notice from any governmental authority
having jurisdiction over the Property of any violations against the Property with which it has not
complied.[2]

(d)     There are no service contracts ("**Service Contracts**") for the Property that
will survive Closing other than those set forth on **Exhibit B**.

(e)     The rent roll attached to this Agreement as **Exhibit D** is true and accurate
in all material respects and sets forth the names, rents, security deposits and lease expiration dates[3].

(f)     Seller is not a person or entity with whom United States persons or entities
are restricted from doing business under regulations of the Office of Foreign Asset Control
("**OFAC**") of the Department of the Treasury (including those names on OFAC's Specially
Designated and Blocked Persons List) or under any statute, executive order (including the
September 24, 2001 Executive Order Blocking Real Property and Prohibiting Transactions with
Persons Who Commit, Threaten To Commit, or Support Terrorism).

(g)     Attached hereto as **Exhibit F** is a complete list of all of Seller's employees
engaged in the operation and maintenance at the Property, including all wages, free rent, if any,
and any other benefits allowed to the employee.  As of the Closing Date, the employee shall be
paid in full.

---

[2] Confirm with client this is the deal.

[3] Confirm that the client's rent roll does in fact contain all of this info.

BE:11796326.1/RIN016-268574

      (h)    To the best of its knowledge, there are no threatened or pending condemnation or similar proceedings against the Property.

      (i)    Annexed hereto as **Exhibit G** is a true copy of the current green card issued by the Department of Community Affairs, Bureau of Housing Inspection for the Premises.

      (j)    To the best of Seller's knowledge, there are no claims, litigation, administrative proceedings, actual or threatened or judgments or orders, or any notices, relating to any hazardous substances or any environmental condition concerning the Property. To the best of Seller's knowledge, no hazardous substances or wastes, as defined by law, are generated, manufactured, refined, transported, treated, stored, handled or disposed of on the Property by Seller or any previous owner of the Property except for cleaning and other materials used in the ordinary course of operations.

      (k)    To the best of Seller's knowledge, there are no underground or aboveground storage tanks, at the Property.

14.    **Operations Prior to Closing.**

      (a)    Seller shall not grant any rent credits for any time period beyond the closing. Seller shall not accept any prepayment of rent for more than one month beyond the Closing Date.

      (b)    Any apartments which become due for renewal from the Effective Date and any re-rentals of apartment units shall be rented in accordance with the same standards currently employed by Seller, and Seller shall make available at the rental office to Purchaser copies of any new leases or renewals of leases.

      (c)    Prior to Closing, Seller shall protect and preserve the Property by causing the customary services to be provided for the Property based on Seller's historical practice, and causing the Property to be operated in the ordinary course of business. Additionally, Seller (i) shall pay, in the normal course of business and in any event prior to Closing, sums properly due for work, materials or services furnished or otherwise incurred by or at the request of Seller in connection with the ownership and operation of the Property to the Closing Date; and (ii) shall not remove any of the Personal Property unless it replaces the same with personal property of equal or superior quality.

15.    **Brokers.** The Seller and Purchaser represent that they have dealt with no broker in connection with this matter other than Gebroe-Hammer Associates (the "**Broker**"). Seller and Purchaser agree to indemnify and hold harmless the other party from any breach of this representation by the breaching party. This paragraph shall survive the Closing. Seller shall pay the commission due to the Broker pursuant to a separate agreement.

16.    **Liquidated Damages/Default.** In the event of a default by Purchaser under this Agreement, then the Deposit shall be paid to Seller by the Escrow Agent as liquidated damages, and as Seller's sole and exclusive remedy, such damages being difficult, if not impossible, to ascertain, and not as a penalty. In the event of a default by Seller, Purchaser shall be entitled as its sole and exclusive remedy either: (a) to a return of the Deposit, or (b) in the alternative, to the right

BE:11796326.1/RIN016-268574

to pursue specific performance of this Agreement. Purchaser agrees and acknowledges that it shall not be entitled to any consequential or other damages as result of Seller's default. In the event Purchaser elects to pursue specific performance of this Agreement, such election must be made, and such action for specific performance, must be commenced within sixty (60) days from the date of the occurrence of Seller's alleged default.

17.   **Limitation of Liability.**

    (a)   Should Purchaser wish to bring an action for an alleged breach of a representation or warranty hereunder it may do so only on the following conditions:  (i) it first learned of the breach after Closing and files such action within ninety (90) days of the Closing, and (ii) it shall not have the right to bring a cause of action for a breach of a representation or warranty unless the damage resulting from such breach (individually or when combined with damages from other breaches) equals or exceeds Fifty Thousand ($50,000.00) Dollars, and (iii) Seller shall not have any liability after Closing for an alleged breach of a representation or warranty hereunder if the Purchaser had knowledge of such alleged breach as of or prior to the Closing.  Furthermore, Purchaser agrees that the maximum liability of Seller for the alleged breach of any or all representations or warranties set forth in this Agreement is limited to Four Hundred Thousand ($400,000.00) Dollars in the aggregate.  The provisions of this section shall survive Closing without limitation.

    (b)   Purchaser hereby releases the Seller, together with all of their respective direct or indirect members, managers, partners, officers, directors, employees, representatives, agents, shareholders, trustees and/or beneficiaries and all their respective current and former affiliates, heirs, successors, assigns, predecessors, attorneys, agents and related entities (collectively referred to herein as the "**Seller Related Parties**") from any and all liability in connection with any claims which Purchaser may have against the Seller or any of the Seller Related Parties, and, except with respect to any claim that Purchaser may have the right to assert pursuant and subject to the limitations set forth in Section [16(a)] of this Agreement, Purchaser hereby agrees not to assert any claims, for damage, loss, compensation, contribution, cost recovery or otherwise, against the Seller or any of the Seller Related Parties, whether in tort, contract, or otherwise, relating directly or indirectly to the condition of the Premises.  The provisions of this Section shall survive Closing without limitation.

18.   **Notices.**  Notices hereunder shall be in writing and mailed by nationally recognized overnight courier, or via facsimile or e-mail [with confirmation followed by a copy sent via overnight courier, to the respective addresses of the parties set forth below.  Service shall be deemed effective upon the earlier of actual receipt of notice or one (1) business day after depositing with a nationally recognized overnight courier.

        To Seller:      BR Lakewood LLC
                        Attention:  Benjamin Ringel
                        1200 West Broadway
                        Hewlett, NY  11557

BE:11796326.1/RIN016-268574

CR Lakewood LLC
Attention:  Chana Ringel
c/o Kofsky and Schwalb
349 Fifth Avenue
New York, NY  10016

with cc:        Brach Eichler LLC
                Attention:  Alan R.  Hammer
                101 Eisenhower Parkway
                Roseland, NJ  07068
                973-403-3113
                ahammer@bracheichler.com

with cc:        Giordano Halleran & Ciesla PC
                Attention:
                6777, 125 Half Mile Road #3
                Red Bank, NJ  07701

To Purchaser:


with cc:



Notices sent by the respective attorneys for the parties shall be deemed sufficient without the signatures of the parties themselves if sent as provided herein.

19.     **Business Days/Counting Dates**. If the final day of any period of time in any provision of this Agreement falls upon a Saturday, Sunday, a holiday observed by federally insured banks in the State of New Jersey, or by the United States Postal Service (any of the foregoing being referred to as a "**Holiday**"), then the time of such period shall be extended to the next day which is not a Saturday, Sunday or Holiday.  Unless otherwise specified, in computing any period of time described in this Agreement, the day of the act or event after which the designated period of time begins to run is not to be included, and the last day of the period as so computed is to be included, unless such last day is a Saturday, Sunday or Holiday, in which event the period shall run until the end of the next day which is neither a Saturday, Sunday or Holiday.

20.   **Entire Agreement**. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof. No modification of any of the terms and conditions of this Agreement may be made except by an instrument in writing signed by both parties.

21.   **No Recording**. Purchaser covenants and agrees not to record this Agreement or any memorandum hereof and agrees that any recording hereof by Purchaser shall be deemed a material default hereunder. Nothing herein shall restrict Purchaser's title company from filing Notices of Settlement.

22.   **Closing.** Title closing (the "**Closing**") shall take place at the offices of Brach Eichler, LLC, 101 Eisenhower Parkway, Roseland, New Jersey, 07068, on January 5, 2022 (the "**Closing Date**"), the Closing Date being TIME OF THE ESSENCE. Either party may request an "escrow closing" whereby the parties place all closing documents and funds into escrow with the Title Company who shall release same upon completion of the Closing.

23.   **1031 Transaction.** Purchaser acknowledges that this Agreement may be used by Seller as part of a IRC Section 1031 transaction or other similar or analogous transaction and agrees to cooperate to effect such a transaction, provide same is at no cost or liability to Purchaser. Seller acknowledges that this Agreement may be used by Purchaser as part of a IRC Section 1031 transaction or other similar or analogous transaction and agrees to cooperate to effect such a transaction, provided same is at no cost or liability to Seller and that such transaction does not delay the Closing.

24.   **Confidentiality**. Purchaser covenants and agrees not to communicate the terms or any aspect of this Agreement to any person or entity and to hold, in the strictest confidence, the content of any and all information in respect of the Premises which is supplied by Seller to Purchaser, without the express written consent of Seller; provided, however, that Purchaser may, without consent, disclose the terms hereof and the transactions contemplated hereby (a) to its advisors, consultants, attorneys, accountants, and lenders (collectively, the "**Transaction Parties**") without the express written consent of Seller, so long as any such Transaction Parties to whom disclosure is made shall also agree to keep all such information confidential in accordance with the terms hereof and (b) if disclosure is required by law or by regulatory or judicial process, provided that in such event Purchaser shall notify Seller in writing of such required disclosure, shall exercise all commercially reasonable efforts to preserve the confidentiality of the confidential documents or information, as the case may be, including, without limitation, reasonably cooperating with Seller to obtain an appropriate order or other reliable assurance that confidential treatment will be accorded such confidential documents or information, as the case may be, by such tribunal and shall disclose only that portion of the confidential documents or information which it is legally required to disclose. If this Agreement is terminated, such confidentiality shall be maintained and Purchaser and the Transaction Parties will destroy or deliver to Seller, upon request, all documents and other materials, and all copies thereof, obtained thereby in connection with this Agreement that are subject to such confidence, with any such destruction confirmed by Purchaser and the Transaction Parties in writing. The foregoing confidentiality obligations shall not apply to the extent that any such information is a matter of public record or is provided in other sources readily available to the real estate industry other than as a result of disclosure by Purchaser or the Transaction Parties. Purchaser hereby indemnifies Seller against, and holds Seller harmless from, any and all claims, losses, damages, liabilities and expenses (including, without limitation,

- 10 -

reasonable attorneys' fees and disbursements) arising in connection with Purchaser's obligations under this Section 22. The provisions of this Section 22 shall survive the Closing or termination of this Agreement, as applicable.

25.     **No Offer.**  The presentation of this document for consideration by the parties shall not constitute an offer, reservation or option for the Premises and this document shall become effective and binding only upon execution and delivery by all parties hereto.

26.     **Assignment.**  This Agreement may not be assigned by the Purchaser, except to a related or wholly-owned subsidiary or an entity controlling, controlled by, or under common control with principals of Purchaser, provided: (a) not less than five (5) business days' prior written  notice is given to Seller's attorney, (b) the assignee executes an assignment and assumption assuming all of the obligations of Purchaser hereunder, and (c) the assignee executes all documents and takes such actions as are required of Purchaser hereunder.  A copy of the assignment and assumption shall be provided to Seller's attorney together with the notice of assignment.

27.     **Construction.**  This Agreement is a negotiated agreement, each of the parties hereto being represented by legal counsel.  This Agreement shall not be construed against either party by reason of same being prepared by its respective attorneys.  The paragraph headings used herein are for convenience of reference only and shall not affect the meaning of this Agreement.

28.     **Bind and Inure.**  All the terms, covenants and conditions herein contained shall bind and shall inure to the benefit of the respective parties hereto, and their heirs, executors, administrators, personal or legal representatives, successors and assigns respectively.

29.     **Gender and Number.**  In all references herein to any parties, persons, entities or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text of the within instrument may require.

30.     **Counterparts.**  This Agreement may be executed in any number of identical counterparts, including via fax, PDF or other electronic copy, and each counterpart hereof shall be deemed to be an original instrument, but all counterparts hereof taken together shall constitute but a single instrument.

31.     **Litigation Fees.** Anything to the contrary contained herein notwithstanding, in the event of any litigation arising from or relating to this Agreement, the parties agree that the substantially prevailing party shall be reimbursed by the losing party for all costs and expenses actually incurred in such litigation, including, but not limited to, attorneys' fees.

32.     **Waiver of Jury Trial**.  The parties hereby waive the right to obtain a jury trial in any dispute that arises under this Agreement.

33.     **Governing Law and Jurisdiction**.  This Agreement shall be governed by the laws of the State of New Jersey. Each party hereby irrevocably submits to the exclusive jurisdiction of the courts of the State of New Jersey, for both subject matter and personal jurisdiction, in any dispute arising under this Agreement.

34.     **Lead-Based Paint Hazards.**

- 11 -

(a)     If the Premises is residential housing built prior to 1978, federal regulations require:

(b)     that Seller provide a notice to Purchaser in the federally prescribed form;

(c)     that Purchaser shall have a ten (10) day period in which to conduct a lead-based paint inspection or risk assessment, at Purchaser's expense, which shall be subject to Purchaser's right to negotiate or waive the inspection/ assessment period (this ten (10) day period is agreed to expire no later than ten (10) days from the Effective Date);

(d)     that Seller and Purchaser provide certain information regarding lead-based paint and certify to the accuracy of their statements, in the federally prescribed form; and

(e)     that Seller provide to Purchaser a pamphlet printed by the United States Environmental Protection Agency regarding lead paint.

(f)     If applicable, the parties agree to complete and execute the federally prescribed disclosure form by no later than ten (10) days from the Effective Date.

35.     **Escrow Agent**.  The Deposit shall be disposed of in accordance with either (a) the joint written instructions signed by both parties, (b) written demand ("**Demand**") to the Escrow Agent from either Seller or Purchaser or (c) the final judgment of the court of competent jurisdiction from which there shall be no further right of appeal.  The Demand in subsection (b) above shall be contemporaneously delivered by the party demanding the disposition of the Deposit to both the Escrow Agent and the other party.  If within ten (10) days after the Escrow Agent has received the Demand, the Escrow Agent has not received from the non-demanding party a notice of objection to the Demand, then the Escrow Agent is authorized to disburse the Deposit as requested by the Demand.  If within the ten (10) day period the Escrow Agent receives from the non-demanding party its notice of objection to the Demand, then the Escrow Agent is directed to notify the other party, enclosing a copy of the notice of objection, and the Escrow Agent is to continue to hold the Deposit until it is in receipt of joint written instructions of Purchaser and Seller or the final order of a court of competent jurisdiction as aforesaid, or the Escrow Agent may deposit the Deposit into a court of competent jurisdiction pursuant to an interpleader action, unless instructed otherwise by the joint written instructions of both parties.  [Purchaser acknowledges that the Escrow Agent is Seller's counsel and agrees that Escrow Agent shall be permitted to represent Seller in any litigation including representing Seller relating to this Agreement or the Deposit, without any claim by the Purchaser asserting conflict of interest.][4]  Seller or Purchaser, jointly and severally, shall reimburse and indemnify the Escrow Agent for, and shall hold it harmless from and against, any and all loss, liability, cost or expense caused by Seller or Purchaser, including, without limitation, reasonable attorneys' fees and disbursements [(which may be fees and disbursements payable by Escrow Agent to a third party law firm representing Escrow Agent or payable to Escrow Agent, representing itself, based on and calculated at the then standard rates

---

[4] Include if applicable.

charged by Escrow Agent for services rendered to third parties)][5] and court costs and expenses of defending any claim or liability, incurred by Escrow Agent without its gross negligence or willful default, or arising out of or in connection with its acceptance of its or performance of its duties and obligations under this Agreement; and Seller and Purchaser each hereby release the Escrow Agent from any act done or omitted to be done by the Escrow Agent in good faith in the performance of its duties hereunder, so long as such act or omission does not constitute gross negligence or willful default.   The Escrow Agent shall have no obligations other than as specifically set forth herein, and shall incur no liability whatsoever for the Deposit except for willful misconduct or breach of fiduciary duty.

36.   **Bulk Sale.**   The parties hereby acknowledge that pursuant to N.J.S.A. 54:50-38, the Purchaser is required to notify the Director of the Division of Taxation in the Department of the Treasury of the State of New Jersey (the "**Department**"), at least ten (10) business days prior to the Closing, of the proposed sale and of the price, terms and conditions of the transaction.   In the event the Department determines that any or all of the Seller's proceeds are to be paid out of the Seller's proceeds at the Closing or held in escrow following the Closing, then such funds as determined by the Department shall be paid directly to the Department or held in escrow by the Escrow Agent until such time as the parties are in receipt of a tax clearance letter from the Department authorizing the release of the escrow.   The Purchaser shall be responsible for submitting the required notification of the pending sale to the Department, and shall deliver a copy to Seller's attorney prior to filing.  Seller's attorney shall make any comments it deems reasonably necessary and return it to Purchaser's attorney who shall then file such application with the Department. Seller agrees to fully cooperate with any such submissions.  Purchaser or its attorney shall prepare the Notification of Sale, Transfer or Assignment in Bulk and shall file same with the Department in accordance with this paragraph.  Seller shall have the right to require Purchaser to include an Asset Transfer Tax Declaration along with the notice.  The terms of this Section 32 shall survive the Closing.

37.  **Force Majeure.**   Neither party shall be deemed to be in default or breach of this Agreement if prevented from performing any duty or obligation hereunder for any reason beyond its control, including acts of G-d, war, terrorism, civil commotion, fire, flood, casualty, electrical failure, breakdown of electrical or computer equipment, severe weather, COVID 19 or any other cause beyond the reasonable control of that party.  In any such case, the parties agree to negotiate in good faith with the goal of preserving this Agreement and the respective rights, duties, and obligations of the parties hereunder, to the extent reasonably practicable.

SIGNATURE PAGE TO FOLLOW

---

[5] Include if seller's attorney is holding deposit.

BE:11796326.1/RIN016-268574

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals the day and year first above written.

SELLER:

BR LAKEWOOD LLC


By: _____

Name: Benjamin Ringel

Title:   Member


CR LAKEWOOD LLC


By: _____

Name:  Chana Ringel

Title:  Member


PURCHASER:

By: _____

Name:

Title:


ESCROW AGENT:

[ _____ ]

- 14 -

## SCHEDULE OF EXHIBITS

| | |
|---|---|
| Exhibit A | Property Description |
| Exhibit B | Service Contracts |
| Exhibit C | Bill of Sale |
| Exhibit D | Rent Roll |
| Exhibit E | Assignment of Leases |
| Exhibit F | List of Employees |
| Exhibit G | Green Card |

# EXHIBIT A

## PROPERTY DESCRIPTION

# EXHIBIT B

# SERVICE CONTRACTS

## EXHIBIT C

## BILL OF SALE

THIS BILL OF SALE is made this _____ day of _____, 20___ by and between _____, a New Jersey Limited Liability Company ("**Seller**") and _____, a _____ ("**Purchaser**")

## WITNESSETH:

**WHEREAS**, Seller and Purchaser entered into that certain Agreement of Sale dated _____ (as amended, the "**Agreement**"), for the purchase and sale of certain real property and improvements located at _____ and further described in the Agreement (the "**Real Property**"); and

**WHEREAS,** pursuant to the Agreement, Seller has agreed to sell to Purchaser all furniture, fixtures, equipment, appliances and other items of personal property located at the Real Property and owned by the Seller (collectively, the "**Personal Property**").

**NOW THEREFORE**, in consideration of the purchase price paid to Seller under the Agreement and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Seller by this Bill of Sale does hereby grant, bargain, sell and deliver to Purchaser the Personal Property.

Seller warrants and represents that Seller is the lawful owner of the Personal Property and has good right to sell the same.

THE PERSONAL PROPERTY IS SOLD "AS IS" AND SELLER MAKES NO WARRANTY THAT THE PERSONAL PROPERTY SOLD HEREUNDER SHALL BE MERCHANTABLE OR THAT SUCH PERSONAL PROPERTY SHALL BE FIT FOR ANY PARTICULAR PURPOSE.

IN WITNESS WHEREOF, and intending to be legally bound hereby, Seller has executed this Bill of Sale as of the day and year first above written.

SELLER:

By:_____
   Name:
   Title:

# EXHIBIT D

# RENT ROLL

BE:11796326.1/RIN016-268574

## EXHIBIT E

## ASSIGNMENT OF LEASES

THIS ASSIGNMENT OF LEASES (this "**Assignment**") made this _____ day of _____, 20\_\_, by _____, a _____ ("**Assignor**") and _____, a _____ ("**Assignee**").

Whereas, Assignor has sold to Purchaser on this date a rental project located at _____ (the "**Property**"); and

Whereas, in connection with such sale Assignee has agreed to assume responsibility as landlord for leases of the tenants at the Property, and Assignor and Assignee wish to evidence their agreement with respect thereto.

NOW, THEREFORE, for and in consideration of the sum of Ten and 00/XX ($10.00) Dollars and other good and valuable consideration in hand paid by each party hereto to the other party hereto, Assignor and Assignee, intending to be legally bound, hereby agree as follows:

      1.     Assignor, by its execution hereof, hereby assigns to Assignee all of the leases and tenancy agreements for tenants at the Property, as set forth on **Exhibit A** attached hereto (collectively, the "**Leases**"). Seller hereby represents that **Exhibit A** is a true and complete and rent roll in all material respects.

      2.     Assignor hereby agrees to hold Assignee harmless from and against any and all loss, cost or damage including reasonable attorney's fees that Assignee may incur by reason of Assignor's failure to perform any obligations and duties of Assignor under the Leases on and before the date hereof, or by reason of a breach of any of the warranties and representations of Assignor hereinabove set forth.

      3.     Assignee, by its execution hereof, hereby accepts this Assignment and agrees to hold Assignor harmless from and against any and all loss, cost or damage including reasonable attorney's fees that Assignor may incur by reason of Assignee's failure to comply with the terms of the Leases from and after the date hereof.

      4.     Assignee agrees to be responsible for the repayment and refund of the refundable security deposits and interest to the respective tenants of the Property, solely in accordance with **Exhibit A** hereto, and pursuant to the laws of the State of New Jersey, and, to the extent that Assignor's warranties and representations contained herein are true and correct, Assignee agrees to hold Assignor harmless from and against any loss, cost or damage resulting from or arising out of Assignee's failure to perform in accordance with this Paragraph.

      5.     Assignor hereby warrants and represents to Assignee that except for the security deposits and interest set forth on **Exhibit A** annexed hereto, there are no other security deposits and there is no interest owing with respect to any security deposits. Assignor agrees to hold Assignee harmless from and against any loss, cost or damage resulting from or arising out of Assignor's breach of the warranties and representations contained in this Paragraph.

6.     This Assignment and the warranties and representations herein contained shall be binding upon and shall inure to the benefit of Assignor and Assignee, and their respective successors and assigns.

7.     This Assignment may be executed in any number of identical counterparts, including via fax, PDF or other electronic copy, and each counterpart hereof shall be deemed to be an original instrument, but all counterparts hereof taken together shall constitute but a single instrument.

[No further text on this page; signatures follow]

- 21 -

Assignor and Assignee have signed, sealed and delivered this Assignment as of the day and year first above written.

ASSIGNOR:

_____
Name:
Title:

ASSIGNEE:

_____
Name:
Title:

BE:11796326.1/RIN016-268574

# EXHIBIT F

## List of Employees

**EXHIBIT G**

**Green Card**

BE:11796326.1/RIN016-268574

SCHEDULE 1

Permitted Exceptions

.

# Exhibit C

NAGEL RICE, LLP
Bruce H. Nagel, Esq. (025931977)
103 Eisenhower Parkway, Suite 103
Roseland, New Jersey 07068
Attorneys for Defendants BR Lakewood, LLC and Benjamin Ringel
and Sunset Hill Oakridge Plaza, LLC and Benjamin Ringel

|  |  |
|---|---|
| CHANA RINGEL AND CR LAKEWOOD, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR LAKEWOOD HOLDINGS, LLC, | : SUPERIOR COURT OF NEW JERSEY<br>: CHANCERY DIVISION<br>OCEAN COUNTY<br>:<br>: DOCKET NO. OCN-C-127-15<br>: |
| Plaintiffs/Respondents, | :<br>: |
| vs. | :<br>:       <u>Civil Action</u> |
| BR LAKEWOOD, LLC AND BENJAMIN RINGEL, | :<br>:<br>: |
| Defendants. | :<br>: |
| CHANA RINGEL, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR OAKRIDGE, LLC, | :<br>:   DOCKET NO. OCN-C-152-16<br>:<br>: |
| Plaintiffs/Respondents, | :<br>:       <u>Civil Action</u> |
| vs. | :<br>: |
| BENJAMIN RINGEL, SUNSET HILL OAKRIDGE PLAZA, LLC, JOHN DOES 1-10, AND ABC CORPORATION 1-10, | :   NOTICE OF CROSS-MOTION<br>:<br>:<br>: |
| Defendants/Appellants. | :<br>: |

Matthew Fiorovanti, Esq.
Giordano Halleran & Ciesla, PC
125 Half Mile Road Suite 300
Red Bank, NJ 07701

Efrem Schwalb, Esq.
Koffsky Schwalb LLP
349 Fifth Avenue, Suite 733
New York, NY  10016


PLEASE TAKE NOTICE that on August 23, 2021 at 3:30 p.m. or
any later date set by the Court, Nagel Rice, LLP, attorneys for
Defendants in both the Lakewood matter and the Oakridge matter,
will move before the Superior Court of New Jersey, Ocean County,
Chancery Division, for an Order (i) declaring and adjudging that
BR Lakewood, LLC is the highest and best bidder for the real
property located at 1703 Lexington Avenue in Lakewood, New Jersey
(the "Pinewood Property") under the terms of the parties'
settlement agreement with a bid of $46,391,000; (ii) authorizing
Barry Mandelbaum to finalize the written contract for the sale of
the Pinewood Property to BR Lakewood LLC within a reasonable time
after the date of the decision of this motion; and (iii) granting
such other relief as the Court deems equitable and just.

PLEASE TAKE FURTHER NOTICE that, in support of this cross-
motion, Defendants will rely upon the Certification and letter
brief submitted herewith.

A proposed form of Order is submitted herewith.

Oral argument is requested.

                              NAGEL RICE, LLP
                              Attorney for Defendants


                         By: _s/Bruce H. Nagel_____
                                BRUCE H. NAGEL

Dated: August 17, 2021

NAGEL RICE, LLP
Bruce H. Nagel, Esq. (025931977)
103 Eisenhower Parkway, Suite 103
Roseland, New Jersey 07068
Attorneys for Defendants BR Lakewood, LLC and Benjamin Ringel
and Sunset Hill Oakridge Plaza, LLC and Benjamin Ringel

| | |
|---|---|
| CHANA RINGEL AND CR LAKEWOOD, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR LAKEWOOD HOLDINGS, LLC, | : SUPERIOR COURT OF NEW JERSEY<br>: CHANCERY DIVISION<br>: OCEAN COUNTY<br>:<br>: DOCKET NO. OCN-C-127-15 |
| Plaintiffs, | : |
| vs. | : Civil Action |
| BR LAKEWOOD, LLC AND BENJAMIN RINGEL, | : |
| Defendants. | : |
| CHANA RINGEL, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR OAKRIDGE, LLC, | : DOCKET NO. OCN-C-152-16 |
| Plaintiffs, | : |
| vs. | : Civil Action |
| BENJAMIN RINGEL, SUNSET HILL OAKRIDGE PLAZA, LLC, JOHN DOES 1-10, AND ABC CORPORATION 1-10, | : CERTIFICATION OF<br>: KEVIN N. STARKEY |
| Defendants. | : |

I, KEVIN N. STARKEY, being of full age, hereby certify as follows:

1.  I have been practicing law for over 30 years and am a partner of Starkey, Kelly, Kenneally, Cunningham & Turnbach. I

have substantial experience in both real estate transactions and civil litigation.

2.     Our client BR Lakewood LLC ("BR Lakewood") submitted the bid regarding purchasing the real property located at 1703 Lexington Avenue in Lakewood, New Jersey (the "Pinewood Property"). A copy of the bid is attached hereto as Exhibit A.

3.     Rushmore Management, a third-party potential purchaser not affiliated with BR Lakewood, submitted a bid to purchase the Pinewood Property. See bid attached hereto as Exhibit B.

4.     Madison Title Agency, LLC, a leading title insurance agency and closing agent in the Northeast was asked by my client Benjamin Ringel to prepare a draft closing statement based on the BR Lakewood offer and the Rushmore offer. The closing statements take into account the closing costs including the existing mortgage, legal fees, etc. The draft closing statement based on the BR Lakewood bid is attached hereto as Exhibit C. The draft closing statement based on the Rushmore bid is attached hereto as Exhibit D.

5.     Gebroe Hammer is the real estate broker regarding the sale of the Pinewood Property. Attached hereto as Exhibit E is the Gebroe Hammer brokerage agreement which was executed by BR Lakewood, CR Lakewood and Gebroe Hammer. Pursuant to the Gebroe Hammer brokerage agreement, Gebroe Hammer only collects a commission of .85% of the sales price if BR Lakewood or CR Lakewood

buys Pinewood Apartments. If a third party buys the Pinewood Property, a 1.85% commission is due to Gebroe Hammer.

6.    Attached hereto as Exhibit F is the Organizational Chart of BCR Lakewood as of today.

7.    Due to BR Lakewood and CR Lakewood each owning 50% of BCR Lakewood Holdings LLC which owns the Pinewood Property, if either BR Lakewood or CR Lakewood buys out the other there will be no transfer tax due to the state of New Jersey.

8.    According to the Madison Title Agency draft closing statement (Exh. C), if BR Lakewood purchases the Pinewood Property, the sellers will net the following:

$46,391,000 – Sale Price

$6,446,339.53 – Mortgage payoff

$25,000 – Legal fee

$394,323.50 - Gebroe Hammer brokerage commission

**$39,525,336.97** – MONIES TO SELLERS

9.    According to the Madison Title Agency draft closing statement (Exh. D), if Rushmore purchases the Pinewood Property, the sellers will net the following:

$47,100,000 – Sale Price

$6,446,339.53 – Mortgage payoff

$567,385 – New Jersey Transfer Tax

$25,000 – Legal fee

$871,350 – Gebroe Hammer brokerage commission

**$39,189,925.47** – MONIES TO SELLERS

10.   As a result, BR Lakewood's bid results in the sellers
receiving $335,411.50 more than the Rushmore bid.

I certify that the foregoing statements made by me are true.
I understand that if any of the foregoing statements made by me
are willfully false, I am subject to punishment.

By: _____
        KEVIN STARKEY

Dated: August 16, 2021

# EXHIBIT "A"



## OFFER

**Property:**       Pinewood Apartments
Lexington Avenue and Monmouth Avenue
Lakewood, NJ 08701

**Description:**    The Property is a 284 garden style rental apartment complex.

**Seller:**         BCR Lakewood Holdings LLC & BCR Pinewood LLC

**Purchaser:**      BR Lakewood LLC

**Purchaser's
Counsel:**          Brach Eichler
101 Eisenhower Parkway
Roseland, New Jersey
Alan Hammer, Esq.
(973) 403-3113

**Purchase Price:** $46,391,000

**Deposit:**        $2,351,000.  This deposit will become non-refundable upon a fully executed
contract of sale. Deposit to be held in attorney escrow by Barry
Mandelbaum

**Due
Diligence:**        None.

**Tax Free Exchange:** Purchaser agrees to reasonably cooperate with any 1031 requirements the
sellers may have.

**Financing:**      No financing contingency.

**Broker:**         Purchaser and Seller agree that the only Broker involved in this
transaction is Gebroe Hammer.





The above are the basic terms between Seller and Purchaser. Seller shall draft the PSA based on the above terms and with all basic representations and warranties found in New Jersey agreements.

**July 28, 2021**

**Purchaser:**

**BR Lakewood LLC**

By: _____

Benjamin Ringel, Manager

Agreed this _____ day of _____, 2021

Seller:

By:_____
   Seller's authorized signer

By:_____
   Seller's authorized signer

# EXHIBIT "B"



# R U S H M O R E

### M A N A G E M E N T

July 28th 2021,

Attention: Barry Mandelbaum

Mandelbaum Salsburg P.C.

3 Becker Farm Road

Roseland, NJ 07068

Dear Barry,

Attached please find the LOI for Pinewood Apartments.

Sincerely,

Rushmore Management



**Rushmore Capital**

July 28th, 2021

Joseph Brecher
Gebroe-Hammer Associates
2 West Northfield Road
Livingston, NJ 07039

      Re: (the "Property") Pinewood Apartments 284 legal multi-family
apartments located at 1703 Lexington Avenue Lakewood, New Jersey
08701.

Dear Joseph:

Rushmore Capital ("Buyer") is interested in acquiring the Property from ("Seller")
and makes the following offer under the terms and conditions described below.

1. Buyer: Rushmore Capital or assigns.

2. Purchase Price: Forty-Seven Million One Hundred Thousand Dollars
($47,100,000).

3. Purchase Agreement: A mutually acceptable Purchase Agreement shall be
executed within 10 business days of Buyer's receipt of Seller's proposed Agreement
with an anticipated closing date of 60 days after execution of the purchase
agreement.

4. Deposit: Two Million Five Hundred Tousand Dollars ($2,500,000.00)

Page 2 of 3

5. Due Diligence Contingency: None

6. Financing Contingency: The Purchase Agreement will not include a Financing Contingency.

7. Buyer can extend the closing date for a period of thirty (30) days by payment of an additional deposit of $500,000 to be applied against the Purchase Price.

8. The Property to be purchased consists of the land and all improvements located thereon and shall include all personal property used in the ownership or operation of the Property that is located at the Property (which personal property shall be described on an inventory list approved by Seller and Buyer). After this Letter of Intent has been executed by the parties, Seller agrees to withdraw the Purchased Assets from the market and to negotiate from the date hereof in good faith exclusively with Purchaser. Seller agrees not to utilize this Letter of Intent to solicit other offers or to modify, renegotiate or otherwise improve the terms and conditions of any other offer heretofore or hereafter received by Seller.

9. Purchase Agreement. Seller and Buyer will negotiate diligently and in good faith to quickly execute a mutually agreeable purchase agreement. During this time Seller agrees not to agree to sell or negotiate the Property to any other buyer.

10. Title. Marketable and insurable title to the Property shall be conveyed to Buyer.

11. Broker. No person or entity is entitled to a commission arising out of this transaction other than Gebroe-Hammer Associates (the "Broker"). Seller shall be solely responsible for payment of fees or commission owed to the Broker.

12. Non-binding Agreement. This agreement is a non-binding letter of intent and no party is bound to anything. Therefore, except for the Exclusivity and No Solicitation provisions hereof, it is understood that (i) no liabilities or obligations are intended to be created by this Letter of Intent or the consent by the parties hereto; (ii) this Letter of Intent is not intended to constitute a legally binding agreement to consummate the transaction contemplated hereby or to enter into a legally binding agreement; and (iii) no binding obligation will be created unless and until a written agreement evidencing such obligation is duly executed and delivered by the parties.

Page 3 of 3

Please have the appropriate, authorized representative of the Seller complete and execute both counterparts of this offer as provided, and return one fully executed counterpart to the undersigned's attention.

Very truly yours,

By: *Yitzchak Schoinerman* _____  Date____7/28/2021____

Buyer's authorized signer

Its Authorized Representative :_____

Title

Agreed this _____ day of _____, 2021

Seller:

By: _____

Seller's authorized signer

Its: _____

Title

# EXHIBIT

# "C"

# Settlement Statement

Buyer:      BR Lakewood LLC
Seller:      BCR Lakewood Holdings LLC
Address:      Pinewood Apartments
Settlement Date:
File Number:

| Buyer Charge | Buyer Credit | Description | Seller Charge | Seller Credit |
|---|---|---|---|---|
| | | **Consideration:** | | |
| 46,391,000.00 | | Total Consideration | | 46,391,000.00 |
| | | **Earnest Money:** | | |
| | | Earnest Money Deposit | | |
| | | **Credit on behalf of buyer:** | | |
| | | | 0.00 | |
| | | | 0.00 | |
| | | | 0.00 | |
| | | **Credit on behalf of seller:** | | |
| | | | | 0.00 |
| | | | | 0.00 |
| | | | | 0.00 |
| | | | | 0.00 |
| | | **Loan Payoff(s):** | | |
| | | Investors Bank | 6,446,339.53 | |
| | | **Loan** | | |
| | | Loan | | |
| | | **Lender Fees:** | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | **Title Fees:** | | |
| | | Owner's Policy Premium | | |
| | | Loan Policy Premium | | |
| | | Endorsements | | |
| | | Search and Exam Fees | | |
| | | Settlement Fee | | |
| | | Closing Protection Letter | | |
| | | Notice of Settlement | | |
| | | Mortgage Satisfaction Service Fee | | |
| | | Proforma Owners Policy Preparation Fee | | |
| | | Proforma Loan Policy Preparation Fee | | |
| | | Estimated Recording Fees and Service Fee | | |
| | | Transfer Tax | | |
| | | Mansion Tax | | |

| | | Disbursements: | | |
|---|---|---|---|---|
| | | Legal Fee | 25,000.00 | |
| | | Broker Commission | 394,323.50 | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| 46,391,000.00 | 0.00 | Totals | 6,865,663.03 | 46,391,000.00 |
| 46,391,000.00 | | Cash from Buyer | | |
| | | Cash to Seller | | 39,525,336.97 |

The parties understand that Madison Title Agency, LLC has prepared the settlement statement (except for title charges) based on information provided to Madison Title Agency, LLC by the parties or their representatives and/or third party sources (such as tax and water/sewer searches).   Madison Title Agency, LLC is not in a position to confirm that this information is accurate or complete. Madison Title Agency, LLC's sole responsibility is to disburse the funds as set forth in the Settlement Statement.


Reviewed and approved by:

**Seller:**
*BCR Lakewood Holdings LLC*

By: _____
   Name:_____
   Title:_____

**Buyer:**
*BR Lakewood LLC*

By: _____
   Name:_____
   Title:_____

**Settlement Agent:**
*Settlement Statement*

By: _____
   Name:
   Title: Title Closer

# EXHIBIT

# "D"

# Settlement Statement

Buyer:      Rushmore Manageemnt
Seller:      BCR Pinewood LLC/BCR Lakewood Holdings LLC
Address:
Settlement Date:      Pinewood Apartments
File Number:

| Buyer Charge | Buyer Credit | Description | Seller Charge | Seller Credit |
|---|---|---|---|---|
| | | **Consideration:** | | |
| 47,100,000.00 | | Total Consideration | | 47,100,000.00 |
| | | **Earnest Money:** | | |
| | | Earnest Money Deposit | | |
| | | **Credit on behalf of buyer:** | | |
| | | | 0.00 | |
| | | | 0.00 | |
| | | | 0.00 | |
| | | **Credit on behalf of seller:** | | |
| | | | | 0.00 |
| | | | | 0.00 |
| | | | | 0.00 |
| | | | | 0.00 |
| | | **Loan Payoff(s):** | | |
| | | Investors Bank | 6,446,339.53 | |
| | | **Loan** | | |
| | | Loan | | |
| | | **Lender Fees:** | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | **Title Fees:** | | |
| | | Owner's Policy Premium | | |
| | | Loan Policy Premium | | |
| | | Endorsements | | |
| | | Search and Exam Fees | | |
| | | Settlement Fee | | |
| | | Closing Protection Letter | | |
| | | Notice of Settlement | | |
| | | Mortgage Satisfaction Service Fee | | |
| | | Proforma Owners Policy Preparation Fee | | |
| | | Proforma Loan Policy Preparation Fee | | |
| | | Estimated Recording Fees and Service Fee | | |
| | | Transfer Tax | 567,385.00 | |
| | | Mansion Tax | | |

| | | Disbursements: | | |
|---|---|---|---|---|
| | | Legal Fees | 25,000.00 | |
| | | Broker Commission | 871,350.00 | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| 47,100,000.00 | 0.00 | Totals | 7,910,074.53 | 47,100,000.00 |
| 47,100,000.00 | | Cash from Buyer | | |
| | | Cash to Seller | | 39,189,925.47 |

The parties understand that Madison Title Agency, LLC has prepared the settlement statement (except for title charges) based on information provided to Madison Title Agency, LLC by the parties or their representatives and/or third party sources (such as tax and water/sewer searches).   Madison Title Agency, LLC is not in a position to confirm that this information is accurate or complete. Madison Title Agency, LLC's sole responsibility is to disburse the funds as set forth in the Settlement Statement.


Reviewed and approved by:


**Seller:**
*BCR Pinewood LLC/BCR Lakewood Holdings LLC*

By: _____
   Name:_____
   Title:_____


**Buyer:**
*Rushmore Manageemnt*

By: _____
   Name:_____
   Title:_____


**Settlement Agent:**
*Settlement Statement*

By: _____
   Name:
   Title: Title Closer

# EXHIBIT

# "E"



 **GEBROE-HAMMER**
A·S·S·O·C·I·A·T·E·S
INVESTMENT REAL ESTATE

2 West Northfield Road, Livingston, NJ 07039
TEL. (973) 994-4500 • FAX (973) 994-9752

PROPERTY LOCATION: Pinewood Apartments, located at 1708 Lexington Avenue in Lakewood, New Jersey

284 Apartments

### AGREEMENT FOR EXCLUSIVE RIGHT TO SELL OR EXCHANGE

In consideration for listing and endeavoring to sell or exchange above property, I (we) the undersigned, owner(s) or authorized Agent of owner(s), grant you the exclusive right to sell said property at the price and upon terms set forth herein or at any other terms or price the undersigned may agree to accept.

Upon your procuring a purchaser, I (we) agree to pay you a commission of 1.85% if purchased by any of the current owners, the commission shall be 0.85%.

Your commission shall be considered earned if the property is sold or exchanged by anyone during this exclusive period. If a sale or exchange is consummated by anyone within two years after the termination of this agreement to or on behalf of a party who was introduced to the property by you, you will also be entitled to the full commission. Further, in the event that any other property owned by the undersigned principal(s) is sold by anyone to a party to whom you introduced and sold the above property during or after the termination of this agreement, you will also be entitled to a full commission based on the same percentage of sales price.

As Seller, I (we) agree to refer to you all inquiries received regarding the purchase of said property and to permit you to exhibit the premises at reasonable hours during this exclusive period.

This exclusive shall remain in full force for a period of six months from the date specified above, up to and including August 9, 2021.

In the event of any litigation or arbitration proceedings arising from or relating to this Agreement, the parties agree that if Gebroe-Hammer is the prevailing party, Gebroe-Hammer shall be entitled, as part of any judgment or award entered in its favor, to an award of all costs and expenses actually incurred by Gebroe-Hammer in such litigation, proceeding or arbitration proceedings, including, but not limited to, attorneys' fees.

I (we) have received a fully executed copy at the time of the execution of this agreement. I (we) also acknowledge receipt of a copy of the Attorney General's memorandum with regard to New Jersey's law against discrimination, as required by the New Jersey Real Estate Commission.

GEBROE-HAMMER ASSOCIATES

BY: _____

Signed: BCR Pinewood LLC _____
Co-Manager

Phone: (B) _____ (H) _____
Phone (Cell) 917-755-4566
Email: Bringel @ Armstrong-capital.com

To: Gas and/or Electric Co          Water & Sewer Co.          Oil Co.          Date_____

PROPERTY:
This will authorize you to supply GEBROE-HAMMER ASSOCIATES with the last 12 months consumption and cost covering the above captioned property.

Electric Account # _____    Gas Account # _____    Water/Sewer Account # _____    Oil Account # _____

Signed: _____

**GEBROE-HAMMER**
ASSOCIATES
INVESTMENT REAL ESTATE

Date: November 9, 2020

PROPERTY LOCATION: Pinewood Apartments, located at 1703 Lexington Avenue in Lakewood, New Jersey

284 Apartments

**AGREEMENT FOR EXCLUSIVE RIGHT TO SELL OR EXCHANGE**

In consideration for listing and endeavoring to sell or exchange above property, I (we) the undersigned, owner(s) or authorized Agent of owner(s), grant you the exclusive right to sell said property at the price and upon terms set forth herein or at any other terms or price the undersigned may agree to accept.

Upon your procuring a purchaser, I (we) agree to pay you a commission of 0.85%, if purchased by any of the current owners; the commission shall be 0.85%.

Your commission shall be considered earned if the property is sold or exchanged by anyone during this exclusive period. If a sale or exchange is consummated by anyone within two years after the termination of this agreement to or on behalf of a party who was introduced to the property by you, you will also be entitled to the full commission. Further, in the event that any other property owned by the undersigned principal(s) is sold by anyone to a party to whom you introduced and sold the above property during or after the termination of this agreement, you will also be entitled to a full commission based on the same percentage of sales price.

As Seller, I (we) agree to refer to you all inquiries received regarding the purchase of said property and to permit you to exhibit the premises at reasonable hours during this exclusive period.

August ^ This exclusive shall remain in full force for a period of six months from the date specified above, up to and including May 9, 2021.

In the event of any litigation or arbitration proceedings arising from or relating to this Agreement, the parties agree that if Gebroe-Hammer is the prevailing party, Gebroe-Hammer shall be entitled, as part of any judgment or award entered in its favor, to an award of all costs and expenses actually incurred by Gebroe-Hammer in such litigation, proceeding or arbitration proceedings, including, but not limited to, attorneys' fees.

I (we) have received a fully executed copy at the time of the execution of this agreement. I (we) also acknowledge receipt of a copy of the Attorney General's memorandum with regard to New Jersey's law against discrimination, as required by the New Jersey Real Estate Commission.

GEBROE-HAMMER ASSOCIATES

BY: _____

Signed: BCR Pinewood LLC    Chaim Rigel
Chaim Rigel (co-manager)
Phone: (B) _____ (H) _____
Phone (Cell) 516 _____ _____
Email: _____ 516 @gmail.com

*(handwritten right margin)*
BR Lakewood LLC or CR Lakewood LLC or Chaim Rigel or any affiliated company.

To: Gas and/or Electric Co    Water & Sewer Co.    Oil Co.    Date _____

PROPERTY:
This will authorize you to supply GEBROE-HAMMER ASSOCIATES with the last 12 months consumption and cost covering the above captioned property.

Electric Account #    Gas Account #    Water/Sewer Account #    Oil Account #
Signed: BRigel

# EXHIBIT

# "F"



NAGEL RICE, LLP
Bruce H. Nagel, Esq. (025931977)
103 Eisenhower Parkway, Suite 103
Roseland, New Jersey 07068
Attorneys for Defendants BR Lakewood, LLC and Benjamin Ringel
and Sunset Hill Oakridge Plaza, LLC and Benjamin Ringel

|  |  |
|---|---|
| CHANA RINGEL AND CR LAKEWOOD, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR LAKEWOOD HOLDINGS, LLC, | : SUPERIOR COURT OF NEW JERSEY<br>: CHANCERY DIVISION<br>OCEAN COUNTY<br>:<br>: DOCKET NO. OCN-C-127-15<br>: |
| Plaintiffs/Respondents, | : |
| vs. | :<br>:       <u>Civil Action</u> |
| BR LAKEWOOD, LLC AND BENJAMIN RINGEL, | :<br>: |
| Defendants. | : |
| CHANA RINGEL, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR OAKRIDGE, LLC, | :<br>:   DOCKET NO. OCN-C-152-16<br>: |
| Plaintiffs/Respondents, | :<br>:       <u>Civil Action</u> |
| vs. | : |
| BENJAMIN RINGEL, SUNSET HILL OAKRIDGE PLAZA, LLC, JOHN DOES 1-10, AND ABC CORPORATION 1-10, | :   ORDER<br>: |
| Defendants/Appellants. | : |

THIS MATTER having been brought before the court on the cross-motion of Defendants BR Lakewood, LLC and Benjamin Ringel in the Lakewood matter and Sunset Hill Oakridge Plaza, LLC and Benjamin

Ringel in the above matters for an Order (i) declaring and adjudging that BR Lakewood, LLC is the highest and best bidder for the real property located at 1703 Lexington Avenue in Lakewood, New Jersey (the "Pinewood Property") under the terms of the parties' settlement agreement with a bid of $46,391,000; and (ii) authorizing Barry Mandelbaum to finalize the written contract for the sale of the Pinewood Property to BR Lakewood LLC within a reasonable time after the date of the decision of this motion, and for good cause shown:

IT IS on this _____ day of August 2021;

ORDERED that:

1.   The Cross-Motion filed by Defendants BR Lakewood, LLC, Benjamin Ringel and Sunset Hill Oakridge Plaza, LLC is hereby granted.

2.   It is hereby declared and adjudged that BR Lakewood, LLC is the highest and best bidder for the real property located at 1703 Lexington Avenue in Lakewood, New Jersey (the "Pinewood Property") under the terms of the parties' settlement agreement with a bid of $46,391,000.

3.   Barry Mandelbaum shall finalize the written contract for the sale of the Pinewood Property to BR Lakewood LLC within a reasonable time after the entry of this Order.

4.   A copy of this Order be served on all parties within seven days of Defendants' receipt.

_____

, J.S.C.

**This motion was:**
_____ **Opposed**
_____ **Unopposed**

# NAGEL RICE, LLP

### COUNSELLORS AT LAW

BRUCE H. NAGEL*
JAY J. RICE*
ROBERT H. SOLOMON
DIANE E. SAMMONS◊
LORI I. MAYER◊
RANDEE M. MATLOFF
ANDREW L. O'CONNOR
GREG M. KOHN◊
SUSAN F. CONNORS
BRADLEY L. RICE◊

HARRY A. MARGOLIS
(1928-2002)

103 EISENHOWER PARKWAY
SUITE 103
ROSELAND, NEW JERSEY 07068
(973) 618-0400
FAX: (973) 618-9194
WWW.NAGELRICE.COM
—————
230 PARK AVENUE
NEW YORK, NY 10169
(212) 551-1465
**PLEASE REPLY TO**
ROSELAND OFFICE

ANDREW I. PEPPER
MICHAEL J. PARAGANO◊
SCOTT M. JACOBSON◊
EMMA A. McELLIGOTT

*CERTIFIED BY THE SUPREME COURT OF
 NEW JERSEY AS A CIVIL TRIAL ATTORNEY
◊MEMBER OF NJ & NY BARS

**August 17, 2021**

*Via JEDS*
The Honorable Francis R. Hodgson, Jr. P.J. Ch.
206 Court House Lane
Courtroom #25, 1st Floor
Toms River, NJ 08753

> Re: *Chana Ringel v. Benjamin Ringel and Sunset Hill, et al*
> Docket No.: OCN-C-152-16
> *Chana Ringel, et al v. BR Lakewood, LLC and Benjamin*
> *Ringel*
> Docket No.: OCN-C-127-15

Dear Judge Hodgson:

We represent Benjamin Ringel ("Benjamin") and other defendants (collectively "Defendants") in the above two matters. This letter brief is submitted in opposition to the Order to Show Cause filed by Chana Ringel ("Chana") and others ("Plaintiffs") and in support of Defendants' cross-motion for an order declaring and adjudging that BR Lakewood LLC is the highest and best bidder for the Pinewood Property and authorizing Barry Mandelbaum to finalize the written contract for the sale of the Pinewood Property

1

to BR Lakewood LLC within a reasonable time after the date of the
decision of this motion.

Pursuant to Your Honor's June 4, 2021 Order, Mr. Brecher
implemented a "last and best" bid process.  See Order at Exh. B to
Certification of Matthew Fiorovanti.   This "best" bid process
included providing bidders with written procedures, a sealed bid
process and a process to open the bids at Mr. Mandelbaum's office.
Four bids were submitted and the bid by our client, BR Lakewood
LLC ("BR Lakewood") was the "best" bid as it nets the sellers the
most money.

The goal of the seller in any real estate deal is to obtain
the most money. As a result, there is only one way to determine
what is the "best" bid – the bid which nets the sellers the most
money.

Here, BR Lakewood's gross bid was $46,391,000.  See Exh. A to
the Certification of Kevin Starkey. Rushmore's gross bid was
$47,100,000. See Starkey Cert. at Exh. B.  BR Lakewood owns half
of Pinewood and therefore will not be buying its 50% share. It
will only be buying CR Lakewood LLC's 50% share. A copy of the
organizational chart of BCR Lakewood is attached as Exh. F  to the
Starkey  Cert.   Therefore, there will be no New Jersey State
transfer taxes paid on the sale of Pinewood if BR Lakewood is the
purchaser. See Starkey Cert. at ¶7. If Rushmore is the purchaser,
the sellers will have to pay a transfer tax of $567,385.   See

2

closing statement at Exhibit D to the Starkey Cert.; See Starkey Cert. at ¶9.

In addition, under the Gebroe Hammer brokerage agreement, if BR Lakewood or CR Lakewood buys Pinewood, only a .85% commission is due versus a 1.85% commission if Rushmore buys it. Attached as Exh. E to the Starkey Cert. is the brokerage commission agreement. If BR Lakewood is the purchaser, the Gebroe Hammer brokerage commission would be $394,323 ($46,391,000 x .85%). See Exh. C to the Starkey Cert.; See Starkey Cert. at ¶8. If Rushmore is the purchaser, the Gebroe Hammer brokerage commission would be $871,350 ($47,100,000 x 1.85%). See Exh. D to the Starkey Cert.; See Starkey Cert. at ¶9.

As a result, if <u>BR Lakewood</u> is the purchaser, the sellers will net the following:

$46,391,000 – Sale price

$6,446,339.53 – Mortgage payoff

$25,000 – Legal fee

$394,323.50 - Gebroe Hammer brokerage commission

**$39,525,336.97** – CASH TO SELLERS

(See Exh. C to the Starkey Cert.; See Starkey Cert. at ¶8).

If <u>Rushmore</u> is the purchaser, the sellers will net the following:

$47,100,000 – Sale price

$6,446,339.53 – Mortgage payoff

3

$567,385 – New Jersey Transfer Tax

$25,000 – Legal fee

$871,350 - Gebroe Hammer brokerage commission

**$39,189,925.47** – CASH TO SELLERS

(See Exh. D to the Starkey Cert.; See Starkey Cert. at ¶9).

The math is simple. BR Lakewood's bid is the "best" as the sellers will receive $335,411.50 more with BR Lakewood as the buyer. See Starkey Cert. at ¶10.

Common sense leads to only once conclusion -- the "best" offer is the one that provides the most money to the sellers. Merriam-Webster dictionary defines "best" as "excelling all others" and "offering or producing the greatest advantage, utility or satisfaction". *Merriam-Webster.com.* 2011. https://www.merriam-webster.com (16 August 2011). Since BR Lakewood's bid produces "the greatest advantage [and] utility" -- the most money to sellers -- it is clearly the best.

Plaintiffs' argument that BR Lakewood's bid should be invalidated because it fails to satisfy the 5% deposit requirement is baseless. BR Lakewood's bid includes a deposit of $2,351,000 which is more than 5% of the bid. See Exh. A to Starkey Cert.

In footnote 3 of their brief, Plaintiffs argue that using Benjamin's straightforward position that "best" means the most money in seller's pocket, Rushmore's bid nets more than BR Lakewood's bid. The only support for this position is the

4

incompetent evidence submitted by counsel in their brief.
Plaintiffs filed an Order to Show Cause and provided whatever
support they had for their position. They provided no competent
evidence that Rushmore's bid nets more than BR Lakewood's bid and
thus the Court should not consider this issue.

Any attempt to present facts which are neither of record,
judicially noticeable, nor stipulated, by way of statements of
counsel made in supporting briefs, memoranda and oral argument are
incompetent evidence and should be rejected by the court. Such
statements do not constitute cognizable facts. Gonzalez v. Ideal
Tile Importing Co., 371 N.J. Super. 349, 358 (App. Div. 2004),
aff'd 184 N.J. 415 (2005); Templeton Arms v. Feins, 220 N.J. Super
1, 24 (App. Div. 1987); Albrect v. Correctional Medical, 422 N.J.
Super. 265, 267 n.1 (App. Div. 2011)(court declined to consider
uncertified information about defendant presented through its
brief and its counsel at oral argument). This Court should not
consider the facts and argument submitted by Plaintiffs.

Plaintiffs also argue that Benjamin is trying to derail the
sale of Pinewood and harm sellers. Nothing could be farther from
the truth. As the Court is aware, Benjamin previously filed an
application arguing that the bidding process was not fair and was
not producing the most money possible for the sellers, including
Chana. Notwithstanding that Benjamin was trying to obtain more
money for Chana and the sellers, Chana vigorously objected and

5

demanded that the sellers should not try and obtain a higher
purchase price.  Despite Chana's objections, the Court held a
hearing and granted Benjamin's application and re-opened the
bidding process.  As a result of Benjamin's actions, the bids
increased and sellers will now receive over $1.5 million more from
the sale.

At the end of footnote 3 of her brief, Chana states that if
the savings Ben describes are correct they also apply to the GM
Equities bid because she is a partner in the GM Equities bid.  This
is not true. The GM Equities bid is disqualified because they
failed to adhere to the bidding requirements. A copy of GM Equities
bid is attached as Exhibit C to the Fiorovanti Cert. Both the
Rushmore and BR Lakewood bids each waived any due diligence
contingency. Id.  The GM Equities bid, however, requires that the
bidder be allowed a 15 day environmental due diligence. The
inclusion of the due diligence period requires the bid to be
rejected. Also, the GM Equities bid states that "This letter of
intent shall be null and void if not signed by both parties on or
before August 10, 2021." (emphasis added).  It is undisputed that
the GM Equities letter of intent was not signed by August 10, 2021
so by its terms the bid by GM Equities is "null and void". Also,
Chana provides no proof that GM Equities is owned by CR Lakewood
or partners with her or CR Lakewood.

6

     We respectfully request that Your Honor deny the relief sought
by Plaintiffs and order that the bid by BR Lakewood should proceed
and that Mr. Mandelbaum should finalize the contract of sale to BR
Lakewood.

Respectfully,

*Bruce H. Nagel*

BRUCE H. NAGEL

cc: Matthew N. Fiorovanti, Esq.(via e-mail)
    Efrem Schwalb, Esq. (via e-mail)

# Exhibit D

Prepared by the Court

| | |
|---|---|
| CHANA RINGEL AND CR LAKEWOOD, et al, | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: OCEAN COUNTY |
| Plaintiff, | DOCKET NO.: C-127-15; C-152-16 |
| -V- | |
| BR LAKEWOOD, LLC AND BENJAMIN, Defendants. | **ORDER** |
| AND | |
| CHANA RINGEL, |  |
| -V- | |
| BENJAMIN RINGEL, et al. | |

This matter being opened to the Court by Nagel Rice, LLP, attorneys for Defendants BR

Lakewood, LLC and Benjamin Ringel; in the Lakewood matter and Sunset Hill Oakridge Plaza,

LLC and Benjamin Ringel in the Oakridge matter (collectively "Defendants") by way of order to

show cause for an Order seeking various relief; and the Court having considered all the papers

submitted by the parties, testimony and having heard oral argument, and for other good cause:

**WHEREAS,** this Court has found the subject broker Joseph Brecher's relationship with

Rushmore Capital consisted of his membership as one of hundreds of limited partners in several

companies owned by himself or his wife (he was also limited partner under the same

circumstances with several other potential bidders for this property); and his brother in law and

son in law having either previously worked for Rushmore or having employed a property

manager that also worked for Rushmore, did not have a conflict of interest or give rise to any

bias that would have prevented him from acting as a broker in this case; and

**WHEREAS,** this Court having found that any agreement arising from Mr. Brecher's oral communications with the potential bidders for the subject property as to the specific procedures to be used in bidding (specifically that the several bids would constitute "last and best") was subject to New Jersey's Statute of Frauds and did not satisfy the exception to the Statute of Frauds which requires clear and convincing evidence of that oral agreement; and

**WHEREAS,** this Court recognizes that the selected broker, here Mr. Brecher, is authorized under the agreement to determine and employ the appropriate sales strategy in selling the subject property in order to obtain the highest price; and

therefore,

It is, on this __4th__ day of June 2021,

**ORDERED** that:

1. Defendant's application to disqualify Mr. Brecher as a broker for the sale of the subject property is denied; and

2. The most recent bids are found by this Court to be rejected as a result of the confusion attendant to the recent round of bids and that Joseph Brecher will continue to market and sell the subject property in a process determined by him to be appropriate, solely in his discretion; and

3. In accord with the parties' agreement on the record, an attorney from Greenberg, Traurig, as selected by Joseph Brecher, will serve as real estate attorneys for the sale and closing of this matter; and

4. When Mr. Brecher identifies the bids to the parties, the parties will review the highest qualified bid in accordance with the Settlement Agreement, and will not unreasonably reject the highest bidder, and either if either party fails to so approve the bid, an

emergent application may be made to this Court for an order approving the bid; and once approved a proposed contract will be sent/provided to that bidder by above referenced attorney; and

5.  In light of the difficulties in the bidding process that gave rise to this Order to Show Cause, and while recognizing that establishing the appropriate marketing and sale process is at Mr. Brecher's sole discretion (e.g., live auction, "last and best" offer process or any other procedure) this Court concludes that the following procedures are available to be employed by the broker, if he chooses, to the hope of avoiding further litigation if a "last and best" procedure is to be used:

    a.  All bidding procedures to be communicated to all potential bidders in writing by the attorney selected by the broker to handle the real estate aspects of this matter; and

    b.  The bid procedures should include: a sealed bid requirement; to be submitted/postmarked to the selected attorney by an established date; with the parties and bidders having the option to appear at the opening of the bids, to be done at the attorney's office on the specified time and date; the procedures to include a minimum bid; and

    c.  The high bid to be identified publicly at the opening of the bids, where they will be presented to the parties for their immediate selection.

6.  The parties cross demand for attorney's fees is denied; and

7.  Notice of this order will be provided by uploading to ECourts.

_____
Hon. Francis Hodgson, Jr., P.J., Ch.

Page 3 of 3

# Exhibit E

NAGEL RICE, LLP
Bruce H. Nagel, Esq. (025931977)
103 Eisenhower Parkway, Suite 103
Roseland, New Jersey 07068
Attorneys for Defendants BR Lakewood, LLC and Benjamin Ringel
and Sunset Hill Oakridge Plaza, LLC and Benjamin Ringel

FILED
AUG 23 2021
CHAMBERS OF
FRANCIS R. HODGSON, JR. P.J. Ch
SUPERIOR COURT OCEAN COUNTY

|  |  |
|---|---|
| CHANA RINGEL AND CR LAKEWOOD, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR LAKEWOOD HOLDINGS, LLC, | : SUPERIOR COURT OF NEW JERSEY<br>: CHANCERY DIVISION<br>OCEAN COUNTY<br>:<br>: DOCKET NO. OCN-C-127-15 |

      Plaintiffs/Respondents,    :

        vs.            :         Civil Action

BR LAKEWOOD, LLC AND BENJAMIN :
RINGEL,

      Defendants.      :

CHANA RINGEL, INDIVIDUALLY, AND
DERIVATIVELY ON BEHALF OF BCR :     DOCKET NO. OCN-C-152-16
OAKRIDGE, LLC,
                     :

      Plaintiffs/Respondents,    :

        vs.            :         Civil Action

BENJAMIN RINGEL, SUNSET HILL :     ORDER
OAKRIDGE PLAZA, LLC, JOHN
DOES 1-10, AND ABC :         DENIED
CORPORATION 1-10,
                     :

      Defendants/Appellants.   :

    THIS MATTER having been brought before the court on the cross-motion of Defendants BR Lakewood, LLC and Benjamin Ringel in the Lakewood matter and Sunset Hill Oakridge Plaza, LLC and Benjamin

Ringel in the above matters for an Order (i) declaring and adjudging that BR Lakewood, LLC is the highest and best bidder for the real property located at 1703 Lexington Avenue in Lakewood, New Jersey (the "Pinewood Property") under the terms of the parties' settlement agreement with a bid of $46,391,000; and (ii) authorizing Barry Mandelbaum to finalize the written contract for the sale of the Pinewood Property to BR Lakewood LLC within a reasonable time after the date of the decision of this motion, and for good cause shown:

IT IS on this _23rd_ day of August 2021;

DENIED

ORDERED that:

1.   The Cross-Motion filed by Defendants BR Lakewood, LLC, Benjamin Ringel and Sunset Hill Oakridge Plaza, LLC is hereby granted.

2.   It is hereby declared and adjudged that BR Lakewood, LLC is the highest and best bidder for the real property located at 1703 Lexington Avenue in Lakewood, New Jersey (the "Pinewood Property") under the terms of the parties' settlement agreement with a bid of $46,391,000.

3.   Barry Mandelbaum shall finalize the written contract for the sale of the Pinewood Property to BR Lakewood LLC within a reasonable time after the entry of this Order.

4.   A copy of this Order be served on all parties within seven days of Defendants' receipt.

DENIED

, J.S.C.

FRANCIS R. HODGSON, JR. P.J. Ch

This motion was:

☒ Opposed

____ Unopposed

# Exhibit F

**GIORDANO, HALLERAN & CIESLA, P.C.**
125 Half Mile Road, Suite 300
Red Bank, N.J. 07701
(732) 741-3900
Matthew N. Fiorovanti, Esq. (027332006)

**KOFFSKY SCHWALB LLC**
500 Seventh Avenue, 8th Floor
New York, NY 10018

Attorneys for Plaintiffs, Chana Ringel and CR Lakewood, LLC, individually, and derivatively on behalf of BCR Lakewood Holdings, LLC and Chana Ringel, individually and derivatively on behalf of BCR Oakridge, LLC

| | |
|---|---|
| CHANA RINGEL and CR LAKEWOOD, LLC, individually, and derivatively on behalf of BCR LAKEWOOD HOLDINGS, LLC, | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION OCEAN COUNTY |
| Plaintiffs, | DOCKET NO. OCN-C-127-15 |
| v. | Civil Action |
| BR LAKEWOOD, LLC and BENJAMIN RINGEL, | |
| Defendants. | |
| CHANA RINGEL, individually, and derivatively on behalf of BCR OAKRIDGE, LLC, | DOCKET NO. OCN-C-152-16 |
| Plaintiffs, | Civil Action |
| v. | **ORDER** |
| BENJAMIN RINGEL, SUNSET HILL OAKRIDGE PLAZA, LLC, JOHN DOES 1-10, and ABC CORPORATIONS 1-10, | |
| Defendants. | |

**THIS MATTER** having been brought to the attention of court by plaintiffs, Chana Ringel ("*Chana*") and CR Lakewood, LLC, individually, and derivatively on behalf of BCR Lakewood Holdings, LLC and Chana Ringel, individually and derivatively on behalf of BCR Oakridge, LLC

(collectively, "*Plaintiffs*"), seeking injunctive relief pursuant to R. 4:52 by way of order to show cause, and the court having read the papers filed in support thereof and in opposition thereto, and oral argument, if any, and good cause having been shown;

     **IT IS** on this ___25___ day of August, 2021;

     **ORDERED** and declared that Rushmore Capital, LLC ("*Rushmore Capital*") is the highest bidder for the real property located at 1703 Lexington Avenue in Lakewood, New Jersey (the "*Pinewood Property*") under the terms of the parties' settlement agreement for the purchase price of $47,100,000;

     **IT IS FURTHER ORDERED** that Mr. Mandelbaum is authorized to finalize the written contract for the sale of the Pinewood Property to Rushmore Capital within a reasonable time after the date of this Order; and

     **IT IS FURTHER ORDERED** that a copy of this Order shall be served on all parties by electronic filing.

                     /s/ *Francis R. Hodgson*

                HON. FRANCIS J. HODGSON, JR., P.J.Ch.

___X___ Opposed

_____ Unopposed

Docs #5270409-v1

# Exhibit G

New Jersey Judiciary
Superior Court - Appellate Division
## Notice of Appeal

| TITLE IN FULL (AS CAPTIONED BELOW) | ATTORNEY / LAW FIRM / PRO SE LITIGANT | | | |
|---|---|---|---|---|
| **CHANA RINGEL AND CR LAKEWOD, LLC, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF BCR LAKEWOOD HOLDINGS, LLC V. BR LAKEWOOD, LLC AND BENJAMIN RINGEL AND CHANA RINGEL, INDIVDUALLY AND DERIVATIVELY ON BEHALF OF BCR OAKWOOD, LLC (*)** | NAME **BRUCE H NAGEL, Esq.** | | | |
| | STREET ADDRESS **103 EISENHOWER PKWY** | | | |
| | CITY **ROSELAND** | STATE **NJ** | ZIP **07068** | PHONE NUMBER **973-618-0400** |
| | EMAIL ADDRESS **bnagel@nagelrice.com lsantulli@nagelrice.com (*)** | | | |

ON APPEAL FROM

| TRIAL COURT JUDGE **FRANCIS R. HODGSON JR., JSC (*)** | TRIAL COURT OR STATE AGENCY **OCEAN (*)** | TRIAL COURT OR AGENCY NUMBER **OCN-C-127-15 (*)** |
|---|---|---|

BENJAMIN RINGEL, BR LAKEWOOD, LLC,
Notice is hereby given that SUNSET HILL OAKRIDGE PLAZA, LLC appeals to the Appellate Division from a ☐ Judgment or ■ Order entered on 08/25/2021 (*) in the ■ Civil ☐ Criminal or ☐ Family Part of the Superior Court ☐ Tax Court or from a ☐ State Agency decision entered on _____

If not appealing the entire judgment, order or agency decision, specify what parts or paragraphs are being appealed.

For criminal, quasi-criminal and juvenile actions only:

Give a concise statement of the offense and the judgment including date entered and any sentence or disposition imposed:

This appeal is from a ☐ conviction ☐ post judgment motion ☐ post-conviction relief ☐ pre-trial detention
If post-conviction relief, is it the ☐ 1st ☐ 2nd ☐ other _____
                                                                    specify

Is defendant incarcerated?     ☐ Yes     ☐ No

Was bail granted or the sentence or disposition stayed? ☐ Yes          ☐ No

If in custody, name the place of confinement:

Defendant was represented below by:

☐ Public Defender     ☐ self     ☐ private counsel _____
                                                          specify

Notice of appeal and attached case information statement have been served where applicable on the following:

| | Name | Date of Service |
|---|---|---|
| Trial Court Judge | **FRANCIS R. HODGSON JR., JSC (*)** | **10/05/2021** |
| Trial Court Division Manager | **OCEAN** | **10/05/2021** |
| Tax Court Administrator | | |
| State Agency | | |
| Attorney General or Attorney for other Governmental body pursuant to *R.* 2:5-1(a), (e) or (h) | | |

Other parties in this action:

| Name and Designation | Attorney Name, Address and Telephone No. | Date of Service |
|---|---|---|
| **CHANA RINGEL** | **MATTHEW NICHOLAS FIOROVANTI, Esq. GIORDANO HALLERAN & CIESLA, PC 125 HALF MILE ROAD SUITE 300 RED BANK NJ 07701 732-741-3900 mfiorovanti@ghclaw.com,cthompson@ghclaw. com,sclark@ghclaw.com** | **10/05/2021** |
| **CHANA RINGEL** | **EFREM TOBIAS SCHWALB, Esq. KOFFSKY SCHWALB LLC 500 SEVENTH AVE 8TH FL NEW YORK NY 10018 646-553-1590 eschwalb@koffskyschwalb.com,partners@koff skyschwalb.com** | **10/05/2021** |
| **CR LAKEWOOD LLC, BCR LAKEWOOD HOLDINGS, LLC** | **MATTHEW NICHOLAS FIOROVANTI, Esq. GIORDANO HALLERAN & CIESLA, PC 125 HALF MILE ROAD SUITE 300 RED BANK NJ 07701 732-741-3900 mfiorovanti@ghclaw.com,cthompson@ghclaw. com,sclark@ghclaw.com** | **10/05/2021** |
| **CR LAKEWOOD LLC, BCR LAKEWOOD HOLDINGS, LLC** | **EFREM TOBIAS SCHWALB, Esq. KOFFSKY SCHWALB LLC 500 SEVENTH AVE 8TH FL NEW YORK NY 10018 646-553-1590 eschwalb@koffskyschwalb.com,partners@koff** | **10/05/2021** |

| skyschwalb.com | | |
|---|---|---|
| Attached transcript request form has been served where applicable on the following: | | |
| | Name | Date of Service |
| Transcript Office | | |
| Clerk of the Tax Court | | |
| State Agency | | |

Exempt from submitting the transcript request form due to the following:

■ The appellant previously ordered the transcript. (A copy of the transcript request form must be uploaded)

☐ Transcript in possession of attorney or pro se litigant (four copies of the transcript must be submitted along with an electronic copy).

List the date(s) of the trial or hearing:

☐ Motion for abbreviation of transcript filed with the court or agency below.  Attach copy.

☐ Motion for free transcript filed with the court below.  Attach copy.

I certify that the foregoing statements are true to the best of my knowledge, information and belief.  I also certify that, unless exempt, the filing fee required by *N.J.S.A.* 22A:2 has been paid.

| 10/05/2021 | s/ **BRUCE H NAGEL, Esq.** |
|---|---|
| Date | Signature of Attorney or Pro Se Litigant |

| BAR ID #   **025931977** | EMAIL ADDRESS   **bnagel@nagelrice.com,lsantulli@nagelrice.com** |
|---|---|

23-22655-CMG Doc 23-15 Filed 09/07/23 Entered 09/07/23 20:04:25 Exhibit Ex. I   Pg
189 of 374



| | New Jersey Judiciary |
| :---: | :---: |
| | Superior Court - Appellate Division |
| | **Notice of Appeal** |
| | Case Caption Continued Title in Full as captioned below |

**CHANA RINGEL AND CR LAKEWOD, LLC, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF BCR
LAKEWOOD HOLDINGS, LLC
V.
BR LAKEWOOD, LLC AND BENJAMIN RINGEL
AND
CHANA RINGEL, INDIVDUALLY AND DERIVATIVELY ON BEHALF OF BCR OAKWOOD, LLC
V.
BENJAMIN RINGEL, SUNSET HILL OAKRIDGE PLAZA, LLC, JOHN DOES 1-10 AND ABC
CORPORATIONS 1-10**



| | New Jersey Judiciary<br>Superior Court - Appellate Division<br>**Notice of Appeal**<br>**ADDITIONAL TRIAL COURT INFORMATION** | | |
|---|---|---|---|
| **Trial Court Docket #** | **Disposition Date** | **Trial Court County** | **Trial Court Judge** |
| OCN-C-152-16 | 08/25/2021 | OCEAN | FRANCIS R. HODGSON JR., JSC |
| OCN-C-127-15 | 08/23/2021 | OCEAN | FRANCIS R. HODGSON JR., JSC |
| OCN-C-152-16 | 08/23/2021 | OCEAN | FRANCIS R. HODGSON JR., JSC |
| OCN-C-127-15 | 06/04/2021 | OCEAN | FRANCIS R. HODGSON JR., JSC |
| OCN-C-152-16 | 06/04/2021 | OCEAN | FRANCIS R. HODGSON JR., JSC |

| New Jersey Judiciary Superior Court - Appellate Division Notice of Appeal |
|---|

| Additional appellants continued below |
|---|

| Additional respondents continued below |
|---|

**Respondent's Attorney**   Email Address: eschwalb@koffskyschwalb.com,partners@koffskyschwalb.com,

■ Plaintiff   ☐ Defendant   ☐ Other (Specify)

| Name | Client |
|---|---|
| EFREM TOBIAS SCHWALB, Esq. | CHANA RINGEL |

| Street Address | City | State | Zip | Telephone Number |
|---|---|---|---|---|
| 500 SEVENTH AVE 8TH FL | NEW YORK | NY | 10018 | 646-553-1590 |

**Respondent's Attorney**   mfiorovanti@ghclaw.com,cthompson@ghclaw.com,sclark@ghclaw.c

Email Address: om,

■ Plaintiff   ☐ Defendant   ☐ Other (Specify)

| Name | Client |
|---|---|
| MATTHEW NICHOLAS FIOROVANTI, Esq. | CR LAKEWOOD LLC, BCR LAKEWOOD HOLDINGS, LLC |

| Street Address | City | State | Zip | Telephone Number |
|---|---|---|---|---|
| 125 HALF MILE ROAD SUITE 300 | RED BANK | NJ | 07701 | 732-741-3900 |

**Respondent's Attorney**   Email Address: eschwalb@koffskyschwalb.com,partners@koffskyschwalb.com,

■ Plaintiff   ☐ Defendant   ☐ Other (Specify)

| Name | Client |
|---|---|
| EFREM TOBIAS SCHWALB, Esq. | CR LAKEWOOD LLC, BCR LAKEWOOD HOLDINGS, LLC |

| Street Address | City | State | Zip | Telephone Number |
|---|---|---|---|---|
| 500 SEVENTH AVE 8TH FL | NEW YORK | NY | 10018 | 646-553-1590 |

| Additional parties continued below |
|---|

| Appellant's attorney email address continued below |
|---|

PARTY NAME: BENJAMIN RINGEL, BR LAKEWOOD, LLC, SUNSET HILL OAKRIDGE PLAZA, LLC
ATTORNEY NAME: BRUCE H NAGEL, Esq.
bnagel@nagelrice.com
lsantulli@nagelrice.com
smhaas@nagelrice.com

| Respondent's attorney email address continued below |
|---|

PARTY NAME: CHANA RINGEL   ATTORNEY NAME: MATTHEW NICHOLAS FIOROVANTI, Esq.
mfiorovanti@ghclaw.com
cthompson@ghclaw.com
sclark@ghclaw.com
PARTY NAME: CHANA RINGEL   ATTORNEY NAME: EFREM TOBIAS SCHWALB, Esq.
eschwalb@koffskyschwalb.com
partners@koffskyschwalb.com
PARTY NAME: CR LAKEWOOD LLC, BCR LAKEWOOD HOLDINGS, LLC   ATTORNEY NAME:
MATTHEW NICHOLAS FIOROVANTI, Esq.
mfiorovanti@ghclaw.com
cthompson@ghclaw.com
sclark@ghclaw.com
PARTY NAME: CR LAKEWOOD LLC, BCR LAKEWOOD HOLDINGS, LLC   ATTORNEY NAME: EFREM
TOBIAS SCHWALB, Esq.

| |
|---|
| **eschwalb@koffskyschwalb.com**<br>**partners@koffskyschwalb.com** |
| Additional Party's attorney email address continued below |

# Exhibit H

Exhibit Ex. I

## New Jersey Judiciary
### Superior Court - Appellate Division
# Civil Case Information Statement

Please type or clearly print all information.

| Title in Full | Trial Court or Agency Docket Number |
|---|---|
| CHANA RINGEL AND CR LAKEWOD, LLC, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF BCR LAKEWOOD HOLDINGS, LLC V. BR LAKEWOOD, LLC AND BENJAMIN RINGEL AND CHANA RINGEL, INDIVDUALLY AND DERIVATIVELY ON BEHALF OF BCR OAKWOOD, LLC | OCN-C-127-15 (*) |

● Attach additional sheets as necessary for any information below.

**Appellant's Attorney**     Email Address: **bnagel@nagelrice.com**
**lsantulli@nagelrice.com (*)**

☐ Plaintiff   ■ Defendant   ☐ Other (Specify)

| Name | Client |
|---|---|
| **BRUCE H NAGEL, Esq.** | **BENJAMIN RINGEL, BR LAKEWOOD, LLC, SUNSET HILL OAKRIDGE PLAZA, LLC** |

| Street Address | City | State | Zip | Telephone Number |
|---|---|---|---|---|
| **103 EISENHOWER PKWY** | **ROSELAND** | **NJ** | **07068** | **973-618-0400** |

**Respondent's Attorney ***     Email Address: **mfiorovanti@ghclaw.com**
**cthompson@ghclaw.com (*)**

■ Plaintiff   ☐ Defendant   ☐ Other (Specify)

| Name | Client |
|---|---|
| **MATTHEW NICHOLAS FIOROVANTI, Esq.** | **CHANA RINGEL*** |

| Street Address | City | State | Zip | Telephone Number |
|---|---|---|---|---|
| **125 HALF MILE ROAD SUITE 300** | **RED BANK** | **NJ** | **07701** | **732-741-3900** |

Give Date and Summary of Judgment, Order, or Decision Being Appealed and Attach a Copy:
**August 25, 2021 - Order Declaring Rushmore Highest Bidder**
**August 23, 2021 - Order Denying Defendants' Cross Motion**
**August 23, 2021 - Order Denying Defendants' Cross-Motion**
**June 4, 2021 - Order Denying Disqualification of Broker, etc.**

Have all the issues as to all the parties in this action, before the trial court or agency, been disposed? (There may not be any claims against any party in the trial court or agency, either in this or a consolidated action, which have not been disposed. These claims may include counterclaims, cross-claims, third-party claims, and applications for counsel fees.)     ■ Yes   ☐ No

If outstanding claims remain open, has the order been properly certified as final pursuant to R. 4:42-2?     ☐ Yes ☐ No ■ N/A

A) If the order has been properly certified, attach copies of the order and the complaint and any other relevant pleadings to the order being appealed. Attach a brief explanation as to why the order qualified for certification pursuant to R. 4:42-2.

B) If the order has not been certified or has been improperly certified, leave to appeal must be sought. (See R. 2:2-4; 2:5-6.) Please note that an improperly certified order is not binding on the Appellate Division.

(*) truncated due to space limit.  Please find full information in the additional pages of the form.

If claims remain open and/or the order has not been properly certified, you may want to consider filing a motion for leave to appeal or submitting an explanation as to why you believe the matter is final and appealable as of right.

Were any claims dismissed without prejudice?                                                    ☐ Yes    ■ No

If so, explain and indicate any agreement between the parties concerning future disposition of those claims.

Is the validity of a statute, regulation, executive order, franchise or constitutional provision of this State    ☐ Yes    ■ No
being questioned?  (*R.* 2:5-1(g))

Give a Brief Statement of the Facts and Procedural History:

**The individual Plaintiff, Chana Ringel, and Defendant, Benjamin Ringel are siblings.  They and their entities own commercial real estate in Lakewood New Jersey.  Both sides brought claims of, among other things, misappropriation and breach of fiduciary duty against each other.  Two separate cases were filed – Docket No. OCN-C-127-15 and Docket No. OCN-C-152-16.  The two cases were treated jointly for trial and for all issues thereafter including the issues raised on appeal.  After the trial commenced in the two actions, the parties reached a settlement.  Plaintiffs attempted to back out of the settlement but on motion the court enforced the settlement. The parties divided up four pieces of real estate and agreed to sell the last property known as Pinewood. The parties also agreed to arbitrate all the other remaining issues. That arbitration is proceeding and is not part of this appeal. The remaining issue in the two Chancery Division cases relates to placing the Pinewood property up for sale and awarding the Pinewood property to the winning bidder pursuant to the terms of the settlement agreement. Joseph Brecher was designated as the broker for the sale of Pinewood. After Defendants discovered that Mr. Brecher had serious conflicts of interest, they moved to disqualify him. The court erroneously denied this motion.  Many entities bid on the Pinewood property.  Defendant BR Lakewood, LLC was the highest and best bidder.  Notwithstanding this, the Court held a hearing and awarded the Pinewood property to a different bidder, Rushmore Capital, LLC ("Rushmore"). The court entered orders denying Defendants' application to declare BR Lakewood LLC as the winning bidder and granting Plaintiffs' application declaring Rushmore as the winning bidder.  Now that the court has declared Rushmore as the winning bidder, the two chancery matters are now over.**

To the extent possible, list the proposed issues to be raised on the appeal as they will be described in appropriate point headings pursuant to *R.* 2:5-2(a)(6). (Appellant or cross-appellant only.):

**1.  Did the trial court err when it granted Plaintiffs' application to declare Rushmore Capital, LLC as the winning bidder for the Pinewood Property.**
**2. Did the trial court err when it denied Defendants' application to declare BR Lakewood LLC as the winning bidder for the Pinewood property.**
**3.  Did the trial court err when it denied Defendants' application to disqualify Joseph Brecher as the broker for the sale of the Pinewood property and for other relief.**

---

If you are appealing from a judgment entered by a trial judge sitting without a jury or from an order of the trial court, complete the following:

1.    Did the trial judge issue oral findings or an opinion? If so, on what date?  **08/23/2021** _____    ■ Yes    ☐ No

2.    Did the trial judge issue written findings or an opinion? If so, on what date?  _____    ☐ Yes    ■ No

3.    Will the trial judge be filing a statement or an opinion pursuant to *R.* 2:5-1(b)?    ☐ Yes  ☐ No  ■ Unknown

**Caution:** Before you indicate that there was neither findings nor an opinion, you should inquire of the trial judge to determine whether findings or an opinion was placed on the record out of counsel's presence or whether the judge will be filing a statement or opinion pursuant to *R.* 2:5-1(b).

Date of Your Inquiry:

---

1. Is there any appeal now pending or about to be brought before this court which:

    (A)    Arises from substantially the same case or controversy as this appeal?    ☐ Yes  ■ No

    (B)    Involves an issue that is substantially the same, similar or related to an issue in this appeal?  ☐ Yes  ■ No

If the answer to the question above is Yes, state:

| Case Title | Trial Court Docket# | Party Name |
|---|---|---|

2. Was there any prior appeal involving this case or controversy?    ■ Yes  ☐ No

If the answer to question above is Yes, state:

Case Name and Type (direct, 1st PCR, other, etc.)     Appellate Division Docket Number

**CHANA RINGEL, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF BCR OAKRIDGE, LLC VS. BENJAMIN RINGEL, SUNSET HILL**     **A-001786-18**

**CHANA RINGEL AND CR LAKEWOOD, LLC, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR LAKEWOOD HOLDINGS, LLC, VS. BR LAKEWOOD, LLC AND BENJAMIN RINGEL**     **A-001785-18**

Civil appeals are screened for submission to the Civil Appeals Settlement Program (CASP) to determine their potential for settlement or, in the alternative, a simplification of the issues and any other matters that may aid in the disposition or handling of the appeal. Please consider these when responding to the following question. A negative response will not necessarily rule out the scheduling of a preargument conference.

State whether you think this case may benefit from a CASP conference.    ☐ Yes  ■ No
Explain your answer:
**The parties are too far apart in their position.**

Whether or not an opinion is approved for publication in the official court report books, the Judiciary posts all Appellate Division opinions on the Internet.

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

| | |
|---|---|
| **BENJAMIN RINGEL, BR LAKEWOOD, LLC, SUNSET HILL OAKRIDGE PLAZA, LLC** | **BRUCE H NAGEL, Esq.** |
| Name of Appellant or Respondent | Name of Counsel of Record (or your name if not represented by counsel) |
| **10/05/2021** | **s/ BRUCE H NAGEL, Esq.** |
| Date | Signature of Counsel of Record (or your signature if not represented by counsel) |
| **025931977** | **bnagel@nagelrice.com,lsantulli@nagelrice.com** |
| Bar # | Email Address |

FILED, Clerk of the Appellate Division, October 09, 2023, A-000762-21

23-22655 - DOC 12.15 - 09/09/2023 01:42 PM - Pg 197 of 374 Trans ID: CHE2023252e60    Filed 09/07/23 20:04:25    Exhibit Ex. I    Pg 197 of 374



| | New Jersey Judiciary<br>Superior Court - Appellate Division<br>**CIVIL Case Information Statement**<br>**ADDITIONAL TRIAL COURT INFORMATION** | | |
|---|---|---|---|
| **Trial Court Docket #** | **Disposition Date** | **Trial Court County** | **Trial Court Judge** |
| OCN-C-152-16 | 08/25/2021 | OCEAN | FRANCIS R. HODGSON JR., JSC |
| OCN-C-127-15 | 08/23/2021 | OCEAN | FRANCIS R. HODGSON JR., JSC |
| OCN-C-152-16 | 08/23/2021 | OCEAN | FRANCIS R. HODGSON JR., JSC |
| OCN-C-127-15 | 06/04/2021 | OCEAN | FRANCIS R. HODGSON JR., JSC |
| OCN-C-152-16 | 06/04/2021 | OCEAN | FRANCIS R. HODGSON JR., JSC |

| | New Jersey Judiciary<br>Superior Court - Appellate Division<br>CIVIL Case Information Statement |
|---|---|

Additional appellants continued below

Additional respondents continued below

**Respondent's Attorney**      Email Address: **eschwalb@koffskyschwalb.com,partners@koffskyschwalb.com,**

■ Plaintiff   ☐ Defendant   ☐ Other (Specify)

| Name<br>**EFREM TOBIAS SCHWALB, Esq.** | | | Client<br>**CHANA RINGEL** | |
|---|---|---|---|---|
| Street Address<br>**500 SEVENTH AVE 8TH FL** | City<br>**NEW YORK** | State<br>**NY** | Zip<br>**10018** | Telephone Number<br>**646-553-1590** |

**Respondent's Attorney**      mfiorovanti@ghclaw.com,cthompson@ghclaw.com,sclark@ghclaw.c
Email Address: **om,**

■ Plaintiff   ☐ Defendant   ☐ Other (Specify)

| Name<br><br>**MATTHEW NICHOLAS FIOROVANTI, Esq.** | | | Client<br>**CR LAKEWOOD LLC, BCR LAKEWOOD<br>HOLDINGS, LLC** | |
|---|---|---|---|---|
| Street Address<br>**125 HALF MILE ROAD SUITE 300** | City<br>**RED BANK** | State<br>**NJ** | Zip<br>**07701** | Telephone Number<br>**732-741-3900** |

**Respondent's Attorney**      Email Address: **eschwalb@koffskyschwalb.com,partners@koffskyschwalb.com,**

■ Plaintiff   ☐ Defendant   ☐ Other (Specify)

| Name<br><br>**EFREM TOBIAS SCHWALB, Esq.** | | | Client<br>**CR LAKEWOOD LLC, BCR LAKEWOOD<br>HOLDINGS, LLC** | |
|---|---|---|---|---|
| Street Address<br>**500 SEVENTH AVE 8TH FL** | City<br>**NEW YORK** | State<br>**NY** | Zip<br>**10018** | Telephone Number<br>**646-553-1590** |

Additional parties continued below

Appellant's attorney email address continued below

**PARTY NAME: BENJAMIN RINGEL, BR LAKEWOOD, LLC, SUNSET HILL OAKRIDGE PLAZA, LLC
ATTORNEY NAME: BRUCE H NAGEL, Esq.**
**bnagel@nagelrice.com**
**lsantulli@nagelrice.com**
**smhaas@nagelrice.com**

Respondent's attorney email address continued below

**PARTY NAME: CHANA RINGEL   ATTORNEY NAME: MATTHEW NICHOLAS FIOROVANTI, Esq.**
**mfiorovanti@ghclaw.com**
**cthompson@ghclaw.com**
**sclark@ghclaw.com**
**PARTY NAME: CHANA RINGEL   ATTORNEY NAME: EFREM TOBIAS SCHWALB, Esq.**
**eschwalb@koffskyschwalb.com**
**partners@koffskyschwalb.com**
**PARTY NAME: CR LAKEWOOD LLC, BCR LAKEWOOD HOLDINGS, LLC   ATTORNEY NAME:
MATTHEW NICHOLAS FIOROVANTI, Esq.**
**mfiorovanti@ghclaw.com**
**cthompson@ghclaw.com**
**sclark@ghclaw.com**
**PARTY NAME: CR LAKEWOOD LLC, BCR LAKEWOOD HOLDINGS, LLC   ATTORNEY NAME: EFREM
TOBIAS SCHWALB, Esq.**

| eschwalb@koffskyschwalb.com |
| partners@koffskyschwalb.com |
| Additional Party's attorney email address continued below |

# Exhibit I

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
PO BOX 006
RICHARD J. HUGHES JUSTICE COMPLEX
TRENTON, N.J. 08625-0006

NOTICE OF DOCKETING

Date: October 07, 2021

ATTN: NAGEL RICE LLP - BRUCE H NAGEL
103 EISENHOWER PKWY
ROSELAND, NJ 07068

Title: CHANA RINGEL AND CR LAKEWOD, LLC, INDIVIDUALLY AND DERIVATIVELY ON
BEHALF OF BCR LAKEWOOD HOLDINGS, LLC V. BR LAKEWOOD, LLC AND BENJAMIN
RINGEL AND CHANA RINGEL, INDIVDUALLY AND DERIVATIVELY ON BEHALF OF BCR
OAKWOOD, LLC
Docket Number: A-000370-21 TEAM 02          Appeal Filed:10/05/2021

1.   The above docket number must appear on all documents submitted.

2.   Respondent shall file a case information statement within 15
     days after service of the notice of appeal. R. 2:5-1(a).

3.   IF YOUR APPEAL INCLUDES A TRANSCRIPT, IT WILL BE SUBJECT TO
     DISMISSAL IF THE TRANSCRIPT IS NOT FILED WITHIN 35 DAYS OF THE
     FILING OF THE NOTICE OF APPEAL.  UNLESS, PRIOR TO THAT DATE, YOU
     ADVISE THE CLERK'S OFFICE THAT THE TRANSCRIPT HAS NOT BEEN
     DELIVERED TO YOU AND INDICATE THE DATE YOU HAVE BEEN PROMISED
     FILING AND DELIVERY. THERE WILL BE NO FURTHER NOTICE.

4.   If this is an appeal of a state agency decision, the agency must
     submit a Statement of Items Comprising the Record within 30 days
     of service of the Notice of Appeal. R. 2:5-4(b). Upon receipt of
     the Statement of Items Comprising the Record and transcript (if
     applicable), a scheduling order for the brief and appendix will
     be issued.

5.   Certain civil and state agency appeals may be selected for the
     Civil Appeals Settlement Program (CASP).  Unless this appeal is
     selected for a settlement conference or unless otherwise stated
     in a scheduling order, the time limits provided by R. 2:6-11 for
     perfection of the appeal must be complied with by all parties.
     Upon appellant's failure to comply, the appeal will be subject
     to dismissal. Upon respondent's failure to comply, the brief
     will be subject to suppression.

6.    If oral argument is desired, it must be requested timely by a separate captioned document. <u>R.</u> 2:11-1(b). If oral argument is requested, notify the Clerk's office of any period of time during which you expect to be unavailable.

**PLEASE REFER ALL INQUIRIES TO YOUR CASE MANAGER:**
**IWONA VARGAS (609-815-2950 x 52656) IWONA.VARGAS@NJCOURTS.GOV**


                                    JOSEPH H. ORLANDO
                                    CLERK OF THE APPELLATE DIVISION


Trial Court Docket No:         OCEAN    OCN-C-127-15
                               OCN-C-152-16

cc:    GIORDANO HALLERAN & CIESLA, PC - MATTHEW NICHOLAS FIOROVANTI
       KOFFSKY SCHWALB LLC - EFREM TOBIAS SCHWALB

# Exhibit J

| New Jersey Judiciary | | | | |
|---|---|---|---|---|
| Superior Court - Appellate Division | | | | |
| **Amended Notice of Appeal** | | | | |

| TITLE IN FULL (AS CAPTIONED BELOW) | ATTORNEY / LAW FIRM / PRO SE LITIGANT | | | |
|---|---|---|---|---|
| **CHANA RINGEL AND CR LAKEWOD, LLC, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF BCR LAKEWOOD HOLDINGS, LLC V. BR LAKEWOOD, LLC AND BENJAMIN RINGEL AND CHANA RINGEL, INDIVDUALLY AND DERIVATIVELY ON BEHALF OF BCR OAKWOOD, LLC (*)** | NAME **BRUCE H NAGEL, Esq.** | | | |
| | STREET ADDRESS **103 EISENHOWER PKWY** | | | |
| | CITY **ROSELAND** | STATE **NJ** | ZIP **07068** | PHONE NUMBER **973-618-0400** |
| | EMAIL ADDRESS **bnagel@nagelrice.com** **lsantulli@nagelrice.com (*)** | | | |

| ON APPEAL FROM | | |
|---|---|---|
| TRIAL COURT JUDGE **FRANCIS R. HODGSON JR., JSC (*)** | TRIAL COURT OR STATE AGENCY **OCEAN (*)** | TRIAL COURT OR AGENCY NUMBER **OCN-C-127-15 (*)** |

Notice is hereby given that **BENJAMIN RINGEL, BR LAKEWOOD, LLC, SUNSET HILL OAKRIDGE PLAZA, LLC** _____ appeals to the Appellate Division from a ☐ Judgment or ■ Order entered on **08/25/2021 (*)** _____ in the ■ Civil ☐ Criminal or ☐ Family Part of the Superior Court ☐ Tax Court or from a ☐ State Agency decision entered on _____

If not appealing the entire judgment, order or agency decision, specify what parts or paragraphs are being appealed.

**\*\*\*EXPLAIN BRIEFLY THE REASON FOR AMENDING THE NOTICE OF APPEAL**

**Adding additional attorney to be notified and included in appeal.**

For criminal, quasi-criminal and juvenile actions only:

Give a concise statement of the offense and the judgment including date entered and any sentence or disposition imposed:

This appeal is from a ☐ conviction  ☐ post judgment motion  ☐ post-conviction relief  ☐ pre-trial detention

If post-conviction relief, is it the  ☐ 1st   ☐ 2nd   ☐ other _____
                                                                          specify

Is defendant incarcerated?   ☐ Yes   ☐ No

Was bail granted or the sentence or disposition stayed?  ☐ Yes       ☐ No

If in custody, name the place of confinement:

Defendant was represented below by:

---

☐ Public Defender    ☐ self    ☐ private counsel   _____

specify

Notice of appeal and attached case information statement have been served where applicable on the following:

| | Name | Date of Service |
|---|---|---|
| Trial Court Judge | **FRANCIS R. HODGSON JR., JSC (\*)** | **10/11/2021** |
| Trial Court Division Manager | **OCEAN** | **10/11/2021** |
| Tax Court Administrator | | |
| State Agency | | |
| Attorney General or Attorney for other Governmental body pursuant to *R.* 2:5-1(a), (e) or (h) | | |

Other parties in this action:

| Name and Designation | Attorney Name, Address and Telephone No. | Date of Service |
|---|---|---|
| **CHANA RINGEL** | **MATTHEW NICHOLAS FIOROVANTI, Esq.**<br>**GIORDANO HALLERAN & CIESLA, PC**<br>**125 HALF MILE ROAD SUITE 300**<br>**RED BANK NJ 07701**<br>**732-741-3900**<br>**mfiorovanti@ghclaw.com,cthompson@ghclaw.**<br>**com,sclark@ghclaw.com** | **10/11/2021** |
| **CHANA RINGEL** | **EFREM TOBIAS SCHWALB, Esq.**<br>**KOFFSKY SCHWALB LLC**<br>**500 SEVENTH AVE**<br>**8TH FL**<br>**NEW YORK NY 10018**<br>**646-553-1590**<br>**eschwalb@koffskyschwalb.com,partners@koff**<br>**skyschwalb.com** | **10/11/2021** |
| **CR LAKEWOOD LLC, BCR LAKEWOOD HOLDINGS, LLC** | **MATTHEW NICHOLAS FIOROVANTI, Esq.**<br>**GIORDANO HALLERAN & CIESLA, PC**<br>**125 HALF MILE ROAD SUITE 300**<br>**RED BANK NJ 07701**<br>**732-741-3900**<br>**mfiorovanti@ghclaw.com,cthompson@ghclaw.**<br>**com,sclark@ghclaw.com** | **10/11/2021** |
| **CR LAKEWOOD LLC, BCR LAKEWOOD HOLDINGS, LLC** | **EFREM TOBIAS SCHWALB, Esq.**<br>**KOFFSKY SCHWALB LLC**<br>**500 SEVENTH AVE**<br>**8TH FL**<br>**NEW YORK NY 10018**<br>**646-553-1590** | **10/11/2021** |

(\*) truncated due to space limit.  Please find full information in the additional pages of the form.

Revised effective: 09/01/2008, CN 10502 (Notice of Appeal)      page 2 of 7

| | | |
|---|---|---|
| | eschwalb@koffskyschwalb.com,partners@koffskyschwalb.com | |
| **RUSHMORE CAPITAL, LLC** | **AURORA CASSIRER, Esq.**<br>**TROUTMAN PEPPER HAMILTON SANDERS LLP**<br>**875 THIRD AVE**<br>**NEW YORK NY 10022**<br>**212-704-6000**<br>aurora.cassirer@troutman.com,litigationdocketrequests@troutman.com,daniel.gorman@troutman.com | 10/11/2021 |

Attached transcript request form has been served where applicable on the following:

|  | Name | Date of Service |
|---|---|---|
| Transcript Office | | |
| Court Reporter (if applicable) | | |
| Supervisor of Court Reporters | | |
| Clerk of the Tax Court | | |
| State Agency | | |

Exempt from submitting the transcript request form due to the following:

☒ There is no verbatim record for this appeal.

☐ Transcript in possession of attorney or pro se litigant (four copies of the transcript must be submitted along with an electronic copy).

List the date(s) of the trial or hearing:

☐ Motion for abbreviation of transcript filed with the court or agency below. Attach copy.

☐ Motion for free transcript filed with the court below. Attach copy.

I certify that the foregoing statements are true to the best of my knowledge, information and belief. I also certify that, unless exempt, the filing fee required by *N.J.S.A.* 22A:2 has been paid.

| **10/11/2021** | **s/ BRUCE H NAGEL, Esq.** |
|---|---|
| Date | Signature of Attorney or Pro Se Litigant |

| BAR ID # | **025931977** | EMAIL ADDRESS | **bnagel@nagelrice.com,lsantulli@nagelrice.com** |
|---|---|---|---|

---



| | New Jersey Judiciary<br>Superior Court - Appellate Division<br>**Amended Notice of Appeal** |
|---|---|
| | Case Caption Continued Title in Full as captioned below |

**CHANA RINGEL AND CR LAKEWOD, LLC, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF BCR LAKEWOOD HOLDINGS, LLC**

**V.**

**BR LAKEWOOD, LLC AND BENJAMIN RINGEL**

**AND**

**CHANA RINGEL, INDIVDUALLY AND DERIVATIVELY ON BEHALF OF BCR OAKWOOD, LLC**

**V.**

**BENJAMIN RINGEL, SUNSET HILL OAKRIDGE PLAZA, LLC, JOHN DOES 1-10 AND ABC CORPORATIONS 1-10**



| | New Jersey Judiciary | | |
|---|---|---|---|
| | Superior Court - Appellate Division | | |
| | **Amended Notice of Appeal** | | |
| | **ADDITIONAL TRIAL COURT INFORMATION** | | |
| **Trial Court Docket #** | **Disposition Date** | **Trial Court County** | **Trial Court Judge** |
| OCN-C-152-16 | 08/25/2021 | OCEAN | FRANCIS R. HODGSON JR., JSC |
| OCN-C-127-15 | 08/23/2021 | OCEAN | FRANCIS R. HODGSON JR., JSC |
| OCN-C-152-16 | 08/23/2021 | OCEAN | FRANCIS R. HODGSON JR., JSC |
| OCN-C-127-15 | 06/04/2021 | OCEAN | FRANCIS R. HODGSON JR., JSC |
| OCN-C-152-16 | 06/04/2021 | OCEAN | FRANCIS R. HODGSON JR., JSC |

| | New Jersey Judiciary |
|---|---|
| (seal) | Superior Court - Appellate Division |
| | Amended Notice of Appeal |

Additional appellants continued below

Additional respondents continued below

**Respondent's Attorney**    Email Address: **eschwalb@koffskyschwalb.com,partners@koffskyschwalb.com,**

☒ Plaintiff ☐ Defendant ☐ Other (Specify)

| Name | Client |
|---|---|
| **EFREM TOBIAS SCHWALB, Esq.** | **CHANA RINGEL** |

| Street Address | City | State | Zip | Telephone Number |
|---|---|---|---|---|
| **500 SEVENTH AVE 8TH FL** | **NEW YORK** | **NY** | **10018** | **646-553-1590** |

**Respondent's Attorney**    **mfiorovanti@ghclaw.com,cthompson@ghclaw.com,sclark@ghclaw.c**
Email Address: **om,**

☒ Plaintiff ☐ Defendant ☐ Other (Specify)

| Name | Client |
|---|---|
| **MATTHEW NICHOLAS FIOROVANTI, Esq.** | **CR LAKEWOOD LLC, BCR LAKEWOOD HOLDINGS, LLC** |

| Street Address | City | State | Zip | Telephone Number |
|---|---|---|---|---|
| **125 HALF MILE ROAD SUITE 300** | **RED BANK** | **NJ** | **07701** | **732-741-3900** |

**Respondent's Attorney**    Email Address: **eschwalb@koffskyschwalb.com,partners@koffskyschwalb.com,**

☒ Plaintiff ☐ Defendant ☐ Other (Specify)

| Name | Client |
|---|---|
| **EFREM TOBIAS SCHWALB, Esq.** | **CR LAKEWOOD LLC, BCR LAKEWOOD HOLDINGS, LLC** |

| Street Address | City | State | Zip | Telephone Number |
|---|---|---|---|---|
| **500 SEVENTH AVE 8TH FL** | **NEW YORK** | **NY** | **10018** | **646-553-1590** |

Additional parties continued below

**Intervenor Attorney**    **aurora.cassirer@troutman.com,litigationdocketrequests@tr**
Email Address: **outman.com,daniel.gorman@troutman.com,**

☐ Plaintiff ☐ Defendant ☒ Other (Specify)

| Name | Client |
|---|---|
| **AURORA CASSIRER, Esq.** | **RUSHMORE CAPITAL, LLC** |

| Street Address | City | State | Zip | Telephone Number |
|---|---|---|---|---|
| **875 THIRD AVE** | **NEW YORK** | **NY** | **10022** | **212-704-6000** |

Appellant's attorney email address continued below
PARTY NAME: BENJAMIN RINGEL, BR LAKEWOOD, LLC, SUNSET HILL OAKRIDGE PLAZA, LLC
ATTORNEY NAME: BRUCE H NAGEL, Esq.
bnagel@nagelrice.com
lsantulli@nagelrice.com
smhaas@nagelrice.com

Respondent's attorney email address continued below
PARTY NAME: CHANA RINGEL   ATTORNEY NAME: MATTHEW NICHOLAS FIOROVANTI, Esq.
mfiorovanti@ghclaw.com
cthompson@ghclaw.com
sclark@ghclaw.com
PARTY NAME: CHANA RINGEL   ATTORNEY NAME: EFREM TOBIAS SCHWALB, Esq.
eschwalb@koffskyschwalb.com
partners@koffskyschwalb.com

| | |
|---|---|
| **PARTY NAME: CR LAKEWOOD LLC, BCR LAKEWOOD HOLDINGS, LLC   ATTORNEY NAME: MATTHEW NICHOLAS FIOROVANTI, Esq.**<br>mfiorovanti@ghclaw.com<br>cthompson@ghclaw.com<br>sclark@ghclaw.com | |

**PARTY NAME: CR LAKEWOOD LLC, BCR LAKEWOOD HOLDINGS, LLC   ATTORNEY NAME: EFREM TOBIAS SCHWALB, Esq.**
eschwalb@koffskyschwalb.com
partners@koffskyschwalb.com

Additional Party's attorney email address continued below

**PARTY NAME: RUSHMORE CAPITAL, LLC   ATTORNEY NAME: AURORA  CASSIRER, Esq.**
aurora.cassirer@troutman.com
litigationdocketrequests@troutman.com
daniel.gorman@troutman.com

# Exhibit K

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-000370-21T2

CHANA RINGEL AND CR LAKEWOD, LLC, INDIVIDUALLY AND DERIVATIVELY ON
BEHALF OF BCR LAKEWOOD HOLDINGS, LLC
V.
BR LAKEWOOD, LLC AND BENJAMIN RINGEL
AND
CHANA RINGEL, INDIVDUALLY AND DERIVATIVELY ON BEHALF OF BCR OAKWOOD,
LLC
V.
BENJAMIN RINGEL, SUNSET HILL OAKRIDGE PLAZA, LLC, JOHN DOES 1-10 AND
ABC CORPORATIONS 1-10

SCHEDULING ORDER

An appeal having been filed in the above matter,

IT IS HEREBY ORDERED that the time for filing and serving briefs
and appendices shall not be later than as follows:

a) BRIEF-APPELLANTS BRIEF AND APPENDIX (due date:12/06/2021)
NAGEL RICE LLP - BRUCE H NAGEL
b) BRIEF-RESPONDENTS BRIEF AND APPENDIX (due date:01/05/2022)
GIORDANO HALLERAN & CIESLA, PC - MATTHEW NICHOLAS FIOROVANTI
c) BRIEF-REPLY BRIEF (due date:01/17/2022)
NAGEL RICE LLP - BRUCE H NAGEL

IT IS FURTHER ORDERED that three paper copies of each brief and
appendix shall be filed with the Clerk once the brief and appendix
have been approved for filing, along with three copies of all filed
transcripts and any exhibits; and

IT IS FURTHER ORDERED that in the event of default by appellant
regarding any provision of this order, THE APPEAL WILL BE SUBJECT TO
DISMISSAL WITHOUT FURTHER NOTICE; and

IT IS FURTHER ORDERED that if any respondent fails to file a
brief within the time directed by this order, such respondent will be
subject to preclusion from further participation in the appeal.

WITNESS, the Honorable Carmen Messano, Presiding Judge for
Administration, at Trenton, this 20th day of October, 2021.

s/JOSEPH H. ORLANDO
JOSEPH H. ORLANDO
CLERK OF THE APPELLATE DIVISION

# Exhibit L

ORDER ON MOTION
---------------

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-000370-21T2
MOTION NO.  M-001678-21
BEFORE      PART E
JUDGE(S):   CARMEN MESSANO

CHANA RINGEL AND CR LAKEWOD,
LLC, INDIVIDUALLY AND
DERIVATIVELY ON BEHALF OF BCR
LAKEWOOD HOLDINGS, LLC
V.
BR LAKEWOOD, LLC AND BENJAMIN
RINGEL
AND
CHANA RINGEL, INDIVDUALLY AND
DERIVATIVELY ON BEHALF OF BCR
OAKWOOD, LLC
V.
BENJAMIN RINGEL, SUNSET HILL
OAKRIDGE PLAZA, LLC, JOHN DOES
1-10 AND ABC CORPORATIONS 1-10

| | | | |
|---|---|---|---|
| MOTION FILED: | 11/23/2021 | BY: | BENJAMIN RINGEL, BR LAKEWOOD, LLC, SUNSET HILL OAKRIDGE PLAZA, LLC |
| ANSWER(S) | 12/02/2021 | BY: | RUSHMORE CAPITAL, LLC |
| FILED: | 12/03/2021 | BY: | CHANA RINGEL |

SUBMITTED TO COURT: December 27, 2021

ORDER
-----

THIS MATTER HAVING BEEN DULY PRESENTED TO THE COURT, IT IS, ON THIS 4th day of January, 2022, HEREBY ORDERED AS FOLLOWS:

MOTION BY    APPELLANT

MOTION TO EXTEND TIME TO FILE
APPELLANT'S BRIEF 45 DAYS          GRANTED

SUPPLEMENTAL:

FOR THE COURT:

_____
CARMEN MESSANO, P.J.A.D.

OCN-C-127-15
OCN-C-152-16    OCEAN
ORDER - REGULAR MOTION
IV

# Exhibit M

**Scorese, Angela (x2504)**

| | |
|---|---|
| **From:** | njedatanotices.mailbox@judiciary.state.nj.us |
| **Sent:** | Tuesday, January 4, 2022 11:27 AM |
| **Subject:** | (AS)eCourts Appellate-Communication = A-000370-21 = CHANA RINGEL AND CR LAKEWOD, LLC, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF BCR LAKEWOOD HOLDINGS, LLC V. BR LAKEWOOD, LLC AND BENJAMIN RINGEL AND CHANA RINGEL, INDIVDUALLY AND DERIVATIVELY ON BEHALF OF |
| **Importance:** | High |

*Caution: External Email!*

An eCourts Appellate Communication was entered by court on the case below:

Case Title: CHANA RINGEL AND CR LAKEWOD, LLC, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF BCR LAKEWOOD HOLDINGS, LLC V. BR LAKEWOOD, LLC AND BENJAMIN RINGEL AND CHANA RINGEL, INDIVDUALLY AND DERIVATIVELY ON BEHALF OF BCR OAKWOOD, LLC
Docket #s: (Appeal &/or Trial Court) A-000370-21
Filing Party: BENJAMIN RINGEL, BR LAKEWOOD, LLC, SUNSET HILL OAKRIDGE PLAZA, LLC
Case manager: IWONA VARGAS
Phone number: 609-815-2950

**Comments:**

BRIEF-APPELLANTS BRIEF AND APPENDIX: Due Date 01/20/22 (NAGEL RICE LLP - BRUCE H NAGEL )
BRIEF-RESPONDENTS BRIEF AND APPENDIX: Due Date 02/22/22 (GIORDANO HALLERAN & CIESLA, PC - MATTHEW NICHOLAS FIOROVANTI )
BRIEF-REPLY BRIEF: Due Date 03/03/22 (NAGEL RICE LLP - BRUCE H NAGEL )

**NOTICE HAS BEEN ELECTRONICALLY MAILED TO:**

| APPELLANT ATTORNEY NAME | APPELLANT ATTORNEY EMAIL |
|---|---|
| PETER CHARLES HARVEY | PCHARVEY@PBWT.COM,MCOLITIGATION@PBWT.COM |

| RESPONDENT ATTORNEY NAME | RESPONDENT ATTORNEY EMAIL |
|---|---|
| EFREM TOBIAS SCHWALB | ESCHWALB@KOFFSKYSCHWALB.COM,PARTNERS@KOFFSKYSCHWALB.COM |
| MATTHEW NICHOLAS FIOROVANTI | MFIOROVANTI@GHCLAW.COM,CTHOMPSON@GHCLAW.COM,SCLARK@GHCLAW.COM |
| EFREM TOBIAS SCHWALB | ESCHWALB@KOFFSKYSCHWALB.COM,PARTNERS@KOFFSKYSCHWALB.COM |
| MATTHEW NICHOLAS FIOROVANTI | MFIOROVANTI@GHCLAW.COM,CTHOMPSON@GHCLAW.COM,SCLARK@GHCLAW.COM |

| MOVANT ATTORNEY NAME | MOVANT ATTORNEY EMAIL |
|---|---|

| AFIYFA HAKIM ELLINGTON | AELLINGTON@GHCLAW.COM,MANGOTTI@GHCLAW.COM,FRICCI@GHCLAW.COM |
| --- | --- |

| INTERVENOR ATTORNEY NAME | INTERVENOR ATTORNEY EMAIL |
| --- | --- |
| AURORA CASSIRER | AURORA.CASSIRER@TROUTMAN.COM,LITIGATIONDOCKETREQUESTS@TROUTMAN.COM,DANIEL.GORMAN@TROUTMAN.COM |

Login to eCourts Appellate to view the case and documents. You will need a valid User ID (NJ Attorney Bar ID) and associated password to login.

Please do not reply to this message, this email is an automated notification, which is unable to receive replies. We are happy to help you with any questions or concerns you may have. Please contact the case manager listed above.

# Exhibit N

| PETER CHARLES HARVEY, Esq.<br>PATTERSON BELKNAP WEBB & TYLER LLP<br>1133 AVENUE OF THE AMERICAS<br>NEW YORK, NY 10036-6710<br>212-336-2000<br>pcharvey@pbwt.com<br>mcolitigation@pbwt.com | Before Appellate Division,<br>Superior Court of New Jersey<br>DOCKET NO. **A-000370-21** |

CIVIL

**CHANA RINGEL AND CR LAKEWOD, LLC, INDIVIDUALLY AND DERIVATIVELY ON
BEHALF OF BCR LAKEWOOD HOLDINGS, LLC
V.
BR LAKEWOOD, LLC AND BENJAMIN RINGEL
AND
CHANA RINGEL, INDIVDUALLY AND DERIVATIVELY ON BEHALF OF BCR
OAKWOOD, LLC**

PROOF OF SERVICE

I hereby certify that an original of the following documents, **APPELLANTS BRIEF,
APPELLANTS APPENDIX (Vol. 001), APPELLANTS APPENDIX (Vol. 002),
APPELLANTS APPENDIX (Vol. 003), PROOF OF SERVICE** were submitted and
transmitted to the parties listed below in the following format:

ELECTRONICALLY TO:
**ATTORNEY NAME: MATTHEW NICHOLAS FIOROVANTI, Esq.
mfiorovanti@ghclaw.com
cthompson@ghclaw.com
sclark@ghclaw.com
ATTORNEY NAME: EFREM TOBIAS SCHWALB, Esq.
eschwalb@koffskyschwalb.com
partners@koffskyschwalb.com
ATTORNEY NAME: MATTHEW NICHOLAS FIOROVANTI, Esq.
mfiorovanti@ghclaw.com
cthompson@ghclaw.com
sclark@ghclaw.com
ATTORNEY NAME: EFREM TOBIAS SCHWALB, Esq.
eschwalb@koffskyschwalb.com
partners@koffskyschwalb.com
ATTORNEY NAME: AURORA  CASSIRER, Esq.
aurora.cassirer@troutman.com
litigationdocketrequests@troutman.com
daniel.gorman@troutman.com
ATTORNEY NAME: AFIYFA HAKIM ELLINGTON, Esq.
aellington@ghclaw.com
mangotti@ghclaw.com
fricci@ghclaw.com**

BY MAIL:

I certify that the forgoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

**Attorney for APPELLANT**
**BENJAMIN RINGEL, BR LAKEWOOD, LLC,**
**SUNSET HILL OAKRIDGE PLAZA, LLC**

Dated: **01/20/2022**            By:  **S/ PETER CHARLES HARVEY, Esq.**

# Exhibit O

CHANA RINGEL AND CR LAKEWOOD, :
INDIVIDUALLY, AND DERIVATIVELY :
DIVISION ON BEHALF OF BCR :
LAKEWOOD HOLDINGS, LLC, :

     Plaintiffs/Respondents, :

vs. :

BR LAKEWOOD, LLC AND BENJAMIN :
RINGEL, :

     Defendants. :
      :

CHANA RINGEL, INDIVIDUALLY, :
AND DERIVATIVELY ON BEHALF :
OF BCR OAKRIDGE, LLC, :

     Plaintiffs/Respondents, :

vs. :

BENJAMIN RINGEL, SUNSET HILL :
OAKRIDGE PLAZA, LLC, JOHN :
DOES 1-10, AND ABC :
CORPORATION 1-10, :

     Defendants/Appellants. :

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION
OCEAN COUNTY

DOCKET NO. OCN-C-127-15

Civil Action

**FILED**

**SEP 1 3 2021**

CHAMBERS OF
FRANCIS R. HODGSON, JR. P.J. Ch
SUPERIOR COURT OCEAN COUNTY

DOCKET NO. OCN-C-152-16

Civil Action

ORDER GRANTING
RUSHMORE CAPITAL, LLC'S
MOTION TO INTERVENE

**THIS MATTER** having been opened before the Court upon motion by Rushmore Capital, LLC ("Rushmore"), by and through its counsel, Troutman Pepper Hamilton Sanders LLP, and the Court having received and reviewed Rushmore's moving papers and any opposition thereto and the court having heard oral argument; and for good cause having been shown; and for having granted the Motion to Intervene from the bench; and for the reasons set forth on the record;

1

IT IS ON THIS 13th day of September, 2021, **ORDERED** as follows:

1.  Rushmore's Motion to Intervene is hereby **GRANTED;**

2.  A copy of this Order shall be served on all parties by electronic filing.

_____
Hon. Francis J. Hodgson, Jr., P.J. Ch.

Opposed          [ ✗ ]
Unopposed      [   ]

Permission to intervene is granted
for the purposes of this motion
alone and upon completion
of the motion their participation
will be ended and dismissed

2

CHANA RINGEL AND CR
LAKEWOOD, INDIVIDUALLY,
AND DERIVATIVELY ON BEHALF
OF BCR LAKEWOOD HOLDINGS,
LLC,

      Plaintiffs,

          vs.

BR LAKEWOOD, LLC AND
BENJAMIN RINGEL,

      Defendants,

CHANA RINGEL,
INDIVIDUALLY, AND
DERIVATIVELY ON BEHALF OF
BCR OAKRIDGE, LLC,

      Plaintiffs,

          vs.

BENJAMIN RINGEL, SUNSET
HILL OAKRIDGE PLAZA, LLC,
JOHN DOES 1-10, AND ABC
CORPORATION 1-10,

      Defendants,

**SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION: OCEAN COUNTY**

Civil Action

Docket No. OCN-C-127-15

Docket No. OCN-C-152-16

**ORDER GRANTING DEFENDANTS' MOTION
FOR A STAY OF PROCEEDINGS PENDING
APPEAL**

       **THIS MATTER HAVING BEEN OPEN TO THE COURT** by Defendants

Benjamin Ringel, BR Lakewood, LLC, and Sunset Hill Oakridge

Plaza, LLC ("Defendants"), by and through their counsel,

Patterson Belknap Webb & Tyler LLP (Peter C. Harvey, Esq.,

appearing) seeking a stay of all proceedings pursuant to Rule

2:9-5(b), pending the resolution of the Defendants' appeal

before the Appellate Division of the Superior Court; and based upon the arguments advanced by Defendants; and considering the papers opposing this application; and based upon the pleadings and proceedings and good cause having been shown;

It is on this _____ day of February 2022,

**ORDERED**, that all proceedings before this Court in the above-captioned matters shall be stayed until the resolution of Defendants' pending appeal before the Appellate Division, and any subsequent appeal to the New Jersey Supreme Court.

DATED:  January 26, 2022


_____
HON. FRANCIS R. HODGSON, JR.
Presiding Judge
Chancery Division


This motion was:
__ Opposed
__ Unopposed

OCN-C-00012-15  02/09/2023  1:42 PM  Pg 229 of 374  Trans ID: CHC20232160

| | |
|---|---|
| CHANA RINGEL AND CR LAKEWOOD, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR LAKEWOOD HOLDINGS, LLC, | **SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION** |
| Plaintiffs, | CIVIL ACTION |
| vs. | |
| BR LAKEWOOD, LLC AND BENJAMIN RINGEL, | Docket No. OCN-C-127-15 |
| Defendants, | |
| CHANA RINGEL, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR OAKRIDGE, LLC, | Docket No. OCN-C-152-16 |
| Plaintiffs, | **CERTIFICATE OF SERVICE** |
| vs. | |
| BENJAMIN RINGEL, SUNSET HILL OAKRIDGE PLAZA, LLC, JOHN DOES 1-10, AND ABC CORPORATION 1-10, | |
| Defendants, | |

I, Peter C. Harvey, hereby certify that on the 26th day of January 2022, a true and correct copy of Defendants' Motion for a Stay of Proceedings Pending Appeal, its Memorandum of Law in Support of Defendants' Motion and in Opposition to Rushmore Capital LLC's Order to Show Cause, the Certification of Peter C. Harvey with Exhibits, and a Proposed Order were served via the New Jersey Superior Court's electronic filing notification system upon all counsel of record.

By:    _/s/ Peter C. Harvey_
            Peter C. Harvey, Esq.

PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of Americas
New York, NY  10036-6710
Tel. (212) 336-2000
Fax (212) 336-2222
E-Mail:  pcharvey@pbwt.com

CHANA RINGEL AND CR
LAKEWOOD, INDIVIDUALLY, AND
DERIVATIVELY ON BEHALF OF
BCR LAKEWOOD HOLDINGS, LLC,

      Plaintiffs,

          vs.

BR LAKEWOOD, LLC AND
BENJAMIN RINGEL,

      Defendants,

---

CHANA RINGEL, INDIVIDUALLY,
AND DERIVATIVELY ON BEHALF
OF BCR OAKRIDGE, LLC,

      Plaintiffs,

          vs.

BENJAMIN RINGEL, SUNSET HILL
OAKRIDGE PLAZA, LLC, JOHN
DOES 1-10, AND ABC
CORPORATION 1-10,

      Defendants,

**SUPERIOR COURT OF NEW JERSEY**
**CHANCERY DIVISION: OCEAN COUNTY**

Civil Action

Docket No. OCN-C-127-15

Docket No. OCN-C-152-16

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION**
**FOR A STAY OF PROCEEDINGS**
**PENDING APPEAL**

**PATTERSON BELKNAP WEBB & TYLER LLP**
Peter C. Harvey, Esq. – NJ 035131989
1133 Avenue of the Americas
New York, New York 10036
Phone:(212) 336-2000
Email: pcharvey@pbwt.com

Attorneys for Defendants-Appellants
BR Lakewood, LLC, Benjamin Ringel
and Sunset Oakridge Plaza, LLC

**TABLE OF CONTENTS**

**Page**

Table of Authorities..........................................ii

PRELIMINARY STATEMENT..........................................1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY......................4

ARGUMENT.......................................................7

I.   DEFENDANTS ARE ENTITLED TO A STAY OF ALL PROCEEDINGS
     PURSUANT TO RULE 2:9-5(B).................................7

II.  RUSHMORE IS NOT ENTITLED TO AN ORDER TO COMPEL SPECIFIC
     PERFORMANCE OR FOR SANCTIONS.............................13

     A.   Rushmore Lacks Standing ............................13

     B.   The Extraordinary Remedy of Specific Performance is
          Inapplicable to These Circumstances ................14

     C.   Sanctions Are Not Appropriate Because Defendants
          Have Not Violated Any Court Order ..................17

     D.   Rushmore Is Not Entitled To Counsel Fees In
          Connection With Bringing Its Procedurally Improper
          Order To Show Case .................................20

CONCLUSION....................................................21

## <u>Table of Authorities</u>

**Page(s)**

**Cases**

<u>ACE Am. Ins. Co. v. Am. Med. Plumbing, Inc.</u>,
   458 N.J. Super. 535 (App. Div. 2019) ........................10

<u>Bankers Tr. Co. of Calif., N.A. v. Delgado</u>,
   346 N.J. Super. 103 (App. Div. 2001) ......................13

<u>Bergen Cty. Improvement Auth. v. Bergen Regional Med.</u>
   <u>Ctr., LP</u>,
   No. A-0050-16T4, 2018 WL 1122421 (App. Div. Mar. 2,
   2018) ...................................................13, 14

<u>Brahma Const. Corp. v. E. Brunswick Public Schools</u>,
   No. A-2724-14T3, 2015 WL 1880089 (App. Div. Apr. 27,
   2015) .......................................................9

<u>Centex Homes Corp. v. Boag</u>,
   128 N.J. Super. 385 (Ch. Div. 1974) ....................15, 16

<u>Cox v. RKA Corp.</u>,
   164 N.J. 487 (2000) ....................................14, 15

<u>Crowe v. De Gioia</u>,
   90 N.J. 126 (1982) .....................................*passim*

<u>E. Brunswick Bd. of Educ. v. E. Brunswick Educ. Ass'n</u>,
   235 N.J. Super. 417 (App. Div. 1989) ......................19

<u>EnviroFinance Grp., LLC v. Envt'l Barrier Co., LLC</u>,
   440 N.J. Super. 325 (App. Div. 2015) ......................14

<u>EQR-LPC Urban Renewal N. Pier, LLC v. City of Jersey</u>
   <u>City</u>,
   452 N.J. Super. 309 (App. Div. 2016), <u>aff'd</u>, 231 N.J.
   157 (2017) ................................................10

<u>Francesconi v. ARS Classica</u>,
   2006 WL 1098237 (Super. Ct. Ch. Div. Apr. 24, 2006) .......8, 9

<u>Friendship Manor, Inc. v. Greiman</u>,
   244 N.J. Super. 104 (App. Div. 1990) ......................16

<u>Garden State Equal. v. Dow</u>,
   216 N.J. 314 (2013) ...................................7, 8, 12

ii

## Table of Authorities
### (continued)

Greenberg v. Fornicola,
    37 N.J. 1 (1962) ..........................................10

Haggerty v. Red Bank Borough Zoning Bd. of Adjustment,
    385 N.J. Super. 501 (App. Div. 2006) ......................11

Kelleher v. Bragg,
    96 N.J. Eq. 25 (Ch. 1924), aff'd, 97 N.J. Eq. 547
    (1925) ................................................16, 17

Kennedy v. Weichert,
    No. A-0395-19T2, 2020 WL 863460 (App. Div. Feb. 21,
    2020) .....................................................14

Kuther v. Zaklama,
    No. L-334-07, 2011 WL 9843 (App. Div. Apr. 20, 2010) .......20

Mayo v. Borovksy,
    135 N.J. Eq. 447 (Ch. 1944) ...............................15

McVoy v. Bd. of Adjustment of Montclair Twp.,
    213 N.J. Super. 109 (App. Div. 1986) ......................11

Poling v. BNY Mellon Wealth Mgmt.,
    Nos. A-1502-15T1, A-3507-15T2, 2018 WL 5316092 (App.
    Div. Oct. 29, 2018) .......................................11

Ridley v. Dennison,
    298 N.J. Super. 373 (App. Div. 1997) ..................18, 19

Schwartz v. Hoffman Foundation & Holding Corp.
    139 N.J. Eq. 349 (Ch. 1947) ...............................16

Suleman v. Zia,
    No. A-0257-20, 2021 WL 5549567 (App. Div. Nov. 29,
    2021) .................................................18, 20

Trisun Corp. v. Town of W. N.Y.,
    341 N.J. Super. 556 (App. Div. 2001) ......................19

Van Cleef v. P. Serelis Corp.,
    No. WRN-C-16005-05, 2005 WL 975682 (Super. Ct. Ch.
    Div. Apr. 8, 2005.) ....................................8, 12

Wasserman's Inc. v. Twp. Of Middletown,
    137 N.J. 238 (1994) .......................................10

## Table of Authorities
### (continued)

**Page(s)**

Zoning Bd. of Adjustment of Sparta Twp. v. Serv. Elec.
  Cable Television of N.J., Inc.,
  198 N.J. Super. 370 (App. Div. 1985) ........................12

**Other Authorities**

Rule 1:10-3........................................2, 17, 18, 19

Rule 2:9-5(B).........................................7, 8, 17

## PRELIMINARY STATEMENT

This Court should stay all proceedings in this case. Defendants have an appeal pending before the Appellate Division challenging, primarily, this Court's June 4, 2021, August 23, 2021 and August 25, 2021 Orders. Defendants seek review of the rulings declaring Rushmore Capital, LLC ("Rushmore"), the bid winner for the Pinewood Property and declining to disqualify the real estate broker who had an impermissible financial and familial conflict of interest. Permitting a sale of the Pinewood Property while an appeal is pending would eliminate Defendants' opportunity to challenge the bidding process. Moreover, it would cause irreparable harm to Defendants as real estate is unique. This Court should not allow the Pinewood Property to be sold until the Appellate Division has reviewed and ruled upon the merits of the case. Under these circumstances, a stay of the proceedings pending resolution of the appeal is both appropriate and prudent.

Defendants have satisfied all three factors favoring a stay of proceedings. First, selling the Pinewood Property to Rushmore would cause irreparable harm by eviscerating Defendants' opportunity to establish itself as the rightful purchaser and owner. Second, Defendants' grounds for appeal have a reasonable probability of success on their merits. Third, refusing to grant the stay would cause greater harm than granting the stay. Alleged monetary injury to a non-party – Rushmore – does not amount to

irreparable harm.  Rushmore can only point to hypothetical monetary damages stemming from a grant of the stay.  In contrast, Defendants would lose an equitable and irreplaceable interest in the Pinewood Property itself.

Rushmore has no basis to seek an Order to Show Cause.  That entity is not a party in this case and, thus, has no standing to file any application.  Furthermore, Rushmore has not filed a motion to intervene a second time in this case and has not demonstrated the factors permitting it to be a valid intervenor.  Additionally, Rushmore's claims in its procedurally defective Order to Show Cause, application are meritless as they are nothing more than an attempt to punish Defendants for exercising their right to appeal an adverse ruling.

Separately, there are simply no grounds for specific performance.  There is no executed contract between Rushmore and Defendants to "perform," and Rushmore has failed to demonstrate any reason why it would be entitled to such an extraordinary remedy.

Rushmore's application for sanctions, including counsel fees, also fails.  Rushmore cannot point to any actual provision of *any* court order that Defendants purportedly have violated.  That is not an oversight; rather this failure results from the fact that no such violation exists.  It follows that Rushmore is not entitled to sanctions under Rule 1:10-3.

2

Without a meritorious sanctions motion, non-party Rushmore
cannot seek any counsel fees it incurred in connection with filing
its ill-advised Order to Show Cause application.  Filed after-
hours on the eve of Defendants' filing deadline for its opening
appellate brief, Rushmore's application is nothing more than an
attempt to intimidate Defendants to stop them from asserting their
appeal rights.  This Court should not reward such blatant
gamesmanship, and should grant Defendants' motion for a stay
pending appeal.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

This case arises from two lawsuits filed by Chana Ringel and related entities ("Plaintiffs"), against her brother, Ben Ringel, and related entities ("Defendants"). The first suit, filed in 2015, is captioned as Chana Ringel v. BR Lakewood, LLC, Docket No. OCN-C-127-15. The second was filed in 2016 and captioned as Chana Ringel, et al. v. Benjamin Ringel, et al., Docket No. OCN-C-152-16. (Certification of Peter C. Harvey in Support of Defendants' Motion for a Stay of Proceedings Pending Appeal and in Opposition to Rushmore Capital LLC's Order to Show Cause, ¶ 2, hereinafter "Harvey Cert.")

In October 2020, the parties settled both lawsuits by executing a Term Sheet (hereafter, "Term Sheet" or "Agreement"). (Harvey Cert. ¶ 3.) As part of the settlement, the parties agreed to sell the Pinewood Property through a competitive bidding process and split the proceeds from that sale. (Harvey Cert. ¶ 3.) This Court retained jurisdiction to implement the terms of the parties' Agreement, which involved, among other things, a court-ordered sale of the Pinewood Property. (Harvey Cert. ¶ 3.)

Defendants raised a number of objections to the procedure and substance of the bidding process required by the Term Sheet. In relevant part, Defendants moved to disqualify the broker because

---

[1] Defendants limit the facts and procedural history to what is relevant in connection with resolving this Motion and Rushmore's Order to Show Cause.

4

of a pre-existing financial and familial conflict of interest with
Rushmore Capital, LLC ("Rushmore").   (Harvey Cert. ¶ 4.)
Defendants also argued that the meaning of "highest bidder" within
the context of the Term Sheet referred to the bidder who could
offer the highest <u>net</u> proceeds to each party.  (Harvey Cert. ¶ 5.)
Defendants presented evidence demonstrating that Defendant BR
Lakewood, LLC, not Rushmore, had the highest bid because it yielded
the most money to the parties.  (Harvey Cert. ¶ 5.)  This Court
ruled against Defendants on both of those arguments.  (Harvey Cert.
¶ 6.)

On August 25, 2021, this Court declared Rushmore the winning
bidder.  (Harvey Cert. ¶ 7.)  The Order called for Mr. Mandelbaum
to "finalize the written contract for the sale of the Pinewood
Property . . . within a reasonable time."  (Harvey Cert. ¶ 7.)

Notably, although this Court previously permitted Rushmore to
intervene for the *limited purpose* of appearing at the August 23,
2021 hearing, the Court's September 13, 2021 Order expressly
restricted Rushmore's intervention to "the purposes of this
motion." (Harvey Cert. ¶ 8.)  After this Court granted Plaintiffs'
motion seeking to declare Rushmore the winning bidder, Rushmore's
participation, according to the Court's September 13, 2021 Order,
was "ended and dismissed." (Harvey Cert. ¶ 8.)  That is, Rushmore
is not even currently a party to this proceeding.

5

On October 5, 2021, Defendants filed a timely Notice of Appeal. (Harvey Cert. ¶ 9.) Defendants presented two issues to the Appellate Division for decision: (1) whether this Court erred in denying Defendants' motion to disqualify the broker, and (2) whether this Court erred in declaring that Rushmore was the "highest bidder" for the Pinewood Property within the meaning of the parties Term Sheet. (Harvey Cert. ¶ 10.)

A Notice of Docketing was filed on October 7, 2021. (Harvey Cert. ¶ 11.) Subsequently, on October 11, 2021, Defendants filed an Amended Notice of Appeal. (Harvey Cert. ¶ 12.) On October 20, 2021, the Appellate Division issued a briefing schedule requiring Defendants to file their opening brief on December 6, 2021. (Harvey Cert. ¶ 13.) On January 4, 2022, the Appellate Division granted Defendants' motion to extend the time to file their brief and issued a modified Scheduling Order permitting Defendants to file their opening brief by January 20, 2022. (Harvey Cert. ¶ 14.)

Defendants filed their opening brief on January 20, 2022. (Harvey Cert. ¶ 15.) Notably, Rushmore filed its procedurally improper Order to Show Cause on the night of January 19, hours before Defendants' appellate brief was due. (Harvey Cert. ¶ 16.)

## ARGUMENT

### I.   DEFENDANTS ARE ENTITLED TO A STAY OF ALL PROCEEDINGS PURSUANT TO RULE 2:9-5(B)

Rule 2:9-5(b) directs litigants to file a motion for a stay of enforcement of a court order before the court that entered the order.  See R.2:9-5(b).  The rule specifically allows litigants to seek the stay "prior to the date of the oral argument in the appellate court" and authorizes courts to exercise its sound discretion to stay proceedings.  Id.

In granting stay motions, courts consider the factors set forth in Crowe v. De Gioia, 90 N.J. 126 (1982).  Garden State Equal. v. Dow, 216 N.J. 314, 320 (2013).  The Crowe factors require the party seeking a stay to "demonstrate that (1) relief is needed to prevent irreparable harm; (2) the applicants claim rests on settled law and has a reasonable probability of succeeding on the merits; and (3) balancing the relative hardships to the parties reveals that greater harm would occur if a stay is not granted than if it were."  Id. (quotation marks omitted).  When the applicant seeking the stay acts "only to preserve the status quo, the Court may place less emphasis on a particular Crowe factor if another greatly requires the issuance of the remedy."  Id. (quotation marks omitted).

Defendants seek a stay of proceedings only to preserve the status quo until the Appellate Division has had an opportunity to review and decide the merits of their appeal.  This stay

7

application has particular importance since this case concerns a real estate parcel which, by definition, is unique.

Defendants' motion for a stay is timely under Rule 2:9-5(b). That rule requires litigants to seek a stay "prior to the date of the oral argument in the appellate court." R. 2:9-5(b). Defendants' appeal recently has been filed and is now being briefed. The Appellate Division has not yet set a date for oral argument, hence, no argument has been heard in this case. Rushmore's emphasis on the date of the August 25, 2021 Order declaring it the winning bidder on the Pinewood Property, (see Rushmore Br. at 3-4), is plainly irrelevant to the timeliness of Defendants' motion to stay that Order. Accordingly, Defendants' motion seeking a stay of proceedings is timely.

All three Crowe factors weigh in favor of issuing a stay. First, staying the sale of the Pinewood Property is necessary to prevent irreparable harm. Garden State Equal, 433 N.J. Super. at 320. "Harm is generally considered irreparable in equity if it cannot be redressed adequately by monetary damages." Francesconi v. ARS Classica, 2006 WL 1098237, at *5 (Super. Ct. Ch. Div. Apr. 24, 2006). Pursuant to well-established law, the sale of real property and transfer of the property to a third party is "irreparable." See Van Cleef v. P. Serelis Corp., No. WRN-C-16005-05, 2005 WL 975682, at *1 (Super. Ct. Ch. Div. Apr. 8, 2005.)

8

At issue here is Defendants' right to purchase the Pinewood
Property.  Defendants argue that BR Lakewood won the bid for the
Pinewood Property below, and, therefore, any sale of the property
to Rushmore would violate the Term Sheet and the parties'
intentions.  Moreover, prematurely selling the Pinewood Property
would permanently impair Defendants' ability to have the Appellate
Division evaluate their right to purchase it.  See Francesconi,
2006 WL 1098237, at *5, *7 (finding that it would cause irreparable
harm not to prevent premature sale of family property).  Monetary
damages would not make Defendants whole again were this Court to
enforce Rushmore's proposed sales contract and allow the property
to be sold.

With regard to the second Crowe factor, Defendants' appeal
has a reasonable probability of success on the merits. For the
purposes of a motion for a stay, this Court should examine
Defendants' arguments "not for their ultimate merit, but for
whether there [is] a reasonable probability of success." Brahma
Const. Corp. v. E. Brunswick Public Schools, No. A-2724-14T3, 2015
WL 1880089, at *4 (App. Div. Apr. 27, 2015).  On appeal, Defendants
argue important issues pertaining to contract interpretation and
conflicts of interest.  For example, Defendants argue that the
term "highest bidder," as used in the Term Sheet, refers to a
bidder who provides the highest net proceeds to each party, not
the bidder with the highest upfront bid.  New Jersey decisions

9

interpreting contracts reasonably support Defendants' position. Ambiguous contract terms should be read in the context of the rest of the contract, and the parties' stated intent is dispositive in contract interpretation. See ACE Am. Ins. Co. v. Am. Med. Plumbing, Inc., 458 N.J. Super. 535, 539 (App. Div. 2019) (explaining courts "strive to give effect to all parts of the writing and every word of" a contract (quotation marks omitted)); EQR-LPC Urban Renewal N. Pier, LLC v. City of Jersey City, 452 N.J. Super. 309, 319 (App. Div. 2016), aff'd, 231 N.J. 157 (2017) (explaining that the parties' intent is the "touchstone for [contract] interpretation").

Defendants' interpretation of the Term Sheet is supported by other caselaw. The New Jersey Supreme Court has explained that competitive bidding processes are "designed to obtain the best economic result for the [seller]." Greenberg v. Fornicola, 37 N.J. 1, 6 (1962); see also Wasserman's Inc. v. Twp. Of Middletown, 137 N.J. 238, 246 (1994) ("The purpose of competitive bidding is to obtain the best economic result for the [seller]."). The plain meaning of "the best economic result" is which proposal will yield the greatest return of money to the parties. Defendants have presented ample evidence that BR Lakewood's offer would have yielded more money – higher net proceeds – to the parties than Rushmore's offer. (See Harvey Cert. ¶ 5.)

Defendants' appeal also relies upon cases that compel the
conclusion that the broker's conflict of interest in this case
disqualified him from facilitating the sale of the Pinewood
Property.  The broker in this case, pursuant to the Term Sheet,
was a quasi-judicial officer conducting a real estate sale under
the authority of this Court.  See Poling v. BNY Mellon Wealth
Mgmt., Nos. A-1502-15T1, A-3507-15T2, 2018 WL 5316092, at *10 (App.
Div. Oct. 29, 2018) (partition commissioner who "acted upon court
appointment and direction to sell [real property]" served in a
"quasi-judicial" role).  Other cases disqualified public officials
or other quasi-judicial officers because of the mere "potential
for conflict."  Haggerty v. Red Bank Borough Zoning Bd. of
Adjustment, 385 N.J. Super. 501, 513 (App. Div. 2006); see also
McVoy v. Bd. of Adjustment of Montclair Twp., 213 N.J. Super. 109,
116 (App. Div. 1986) (explaining that the "the exercise of
governmental authority" cannot be "affected by bias").  Although
this Court may disagree with Defendants' arguments, for purposes
of the instant motion to stay, the Court only considers whether
Defendants' arguments are reasonably likely to succeed.  Given the
cited authority supporting Defendants' positions, such probability
exists.

With respect to the third and final Crowe factor, far greater
harm would result from failing to impose a stay than from imposing
one.  As noted above, an interest in real property is unique and

11

cannot be adequately compensated by a monetary judgment. Defendants stand to lose an equitable property interest. In contrast, Rushmore's improperly filed application only points to hypothetical monetary losses, such as possible increased interest rates in connection with financing expenses, the general volatility of the real estate market, and certain alleged tax savings. (Rushmore Br. at 10-11.) All of Rushmore's concerns could be "redressed adequately by monetary damages." Van Cleef, 2005 WL 975682, at *4. And, it is settled law that "mere injuries, however substantial, in terms of money," cannot constitute irreparable harm. Zoning Bd. of Adjustment of Sparta Twp. v. Serv. Elec. Cable Television of N.J., Inc., 198 N.J. Super. 370, 381 (App. Div. 1985). On the other hand, Defendants face a lost opportunity that they will not be able to rectify without a stay. Accordingly, the greater (and irreparable) harm would stem from denying the stay rather than granting it.

Although Defendants satisfy all three stay factors, this Court nevertheless should place greater weight on the irreparable harm component of prematurely enforcing the sale of the Pinewood Property. Notably, Defendants move "only to preserve the status quo." Garden State, 216 N.J. at 320. Accordingly, this Court may place less emphasis on any given Crowe factor in granting the motion for a stay. See id. A stay of proceedings is warranted.

## II.   RUSHMORE IS NOT ENTITLED TO AN ORDER TO COMPEL SPECIFIC PERFORMANCE OR FOR SANCTIONS

Even if the Court decided to consider Rushmore's improper application, it should reject Rushmore's arguments since Rushmore has failed to establish any grounds for specific performance, sanctions or counsel fees.  Defendants have now moved for a stay of proceedings pending the resolution of their appeal.  Accordingly, Rushmore's extreme demands for relief are premature.

### A.   Rushmore Lacks Standing

Rushmore is not currently a party to these proceedings.  This Court granted Rushmore's motion to intervene for the limited purpose of appearing at the August 23, 2021 hearing to determine whether Rushmore or BR Lakewood constituted the "highest bidder" on the Pinewood Property.  (Harvey Cert. ¶ 8.)  In so doing, this Court's September 13, 2021 Order explicitly stated that, "upon completion of [that] motion, [Rushmore's] participation will be ended and dismissed."  (Harvey Cert. ¶ 8.)

The issue of standing is "pivotal."  Bergen Cty. Improvement Auth. v. Bergen Regional Med. Ctr., LP, No. A-0050-16T4, 2018 WL 1122421, at *2 (App. Div. Mar. 2, 2018).  Because Rushmore is nothing more than a "stranger to [this] litigation" and has not sought to intervene, it "lacks standing" to bring its Order to Show Cause.  Bankers Tr. Co. of Calif., N.A. v. Delgado, 346 N.J. Super. 103, 106-07 (App. Div. 2001).  "[A] lack of standing . . .

13

precludes a court from entertaining any of the substantive issues for determination." EnviroFinance Grp., LLC v. Envt'l Barrier Co., LLC, 440 N.J. Super. 325, 339 (App. Div. 2015). Rushmore should have "addressed" this issue "by filing a timely motion to intervene," and it has not. Bergen Cty., 2018 WL 1122421, at *2 (declining to address any substantive issues because the party failed to "avail itself of the remedy of filing a motion for leave to intervene").

Nor has Rushmore presented any arguments as to why this Court should allow it to intervene. Since it was Rushmore's burden to show why intervention is necessary, its attempt to appear fails for that reason alone. See Kennedy v. Weichert, No. A-0395-19T2, 2020 WL 863460, at *2 (App. Div. Feb. 21, 2020) (explaining that the movant bears "the burden to demonstrate grounds to intervene, including proof that existing parties will not adequately represent its interests"). Therefore, Rushmore cannot pursue its various unfounded claims for relief set forth in its Order to Show Cause papers. In any event, even if Rushmore were a properly admitted party to this action, its claims fail for several reasons.

### B. The Extraordinary Remedy of Specific Performance is Inapplicable to These Circumstances

A court may only grant specific performance to enforce an existing contract pertaining to the sale of real property. See Cox v. RKA Corp., 164 N.J. 487, 517 (2000). No such contract

exists here. Put another way, there is no contractual duty that Defendants owe to Rushmore. Indeed, Rushmore's papers seek to force Defendants to agree to and sign the sales contract. (See Rushmore Br. at 6.) Defendants have not signed that contract because its terms and validity are the subject of a pending appeal. The Appellate Division will provide guidance to both the parties and this Court regarding the bidding process. Accordingly, Rushmore's "interest in the contract" has not yet "converted into real estate." Cox, 164 N.J. at 517.

Moreover, specific performance is an "extraordinary" remedy. Centex Homes Corp. v. Boag, 128 N.J. Super. 385, 389 n.2 (Ch. Div. 1974). In most circumstances, "damages are usually measurable," and a "remedy at law is adequate." Id. at 389. To grant specific performance, the movant must "adequately and clearly establish[]" the equities supporting the remedy. Mayo v. Borovksy, 135 N.J. Eq. 447, 450 (Ch. 1944). As noted above, Rushmore only highlights the possibility of incurring monetary damages from a later sale, i.e., higher future transactional fees, should the sale of the Pinewood Property occur at a later time. (Rushmore Br. at 10-11.) Rushmore is correct that "the uniqueness of land" earns special consideration for relief in this Court. (Rushmore Br. at 9.) That observation does not, however, help Rushmore's argument. Rather, that consideration supports Defendants' stay application. Any potential injury to Rushmore is compensable by the payment of

15

money.  In contrast, Defendants could lose their ownership rights entirely and forever.

Rushmore's cited cases are inapposite.  In Schwartz v. Hoffman Foundation & Holding Corp., the court enforced specific performance of a signed option contract that entitled complainants to a deed upon the meeting of certain conditions.  139 N.J. Eq. 349, 353 (Ch. 1947).  As noted, no signed contract exists in this case.  Additionally, Rushmore fails to point to any automatically executing option provision within the parties' Term Sheet.

Rushmore's reliance upon Friendship Manor, Inc. v. Greiman also is irrelevant.  There, the Appellate Division granted specific performance to "support and maintain the integrity of the [mortgage] recording system."  244 N.J. Super. 104, 113 (App. Div. 1990) (quotation marks omitted).  The Appellate Division directed specific performance only because it determined that the trial court had "misappli[ed] . . . the factual complex of controlling equitable principle."  Id. at 114.  The mortgage recording system is not at issue here.

Rushmore bears the burden of showing that it merits the "extraordinary remedy of specific performance."  Centex Homes Corp., 128 N.J. Super. at 389 n.2; see also Kelleher v. Bragg, 96 N.J. Eq. 25, 28 (Ch. 1924) (explaining that "[t]he complainant has the burden of proof in establishing [a] right to specific performance"), aff'd, 97 N.J. Eq. 547 (1925). It has not met this

16

burden as Rushmore points only to "economic injury." Id. This is

not a "compelling reason" sufficient to grant specific

performance. Id. Accordingly, Rushmore is not entitled to the

extraordinary remedy of specific performance.

### C. Sanctions Are Not Appropriate Because Defendants Have Not Violated Any Court Order

Rushmore fails to meet the requirements for sanctions under

Rule 1:10-3. Rushmore's demands for a daily fine is nothing more

than a sharp-elbowed intimidation tactic. It has no basis in law

or fact. Defendants' actions have not been delinquent.

Essentially, Rushmore seeks to punish Defendants for appealing a

judgment that Defendants have a due process right to appeal.

Pursuing one's appellate rights is not the basis for a sanctions

remedy.

As noted above, Rule 2:9-5(b) permits litigants to move for

a stay of proceedings before the court that entered the judgment

"prior to the date of the oral argument in the appellate court."

R. 2:9-5(b). Appellate briefing has not been completed. A date

for oral argument has not been set. Accordingly, this motion is

timely, and sanctions are not warranted.

Rushmore's conclusory assertion that Defendants are in

violation of this Court's August 25, 2021 order also is refuted by

the record. (See Rushmore Br. at 5-6.) Curiously, Rushmore cannot

quote any specific provision of the August 25 Order that Defendants

have purportedly violated. The Order called for Mr. Mandelbaum to "finalize the written contract for the sale of the Pinewood Property . . . within a reasonable time." (Harvey Cert. ¶ 7.) The Order did <u>not</u> direct Defendants to sign the contract by any specific date. Nor did the August 25 Order suggest that Defendants had waived a right to appeal. Defendants exerted their right to appeal in a timely fashion. (Harvey Cert. ¶ 9.)

Sanctions are plainly inapplicable under these circumstances. "[T]o obtain relief under Rule 1:10-3, [movants are] required to establish defendants violated the order[.]" <u>Suleman v. Zia</u>, No. A-0257-20, 2021 WL 5549567, at *6-7 (App. Div. Nov. 29, 2021) (denying sanctions because the motion was "untethered to any competent evidence establishing" a violation of a court order). Given that Defendants have not violated any provision of this Court's August 25 Order, or any other rule of law, Rule 1:10-3 is inapplicable. <u>See</u> <u>Ridley v. Dennison</u>, 298 N.J. Super. 373, 381 (App. Div. 1997) (explaining that relief under Rule 1:10-3 seeks to "facilitate the enforcement of [a] court order" and is "not for the purpose of punishment").

Rushmore's last argument seeking sanctions pursuant to Rule 1:10-3 is weak. Rather than directing this Court to specific provisions of the August 25 Order that Defendants have purportedly violated, Rushmore refers to Ben Ringel's involvement in unrelated proceedings in different jurisdictions. (Rushmore Br. at 8.)

18

These other matters have nothing to do with the Rule 1:10-3 inquiry, which seeks only to facilitate compliance with a court order.  There is no court order in the case with which Defendants have not complied.  See Ridley, 298 N.J. Super. at 381; see also Trisun Corp. v. Town of W. N.Y., 341 N.J. Super. 556, 559 (App. Div. 2001) (denying motion for sanctions where it "could not be considered as being in aid of [movant's] rights").  Simply put, Rule 1:10-3 does not apply.

Defendants also contest Rushmore's assertion that Defendants are able to pay the requested amount of $500 per day until Defendants execute the contested sales contract for the Pinewood Property.  (Rushmore Br. at 6.)  To support this assertion, Rushmore relies upon (1) the unexecuted and disputed sales contract pertaining to the Pinewood Property and (2) the purported accumulation of various legal fees in connection with proceedings before this Court.  (Rushmore Br. at 7-8.)  Rushmore then speculates that Defendants can pay this made-up $500 figure.  No Rushmore employee provides any certification that offers any personal knowledge or other credible information that is actually relevant to the inquiry, such as "the party's income" and "status." E. Brunswick Bd. of Educ. v. E. Brunswick Educ. Ass'n, 235 N.J. Super. 417, 423-24 (App. Div. 1989) (reversing grant of sanctions because the trial court "made no findings" as to the basis of the

amount of sanctions). Accordingly, this Court should reject Rushmore's baseless request for sanctions.

### D. Rushmore Is Not Entitled To Counsel Fees In Connection With Bringing Its Procedurally Improper Order To Show Case

Given the meritless bases for Rushmore's procedurally flawed Order to Show Cause application, this Court should not even consider it. As already noted, Rushmore is not a party in this case. Furthermore, Rushmore has not filed an appropriate motion to intervene or otherwise participate in this case. Since Rushmore has no standing before the Court, its Order to Show Cause papers are not properly before this Court.

Defendants are not in violation of this Court's August 25, 2021 Order. Moreover, Rushmore is not entitled to counsel fees simply because it chose to file this ill-advised application. See Suleman, 2021 WL 5549567, at *5, *7 (affirming denial of motion for counsel fees where the underlying sanctions motion was meritless). Further, Rushmore's sanctions and counsel fee application has nothing to do with "secur[ing] compliance with court orders." Kuther v. Zaklama, No. L-334-07, 2011 WL 9843, at *7 (App. Div. Apr. 20, 2010). Rushmore merely seeks to punish Defendants for exercising their due process rights in having this Court's rulings reviewed on appeal.

20

## CONCLUSION

For the reasons set forth above, this Court should grant Defendants' motion to stay of proceedings pending appeal. The Court should not consider or rule upon Rushmore's Order to Show Cause application seeking specific performance, sanctions, and counsel fees.

PATTERSON BELKNAP WEBB & TYLER LLP

By: _____
      PETER C. HARVEY, ESQ.

Attorneys for Defendants-
Appellants BR Lakewood, LLC,
Benjamin Ringel, and Sunset
Oakridge Plaza, LLC

DATED: January 26, 2022

# EXHIBIT K

| | |
|---|---|
| CHANA RINGEL and CR LAKEWOOD, LLC, individually, and derivatively on behalf of BCR LAKEWOOD HOLDINGS, LLC, | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION OCEAN COUNTY |
| Plaintiffs, | DOCKET NO. OCN-C-127-15 |
| v. | |
| BR LAKEWOOD, LLC and BENJAMIN RINGEL, | <u>Civil Action</u> |
| Defendants. | |
| CHANA RINGEL, individually, and derivatively on behalf of BCR OAKRIDGE, LLC, | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION OCEAN COUNTY |
| Plaintiff, | DOCKET NO. OCN-C-152-16 |
| v. | |
| BENJAMIN RINGEL, SUNSET HILL OAKRIDGE PLAZA, LLC, JOHN DOES 1-10, and ABC CORPORATIONS 1-10, | <u>Civil Action</u> |
| Defendants. | |

---

### BRIEF ON BEHALF OF PLAINTIFFS IN SUPPORT OF ORDER TO SHOW CAUSE

Matthew N. Fiorovanti, Esq. (027332006)
GIORDANO, HALLERAN & CIESLA
A Professional Corporation
125 Half Mile Road, Suite 300
Red Bank, N.J. 07701-6777
(732) 741-3900

Efrem Schwalb, Esq.
KOFFSKY SCHWALB LLC
500 Seventh Avenue, 8th Floor
New York, NY 10018

Attorneys for Plaintiffs, Chana Ringel and CR Lakewood, LLC, individually, and derivatively on behalf of BCR Lakewood Holdings, LLC and Chana Ringel, individually and derivatively on behalf of BCR Oakridge, LLC

MATTHEW N. FIOROVANTI, ESQ.
EFREM SCHWALB, ESQ.
   On the Brief

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ........................................................................................................................... 3

LEGAL ARGUMENT ................................................................................................................... 9

    POINT I .................................................................................................................................. 9

    THE COURT SHOULD FIND DEFENDANTS IN CONTEMPT OF COURT
    THROUGH DEFENDANTS' CONTINUING REFUSAL TO COMPLY WITH
    THE MAY 8, 2020 ORDER, SEPTEMBER 4, 2020 ORDERS AND AUGUST
    25, 2021 ORDER AND APPOINT A SPECIAL AGENT ON BEHALF OF
    BENJAMIN RINGEL AND BR LAKEWOOD, LLC UNDER R. 4:59-2(a) TO
    EXECUTE THE SALES CONTRACT AND ALL OTHER DOCUMENTS
    NECESSARY TO FINALIZE THE SALE OF THE PINEWOOD PROPERTY
    TO RUSHMORE CAPITAL, LLC .......................................................................................... 9

    POINT II ................................................................................................................................ 13

    THE COURT SHOULD AWARD PLAINTIFFS THEIR REASONABLE
    ATTORNEYS' FEES AND COSTS IN CONNECTION WITH THIS
    APPLICATION ....................................................................................................................... 13

CONCLUSION ........................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

Bd. of Educ. of Middletown v. Middletown Twp. Educ. Ass'n, 352 N.J. Super. 501
(Ch. Div. 2001) ................................................................................................... 9

Crowe v. De Gioia, 90 N.J. 126 (1982) ......................................................................... 12

D'Arc v. D'Arc, 175 N.J. Super. 598 (App. Div. 1980)................................................. 12

Delaney v. Dykstra, 2019 N.J. Super. Unpub. LEXIS 1765 (N.J. Super. Ct. App. Div.
Aug. 12, 2019) ..................................................................................... 10, 11, 12

In re N.J.A.C. 5:96 & 6:97, 221 N.J. 1 (2015)................................................................ 9

Julius v. Julius, 320 N.J. Super. 297 (App. Div. 1999).................................................. 9

North Jersey Media Group, Inc. v. State, Office of Governor, 451 N.J. Super. 282
(App. Div. 2017).................................................................................................. 9

**Other Authorities**

Pressler & Verniero, *Current N.J. Court Rules*, cmt. 4.4.5 on R. 1:10-3 (2021) ........................ 13

**Rules**

R. 1:10-3 ......................................................................................................................... 9

R. 2:9-5(a)....................................................................................................................... 12

Rule 4:59-2(a) ......................................................................................... 8, 9, 10, 14

## **PRELIMINARY STATEMENT**

Plaintiffs Chana Ringel ("*Chana*") and CR Lakewood, LLC ("*CR Lakewood*"), individually, and derivatively on behalf of BCR Lakewood Holdings, LLC, have once again been forced to seek judicial intervention to compel defendants Benjamin Ringel ("*Ben*") and BR Lakewood, LLC ("*BR Lakewood*") to do not only what Defendants agreed to do in the settlement agreement, but what this Court has repeatedly ***ordered*** Defendants to do.

By now, the Court is intimately familiar with the parties' settlement agreement in this matter. That agreement, reached in February 2020 and ordered by the Court ***over eighteen (18) months*** ago in May 2020, provides, in pertinent part, that the property located at 1703 Lexington Avenue in Lakewood, New Jersey (the "*Pinewood Property*") would be sold to the "***highest bidder***" and Ben "agreed to fully cooperate with the sale of the Pinewood Complex including signing all necessary documents." After a lengthy marketing process by the agreed-upon broker, and after numerous bids were submitted, and after Defendants refused to accept the obvious, the Court entered an order on August 25, 2021 declaring that the "***highest bidder***" was Rushmore Capital, LLC ("*Rushmore*"), and ordering that a contract for the sale of the Pinewood Property to Rushmore be prepared.

Like he has done since the settlement agreement was first enforced by the Court over eighteen (18) months ago, Ben has done everything in his power to avoid performing under the Court-ordered settlement agreement. As detailed in Rushmore's pending application, Ben has refused to sign the sales contract, despite the fact that Rushmore and Plaintiffs have signed it, and has completely ignored the multiple outreaches and requests that he sign the contract. Instead, Ben has stated that the Pinewood Property will not be sold to Rushmore—despite the August 25, 2021 Order—and that he will be the one purchasing the property. Ben is also refusing to agree to make necessary repairs following a fire at the Pinewood apartments because he asserts he will be

purchasing the Pinewood Property and is intending to add a third floor to the building.  Setting aside the fact that Ben has no authority to direct the Court-appointed Special Fiscal Agent to refrain taking any action since Ben was barred from having any management rights in November 2015 and the parties agreed and the Court ordered that "the Pinewood Complex will continue to be managed by the current management company **under the Court's existing order consistent with past practice**,"  Ben's conduct and statements make clear that he has no intention to do what this Court has ordered him to do.

Because it is obvious that Ben will never do what the Court orders him to do, Plaintiffs respectfully request that in accordance with Rule 4:59-2(a), the Court appoint a special agent on behalf of Ben and BR Lakewood to execute the sales contract and any all other documents necessary to finalize the sale of the Pinewood Property to Rushmore, and to award Plaintiffs their reasonable attorneys' fees and costs in having to once again seek judicial intervention in this matter.

## BACKGROUND

On March 10, 2020, Defendants filed a motion to enforce the settlement, which was granted by order dated May 8, 2020.  The May 8, 2020 Order provided that the terms of the settlement were set forth in the Term Sheet attached as Exhibit A to the March 10, 2020 Certification of Bruce Nagel, with the following exceptions: "Section 3(i) – (iii) is excised – the parties agreed to public sale; and Section V is amended – tax efficiencies are agreed to – to the extent they benefit both parties."  See **Exhibit "A"** attached to the Certification of Matthew N. Fiorovanti, Esq. (the "*Fiorovanti Cert.*").  The Term Sheet provided, in pertinent part:

> The Parties agree to sell the Pinewood Complex to a third party purchaser or to either Chana Ringel or Benjamin Ringel, solely or in partnership or conjunction with any person or entity, via an arm's length sales process ('*Sale Process*') intended to maximize the value of the Pinewood Complex, to be brokered by a mutually acceptable real estate broker (the '*Broker*') pursuant to a listing agreement with the Broker in a form mutually acceptable to the Parties.  Within fourteen (14) days from the date of the full execution of the Term Sheet, the Parties shall select the Broker.  In the event the Parties cannot agree on the Broker within this fourteen (14) day period, the CR Parties shall propose the names of three (3) brokers to the BR Parties, who shall select one of the proposed brokers to serve as the Broker within seven (7) days.  The Sale Process shall provide for the sale of the Pinewood Complex to the highest bidder pursuant to a binding agreement without any contingencies to closing including without limitation any due diligence or mortgage contingency.  The proceeds of such sale (net of any customary closing costs, apportionment of Property Expenses, and out of pocket costs and expenses associated with the sale incurred by, or payable to, the Broker) shall be split equally between the CR Parties and the BR Parties, subject to the amount to the $2.5 million of escrowed funds from each side ($5 million in total).  In the event of such contingency, ***the Parties agree to fully cooperate with the sale of the Pinewood Complex, including signing all necessary documents***, facilitating access to the Pinewood Complex to the Broker, other brokers, and prospective buyers, and promptly providing or authorizing the provision of such financial and other information as may be requested by prospective buyers.  ***The Parties shall have no discretion over the terms and consideration of any sale by the Broker other than that such sale shall comply with this provision and the Sale Process***.  [Ibid. (emphasis added)].

Since the May 8, 2020 Order, for the past eighteen (18) months, Defendants have done everything possible *not* to comply with the settlement.  On July 7, 2020, Defendants filed a motion

to amend the May 8, 2020 Order.  See **Exhibit "B"** attached to the Fiorovanti Cert.  Through the

motion, Defendants sought to change or eliminate certain provisions in the Settlement Agreement,

and to add additional provisions.

On September 4, 2020, the Court rejected most of the requests made by Defendants (other

than revisions that both parties agreed to) and entered orders which provided that the May 8, 2020

Order was amended and supplemented to provide that "the Term Sheet annexed hereto as Exhibit

'A' is hereby enforced in its entirety."  See **Exhibit "C"** attached to the Fiorovanti Cert.  The

Court explained its reasons in a comprehensive Statement of Reasons which accompanied its

orders.  See **Exhibit "D"** attached to the Fiorovanti Cert.

On September 11, 2020, Defendant then filed a motion for reconsideration of the

September 4, 2020 Order, which was denied by order dated October 16, 2020.  See **Exhibit "E"**

attached to the Fiorovanti Cert.

Thereafter, the parties engaged Gebroe Hammer as the broker to list and market the

Pinewood Property for sale in accordance with the Court-ordered settlement agreement.  Yet

despite the fact that Defendants had originally proposed Gebroe Hammer, consistent with their

attempts to throw up as many roadblocks as possible to the sale, on May 25, 2021, Defendants

submitted an Order to Show Cause seeking the entry of an order "[a]dopting the highest bid from

AJH Management LLC regarding the sale of the [Pinewood Property] and awarding the contract

to AJH Management LLC," or "[i]n the alternative, appointing a special master to oversee a bid

off or private auction between the two highest bidders for the Pinewood Property – AJH

Management LLC and Rushmore Capital and in the event Rushmore Capital is involved, fully

disclosing the relationship between Mr. Brecher/Gebroe Hammer and Rushmore Capital."  See

**Exhibit "F"** attached to the Fiorovanti Cert.

On May 26, 2021, Plaintiffs filed a cross-motion seeking the entry of an order: (A) authorizing and compelling the sale of the Pinewood Property to Rushmore in accordance with the terms and conditions set forth in an offer dated April 23, 2021; (B) appointing Richard Kelen, Esq. of the law firm Feinstein Raiss Kelen to serve as the neutral real estate counsel to represent BCR Pinewood LLC in connection with the sale of the Pinewood Property to Rushmore; and (C) authorizing and directing Mr. Kelen to prepare and deliver a written contract for the sale of the Pinewood Property on commercially reasonable terms with no mortgage contingency and with a prompt closing date to Rushmore within three (3) days of the return date.  See **Exhibit "G"** attached to the Fiorovanti Cert.

By order dated June 4, 2021, the Court concluded that Mr. Brecher did not have a conflict of interest or any bias that would prevent him from acting as the broker, and denied Defendants' application to disqualify Mr. Brecher as the broker for the sale of the Pinewood Property.  See **Exhibit "H"** attached to the Fiorovanti Cert.  However, the Court rejected the most recent bids received by Mr. Brecher "as a result of the confusion attendant to the recent round of bids," and ordered that Mr. Brecher "will continue to market and sell the subject property in a process to be determined by him to be appropriate, solely in his discretion."  Ibid.

Thereafter, Mr. Brecher solicited and obtained "final bids" from the prospective purchasers under the mandate set forth in the June 4, 2021 Order.  By letter dated July 29, 2021, Mr. Mandelbaum, who was requested by Mr. Brecher to oversee the bidding for the Pinewood Property, advised Judge Hodgson that the bids were open that day "and a successful bidder was selected."  See **Exhibit "I"** attached to the Fiorovanti Cert.  That "successful bidder" was Rushmore, with a winning bid in the amount of $47,100,000.

Once again, Defendants refused to accept the outcome of the bidding process or comply with the Court-ordered settlement agreement.  Instead, by letter dated August 3, 2021, counsel for Defendants stated to the Court that "based upon all the facts and circumstances, the bid by [Defendants] is the highest and best bid as it nets the parties more than any of the other bids." See **Exhibit "J"** attached to the Fiorovanti Cert.  (Aside from the net proceeds assertion being false, this was the first time that Defendants ever took the position that the "***highest bid***" actually meant "most net proceeds"—a position that is contrary to the plain language of the Court-ordered settlement agreement as well as Defendants' prior interpretation of the agreement.)

Given Defendants' refusal to accept Rushmore as the highest bidder, Plaintiffs were forced to file another Order to Show Cause on August 11, 2021, seeking an order declaring and adjudging that Rushmore was the highest bidder for the purchase of the Pinewood Property for the purchase price of $47,100,000, and authorizing Mr. Mandelbaum to finalize the written contract for the sale of the Pinewood Property to Rushmore.

On August 17, 2021, Defendants filed a cross-motion seeking an order declaring and adjudging that BR Lakewood was the highest bidder for the purchase of the Pinewood Property for the purchase price of $46,391,000 – which is obviously lower than Rushmore's bid of $47,100,000 as well as another bid for the property – and authorizing Mr. Mandelbaum to finalize the written contract for the sale of the Pinewood Property to Rushmore.

On August 23, 2021, the Court entered an order denying Defendants' cross-motion for an order declaring BR Lakewood, LLC the highest bidder.  See **Exhibit "K"** attached to the Fiorovanti Cert.

On August 25, 2021, the Court entered an order granting Plaintiffs' application and declared Rushmore to be the highest bidder for the Pinewood Property for the purchase price of

$47,100,000, and authorized Mr. Mandelbaum to finalize the written contract for the sale of the Pinewood Property to Rushmore. See **Exhibit "L"** attached to the Fiorovanti Cert.

Unsurprisingly, Defendants have once again refused to cooperate with the sale, and have instead continued to do what they have done for the past year and a half: failed to comply with the settlement agreement and numerous orders entered by the Court. Plaintiffs incorporate by reference the factual recitations set forth in Rushmore's application to enforce the settlement agreement. As set forth in the Certification of Issac Scheinerman submitted on behalf of Rushmore, despite the fact that Rushmore and Plaintiffs have executed a revised sales contract, Defendants have refused to do so despite the fact that settlement agreement as ordered by the Court requires Defendants to "fully cooperate with the sale of the Pinewood Complex including signing all necessary documents." As set forth in Rushmore's application, Defendants have completely ignored all outreaches and requests to proceed with the execution of the contract.

In addition, as set forth in the accompanying Certification of Chana Ringel (the "*Chana Cert.*"), Ben has taken the position that the Pinewood Property will *not* be sold to Rushmore—despite the August 25, 2021 Order—and that he will be purchasing the property himself. There was recently a fire at the Pinewood Property, which resulted in significant damage to several of the apartments at the complex. Ben has refused to approve the necessary repairs because he claims "he is buying the property" and is preparing architectural plans to put a third floor on the building. Ben has no right to interfere with performing such repairs, as Ben was barred by the Court from having any management rights in November 2015 and the parties agreed and the Court ordered that "the Pinewood Complex will continue to be managed by the current management company **under the Court's existing order consistent with past practice**." More importantly for purposes of this application, Ben's conduct and statements make clear that he has no intention

of complying with the Court's numerous orders which require the Pinewood Property to be sold to Rushmore.

Because it is obvious that Ben will never do what the Court orders him to do, Plaintiffs respectfully request that in accordance with Rule 4:59-2(a), the Court appoint a special agent on behalf of Ben and BR Lakewood to execute the sales contract and any all other documents necessary to finalize the sale of the Pinewood Property to Rushmore, and to award Plaintiffs her reasonable attorneys' fees and costs in having to once again seek judicial intervention in this matter.

## LEGAL ARGUMENT

### POINT I

**THE COURT SHOULD FIND DEFENDANTS IN CONTEMPT OF COURT THROUGH DEFENDANTS' CONTINUING REFUSAL TO COMPLY WITH THE MAY 8, 2020 ORDER, SEPTEMBER 4, 2020 ORDERS AND AUGUST 25, 2021 ORDER AND APPOINT A SPECIAL AGENT ON BEHALF OF BENJAMIN RINGEL AND BR LAKEWOOD, LLC UNDER R. 4:59-2(a) TO EXECUTE THE SALES CONTRACT AND ALL OTHER DOCUMENTS NECESSARY TO FINALIZE THE SALE OF THE PINEWOOD PROPERTY TO RUSHMORE CAPITAL, LLC**

Under R. 1:10-3, a litigant in any action may seek relief by application in the event of contempt of court. Rule 1:10-3 "allow[s] for judicial discretion in fashioning relief to litigants when a party does not comply with a judgment or order." North Jersey Media Group, Inc. v. State, Office of Governor, 451 N.J. Super. 282, 296 (App. Div. 2017) (quoting In re N.J.A.C. 5:96 & 6:97, 221 N.J. 1, 17-18 (2015)). "The particular manner in which compliance may be sought is left to the court's sound discretion." Ibid. (quoting Bd. of Educ. of Middletown v. Middletown Twp. Educ. Ass'n, 352 N.J. Super. 501, 509 (Ch. Div. 2001)).

In addition to the broad enforcement authority conferred under R. 1:10-3, Rule 4:59-2(a) provides:

> If a judgment or order directs a party to perform a specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of such defaulting party by some other person appointed by the court, and the act when so done shall have like effect as if done by the defaulting party.

"Whether by designation of an attorney-in-fact, fiscal agent, or by other equitable appointment, the court of chancery is not powerless to devise practical means of rendering justice in the face of problems created by a litigant." Julius v. Julius, 320 N.J. Super. 297, 310 (App. Div. 1999).

The decision in <u>Delaney v. Dykstra</u>, 2019 N.J. Super. Unpub. LEXIS 1765 (N.J. Super. Ct. App. Div. Aug. 12, 2019),[1] is directly on point and constitutes compelling authority which underscores the Court's authority to appoint an agent on behalf of Ben and BR Lakewood to sign the purchase agreement and all necessary documents to finalize the sale of the Pinewood Property to Rushmore.  The <u>Delaney</u> case arose from a dispute among four members of CC Holdings, LLC ("<i>CCH</i>") which owned and developed a mixed-use development project in Sparta.  Three of the members removed member Brian Delaney ("<i>Delaney</i>") because of his alleged hostile and combative behavior towards them and his company's default on a loan from CCH.  <u>Id.</u> at *1-2. This led to separate lawsuits, which were consolidated.  <u>Id.</u> at *2.  Prior to trial, the parties reached a settlement agreement, which was placed on the record, which detailed CCH's purchase of Delaney's interest for $2.8 million.  <u>Ibid.</u>  The settlement provided for an initial payment to Delaney in the amount of $400,000 within ten days of signing the definitive agreement, and a payment of $1,600,000 within 60 days of when the key tenant advises that it will not exercise its outs of the lease, known as the "go hard" date.  <u>Id.</u> at *5.

Shortly after the settlement was reached, an issue arose regarding the "go hard" date.  <u>Id.</u> at *7.  As a result, another member filed a motion to secure the appointment of a special court agent under Rule 4:59-2(a) to execute the settlement agreement on Delaney's behalf because he refused to sign the document.  <u>Id.</u> at *8.  The Chancery judge granted the motion and appointed a special court agent vested with the power "to execute any and all documents on Delaney's behalf related to the [s]ettlement [a]greement and the [c]ourt's October 14, 2016 [o]rder."  <u>Ibid.</u>  Notably, the Chancery judge also awarded the moving member his attorneys' fees in the amount of $5,916.44.  <u>Id.</u> at *8-9.

---

[1] A true and accurate copy of the <u>Delaney</u> decision is attached as **Exhibit "L"** to the Fiorovanti Cert.

Delaney continued to attempt to curtail the settlement agreement by filing a motion to, among other things, enjoin the sale or encumbrance of the project without providing him thirty days' notice or, in the alternative, to maintain the project's status quo. Id. at *9. This motion was denied.

Delaney then filed a motion to stay the order appointing a special fiscal agent to execute the settlement agreement in anticipation of the other members completing his buyout. Id. at *10. In response, the other members filed an application seeking specific performance to finalize the settlement agreement with the execution of closing documents to terminate Delaney's CCH membership with the $2.8 million buyout. Ibid. The court granted the members' motion to compel the closing of Delaney's buyout from CCH according to the settlement agreement "through the special court agent." Ibid. Once again, the court awarded the members their attorney's fees and costs in the amount of $10,017.16 to one member and $7,977.90 to the others. Id. at *10-11.

On appeal, Delaney argued that the Chancery judge abused his discretion by prematurely appointing a special court agent to execute the settlement agreement on his behalf. Id. at *17. The Appellate Division disagreed. Ibid. The Appellate Division observed that the trial court concluded that due to Delaney's "continued resistance" to implementing the terms of the settlement agreement, it was necessary to appoint an agent to execute the necessary documents to see to it that the settlement would go forward "and ... this case can finally ... be resolved." Id. at *20.

Like Delaney, Ben has "continually resisted" performing under the Court-ordered settlement agreement. Ben is interfering with the sale to Rushmore in violation of the settlement agreement and multiple orders of this Court. Indeed, Ben has claimed that he will be buying the property, not Rushmore, which is contrary to reality and multiple orders of this Court. The Court has ruled that the Pinewood Property must be sold to Rushmore, and that a contract for sale must

- 11 -

be prepared, and that the parties must sign all necessary documentation.  Just as the Chancery

judge in Delaney was authorized to appoint a special agent on behalf of the defendant to sign the

settlement agreement which provided for the buyout of the defendants' interest in the company,

this Court is authorized to appoint an agent on behalf of Ben and BR Lakewood to sign the sales

contract and all other documents necessary to finalize the sale.  Enough is enough.  As the

Chancery judge aptly observed in Delaney, such step is necessary to enable the settlement to move

forward so that "this case can finally be resolved."

        The fact that Defendants have filed an appeal of the August 25, 2021 Order compelling the

sale of the Pinewood Property to Rushmore is of no consequence.  Unless and until this Court or

the Appellate Division enters a stay of the enforcement of the August 25, 2021 Order, it remains

in full force and effect.  See R. 2:9-5(a) ("neither an appeal, nor motion for leave to appeal, nor a

proceeding for certification, nor any other proceeding in the matter shall stay proceedings in any

court in a civil action..."); D'Arc v. D'Arc, 175 N.J. Super. 598, 601 (App. Div. 1980).  Similarly,

the fact that Defendants have only recently filed a motion for a stay, in and of itself, does not

automatically mean that Defendants can simply refuse to avoid complying with the Court's

orders—particularly since Defendants' non-compliance has been ongoing for months.  (As will be

set forth in greater detail in Plaintiffs' opposition to Defendants' motion for a stay, Defendants

cannot satisfy the standards for such relief as set forth in Crowe v. De Gioia, 90 N.J. 126 (1982),

which is likely why Defendants have waited five (5) months after the entry of the August 25, 2021

Order before making such specious application.  To the contrary, granting such a motion will delay

resolution of the sale and these proceedings and prejudice Plaintiffs.)

        It is beyond dispute that Defendants have failed to comply with: the May 7, 2020 which

enforced the settlement agreement that required the Pinewood Property to be sold to the highest

bidder and required Ben to fully cooperate with signing all documentation to accomplish that sale; the September 4, 2020 Order which repeated the Court's prior order and rejected Ben's attempt to change the terms of the parties' agreement; and the August 25, 2021 Order which declared that Rushmore was the highest bidder and ordered that a contract be prepared and entered into by the parties. It is equally clear that regardless of how many orders the Court enters, Ben will not sign any document to effectuate the sale of the Pinewood Property to Rushmore. A special agent should be appointed to sign such documents on behalf of Ben and BR Lakewood, so that Defendants can no longer avoid performing as ordered.[2]

### POINT II

### THE COURT SHOULD AWARD PLAINTIFFS THEIR REASONABLE ATTORNEYS' FEES AND COSTS IN CONNECTION WITH THIS APPLICATION

Plaintiffs are also entitled to their attorneys' fees incurred in connection with this application, as it was commenced as a result of Defendants' repeated and continual violation of numerous orders of the Court. See Pressler & Verniero, *Current N.J. Court Rules*, cmt. 4.4.5 on R. 1:10-3 (2021) ("[T]his rule provision allowing for attorney's fees recognizes that as a matter of fundamental fairness, a party who willfully fails to comply with an order or judgment entitling his adversary to litigant's rights is properly chargeable with his adversary's enforcement expenses.").

Defendants have repeatedly refused to do as ordered by the Court. More egregiously, Ben has expressly acknowledged that he will continue to refuse to do so, as he has stated that he will be the purchaser of the Pinewood Property. Plaintiffs had no choice but to file this motion, and the Court should award them their reasonable attorneys' fees and costs.

---

[2]   It should be noted that Defendants have previously been sanctioned by this Court for failure to comply with discovery in the underlying litigation, and there are many orders that are publicly available and previously supplied to the Court where Mr. Ringel has been sanctioned and found in contempt by other courts for failure to comply with court orders.

## **CONCLUSION**

For the reasons set forth above, the court should find Defendant in contempt of Court, and appoint a special agent on behalf of Ben and BR Lakewood to execute the sales contract and any all other documents necessary to finalize the sale of the Pinewood Property to Rushmore pursuant to Rule 4:59-2(a). In addition, the court should award Plaintiffs their reasonable attorneys' fees and costs incurred in making this motion.

GIORDANO, HALLERAN & CIESLA
A Professional Corporation
125 Half Mile Road, Suite 300
Red Bank, N.J. 07701-6777
(732) 741-3900

Efrem Schwalb, Esq.
KOFFSKY SCHWALB LLC
500 Seventh Avenue, 8th Floor
New York, NY 10018

Attorneys for Plaintiffs, Chana Ringel and CR Lakewood, LLC, individually, and derivatively on behalf of BCR Lakewood Holdings, LLC and Chana Ringel, individually and derivatively on behalf of BCR Oakridge, LLC

By: _/s Matthew N. Fiorovanti_____
   MATTHEW N. FIOROVANTI
   EFREM SCHWALB

Dated: January 27, 2022

Docs #5504028-v1

# EXHIBIT L

## Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas   New York, NY 10036-6710   212.336.2000   fax 212.336.2222   www.pbwt.com

January 7, 2022

Peter Harvey
Partner
(212) 336-2810
pcharvey@pbwt.com

**BY E-MAIL**

Efrem Schwalb, Esq.
Koffsky Schwalb LLC
349 Fifth Avenue
Suite 733
New York, NY  10016
**eschwalb@koffskyschwalb.com**

Matthew Fiorovanti, Esq.
Girodano Halleron & Ciesla
125 Half Mile Road
Suite 300
Red Bank, NJ  07701
**mfiorovanti@ghclaw.com**

Re:   **Pinewood - Ringel**

Dear Counsel:

We represent BR Lakewood LLC and Mr. Ben Ringel.  As you know, Pinewood Apartments either will be retained by Ben Ringel and his children or be sold to Rushmore Equities.  Due to the recent fire at Pinewood, decisions need to be made rather quickly regarding both its restoration and its mortgage with Investors Bank that expires in six (6) months.

BR Lakewood LLC is prepared to purchase Chana Ringel's share within the next forty (40) days by paying her the same amount she would receive as if Rushmore was buying Pinewood Apartments for $47,800,000; *i.e.* Rushmore's bid.  The amount Chana would receive will be $19,594,962.50.

Additionally, BCR Pinewood LLC will be taking out a new mortgage and will pay in full the Investors Bank obligation using proceeds from the new mortgage.  Hence, Chana will be released from the Investor Bank loan obligations.

Furthermore, for tax purposes, it appears that since this is a refinance, if Ben allows Chana to retain 1% in BCR Lakewood Holding LLC with no rights, Chana can treat the proceeds she receives in the buyout as a refinance and such proceeds would not be subject to

Efrem Schwalb, Esq.
Matthew Fiorovanti, Esq.
January 7, 2022
Page 2

capital gains tax.  This arrangement is highly beneficial to Chana as she would save over $8,000,000 in capital gains tax.  If Chana would like to use this tax deferral strategy, your tax counsel would need to talk to Ben's transaction and tax counsel to appropriately structure the transaction.

We anticipate closing the transaction on or about February 20, 2021.  We anticipate using the same assignment documents as used in the Gertners/Clifton Center assignment from 2021.  We will wire Chana's proceeds to Madison Title Company and it will act as Escrow Agent.

Please contact me at your earliest convenience, but no later than January 14, 2022, if your client is interested in the above proposal.

This letter is being sent pursuant to New Jersey Evidence Rule 408.  Thus, this letter is sent without prejudice, and both BR Lakewood LLC and Ben Ringel reserve all rights.

Very truly yours,

Peter Harvey

13251293v.2

# EXHIBIT M

**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Suite 400
301 Carnegie Center
Princeton, New Jersey 08543-5276
Tel. 609.452.0808
Fax 609.452.1147
Angelo A. Stio III (ID # 014791997)

*Attorneys for Intervenor Rushmore Capital LLC*

| | | |
|---|---|---|
| **CHANA RINGEL AND CR LAKEWOOD, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR LAKEWOOD HOLDINGS, LLC,** | : : : : : | **SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION OCEAN COUNTY** |
| **Plaintiffs,** | : | **DOCKET NO. OCN-C-127-15** |
| **vs.** | : : | <u>Civil Action</u> |
| **BR LAKEWOOD, LLC AND BENJAMIN RINGEL,** | : : : | |
| **Defendants.** | : : | |
| **CHANA RINGEL, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR OAKRIDGE, LLC,** | : : : : | |
| **Plaintiffs,** | : : | **DOCKET NO. OCN-C-152-16** |
| **vs.** | : : | <u>Civil Action</u> |
| **BENJAMIN RINGEL, SUNSET HILL OAKRIDGE PLAZA, LLC, JOHN DOES 1-10, AND ABC CORPORATION 1-10,** | : : : : : : | **ORDER** |
| **Defendants.** | : : | |

**THIS MATTER** having been open to the Court by Troutman Pepper Hamilton

Sanders LLP (Angelo A. Stio III appearing), attorneys for Intervenor Rushmore Capital

LLC ("Rushmore") by way of an Order to Show Cause to enforce litigant's rights under

R. 1:10-3, and the court having considered the papers submitted by Rushmore and any opposition papers submitted by Defendants BR Lakewood, LLC ("BR Lakewood"), Sunset Hill Oakridge Plaza, LLC and Benjamin Ringel ("Mr. Ringel") (collectively, the "Defendants"); and upon consideration of oral argument, if any; and for good cause shown.

It is on this _____ day of _____, 2022, hereby:

**ORDERED** that Rushmore's Order to Show Cause to enforce litigant's rights pursuant to R. 1:10-3 is hereby **GRANTED**; and it is further

**ORDERED** that Defendants must execute the sales contract attached to the Certification of Issac Scheinerman as Exhibit 8 (the "Sales Contract") within five (5) days of the date of this Order; and it is further

**ORDERED** that Defendants shall be subject to a monetary sanction of $500 per day until they execute the Sales Contract should they fail to do so within five (5) days of the date of this Order; and it is further

**ORDERED** that Defendants shall be taken into custody by the Sheriffs and committed to the Ocean County Jail until they execute the Sales Contract should they fail to do so within five (5) days of the date of this Order; and it is further

**ORDERED** that Defendants shall pay Rushmore for its reasonable attorneys' fees and costs incurred in connection to this Order to Show Cause under R. 1:10-3; and it is further

**ORDERED** that Rushmore may submit a bill of costs within 10 days of this Order; and it is further

**ORDERED** that if Defendants fail to comply with this Order, Rushmore may make further application to this Court for further and harsher sanctions by way of motion on short notice; and it is further

**ORDERED** that a copy of this Order shall be served on all counsel of record with _____

days of receipt.

_____
HON. FRANCIS J. HODGSON, JR., P.J. Ch.

| | |
|---|---|
| CHANA RINGEL AND CR LAKEWOOD, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR LAKEWOOD HOLDINGS, LLC,<br><br>    Plaintiffs,<br><br>        vs.<br><br>BR LAKEWOOD, LLC AND BENJAMIN RINGEL,<br><br>    Defendants, | **SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: OCEAN COUNTY**<br><br>Civil Action<br><br><br><br>Docket No. OCN-C-127-15 |
| CHANA RINGEL, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR OAKRIDGE, LLC,<br><br>    Plaintiffs,<br><br>        vs.<br><br>BENJAMIN RINGEL, SUNSET HILL OAKRIDGE PLAZA, LLC, JOHN DOES 1-10, AND ABC CORPORATION 1-10,<br><br>    Defendants, | Docket No. OCN-C-152-16<br><br>**CERTIFICATION OF BENJAMIN RINGEL IN SUPPORT OF DEFENDANTS' ORDER TO SHOW CAUSE** |

I, **BENJAMIN RINGEL,** being of full age, do hereby certify and state:

1.    I am a defendant in the above-captioned matters.  I have personal knowledge of this matter and the facts set forth in this Certification.

2.    On February 27, 2020, two lawsuits filed by Chana Ringel against BR Lakewood Holdings LLC, Sunset Hill Oakridge LLC, the Ringel Children's Trust, and me were settled through discussions held in chambers in this Court.

3.    On March 3, 2020, Chana Ringel attempted to rescind her agreement to abide by the material settlement terms to which both parties had agreed five (5) days earlier.  The settlement was subsequently embodied in a Term Sheet.

4.    For the next nine months, Defendants spent over $100,000 enforcing the terms of the Settlement Agreement (the "Term Sheet" or "Settlement").  Through various Orders and Opinions, this Court upheld the Settlement and issued a Term Sheet (the "Term Sheet") for the parties to sign. (*See* Harvey Cert. Exhibit D.)

5.    In the Term Sheet, this Court retained jurisdiction and sent all money claims to be arbitrated in front of a former Chancery Court Judge.  The parties chose the Honorable Robert P. Contillo, a retired Superior Court judge.

6.    The Term Sheet was a full settlement of all issues and controversies between the parties relating to the present actions.

7.    The Term Sheet dealt with any money damages which may be awarded in the arbitration. (Harvey Cert. Exhibit D. ¶ 5.)

2

This clause is a material terms of the settlement and is set forth in the Term Sheet.

8.     Despite this Court's retaining and having jurisdiction to enforce the terms of the Settlement Agreement, on May 30, 2021, Chana Ringel filed a Summons to commence a civil action in the New York Supreme Court (the "New York Action"), Index No. 653518/2021. (See **EXHIBIT A.**)

9.     Six months after filing the Summons in connection with the New York Action, on November 2, 2021, Chana filed a Complaint alleging that I had engaged in various fraudulent transfers of assets that could affect her ability to recover any judgment in these actions or in the arbitration. (See **EXHIBIT B.**)

10.    On January 17, 2022, I moved to dismiss the New York Action by filing a Motion and a Memorandum of Law in support of Defendants' Motion to Dismiss the Complaint. (See **EXHIBIT C.**)

11.    On February 23, 2022, Chana Ringel filed a Memorandum of Law in opposition to my Motion to Dismiss. (See **EXHIBIT E.**)

12.    On March 4, 2022, I filed a Reply Memorandum of Law in further support of my Motion to Dismiss. (See **EXHIBIT D.**)

13.    On January 7, 2022, my attorney, Peter Harvey, sent a letter to counsel for Chana. The letter offers to buy-out Chana's interest in the Pinewood Property for approximately $19.6 million – the same amount she agreed to accept from a third-party Rushmore Capital, LLC. Based on consultation with

3

various tax experts, this buy-out proposal is the most tax-
efficient manner to distribute the Pinewood Property, as
required by this Court's May 8, 2020 Order.  (Harvey Cert.
Exhibit. L.)  Chana did not accept the proposal, despite her
contractual obligation to do so.

14.  In response to Mr. Harvey's letter, on January 27,
2022, Chana brought an Order to Show Cause to enforce Litigant's
rights.  In so doing, Chana did not disclose to this Court that
she already had violated the Settlement Agreement in two
material ways, one of which was by filing the New York Action.

15.  I have reviewed the tax aspects of the buy-out
proposal with a tax lawyer who has expertise in real estate
transactions.  I reviewed with tax counsel the ownership
structure of BCR Pinewood LLC, BCR Lakewood Holdings LLC, the
appropriate tax returns, the Settlement Agreement, and the
relevant tax codes.  That counsel has advised me that a Section
1031 exchange with a third party is not feasible under these
circumstances.  The only way to adhere to the May 8, 2020 Order
requiring that the sale of Pinewood be completed in a tax
efficient manner that benefits both parties is to follow the
methodology stated in the January 7, 2022 letter of Peter
Harvey. (*See* Harvey Cert. Exhibits C, L.)

16.  Chana's breaches of the settlement discussed in
chambers with this Court and Term Sheet have caused there to be

4

only one reasonable path forward: to permit BR Lakewood LLC to buy out Chana's interest in the Pinewood Property and be reimbursed for all the legal fees it has expended since February 2020 enforcing the Settlement Agreement, including defending the New York Action.

17.  Chana will not suffer any financial loss as a result of this transaction.  In fact, she most likely will save over $6 million in taxes.

18.  Chana's counsel Mr. Schwalb represented to the New York Supreme Court that the Settlement Agreement is only a "partial settlement" and was never to be a full settlement. That assertion is contradicted by the terms of the settlement agreement. See (See **EXHIBIT E** at 5.)

19.  I have spent $200,000 in legal fees defending the New York Action and enforcing the Term Sheet.  Chana's actions have been in bad faith and violate the terms of the Term Sheet.

20.  I hold the view that Chana has acted in bad faith in filing the New York Action.  I also believe that this Court would not have granted relief in favor of Chana with respect to Pinewood Property had it known that Chana had violated the Term Sheet by filing the New York Action.

DATED:  March 9, 2022

/s/ Benjamin Ringel

Benjamin Ringel

5

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

CHANA RINGEL

                  Plaintiff,

  -against-

BENJAMIN RINGEL; BR LAKEWOOD, LLC;
RINGEL CHILDREN'S TRUST; YAEL RINGEL
as co-trustee of RINGEL CHILDREN'S TRUST;
BARUCH DAVID SCHREIBER as co-trustee of
RINGEL CHILDREN'S TRUST;JOHN AND
JANE DOES 1-10; and ABC CORPS. 1-10,

                  Defendants.

Index No.:
Date Purchased:

**SUMMONS WITH NOTICE**

Plaintiffs designate New York
County as the place of trial.

The basis of venue is Plaintiff's
place of residence at the time the
action was commenced under
CPLR § 503.

**To the above named Defendants:**

      **YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve
a copy of your answer, or, if the Complaint is not served with this Summons, to serve a Notice of
Appearance, on the Plaintiffs' Attorney within 20 days after the service of this Summons,
exclusive of the day of service (or within 30 days after the service is complete if this Summons is
not personally delivered to you within the State of New York); and in case of your failure to appear
or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: New York, New York
      May 30, 2021

                        /s/ Efrem Schwalb
                        Efrem Schwalb
                        KOFFSKY SCHWALB, LLC
                        *Attorneys for Plaintiff*
                        500 Seventh Avenue, 8th Floor
                        New York, New York 10018
                        (646) 553-1590

Notice: The nature of this action against defendants is for fraudulent transfer (e.g., N.Y. Debtor &
Cred. Law §§ 273, 273-a, 276, breach of contract, and piercing the corporate veil and alter ego
liability. Plaintiff seeks compensatory damages in an amount to be determined at trial but not less
than $10,000,000, punitive damages, plus attorney's fees and costs.

Index No. _____

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK

CHANA RINGEL

Plaintiff,

-against-

BENJAMIN RINGEL; BR LAKEWOOD, LLC; RINGEL CHILDREN'S TRUST; YAEL RINGEL as co-trustee of RINGEL CHILDREN'S TRUST; BARUCH DAVID SCHREIBER as co-trustee of RINGEL CHILDREN'S TRUST; JOHN AND JANE DOES 1-10; and ABC CORPS. 1-10

Defendants.

---

### SUMMONS WITH NOTICE

---

KOFFSKY SCHWALB, LLC
Attorneys for Plaintiff
Office and Post Office Address, Telephone
500 Seventh Avenue, 8th Floor
New York, New York 10018
(646) 553-1590

---

To

Signature (Rule 130-1.1-a)

_____
Print name beneath

Attorneys for

---

Service of a copy of the within                                     is hereby admitted.

Dated,

_____
Attorneys for

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| CHANA RINGEL, | Index No.: 653518/2021 |
| Plaintiff, | |
| -against- | **COMPLAINT** |
| BENJAMIN RINGEL; BR LAKEWOOD, LLC; RINGEL CHILDREN'S TRUST; YAEL RINGEL individually and as co-trustee of RINGEL CHILDREN'S TRUST; BARUCH DAVID SCHREIBER as co-trustee of RINGEL CHILDREN'S TRUST; JOHN AND JANE DOES 1-10; and ABC CORPS. 1-10, | |
| Defendants. | |

Plaintiff Chana Ringel ("C. Ringel"), complaining of defendants, through her undersigned counsel, hereby alleges as follows:

### Nature of Action

1.      This action seeks to void fraudulent transfers from Benjamin Ringel ("B. Ringel") to the various defendants.  C. Ringel was for several years a partner with B. Ringel in various real estate holdings.  C. Ringel brought suit against B. Ringel for various causes of action, which suit is currently the subject of an arbitration in New Jersey.  C. Ringel is accordingly a potential creditor of B. Ringel.

2.      B. Ringel has engaged in numerous acts of fraudulent transfer, designed to defeat any judgment of C. Ringel, as well as the claims and judgments of B. Ringel's numerous other creditors.  C. Ringel accordingly seeks a judgment against the defendants here, who are B. Ringel's various transferees and alter egos.

### The Parties

3.      Plaintiff Chana Ringel is an individual residing in New York, New York.

4.      Defendant Benjamin Ringel is an individual with an address of 219 Sagg Main Street, Sagaponack, NY 11962.

5.      Defendant BR Lakewood, LLC ("BR Lakewood") was a Delaware limited liability company with a registered agent of National Registered Agents, Inc., 1209 Orange Street, Wilmington, DE 19801.  BR Lakewood is currently inactive in Delaware and not registered or permitted to conduct business in the State of New York.  Ringel is the manager of BR Lakewood and has treated the company as his personal piggy bank to defraud his many creditors.

6.      Defendant Ringel Children's Trust is a trust formed under or pursuant to the laws of the State of New York (the "Trust") for the benefit of Marc Ringel, Sara Ringel, Jacob Wolf Ringel, and Edward Mayer Ringel (the "Trust").  Ringel controls the assets of the Trust and uses such assets to pay his own personal expenses.

7.      Defendant Yael Ringel, is an individual and a named trustee of the Trust with an address of 219 Sagg Main Street, Sagaponack, NY 11962.

8.      Defendant B. David Schreiber, is an individual and a named trustee of the Trust who resides in Lawrence, New York.

9.      Defendants John and Jane Does 1-10 are other parties whose identity is currently unknown to whom defendant B. Ringel has caused transfers of his assets to be made to or with whom he has deposited assets which he controls to avoid paying his creditors and are liable for B. Ringel's debts as alter egos of B. Ringel or fraudulent transferees of B. Ringel's assets.

10.     Defendants ABC Corps. are other entities whose identity is currently unknown to whom defendant B. Ringel has caused transfers of his assets to be made to or with whom he has deposited assets which he controls to avoid paying his creditors and are liable for B. Ringel's debts

2

as alter egos of B. Ringel or fraudulent transferees of B. Ringel's assets.

## Facts Common to All Claims

### Litigations Between C. Ringel and B. Ringel

11.     Currently pending in the Superior Court of New Jersey, Ocean County, are two
civil actions between C. Ringel, B. Ringel and various entities they own, entitled *Chana Ringel, et
al. v. Benjamin Ringel, et al.*,  Docket No. OCN-C-152-16 and *Chana Ringel v. BR Lakewood,
LLC, et al*., Docket No. OCN-C-127-15.

12.     In these actions, C. Ringel has asserted various causes of action against B. Ringel,
including breach of contract and breach of fiduciary duty, all related to his wrongful conduct in
connection with their joint real estate holdings.

13.     After years of litigation, the parties settled part of the controversy, and agreed to
submit the remaining claims to arbitration.  The matter is currently being arbitrated before the
Honorable Robert Contillo, retired judge of the Chancery Division of the New Jersey Superior
Court.

14.     C. Ringel's claims against B. Ringel exceed $2 million, plus interest and contractual
attorney's fees.  She is accordingly "a creditor whose claim has not matured" within the meaning
of NY Debtor and Creditor Law §279, which was in effect at the time of the fraudulent transfers
complained of herein.

### B. Ringel's Dispute With His Sister Chana Ringel

15.     In 2015, B. Ringel became embroiled in litigation with his sister, Chana Ringel,
before the New Jersey Superior Court, *Ringel et al. v Ringel et al.*, Docket No. OCN-C-127-15,
regarding their interests in entities that owned multiple properties in Lakewood, NJ (the
"Lakewood Properties") (the "Lakewood Dispute").

3

16.     In the Lakewood Dispute, on June 17, 2015, Chana and her entity CR Lakewood, LLC ("CR Lakewood") filed a verified complaint and order to show cause for preliminary restraints against B. Ringel and his entity BR Lakewood (another defendant here) alleging, among other things, that they improperly diverted distributions from an entity they jointly owned, BCR Lakewood Holdings, LLC, and its affiliated entities, to B. Ringel and entities controlled by B. Ringel.

17.     On November 6, 2015, the New Jersey Court entered an order enjoining B. Ringel from functioning as a manager of the Company and appointing Affiliated Management Co. ("Affiliated") as Special Fiscal Agent to take over the management of the Company and the Lakewood Properties.   Since that time, BR Lakewood received hundreds of thousands of distributions from Affiliated which were used by B. Ringel to pay his personal bills.

18.     On March 21, 2016, B. Ringel filed an answer to the verified complaint in the New Jersey action generally denying the allegations, except he admitted that he is the sole member of BR Lakewood and specifically asserted that he was the "sole owner" of BR Lakewood in the counterclaim.

19.     Chana Ringel and her entity CR Lakewood filed an amended verified complaint against Ringel and his entity BR Lakewood, on September 18, 2017.   On March 12, 2018, B. Ringel filed an answer to the complaint generally denying the allegations, except he again admitted that he is the sole owner of BR Lakewood and asserts that he is the "sole owner" of BR Lakewood, in his counterclaim.

**The RCG/JDWC Litigation Uncovers Fraudulent Transfers By Ringel**

20.     RCG LV Debt IV Non-REIT Assets Holdings, LLC ("RCG") was an entity that loaned money to various business entities, for which loans B. Ringel gave personal guarantees.

4

21.     On January 8, 2016, RCG obtained and secured the entry of a judgment and decree against Ringel, individually, in the New Jersey Superior Court, Chancery Division of Ocean County under Docket No.: OCN-C-209-13 (the "Loan Dispute"), by which RCG was entitled to recover a judgment in the principal sum of $22,444,851.08, plus legal fees, costs, and interest.

22.     In 2019, RCG assigned its interest in the judgment to JDWC, LLC ("JDWC").

23.     JDWC conducted due diligence and discovered B. Ringel had an interest in multiple LLCs formed in New Jersey including, but not limited to BCR Lakewood Holdings, LLC, BR Lakewood, BCR Oakridge, LLC, BCR Pinewood Realty, LLC, BCR 12th Carey Realty, LLC, BCR Gertners Realty, LLC, BCR Clifton Center Realty, LLC, BCR Clifton Avenue Realty, LLC, Sunset Hill Oakridge Plaza, LLC, and Armstrong Realty Management Corp.

24.     B. Ringel's interest in those properties is worth in excess of $25 million. Furthermore, those properties generate substantial rental income from which B. Ringel has been and continues to pay his personal expenses including for expensive vacations, but not to pay his many judgment creditors.

25.     On or about October 8, 2019, JDWC filed a motion in the New Jersey Superior Court seeking the entry of a Charging Order seeking to compel each entity to turn over all distributions due to B. Ringel to JDWC to satisfy its judgment.  On October 25, 2019, the New Jersey Superior Court entered the requested Charging Order.

26.     On or about March 31, 2020, B. Ringel filed a motion to modify the Charging Order.  In support of the motion, B. Ringel submitted a certification dated March 30, 2020 (the "B. Ringel Certification").

5

27.     In the B. Ringel Certification, B. Ringel claimed that, on January 25, 2012, he assigned forty percent (40%) of his ownership interest in BR Lakewood to the Trust for the benefit of his four (4) children.

28.     B. Ringel also claimed that, in June of 2015 he assigned an additional forty percent (40%) of his ownership interest in BR Lakewood to the alleged Trust.

29.     A review of the assignment documents attached to the B. Ringel Certification shows that B. Ringel allegedly assigned the membership interest to the Trust for "love and affection," which is of no value to any of B. Ringel's creditors.

**Fraudulent Transfer of Property at 15 Washington Ave., Lawrence, New York**

30.     B. Ringel fraudulently transferred a property located at 15 Washington Avenue, Lawrence, New York, which is listed as Section 41, Block 87, Lot 23 of the tax map of the Town of Lawrence (the "15 Washington Property").

31.     B. Ringel acquired the 15 Washington Property in 2004 for substantial consideration.

32.     On or about February 24, 2016, B. Ringel transferred the 15 Washington Property to his wife Yael Ringel, for minimal or no consideration.  This was at the time that Ringel was already a defendant in one of the two actions brought against him by Chana Ringel in New Jersey Superior Court, as well as actions brought by other creditors.

**As and For a First Cause of Action**
(Fraudulent Transfers by a Defendant Pursuant to
N.Y. Debt. & Cred. Law § 273-a Against All Defendants)

33.     C. Ringel repeats and reincorporates the foregoing paragraphs as if set forth fully herein.

34.     B. Ringel's transfer of 40% of his interest in BR Lakewood in 2012, his transfer of 40% of his interest in BR Lakewood in 2015, and his transfer of the 15 Washington Property (collectively the "Fraudulent Transfers") were consummated without any consideration to B. Ringel and the Fraudulent Transfers were not made in good faith and constitute fraudulent transfers under Section 273-a of the New York Debtor and Creditor Law.

35.     The Fraudulent Transfers were made when B. Ringel was a defendant in multiple actions including in the two actions brought by C. Ringel against him in New Jersey Superior Court.

36.     As a direct and proximate result of the conduct and acts set forth above, C. Ringelhas been injured and suffered damages in an amount to be proven at trial.

37.     C. Ringel is entitled to have the Fraudulent Transfers set aside, damages against the transferees, punitive damages to prevent others from such egregious conduct, and such other relief as the Court may deem just and proper.

38.     As a result, the Fraudulent Transfers must be set aside pursuant to Sections 278 and 279 of the New York Debtor and Creditor Law, and judgment entered against each of the Defendants.

### As and For a Second Cause of Action
(Fraudulent Transfers by an Insolvent Pursuant to
N.Y. Debt. & Cred. Law § 273 Against All Defendants)

39.     C. Ringel repeats and reincorporates the foregoing paragraphs as if set forth fully herein.

40.     The Fraudulent Transfers were made at times when B. Ringel was insolvent as his assets at each such time were less than the amount required to pay his liabilities on existing debts, or at a time when he had or was left with unreasonably small capital.

7

41.     The Fraudulent Transfers were made when B. Ringel was a defendant in multiple actions including the two actions brought by C. Ringel against him in New Jersey Superior Court.

42.     As a direct and proximate result of the conduct and acts set forth above, C. Ringel has been injured and suffered damages in an amount to be proven at trial, and post-judgment interest as set forth in CPLR §§ 5003 and 5004.

43.     C. Ringel is entitled to have the Fraudulent Transfers set aside, damages against the transferees, punitive damages to prevent others from such egregious conduct and such other relief as the Court may deem just and proper.

44.     As a result, the Fraudulent Transfers must be set aside pursuant to Sections 278 and 279 of the New York Debtor and Creditor Law, and judgment entered against each of the Defendants.

### As and For a Third Cause of Action
(Fraudulent Transfers made with Intent to Defraud Pursuant to
N.Y. Debt. & Cred. Law § 276 Against All Defendants)

45.     C. Ringel repeats and reincorporates the foregoing paragraphs as if set forth fully herein.

46.     The Fraudulent Transfers were made with the intent to hinder, defraud, or delay C. Ringel and other creditors.

47.     The Fraudulent Transfers are replete with badges of fraud used to analyze the parties' intent:

(a) The transfers were to parties with close relationships to B. Ringel, such as to the Trust, whose beneficiaries are B. Ringel's four children, or to the family members directly;

(b) Such transfers were not in the usual course of business for B. Ringel;

8

23-22655 Doc 2-9 Filed 09/07/23 Entered 09/07/23 20:04:25 Exhibit EX-I Pg
296 of 374

(c) B. Ringel knew that C. Ringel was a potential creditor, and many of the Fraudulent Transfers were made after C. Ringel commenced one or both of the New Jersey Superior Court actions against him;

(d) The consideration was completely inadequate; indeed, there was zero consideration paid at all; and

(e) B. Ringel in fact retained control and/or possession of the assets that were transferred and the parties to whom transfers were made.

48.     The Fraudulent Transfers were also made to defraud other interests and creditors, including RCG/JDWC, which have been pursuing claims against B. Ringel prior to any of the Fraudulent Transfers.

49.     B. Ringel has also taken additional steps to defraud his various creditors, including transferring his house to his wife to avoid it being levied upon by other creditors.

50.     As a direct and proximate result of the conduct and acts set forth above, C. Ringel has been injured and suffered damages in an amount to be proven at trial.

51.     C. Ringel is entitled to have the Fraudulent Transfers set aside, damages against the transferees, punitive damages to prevent others from such egregious conduct, and such other relief as the Court may deem just and proper.

52.     As a result, the Fraudulent Transfers must be set aside pursuant to Sections 278 and 279 of the New York Debtor and Creditor Law, and judgment entered against each of the Defendants.

WHEREFORE, C. Ringel requests the Court grant it the following relief:

A. On the first cause of action, for a declaration that the Fraudulent Transfers were fraudulent transfers under § 273-a of the N.Y. Debt. & Cred. Law, setting aside the Fraudulent

9

Transfers, for a charging order to be entered against B. Ringel's fraudulently transferred interests in the Entities, and for compensatory and punitive damages against the defendants.

B. On the second cause of action, for a declaration that the Fraudulent Transfers were fraudulent transfers under § 273 of the N.Y. Debt. & Cred. Law, setting aside the Fraudulent Transfers, for a charging order to be entered against B. Ringel's fraudulently transferred interests in the Entities, and for compensatory and punitive damages against the defendants.

C. On the third cause of action, for a declaration that the Fraudulent Transfers were fraudulent transfers under § 276 of the N.Y. Debt. & Cred. Law, setting aside the Fraudulent Transfers, for a charging order to be entered against B. Ringel's fraudulently transferred interests in the Entities, and for compensatory and punitive damages against the defendants;

D. For an order that all of the properties of the Fraudulent Transfers be transferred to Chana Ringel or liquidate in sufficient amount to satisfy any judgment held by Chana Ringel.

E. Attorney's fees pursuant to § 276-a of the N.Y. Debt. & Cred. Law and other law; and

F. Such other relief as the Court may deem just and proper.

Dated: New York, New York
      November 1, 2021

/s/ Efrem Schwalb
Efrem Schwalb
KOFFSKY SCHWALB, LLC
*Attorneys for Plaintiff*
500 Seventh Avenue, 8th Floor
New York, New York 10018
(646) 553-1590

10

# EXHIBIT C

23-22655   Doc 2-9   Filed 09/07/23   Entered 09/07/23 20:04:25   Exhibit Ex. I   Pg
299 of 374

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------X
CHANA RINGEL,

                                            Index No.: 653518/2021

                              Plaintiff,

                    - against -


BENJAMIN RINGEL; BR LAKEWOOD, LLC; RINGEL
CHILDREN'S TRUST; YAEL RINGEL as co-trustee of RINGEL
CHILDREN'S TRUST; BARUCH DAVID SCHREIBER as co-
trustee of RINGEL CHILDREN'S TRUST; JOHN AND JANE
DOES 1-10; and ABC CORPS. 1-10,

                              Defendants.
--------------------------------------------------------------------X



# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT



**BERG & DAVID, PLLC**
372 Doughty Boulevard
Inwood, New York 11096
(718) 989-1392

23-22655   Doc 2-9   Filed 09/07/23   Entered 09/07/23 20:04:25   Exhibit X   Pg
300 of 374

# Table of Contents

I.    Motion to dismiss standard .................................................................................... 6

II.   Plaintiff failed to state a claim for fraudulent conveyance under NYDCL § 273-a (First
Cause of Action) ........................................................................................................ 7

III.  Plaintiff failed to state a claim for fraudulent conveyance under NYDCL § 273 (Second
Cause of Action) ........................................................................................................ 9

a.    Plaintiff Has Not Adequately Pled Insolvency ................................................... 9

b.    Plaintiff Has Not and Cannot Allege Any Cognizable Harm with Respect to Transfers
Between BRL and the Children's Trust ............................................................. 11

IV.   Plaintiff failed to state a claim for fraudulent conveyance under NYDCL § 276 (THIRD
Cause of Action) ...................................................................................................... 12

V.    The Court lacks subject matter Jurisdiction over Plaintiff's Claims ......................... 13

VI.   plaintiff's claims regarding the firs transfers from brl to the children's trust is barred by the
statute of limitations ............................................................................................... 14

2

# Table of Authorities

## Cases

*Am. Inv. Bank, NA. v. Marine Midland Bank, NA.*, 191 A.D.2d 690 [1993]).......................9

*Avilon Auto. Group v Leontiev*, 2020 NY Slip Op 30837[U], *14 (Sup Ct, NY Cty. 2020) ......................12

*Basis Yield Alpha Fund (Master) V. Goldman Sachs Group, Inc.*, 115 A.D.3d 126, 134 (1st Dep't 2014).7

*Carlyle, LLC v Quik Park 1633 Garage LLC*, 160 A.D.3d 476, 477 (1st Dep't 2018)..............................12

*Central State Bank v. Am. Appraisal Co.*, 33 A.D.2d 1009, 1010 (1st Dep't 1970 .....................................7

*Chambers v. Weinstein*, 44 Misc.3d 1224(A), at *7 (Sup. Ct. N.Y. Cty. 2014) ..........................................12

*Frybergh v Weissman*, 145 A.D.2d 531, 531-532 (2d Dep't 1988)..............................................................8

*Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 326 [2002] ..........................................................6

*In re 50 Pine Co*, 317 B.R. 276 (Bankr. S.D.N.Y. 2004) ............................................................................9

*Joslin v. Lopez*, 309 A.D.2d 837, 837-38 (2d Dep't 2003) .........................................................................9

*Kenyon & Kenyon LLP v. SightSound Tech., LLC*, 151 A.D.3d 530, 531 (1st Dep't 2017) .......................9

*Kim v. Ji Song Yoo*, 311 F. Supp. 3d 598, 612 (S.D.N.Y. 2018) ...........................................................9, 11

*Landmark Ventures, Inc. v Birger*, 147 A.D.3d 497, 497 (1st Dep't 2017)............................................6, 13

*Lzppe v. Bairnco Corp.*, 249 F. Supp. 3d 357, 379-80 (S.D.N.Y. 2003) ...................................................9

*Malast v. Civil Service Employees Ass'n, Inc., Local 830*, 28 A.D.3d 650 (2nd Dep't 2015) ....................6

*Matter of Davis*, 292 A.D.2d 452, 738 NYS2d 884 (2002) .....................................................................13

*Matter of Frutiger*, 29 N.Y.2d 143, 149-150 (1971) ...............................................................................13

*Metzger v Yuenger Woodworking Corp.*, 33 A.D.3d 678, 679 (2d Dep't 2006) ......................................14

*O'Toole v. Karnani (In re Trinsum Group, Ina)*, 460 B.R. 379, 392 (Bankr. S.D.N.Y. 2011) .................9

*Seaman v. Schulte Roth & Zabel LLP*, 176 A.D.3d 538 (1st Dep't 2019).................................................6

## Statutes

CPLR 3211(a)(5) .........................................................................................................................................6

CPLR §3016(b)............................................................................................................................................7

CPLR 3211(a)(2) .........................................................................................................................................6

CPLR 3211(a)(7) .........................................................................................................................................6

CPLR 3211(a)(l) ..........................................................................................................................................5

NYDCL § 273 ..............................................................................................................................................9

NYDCL § 273-a .......................................................................................................................................7, 8

NYDCL § 276 ............................................................................................................................................12

3

23-22655  Doc 2-9  Filed 09/07/23  Entered 09/07/23 20:04:25  Exhibit X J  Pg
302 of 374

Defendants Benjamin Ringel ("Benjamin"), BR Lakewood, LLC ("BRL"), Ringel Children's Trust ("Children's Trust"), Yael Ringel as co-trustee of Ringel Children's Trust's ("Yael") (collectively, "Defendants") submit pre-answer motion to dismiss the Complaint pursuant to CPLR 3211 (a)(1), (a)(2), (a)(5), and (a)(7).

## PRELIMINARY STATEMENT

As set forth in the Complaint, on January 17, 2015, Plaintiff Chana Ringel ("Plaintiff" or "Chana") and her entity CR Lakewood, LLC ("CRL") commenced two actions against defendants Benjamin and BRL, in New Jersey, alleging various claims related to an entity BCR Lakewood LLC, which Benjamin and Chana owned jointly ("NJ Actions").[1]  As Plaintiff acknowledges, no final judgment was entered in the NJ Action as Benjamin and Chana, and their related entities, settled part of the claims and agreed to submit the remaining claims to arbitration.  Per the Complaint, the arbitration is currently ongoing.

In this action, Plaintiff seeks to unwind various transfers made by Benjamin, asserting three causes of action pursuant to N.Y Debt. & Cred. Law ("NYDCL") §§ 273-a, 273, and 276.  Each and every claim is stated in conclusory fashion and belied by the allegations in the Complaint and pleading standards imposed by governing law.  The Complaint thus fails to state a cause of action and must therefore be dismissed pursuant to CPLR 3211(a)(7).

First, Plaintiff failed to state a cause of action pursuant to NYDCL § 273-a as no final judgement was entered in the NJ Action.[2]  Second, Plaintiff failed to state a cause of action pursuant to NYDCL § 273 as Plaintiff's conclusory claim that the alleged transfers occurred when Plaintiff was insolvent or was left with "unreasonably small capital" is belied and contradicted by

---

[1] These actions were subsequently consolidated.
[2] Plaintiff's reference to a judgment allegedly obtained by RCG/JDWC in an unrelated action is immaterial for purposes of this action as Plaintiff lacks standing to assert any claims on behalf of RCG/JDWC, which is not a party to this action.

4

Plaintiff's own factual allegations in the Complaint. Third, Plaintiff failed to state a cause of action pursuant to NYDCL § 276 as Plaintiff fails to allege facts sufficient to find, especially under the heightened pleading standard for fraud under CPLR 3016(b), that the alleged transfers were done with actual intent to hinder, delay, or defraud Plaintiff's ability to satisfy any future arbitration award issued in the NJ Action.

In addition, the instant action should be dismissed pursuant to CPLR 3211(a)(1) and (a)(2) as the documentary evidence establishes that this Court lacks subject matter over Plaintiff's claims. Specifically, Plaintiff and defendants Benjamin and BRL executed a settlement agreement in the NJ Action, which explicitly states that all remaining unsettled claims be sent to binding arbitration and further states that the New Jersey Court retained jurisdiction over enforcement of the settlement agreement. Here, the instant action is directly related to the claims asserted by Plaintiff in the NJ Action. As such, this Court lacks jurisdiction to adjudicate the claims asserted in this action, which, by virtue of the settlement agreement executed by Plaintiff, must be raised in the NJ Action. Finally, the initial transfer referenced in the Complaint, which Plaintiff seeks to set aside, occurred over six years ago, and over two years from when Plaintiff had, or should have had, knowledge of the transfer. As such, this claim is barred by the statute of limitations and should be dismissed pursuant to CPLR 3211(a)(5).

## FACTUAL BACKGROUND

For a recitation of the relevant facts, the Court is respectfully referred to the Affidavit of Benjamin Ringel, sworn to on January 17, 2022, and the exhibits annexed thereto, and to the Complaint, dated November 2, 2021 (NYSCEF Doc. No. 9).[3]

---

[3] The allegations in the Complaint are accepted as true for purposes of this motion only. However, the allegations in the Complaint that are bare legal conclusions, inherently incredible or flatly contradicted by the evidence are not accepted as true. If Plaintiff's Complaint somehow survives this motion to dismiss, Defendants expressly reserve their right to dispute the allegations contained in the Complaint.

# ARGUMENT

## I.  MOTION TO DISMISS STANDARD

A motion to dismiss pursuant to CPLR 3211(a)(l) will be granted when "the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law." *See e.g., Seaman v. Schulte Roth & Zabel LLP*, 176 A.D.3d 538 (1st Dep't 2019) (*quoting Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 326 [2002]).

It is well settled that a forum selection clause in a settlement agreement may, under certain circumstances, constitute documentary evidence sufficient to provide a proper basis for dismissal of a complaint pursuant to CPLR 321 l(a)(1).  *See Landmark Ventures, Inc. v Birger*, 147 A.D.3d 497, 497 (1st Dep't 2017) ("[A] contractual forum selection clause is documentary evidence that may provide a proper basis for dismissal pursuant to CPLR 3211(a)(1).")

CPLR 3211(a)(2) permits dismissal when the court does not have jurisdiction over the subject matter of the cause of action.  *See* CPLR 3211(a)(2).  CPLR Rule 3211(a)(5) provides for dismissal on the grounds that a cause of action many not be maintained because it is barred by the applicable statute of limitations.  *See* CPLR 3211(a)(5).  On a motion to dismiss a complaint pursuant to CPLR 3211(a)(5) on statute of limitations grounds, the defendant must establish, *prima facie*, that the time in which plaintiff was required to commence the action, has expired.  *See Malast v. Civil Service Employees Ass'n, Inc., Local 830*, 28 A.D.3d 650 (2nd Dep't 2015). The burden then shifts to the plaintiff to raise an issue of fact as to whether the statute of limitations is tolled or is otherwise inapplicable.  *Id.*

CPLR 3211(a)(7) provides for dismissal on the ground that "the pleading fails to state a cause of action."  On such a motion to dismiss "the court must accept all of the allegations in the complaint as true, and, drawing all inferences from those allegations in a light most favorable to the plaintiff, determine whether a cognizable cause of action can be discerned therein, not whether

one has been properly stated.  However, the complaint must contain allegations concerning each

of the material elements necessary to sustain recovery under a viable legal theory."

*MatlinPatterson ATA Holdings LLC V. Federal Express Corp.*, 87 A.D.3d 836, 839 (1st Dep't

2011). Where documentary evidence is submitted, "the standard morphs from whether the plaintiff

stated a cause of action to whether it has one," and "if the defendant's evidence establishes that the

plaintiff has no cause of action . . . dismissal would be appropriate." *Basis Yield Alpha Fund*

*(Master) V. Goldman Sachs Group, Inc.*, 115 A.D.3d 126, 134 (1st Dep't 2014).

     In addition, CPLR §3016(b) requires that "[w]here a cause of action or defense is based

upon … fraud … the circumstances constituting the wrong shall be stated in detail."  Where a

fraud-based claim contains only "[b]are allegations … without any allegation of details

constituting the wrong," the claim should be dismissed. *Central State Bank v. Am. Appraisal Co.*,

33 A.D.2d 1009, 1010 (1st Dep't 1970), aff'd, 28 N.Y.2d 578 (1971).

## II.    PLAINTIFF FAILED TO STATE A CLAIM FOR FRAUDULENT CONVEYANCE UNDER NYDCL § 273-a (FIRST CAUSE OF ACTION)

     NYDCL § 273-a provides: "Every conveyance made without fair consideration when the

person making it is a defendant in an action for money damages or a judgment in such an action

has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the

actual intent of the defendant *if, after final judgment for the plaintiff, the defendant fails to satisfy*

*the judgment*." (emphasis added).[4]

     Here, Plaintiff's claims for fraudulent conveyance are premised on the existence of the NJ

---

[4]  New York recently enacted the Uniform Voidable Transactions Act ("UVTA"), replacing the state's Uniform Fraudulent Conveyance Act ("UFCA"), by codifying the UVTA under the existing sections of the Debtor and Creditor Law.  However, the pre-amendment UFCA applies to transfers that occurred prior to April 4, 2020, the effective date of New York's adoption of the UVTA.

7

Actions, which Plaintiff is a party to. (*See* Complaint at ¶ 35) ("The Fraudulent Transfers were made when B. Ringel was a defendant in multiple actions including in the two actions brought by C. Ringel against him in New Jersey Superior Court.")[5] As Plaintiff acknowledges in the Complaint, no final judgement has been entered in the New Jersey Actions. (*See* Complaint at ¶ 13) ("After years of litigation, the parties settled part of the controversy, and agreed to submit the remaining claims to arbitration. The matter is currently being arbitrated ....")

Based on the foregoing, because the Complaint does not allege the existence of an unsatisfied judgment against and of the Defendants in the NJ actions, Plaintiff's failed to state a cause of action for fraudulent conveyance pursuant to NYDCL § 273-a. *See Frybergh v Weissman*, 145 A.D.2d 531, 531-532 (2d Dep't 1988) ("[T]he existence of an unsatisfied judgment is an essential element of [a claim pursuant to NYDCL § 273-a] and [because] the plaintiff has obtained no judgment against any of the defendants, his first cause of action was properly dismissed.")

Notably, Plaintiff's reference to the "RCG" action and judgment in the Complaint (*see* Complaint at ¶ 21) is completely irrelevant for purposes of this action as neither RCG nor its alleged assignee, JDWC (*id.* at ¶ 22), are parties to this action. Plaintiff thus lacks standing to raise any claims on their behalf. *See* NYDCL § 273-a ("[A] conveyance made without fair consideration when the person making it is a defendant in an action ... is fraudulent as to the plaintiff *in that action* ...."). Here, Plaintiff does not claim that she was a party to the RCG action nor does she claims to be an assignee of the purported judgment. As such, Plaintiff lacks standing to assert a claim for fraudulent transfer pursuant to DCL § 273-a on RCG or JDWC's behalf.

Accordingly, Plaintiff first cause of action, seeking to set aside the transfers pursuant to

---

[5] As set forth below, the only actions referenced in the Complaint which Plaintiff is a party to, and thus has standing to raise as a basis for her fraudulent conveyance claims, are the New Jersey Actions. Plaintiff does not claim that she was a party to the RCG/JDWC judgment or that she has standing to raise any claims on RCG/JDWC's behalf.

NYDCL § 273-a, fails to state a cause of action and must be dismissed pursuant to CPLR 3211(a)(7).

## III.    PLAINTIFF FAILED TO STATE A CLAIM FOR FRAUDULENT CONVEYANCE UNDER NYDCL § 273 (SECOND CAUSE OF ACTION)

NYDCL § 273 provides that, "[e]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without fair consideration."  To allege a cause of action for constructive fraudulent conveyance under NYDCL § 273, a plaintiff must allege that (1) the conveyance was made while the transferor was insolvent or was rendered insolvent by the conveyance, (2) the conveyance was made without fair consideration, and (3) the plaintiff was a creditor at the time of the transfer.  *See, e.g., Joslin v. Lopez*, 309 A.D.2d 837, 837-38 (2d Dep't 2003) (emphasis added), *In re 50 Pine Co*, 317 B.R. 276 (Bankr. S.D.N.Y. 2004).

### a.    Plaintiff Has Not Adequately Pled Insolvency

"A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." NYDCL § 271.  "The operative reference point for determining insolvency is the time at which the transfer took place[.]"  *Kim v. Ji Song Yoo*, 311 F. Supp. 3d 598, 612 (S.D.N.Y. 2018) (citation and internal quotation marks omitted), *Lzppe v. Bairnco Corp*., 249 F. Supp. 3d 357, 379-80 (S.D.N.Y. 2003) (*citing Am. Inv. Bank, NA. v. Marine Midland Bank, NA.*, 191 A.D.2d 690 [1993]).  Therefore, the transferor's insolvency, for purposes of the statute, cannot be presumed from subsequent insolvency at a later point in time.  *See O'Toole v. Karnani (In re Trinsum Group, Ina)*, 460 B.R. 379, 392 (Bankr. S.D.N.Y. 2011).  A *prima facie* case cannot be made absent allegations of the fair salable value of the transferor's assets.  *See Kenyon & Kenyon*

9

*LLP v. SightSound Tech., LLC*, 151 A.D.3d 530, 531 (1st Dep't 2017).

Plaintiff seeks to set aside three transfers made by Benjamin; (i) transfer of 40% of his interest in BRL to the Children's Trust on January 25, 2012 ("Transfer 1"); transfer of additional 40% of his interest in BRL to the Children's Trust in June of 2015; ("Transfer 2"); and transfer of property located Lawrence, New York on or about February 24, 2016 ("Transfer 3").

In the Complaint, Plaintiff makes the conclusory claim that the "Fraudulent Transfers were made at times when B. Ringel was insolvent as his assets at each time were less than the amount required to pay his liabilities on existing debts, or at a time when he had or was left with unreasonably small capital." *See* Complaint at ¶ 40. Not only does Plaintiff fail to allege any facts to support this conclusory allegation; this claim is belied by the allegations in the Complaint itself.

Specifically, Plaintiff alleges that in 2019 it was discovered that Benjamin's interest in various properties and/or LLCs is worth "in excess of $25 million" and that those properties "generate substantial income." *See* Complaint at ¶ 17. Plaintiff further acknowledges that, even after Transfers 1 and 2, Benjamin retained a 20% interest in BRL, from which Plaintiff claims Benjamin received "hundreds of thousand of distributions (sic) [since 2015]." *Id.* at ¶ 47. Accordingly, even accounting for the RCG judgment, entered on January 8, 2016, in the amount of $22,444,851.08 and Chana's claim of $2 million (*see* Complaint at ¶ 14), Benjamin was sufficiently solvent, with net assets worth in excess of $2.5 million, at the time of the transfers and capable of covering Chana's $2 million claim in the event she obtains an arbitration award in her favor. Plaintiff therefore fails to plead the requisite elements of NYDCL § 273 and this claim must be dismissed.

Additionally, although as set forth above, Plaintiff failed to plead insolvency as to all three transfers, at the very least, Plaintiff fails to state a cause of action to set aside Transfer 1 and

10

FILED: NEW YORK COUNTY CLERK 01/17/2022 11:41 PM
NYSCEF DOC. NO. 21

INDEX NO. 653518/2021

RECEIVED NYSCEF: 01/17/2022

23-22695   Doc 2-9   Filed 09/07/23   Entered 09/07/23 20:04:25   Exhibit EX_I   Pg
309 of 374

Transfer 2. Specifically, Transfer 1 and Transfer 2 took place in 2012 and 2015 respectively, prior to the entry of the RCG judgment in 2016.[6]  Accordingly, these transfers were made a time when, as Plaintiff alleges in the Complaint, Benjamin had over $25 million in assets and without any claimed liabilities or judgments against him.  As such, these transfers were clearly not made at a time that would have rendered Benjamin insolvent or with unreasonably small capital for purposes of NYDCL § 273.  *Kim*, 311 F. Supp. 3d at 612 ("The operative reference point for determining insolvency is the time at which the transfer took place.")  Further, because Transfer 1 took place in 2012, years before Chana commenced the NJ Actions, Chana failed to plead how she was a creditor of Benjamin at the time of the transfer - an essential element of a claim under NYDCL § 273.  Accordingly, at the very least, Plaintiff failed to state a cause of action under NYDCL § 273 to set aside Transfer 1 and Transfer 2

> b. Plaintiff Has Not and Cannot Allege Any Cognizable Harm with Respect to Transfers Between BRL and the Children's Trust

The instant action is premised on Chana's claims as against both Benjamin and BRL in the NJ Actions.  *See* Complaint at ¶ 11.  Because BRL is a named defendant in the NJ Actions, any potential arbitration award or judgment obtained by Plaintiff in the NJ Actions can be enforced as against BRL, regardless of the percentage of Benjamin's ownership interest in BRL.  Notably, BRL was a party and a signatory to the Settlement Agreement executed in the NJ Actions.  *See* Exhibit 3.  Accordingly, Plaintiff's claim that the transfers of Benjamin's ownership interest in BRL to the Children's Trust was made for the purpose of defrauding Plaintiff and/or to hinder her ability to collect on any potential award or judgment issued in the NJ Actions is nonsensical.

---

[6] Moreover, Transfer 1, which took place in 2012, occurred even prior to the commencement of the RCG action, which has a 2013 docket number.  See Complaint at ¶ 21.

11

## IV. PLAINTIFF FAILED TO STATE A CLAIM FOR FRAUDULENT CONVEYANCE UNDER NYDCL § 276 (THIRD CAUSE OF ACTION)

To properly plead a claim for actual fraudulent conveyance under NYDCL § 276, "the claimant must allege that (1) the thing transferred has value of which the creditor could have realized a portion of its claim; (2) that this thing was transferred or disposed of by the debtor and (3) that the transfer was done *with actual intent to defraud*." NYDCL § 276; *Chambers v. Weinstein*, 44 Misc.3d 1224(A), at *7 (Sup. Ct. N.Y. Cty. 2014). These allegations must meet New York's heightened pleading standard requiring that the circumstances constituting the fraud be stated in detail. *See Carlyle, LLC v Quik Park 1633 Garage LLC*, 160 A.D.3d 476, 477 (1st Dep't 2018). "[C]onclusory allegations regarding fraudulent intent and those made on information and belief fail to meet the heightened particularity requirement of CPLR § 3016(b)." *Avilon Auto. Group v Leontiev*, 2020 NY Slip Op 30837[U], *14 (Sup Ct, NY Cty. 2020). Here, Plaintiff's claim that the subject transfers were made "with the intent to defraud or delay C. Ringel and other creditors" - is not only insufficiently plead, but it is also refuted by Plaintiff's own claims in the Complaint. Specifically, as noted above, even according to Plaintiff's own claims, the subject transfers did not render Benjamin insolvent as he was left with substantial assets, worth in excess of $2.5 million (even accounting for the RCG judgment), following the transfers. As such, Plaintiff's claim that the transfers were made by Benjamin with actual intent to defraud Plaintiff in order to hinder ability to collect on her $2 million claim is refuted by Plaintiff's own allegations. Because the factual allegations in the Complaint specifically prove that the subject transfers were not done with the intent to hinder Plaintiff's ability to collect on a potential award on her pending claims in the NJ Actions, Plaintiff's conclusory recitation of the alleged "badges of fraud" with

23-22655    GEN-6 (0027-1 03/09/37/23 11:52 PM  Doc 2-9  Filed 09/07/23  Entered 09/07/23 20:04:25    Exhibit EX J  Pg
311 of 374

respect to the transfers are immaterial and do not prove "actual intent" to defraud.[7]

Accordingly, Plaintiff failed to allege a violation of NYCDL § 276 and her Third Cause of Action must therefore be dismissed.

## V. THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS

As set forth above, it is well settled that a forum selection clause in a settlement agreement may, under certain circumstances, constitute documentary evidence sufficient to provide a proper basis for dismissal of a complaint pursuant to CPLR 3211(a)(1). *See Landmark Ventures*, 147 A.D.3d at 497. Further, stipulations made during litigation are to be strictly enforced unless "there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident. *Matter of Frutiger*, 29 N.Y.2d 143, 149-150 (1971); *Matter of Davis*, 292 A.D.2d 452, 738 NYS2d 884 (2002).

As set forth in the accompanying affidavit of Benjamin Ringel, in 2020 Benjamin and Chana/Plaintiff, and the entities they controlled, partially settled the claims raised in the NJ Actions and agreed to submit the remaining claims to arbitration. *See* affidavit of Benjamin Ringel ("Ringel Aff.") at ¶ 5, Exhibit 3 ("Settlement Agreement"). The Settlement Agreement contained a forum selection clause in that paragraph 5 required the parties to submit all remaining claims in the [NJ] Actions … to binding arbitration (*see id.;* Ex. 5 at ¶ 5) and paragraph 7 states that the "[New Jersey] Court shall maintain jurisdiction over the Parties to enforce the terms of the Settlement Agreement." *See id*. at ¶ 7

---

[7] Further, as set forth above, Plaintiff lacks standing to assert claims on behalf of "other creditors, including RCG/JDWC," as these entities are not named plaintiffs in this action. Accordingly, Plaintiff's claim that the subject transfers were made in violation of NYDCL § 276 because they were done to defraud these "other creditors" fails to state a cause of action and must be dismissed.

13

Further, the claims asserted by Plaintiff in the Complaint are directly related to Plaintiff's

claims in the NJ Actions. Specifically, Plaintiff's claim that she is a creditor of Benjamin is based

solely on the pending arbitration in the NJ Actions. *See* Complaint at ¶¶ 1 and 47(b). Further, the

entire purpose of this action is to recover assets in the event of an award issued in the pending

arbitration in favor of Plaintiff.

As such, pursuant to the terms of the Settlement Agreement, executed by Plaintiff and

defendants Benjamin and BRL, Plaintiff's claims must be made in the pending arbitration or raised

to the Court in the NJ Actions, which retained jurisdiction over the enforcement of the Settlement

Agreement. Accordingly, pursuant to the forum selection clauses in the Settlement Agreement,

the Court lacks subject matter jurisdiction to adjudicate Plaintiff's claims and the Complaint should

therefore be dismissed pursuant to CPLR 3211(a)(1) and (a)(5).

## VI. PLAINTIFF'S CLAIMS REGARDING THE FIRS TRANSFERS FROM BRL TO THE CHILDREN'S TRUST IS BARRED BY THE STATUTE OF LIMITATIONS

"Claims based on constructive fraud, such as those recognized by Debtor and Creditor Law

§§ 273 and 273-a, are governed by the six-year statue of limitations set forth in CPLR 213 (1), and

such claims arise at the time of the fraud or conveyance." *Metzger v Yuenger Woodworking Corp.*,

33 A.D.3d 678, 679 (2d Dep't 2006). Where actual fraud is alleged, such as that recognized

under Debtor and Creditor Law § 276, the statute of limitations is six years from the fraudulent

transfer or two years from the time the fraud was discovered *or could have been discovered*,

whichever is later." (internal citations omitted).

Here, as alleged in the Complaint, Benjamin's initial transfer of 40% of his ownership

interest in BRL to the Children's Trust occurred in 2012, over six years prior to the commencement

of this action on June 2, 2021. Additionally, as set forth in the Ringel Affidavit, Plaintiff was

aware, or could have been aware of this transfer, at the latest, on April 29, 2019, over two years

23-22655    Doc 2-9    Filed 09/07/23    Entered 09/07/23 20:04:25    Exhibit EX. I    Pg
313 of 374

prior to the commencement of this action, when Plaintiff's counsel provided a revised draft of the Proposed Settlement Agreement in the NJ Actions to Benjamin's counsel, which referenced the Children's Trust ownership interest in BRL.

Accordingly, using either the six-year time limit from the date of the transfer, or the two-year limit from the time Plaintiff was aware, or could have been aware, of the transfer, Plaintiff's claim seeking to set aside Transfer 1 as a fraudulent transfer is barred by the statute of limitations and this claim must dismissed pursuant to CPLR 3211(a)(5).

## **CONCLUSION**

Based on the foregoing, the Complaint should be dismissed in its entirety pursuant to CPLR 3211(a)(1), (a)(2), (a)(5), and (a)(7).

**WHEREFORE**, it is respectfully requested that the Court grant Defendants' motion in its entirety together with such other and further belief as this Court deems just and proper.

Dated: Inwood, New York
      January 17, 2022              BERG & DAVID, PLLC


                               By: */s/ Sholom Wohlgelernter*
                                 Sholom Wohlgelernter
                                 Abraham David
                                 *Attorneys for Defendants*
                                 372 Doughty Blvd.
                                 Inwood, New York 11096
                                 (718) 989-1392

15

23-22655   Doc 2-9   Filed 09/07/23   Entered 09/07/23 20:04:25   Exhibit X   Pg
314 of 374

## CERTIFICATION OF WORD COUNT

Pursuant to Rule 17 of the Commercial Division of the Supreme Court, I hereby certify

that the foregoing Memorandum of Law contains 4,188 words, exclusive of the caption, tables,

and signature block, as determined by Microsoft Word program used to prepare the document.

Dated: January 17, 2022

/s/ Sholom Wohlgelernter

SHOLOM WOHLGELERNTER

# EXHIBIT D

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------X
CHANA RINGEL,

                                                    Index No.: 653518/2021

                              Plaintiff,

                        - against -


BENJAMIN RINGEL; BR LAKEWOOD, LLC; RINGEL
CHILDREN'S TRUST; YAEL RINGEL as co-trustee of RINGEL
CHILDREN'S TRUST; BARUCH DAVID SCHREIBER as co-
trustee of RINGEL CHILDREN'S TRUST; JOHN AND JANE
DOES 1-10; and ABC CORPS. 1-10,

                              Defendants.
------------------------------------------------------------------X


## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT


**BERG & DAVID, PLLC**
372 Doughty Boulevard
Inwood, New York 11096
(718) 989-1392

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. 3

PRELIMINARY STATEMENT ........................................................................... 4

ARGUMENT ......................................................................................................... 5

I.   PLAINTIFF'S CAUSES OF ACTION ARE NOT "NEW CLAIMS" BUT RATHER
REMEDIES FOR CLAIMS OVER WHICH THE NEW JERSEY COURT RETAINED
JURISDICTION OVER ........................................................................................ 5

II.   PLAINTIFF FAILED TO PLEAD INSOLVENCY ............................................ 7

III.   PLAINTIFF FAILED TO STATE A CLAIM FOR FRAUDULENT CONVEYANCE
UNDER DCL § 276 ............................................................................................... 8

IV.   PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS .......... 10

CONCLUSION .................................................................................................... 11

FILED: NEW YORK COUNTY CLERK 03/04/2022 04:35 PM
NYSCEF DOC. NO. 34

INDEX NO. 653518/2021

RECEIVED NYSCEF: 03/04/2022

23-22655   Doc 2-9   Filed 09/07/23   Entered 09/07/23 20:04:25   Exhibit X   Pg
318 of 374

## TABLE OF AUTHORITIES

**Cases**

*Landmark Ventures, Inc. v Birger*, 147 A.D.3d 497, 497 (1st Dep't 2017)..................................7

*Metzger v Yuenger Woodworking Corp.*, 33 A.D.3d 678, 679 (2d Dept. 2006)..........................11

*Paradigm BioDevices, Inc. v. Viscogliosi Bros., LLC*, 842 F. Supp. 2d 661, 667 (S.D.N.Y. 2012) ............9

**Statutes**

CPLR 3016(b) .................................................................................................................................5

CPLR 3211(a)(1) ............................................................................................................................7

CPLR 3211(a)(5) ......................................................................................................................5, 11

CPLR 3211(a)(7). ...........................................................................................................................5

DCL § 273 ...........................................................................................................................7, 9, 10

DCL § 273-a ...................................................................................................................................5

DCL § 276 ..........................................................................................................................9, 10, 11

NYDCL § 273 .................................................................................................................................5

NYDCL § 276 .................................................................................................................................5

Defendants Benjamin Ringel ("Benjamin"), BR Lakewood, LLC ("BRL"), Ringel Children's Trust ("Children's Trust"), and Yael Ringel as co-trustee of Ringel Children's Trust's (collectively, "Defendants") respectfully submit this reply memorandum of law in further support of their pre-answer motion to dismiss the Complaint pursuant to CPLR 3211 (a)(1), (a)(2), (a)(5), and (a)(7).

## PRELIMINARY STATEMENT

In this action, Plaintiff seeks to unwind various transfers made by Benjamin, asserting three causes of action pursuant to N.Y Debt. & Cred. Law ("NYDCL") §§ 273-a, 273, and 276. First, as set forth in Defendant's initial memorandum of law, the instant action must be dismissed as this Court lacks jurisdiction over these claims, which all relate to an underlying action in New Jersey in which the parties entered into a settlement/arbitration agreement whereby the New Jersey Court retained jurisdiction over the enforcement of the agreement as well as the satisfaction of any award or judgment rendered in the action. Notably, as part of the agreement the parties were required to place $2.5 million in escrow for the sole purpose of satisfying any claim for monetary relief by any party in that action. Plaintiff's claims, which seek to unwind transfers for the purpose of satisfying any potential award or judgment in the New Jersey Action is thus subject to the settlement agreement and must be litigated in the New Jersey action.

Regardless, Plaintiff failed to assert a cause of action under DCL §§ 273-a, 273, and 276, which must therefore be dismissed pursuant to CPLR 3211(a)(7). At the outset, Plaintiff concedes that its cause of action under DCL § 273-a must be dismissed as no final judgement was entered in the NJ Action. Second, Plaintiff failed to state a cause of action pursuant to NYDCL § 273 as Plaintiff's conclusory allegations of insolvency are insufficient as a matter of law and belied by the evidence. Third, Plaintiff failed to state a cause of action pursuant to NYDCL § 276 as Plaintiff fails to allege facts sufficient to find, especially under the heightened pleading standard for fraud

under CPLR 3016(b), that the alleged transfers were done with actual intent to hinder, delay, or defraud Plaintiff's ability to satisfy any future arbitration award issued in the NJ Action. Lastly, Plaintiff's claims regarding the 2012 transfer are barred by the statute of limitations and should be dismissed pursuant to CPLR 3211(a)(5).

## ARGUMENT

I. **PLAINTIFF'S CAUSES OF ACTION ARE NOT "NEW CLAIMS" BUT RATHER REMEDIES FOR CLAIMS OVER WHICH THE NEW JERSEY COURT RETAINED JURISDICTION OVER**

Plaintiff alleges in the Complaint to be a "creditor" of Benjamin Ringel as a result of the claims she has against him in the New Jersey Actions. *See* Ex. D [Complaint] at ¶ 1, 2, 11-14. In the instant action, Plaintiff alleges three causes of action, all seeking to set aside various transfers, which Plaintiff alleges to be fraudulent, for the sole purpose of satisfying any potential judgment or arbitration award issued against Benjamin in the New Jersey Actions. *See id*., *see also* Plaintiff's Opposition at 9-10.

This Court, however, as set forth in Defendants' initial memorandum of law, lacks jurisdiction to adjudicate these claims, as the parties agreed in an executed settlement agreement in the New Jersey Action, that the New Jersey Court will retain jurisdiction over all claims asserted in the New Jersey Actions, both the settled claims and the remaining claims referred to binding arbitration. *See* Ex. 3 at ¶¶ 5 and 7. Moreover, the New Jersey Court also retained jurisdiction over the enforcement of any potential judgment or arbitration award issued with respect to *any claim* asserted in the Actions. Specifically, Paragraphs 2 and 6 of the Settlement Agreement required each party, to place into escrow with the Court, the sum of $5 million, $2.5 million from each side, from the proceeds of the sale of the Pinewood Complex following the sale of the

5

Pinewood Complex (as directed pursuant to the terms of the agreement), to "be used solely to satisfy any claim for monetary relief by any party in the [New Jersey] Actions …." *Id*. at ¶ 6.[1]

In her opposition, Plaintiff argues that the claims asserted in this action are not subject to the Settlement/Arbitration Agreement as they are new claims that were not asserted in the New Jersey Actions. This claim is meritless and contradicted by the allegations in the Complaint. Specifically, Plaintiff does not raise any new monetary claims against Mr. Ringel in this action, she merely seeks a *remedy* for the satisfaction of a potential monetary award issued in her favor in the New Jersey Action.[2] *See* Complaint at ¶¶ 11-32. Notably, the entire purpose of the Debtor Creditor Law sections which Plaintiff is asserting claims under, is to preserve assets for a potential or matured judgment. Not to assert new monetary claims. Here, however, as noted above, pursuant to the terms of the Settlement Agreement, the New Jersey Court retained jurisdiction to enforce the terms of the Settlement Agreement as well as the satisfaction of all claims for monetary relief asserted in that action.

Accordingly, contrary to Plaintiff's contention, she is not asserting new claims against Mr. Ringel in this action, rather, she is attempting to use this action to evade the terms of the Settlement Agreement by seeking relief which the parties explicitly agreed the New Jersey Court retained jurisdiction over. Accordingly, the instant action must be dismissed for lack of jurisdiction. *See Landmark Ventures, Inc. v Birger*, 147 A.D.3d 497, 497 (1st Dep't 2017) ("[A] contractual forum

---

[1] By agreeing to escrow $2.5 million for the purpose of satisfying of any claim for monetary relief by any party in the New Jersey Actions, the parties specifically acknowledged that their respective claims do not exceed $2.5 million and that escrowed funds are sufficient to satisfy any potential monetary award issued by the Arbitrator. In fact, the Complaint alleges that Plaintiff's claims in the New Jersey Actions, "exceed" $ 2 million, which is consistent with the $2.5 million held (or to be held) in escrow by the Court in the New Jersey Actions in the event she is the prevailing party in the pending arbitration.

[2] To the extent Plaintiff is alleging claims with respect to other actions or judgment to which Plaintiff is not a party or named judgment holder, such as RCG or JDWC, these entities are not parties to this action and Plaintiff lacks standing to raise any claims on their behalf.

selection clause is documentary evidence that may provide a proper basis for dismissal pursuant to CPLR 3211(a)(1).")

## II.    PLAINTIFF FAILED TO PLEAD INSOLVENCY

As set forth in detail in Defendants' initial Memorandum of Law, Plaintiff's Second Cause of Action for fraudulent conveyance pursuant to DCL § 273 must be dismissed as Plaintiff not only failed to allege facts sufficient to support her conclusory allegation that the subject transfers were made at a time when Mr. Ringel was insolvent, but the factual allegations in the Complaint actually refute this allegation.  Specifically, the Complaint alleges that in 2019 it was discovered that Benjamin's interest in various properties and/or LLCs is worth "in excess of $25 million" and that those properties "generate substantial income."  *See* Complaint at ¶ 17.  Plaintiff further acknowledges that, even after Ringel transferred portions of his interest in BRL in 2012 and 2015 to his children's trust, Benjamin retained a 20% interest in BRL, from which Plaintiff claims Benjamin received "hundreds of thousand of distributions (sic) [since 2015]."  *Id*. at ¶ 47. Accordingly, the allegations in the Complaint itself refute Plaintiff's claim that Mr. Ringel was insolvent at the time of the alleged transfers.

Plaintiff argues in her opposition that she sufficiently pled insolvency by alleging that the transfers were made without consideration, which creates a *rebuttable presumption* of insolvency. This argument is not only meritless it supports Defendants' position.  Specifically, regardless of whether the transfers were made without consideration, here, as noted above, the facts alleged in the Complaint itself rebut the presumption of insolvency as they establish that Mr. Ringel remained sufficiently solvent following the alleged transfers, due to his ownership interest in properties and LLCs valued in excess of $25 million, well above the claimed outstanding RCG Judgement and Plaintiff's $2 million claim.  Moreover, Plaintiff fails to even address the fact that the alleged RCG Judgment, alleged to be in the amount of $22,444,851.08, was only entered in 2016, after the 2012

7

and 2015 transfers allegedly took place. The facts alleged in the Complaint thus establish that the alleged transfers, especially the 2012 and 2015 transfers, took place at a time when Mr. Ringel was sufficiently solvent.

Plaintiff's argument that Mr. Ringel's ownership interest in various properties and LLCs, valued in excess of $25 million, does not establish his solvency at the time of the alleged transfers because *Plaintiff* only discovered his net worth in 2019, after the subject transfers took place, is nonsensical. The Complaint does not allege that Mr. Ringel *obtained* his ownership interest in these properties in 2019; it alleges that his ownership interest in these properties and LLCs was *discovered* in 2019. The Complaint does not allege any facts to support this new claim that Mr. Ringel only obtained his interest in these assets in 2019. As such, the allegation in the Complaint regarding Mr. Ringel's net-worth, which was well in excess of the alleged claims and judgment against him, directly refutes Plaintiff's claim that the alleged transfers rendered him insolvent.

Finally, in an effort to salvage the deficiency in her pleadings, Plaintiff points to the allegation in the Complaint of other *unidentified* claims and judgments against Mr. Ringel held by unidentified judgment creditors. This conclusory allegation, however, is insufficient as a matter of law to state a claim for fraudulent conveyance premised on insolvency. *See Paradigm BioDevices, Inc. v. Viscogliosi Bros., LLC*, 842 F. Supp. 2d 661, 667 (S.D.N.Y. 2012) ("[C]onstructive fraudulent conveyance claims premised on the insolvency or unreasonably small capital of the transferor 'cannot survive a motion to dismiss on conclusory allegations alone.'").

Accordingly, Plaintiff failed to state a cause of action to set aside the subject transfers pursuant to DCL § 273 and Plaintiff's Second Cause of Action must therefore be dismissed.

## III.    PLAINTIFF FAILED TO STATE A CLAIM FOR FRAUDULENT CONVEYANCE UNDER DCL § 276

Plaintiff's third cause of action asserting fraudulent transfer pursuant to DCL § 276 must

be dismissed as Plaintiff failed to allege that the subject transfers were made "with the intent to defraud or delay C. Ringel and other creditors." First, as noted above, even according to Plaintiff's own claims, the subject transfers did not render Benjamin insolvent as he was left with substantial assets, worth in excess of $2.5 million (even accounting for the RCG judgment), following the transfers. The fact that Mr. Ringel was left with significant assets to satisfy the claims and judgments alleged in the Complaint refutes Plaintiff's claim that the transfer was made with actual intent to defraud based on her conclusory recitation of the alleged "badges of fraud."[3]

Further, as set forth in Defendant's initial memorandum of law, Plaintiff failed to allege a cognizable harm premised on Mr. Ringel's transfer of his interest in BR Lakewood to his children's trust because BRL is a named defendant in the NJ Actions, and any potential arbitration award or judgment obtained by Plaintiff in the NJ Actions can be enforced as against BRL Lakewood, regardless of the percentage of Benjamin's ownership interest in BRL. Notably, BR Lakewood and the Ringel Children's Trust trustees were parties and signatories to the Settlement Agreement. *See* Ex. 3.

Contrary to Plaintiff's contention, the fact that BRL is a named defendant in only the New Jersey Actions is irrelevant as the actions were consolidated for purpose of settlement and, furthermore, the Settlement Agreement, specifically provided that the escrowed funds were to be held for purposes of satisfying "any claim for monetary relief by any Party in the *Actions*." *See id*. at ¶ 6 (emphasis added). Further, Plaintiff's claim that although BRL and Benjamin's Ringel's liability might be the same, their percentage of liability may be different, is meritless, as the parties specifically agreed that all parties to the Settlement Agreement, including BRL, will be equally

---

[3] Further, as set forth above, Plaintiff lacks standing to assert claims on behalf of "other creditors, including RCG/JDWC," as these entities are not named plaintiffs in this action.

liable for any judgment as evidenced by the fact that the escrow funds are to be held to satisfy any claim by any party regardless of the proportion of liability by any of the BR "Parties."

Accordingly, Plaintiff's claim that the transfers of Benjamin's ownership interest in BRL to the Children's Trust was made for the purpose of defrauding Plaintiff and/or to hinder her ability to collect on any potential award or judgment issued in the NJ Actions is refuted by the documentary evidence and may be dismissed.

## IV.    PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

As set forth in Defendants' initial memorandum of law, Plaintiff's claims alleging fraudulent transfer pursuant to DCL §§ 274 and 276 regarding the alleged 2012 transfer are barred by the statute of limitations. Notably, in her opposition, Plaintiff concedes that her claim under DCL § 273 is in fact time-barred with respect to the 2012 transfer.

However, contrary to Plainiff's contention, her claim under DCL § 276 is likewise time-barred with respect to the 2012 transfer. As noted previously, "[w]here actual fraud is alleged, such as that recognized under Debtor and Creditor Law § 276, the statute of limitations is six years from the fraudulent transfer or two years from the time the fraud was discovered *or could have been discovered*, whichever is later." *Metzger v Yuenger Woodworking Corp.*, 33 A.D.3d 678, 679 (2d Dept. 2006). Here, Plaintiff was aware, or could have been aware of this transfer, at the latest, on April 29, 2019, over two years prior to the commencement of this action, when Plaintiff's counsel was made aware in draft settlement papers, that Benjamin Ringel's children's trust had an ownership interest in BRL. Contrary to Plaintiff's contention, the fact that the draft documents did state what percentage ownership interest the trust had is immaterial. The fact is that the documents referenced the trusts ownership interest, which was sufficient to put plaintiff on notice of the transfer, which she then could have discovered with due diligence. Further, Plaintiff's claim

10

23-22655   Doc 2-9   Filed 09/07/23   Entered 09/07/23 20:04:25   Exhibit Ex. I   Pg
326 of 374

that even had she done proper diligence it is unlikely Mr. Ringel would have provided information

regarding the transfer is belied by the fact that Mr. Ringel was clearly not attempting to hide the

transfer when the aforementioned settlement documents were provided to Plaintiff's counsel.

Accordingly, Plaintiff's claim seeking to set aside the 2012 transfer pursuant to DCL § 276

is barred by the statute of limitations and this claim must dismissed pursuant to CPLR 3211(a)(5).

## CONCLUSION

Based on the foregoing, the Complaint should be dismissed in its entirety pursuant to CPLR

3211(a)(1), (a)(2), (a)(5), and (a)(7).

**WHEREFORE**, it is respectfully requested that the Court grant Defendants' motion in its

entirety together with such other and further belief as this Court deems just and proper.

Dated: Inwood, New York
     March 4, 2022                    BERG & DAVID, PLLC


                                 By: */s/ Sholom Wohlgelernter*
                                    Sholom Wohlgelernter
                                    Abraham David
                                   *Attorneys for Defendants*
                                   372 Doughty Blvd.
                                   Inwood, New York 11096
                                   (718) 989-1392

## CERTIFICATION OF WORD COUNT

Pursuant to Rule 17 of the Commercial Division of the Supreme Court, I hereby certify that the foregoing Memorandum of Law contains 2,702 words, exclusive of the caption, tables, and signature block, as determined by Microsoft Word program used to prepare the document.

Dated: March 4, 2022

*/s/ Sholom Wohlgelernter*
SHOLOM WOHLGELERNTER

# EXHIBIT E

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

CHANA RINGEL,

                       Plaintiff,

      -against-

BENJAMIN RINGEL; BR LAKEWOOD, LLC;
RINGEL CHILDREN'S TRUST; YAEL RINGEL
as co-trustee of RINGEL CHILDREN'S TRUST;
BARUCH DAVID SCHREIBER as co-trustee of
RINGEL CHILDREN'S TRUST; JOHN AND
JANE DOES 1-10; and ABC CORPS. 1-10,

                       Defendants.

---

Index No.: 653518/2021

## MEMORANDUM OF LAW IN OPPOSITION
## TO MOTION TO DISMISS

KOFFSKY SCHWALB, LLC
Efrem Schwalb
Tal S. Benschar
500 Seventh Avenue, 8th Floor
New York, New York 10018
(646) 553-1590

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

FACTS ..................................................................................................................... 2

    Background ........................................................................................................ 2

    The Fraudulent Transfers ................................................................................. 3

ARGUMENT ........................................................................................................... 4

    I.   Legal Standards And Claims ...................................................................... 4

        A.  Motion to Dismiss Standards ................................................................ 4

        B.  Debtor and Creditor Law........................................................................ 5

    II.   The Claims In This Case Are Not Subject To The Parties' Arbitration Agreement ........... 5

    III.   The DCL § 273-a Claims Should Be Dismissed Without Prejudice As Premature......... 6

    IV.   The DCL § 273 Claims Adequately Plead Insolvency ................................. 6

    V.  C. Ringel Was Already A "Creditor" Of B. Ringel in 2012................................. 8

    VI.   That One Of The New Jersey Actions Is Also Against BR Lakewood Does Not Preclude C. Ringel's Fraudulent Transfer Claims ................................. 9

    VII.   The Actual Fraud Claim Pleads Intent To Defraud As It Alleges Multiple Badges Of Fraud 10

    VIII.   The Statute Of Limitations Has Not Run On The DCL 276 Claim .............................. 11

CONCLUSION................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*172 Van Duzer Realty Corp. v. 878 Educ., LLC,* 142 A.D.3d 814, 818 (1st Dept. 2016) ........... 10

*Art & Fashion Grp. Corp. v. Cyclops Prod., Inc.*, 120 A.D.3d 436, 438 (1st Dept. 2014) ............. 4

*Avilon Auto. Group v Leontiev*, 2020 NY Slip Op 30837[U], *14 (Sup Ct. NY Cty. 2020) ........ 11

*Battlefield Freedom Wash, LLC v. Song Yan Zhuo*, 148 A.D.3d 969, 971 (2d Dept. 2017) .......... 7

*Bd. of Managers Of Be@William Condominium v. 90 William St. Dev. Grp. LLC*, 2019 WL
1170871, at *4 (Sup. Ct. Mar. 13, 2019) ................................................................................. 7

*Cheek v. Brooks*, 188 A.D.3d 785, 786 (2d Dept. 2020) ................................................................. 9

*Commissioners of State Ins. Fund v. P.S.G. Const. Co.,* 91 A.D.3d 643, 644 (2d Dept. 2012) ..... 6

*Frybergh v Weissman*, 145 A.D.2d 531, 531-532 (2d Dep't 1988) ................................................. 6

*GEM Holdco, LLC v. Changing World Techs., L.P.*, 127 A.D.3d 598, 599 (1st Dept. 2015) ........ 4

*In re Bernard L. Madoff Inv. Securities LLC*, 445 B.R. 206, 233 (Bankr. S.D.N.Y. 2011) ......... 13

*Jenkins v. Jenkins*, 181 Misc.2d 1, 11 (Westchester Cty. 1999) ................................................... 14

*Kopicel v. Schnaier*, 145 A.D.3d 599, 600 (1st Dept. 2016) ......................................................... 7

*Leon v. Martinez*, 84 N.Y.2d 83, 87–88 (1994) ............................................................................. 4

*Marine Midland Bank v. Zurich Ins. Co.,* 263 A.D.2d 382, 383 (1st Dept. 1999) ....................... 10

*Norstan Apparel Shops, Inc.*, 367 B.R. 68, 79 (Bankr. E.D.N.Y. 2007) ....................................... 7

*Robles v. Patel*, 165 A.D.3d 858, 860 (2d Dept. 2018) ................................................................. 6

*Saphir Int'l, SA v. UBS PaineWebber Inc.*, 25 A.D.3d 315, 315–16 (1st Dept. 2006) ................ 13

*Schmidt-Sarosi v. Offices for Fertility and Reproductive Medicine, P.C.*, 195 A.D.3d 479, 480
(1st Dept. 2021) ........................................................................................................................ 4

*Setters v. AI Properties & Devs. (USA) Corp.,* 139 A.D.3d 492, 493 (1st Dept. 2016) ................ 6

*Sullivan v. Kodsi*, 373 F. Supp. 2d 302, 308 (S.D.N.Y. 2005) ...................................................... 6

*Trepuk v. Frank,* 44 N.Y.2d 723, 725 (1978) ............................................................................... 14

ii

*Wall St. Assocs. v. Brodsky*, 257 A.D.2d 526, 529 (1st Dept. 1999) ...................................... 10, 12

*Wimbledon Fin. Master Fund, Ltd. v. Bergstein*, 166 A.D.3d 496, 497 (1st Dept. 2018).............. 7

**Statutes**

CPLR 213.............................................................................................................................. 13

CPLR 3016............................................................................................................................ 10

DCL § 270.............................................................................................................................. 9

DCL § 273.............................................................................................................. 5, 6, 12, 14

DCL § 273-a .......................................................................................................... 5, 6, 11, 14

DCL § 276............................................................................................................ 5, 10, 11, 12

**Other Authorities**

L.2019, c. 580, § 2 ................................................................................................................. 5

iii

Plaintiff Chana Ringel ("C. Ringel") submits this memorandum of law in opposition to Defendants' motion to dismiss.

## PRELIMINARY STATEMENT

As set forth in the Complaint, Defendant Benjamin Ringel ("B. Ringel") has been planning to defraud his many creditors since 2012, by establishing trusts for his children and moving assets into them. The allegations of the Complaint clearly state multiple claims of fraudulent transfer under New York law against the Defendants. Defendants' motion contains mostly meritless arguments, including ones that are knowingly false. One example suffices to illustrate the point. Defendants argue that this Court lacks subject matter jurisdiction because, as part of a settlement, the parties agreed to submit the "remaining claims" in two New Jersey actions to arbitration. But a review of the plain language of the arbitration agreement reveals that this argument is baseless. The agreement was made after five years of litigation in two still-pending actions in New Jersey Chancery Court. The agreement settles parts of those disputes, and provides "[t]he Parties shall submit **all remaining claims in the Actions**" and then references specific claims in the two actions, known as the "BCR Lakewood action" and the "Oakridge action." (B. Ringel Aff. Exh. 3 at 2, Dkt. 20). As the language states, the parties clearly intended only to submit the unsettled portions of the claims already pending in New Jersey – not new claims like this one.

Worse yet, as Defendants know, when they attempted to introduce new claims into the actual arbitration, the arbitrator denied that effort as beyond the scope of the arbitration agreement because the parties agreed to arbitrate only claims that remained in those two pending actions. Yet they waste this Court's time with already rejected arguments.

As demonstrated below, the Complaint properly pleads multiple claims of fraudulent transfer against the Defendants. Consequently, the motion should be denied.

# FACTS

## **Background**

This action seeks to void fraudulent transfers from Benjamin Ringel to the various defendants. C. Ringel, his sister, was for several years a partner with B. Ringel in various real estate holdings. She brought two suits against B. Ringel in New Jersey Chancery Court asserting various causes of action relating to, among other things, Mr. Ringel looting the companies they owned together, which are currently the subject of an arbitration in New Jersey. B. Ringel has engaged in numerous acts of fraudulent transfer, designed to defeat any judgment of C. Ringel, as well as the claims and judgments of B. Ringel's numerous other creditors. (Compl. ¶¶ 1-2).

Currently pending in the Superior Court of New Jersey, Ocean County, are two civil actions between C. Ringel, B. Ringel and various entities they own, entitled *Chana Ringel, et al. v. Benjamin Ringel, et al.*, Docket No. OCN-C-152-16 (the "Oakridge Action") and *Chana Ringel v. BR Lakewood, LLC, et al.*, Docket No. OCN-C-127-15 (the "BR Lakewood Action."). In these actions, C. Ringel has asserted various causes of action against B. Ringel, including breach of contract and breach of fiduciary duty, all related to his wrongful conduct in connection with certain joint real estate holdings. (Compl. ¶¶ 11-12). Copies of the most recent pleadings, which include the various claims and counterclaims asserted, are submitted as Schwalb Aff. Exhs. A to E). Upon motion of C. Ringel, the New Jersey Court enjoined Mr. Ringel from co-managing five properties.

After years of litigation, the parties settled part of the controversy, and agreed to submit the remaining claims to arbitration. The matter is currently being arbitrated before the Honorable Robert Contillo, retired judge of the Chancery Division of the New Jersey Superior Court. The Complaint alleges that C. Ringel's claims against B. Ringel exceed $2 million plus interest and contractual attorney's fees. (Compl. ¶¶ 13-14)

2

## The Fraudulent Transfers

Two of the three fraudulent transfers at issue concern B. Ringel's ownership interest in a holding company named BR Lakewood LLC, which is also a named defendant here. On March 21, 2016, B. Ringel filed an answer to the verified complaint in one of the New Jersey actions, generally denying the allegations, except he admitted that he is the sole member of BR Lakewood and specifically asserted that he was the "sole owner" of BR Lakewood in the counterclaim. (Compl. ¶ 18; Schwalb Aff. Exh. D, Counterclaims, ¶ 1 at 12, affirmatively alleging that "Counterclaimant Benjamin Ringel ('Ben') is the sole member of BR Lakewood."). He reaffirmed that statement in a filing in New Jersey in March 2018. (Compl. ¶ 19; Schwalb Aff. Exh. E, Counterclaims, ¶ 1 at 16).

Yet, in an action in New Jersey brought by another of B. Ringel's creditors, in March 2020, he filed a certification claiming that, on January 25, 2012, he assigned forty percent (40%) of his ownership interest in BR Lakewood to the Ringel Children's Trust, which was created for the benefit of his four (4) children. He further claimed that, in June of 2015, he assigned an additional forty percent (40%) of his ownership interest in BR Lakewood to the Trust. A review of the assignment documents attached to the B. Ringel Certification shows that B. Ringel allegedly assigned the membership interest to the Trust for "love and affection," which is of no value to any of B. Ringel's creditors. (Compl. ¶¶ 27-29). These two transfers are alleged to be fraudulent, and C. Ringel seeks their reversal.

The third fraudulent transfer involves the transfer of a property named 15 Washington Avenue, Lawrence, New York. B. Ringel acquired that property in 2004 for substantial consideration. On or about February 24, 2016, B. Ringel transferred the 15 Washington Property to his wife Yael Ringel, for minimal or no consideration. This was at a time when B. Ringel was already a defendant in one of the New Jersey Actions. (Compl. ¶¶ 30-32).

# ARGUMENT

## I. Legal Standards And Claims

### A. Motion to Dismiss Standards

"On a motion to dismiss pursuant to CPLR 3211, the pleading is to be afforded a liberal construction and the court is to accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory." *Schmidt-Sarosi v. Offices for Fertility and Reproductive Medicine, P.C.*, 195 A.D.3d 479, 480 (1st Dept. 2021)(*citing Leon v. Martinez*, 84 N.Y.2d 83, 87–88 (1994)). "On a CPLR 3211(a)(1) motion to dismiss based on documentary evidence, a dismissal is warranted only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law." *Id.*

"Factual affidavits . . . do not constitute documentary evidence within the meaning of the statute." *Art & Fashion Grp. Corp. v. Cyclops Prod., Inc.*, 120 A.D.3d 436, 438 (1st Dept. 2014). B. Ringel submits an affidavit (Dkt. 17) on this motion in which he purports to explain away two of the alleged fraudulent transfers. Such a submission, aside from being false, is completely improper on this motion, *see GEM Holdco, LLC v. Changing World Techs., L.P.*, 127 A.D.3d 598, 599 (1st Dept. 2015) ("affidavits . . . are not properly considered on a motion to dismiss"), and the affidavit should be disregarded. The Complaint expressly alleges contrary to B. Ringel's explanation; the assertions there are completely false, and will be proven so in the course of this litigation.

4

### B.      Debtor and Creditor Law

The Legislature amended the Debtor and Creditor Law ("DCL") in 2019, but only for fraudulent transfers that occur after April 4, 2020.  *See* L.2019, c. 580, § 2.  As all the transfer in the Complaint preceded that date, the pre-2020 version of the DCL applies here.

C. Ringel asserts three alternative bases to void the fraudulent transfers:  a transfer while a defendant under DCL § 273-a; a transfer while insolvent under DCL § 273; and a transfer made with intent to defraud under DCL § 276.  Each of these have different legal standards, and different statutes of limitations, so each legal claim must be considered separately.

## II.     The Claims In This Case Are Not Subject To The Parties' Arbitration Agreement

B. Ringel and C. Ringel agreed to a partial settlement of the New Jersey Actions, and to refer *the remaining claims in those actions* to arbitration (which is now ongoing).  Defendants argue that the claims in this action are subject to that agreement and must be brought in the arbitration, and hence this Court lacks subject matter jurisdiction over them.  (Def. Memo. 13-14)  This argument is frivolous.

The parties' settlement which occurred during the trial of the BCR Lakewood and Oakridge actions resolved some of their disputes in the two New Jersey Actions.  It then states that "[t]he Parties shall submit all remaining claims in the Actions"  and then references certain claims in the "BCR Lakewood action" and the "Oakridge action."  (B. Ringel Aff. Exh. 3 at 2, Dkt. 20).  The terms clearly refer to the two actions then pending between the parties.  (*Id.,* Exh. 2 at 2, Dkt. 19)  The parties agreed to submit the remaining claims in those pending actions, not anything else.  A review of the pleadings in the two actions (Schwalb Aff. Exhs. A to E) shows that the claims and counterclaims say nothing about the fraudulent transfers and C. Ringel's current claims.

In short, all C. Ringel agreed to submit to arbitration were the claims in the two actions then-pending in New Jersey Superior Court.  The claims asserted in this action were not then

pending, and are not subject to the arbitration provision. Indeed, as B. Ringel well knows, the

arbitrator already ruled as much! When B. Ringel attempted to add new claims not in the parties'

pleading before the case went to arbitration. The arbitrator ruled, that unless the parties' consented

to add new claims, these claims were not before him, *i.e.*, only the remaining claims that were

asserted against one another in the New Jersey court were to be arbitrated. (Schwalb Aff. ¶ 4 and

Exh. F).

### III. The DCL § 273-a Claims Should Be Dismissed Without Prejudice As Premature

Defendants argue that the claims under DCL § 273-a are premature, as no final judgment

has yet been entered in C. Ringel's favor. (Def. Memo. at 7-9). C. Ringel agrees that these claims

are premature. *See Robles v. Patel*, 165 A.D.3d 858, 860 (2d Dept. 2018); *Frybergh v Weissman*,

145 A.D.2d 531, 531-532 (2d Dep't 1988).

Because C. Ringel cannot bring a claim under DCL § 273-a until final judgment is entered,

the statute of limitations does not begin to run until that time, and she will then have six years to

bring such a claim. *See Setters v. AI Properties & Devs. (USA) Corp.,* 139 A.D.3d 492, 493 (1st

Dept. 2016); *Commissioners of State Ins. Fund v. P.S.G. Const. Co.,* 91 A.D.3d 643, 644 (2d Dept.

2012).

The DCL § 273-a claims should, accordingly, be dismissed without prejudice as premature.

When C. Ringel obtains a final judgment, she can reassert those claims.

### IV. The DCL § 273 Claims Adequately Plead Insolvency

Defendants next argue that the DCL § 273 claims do not adequately plead the fact of B.

Ringel's insolvency at the time of the transfers. (Def. Memo. 9-11). The standard for pleading

insolvency is a low bar and "ultimately a question of fact." *See, e.g., Sullivan v. Kodsi*, 373 F.

Supp. 2d 302, 308 (S.D.N.Y. 2005) ("[P]laintiff alleges insolvency on the face of the Complaint:

'[Defendant] was insolvent or became insolvent at the time of the transfers.'"); *see also Bd. of Managers Of Be@William Condominium v. 90 William St. Dev. Grp. LLC*, 2019 WL 1170871, at *4 (Sup. Ct. Mar. 13, 2019).

The Complaint alleges that B. Ringel had numerous judgments and claims asserted against him at the time that he made the fraudulent transfers, and that he was insolvent at the time of the transfers because his assets at each such time were less than the amount required to pay his liabilities, or he was left with unreasonably small capital. (Compl. ¶¶ 2, 21, 32, 35, 40-41). That is sufficient to plead insolvency under New York law.

But the Complaint does more than that. All three of the fraudulent transfers are alleged to have been without consideration to Mr. Ringel's family members. (Compl. ¶¶ 29, 32, 47(d)). These facts create a rebuttal presumption of insolvency. *See Wimbledon Fin. Master Fund, Ltd. v. Bergstein*, 166 A.D.3d 496, 497 (1st Dept. 2018); *Kopicel v. Schnaier*, 145 A.D.3d 599, 600 (1st Dept. 2016). That presumption shifts the burden to the transferor to show that he was not insolvent. *Battlefield Freedom Wash, LLC v. Song Yan Zhuo*, 148 A.D.3d 969, 971 (2d Dept. 2017). The presumption is thus sufficient for a plaintiff to make out a prima facie case for summary judgment, which will be entered if the transferor fails to rebut the presumption. *Wimbledon Fin. Master Fund, Ltd.,* 166 A.D.3d at 497. For the same reason, allegations that give rise to the presumption are obviously sufficient to plead insolvency. *In re Norstan Apparel Shops, Inc.*, 367 B.R. 68, 79 (Bankr. E.D.N.Y. 2007). The Complaint's allegations that each of the challenged transfers were made without or with inadequate consideration suffice to create a presumption of insolvency, and hence to plead same.

Defendants nevertheless argue that the allegations of the Complaint that in 2019, it was discovered by another creditor that B. Ringel's interest in various properties were "in excess of

$25 Million," and that the judgments against him are less than that amount, he was solvent.  (Def. Memo. at 10).  This argument is both flawed and improper on a motion to dismiss.

First, as Defendants acknowledged, the allegation about the ownership of assets was "in 2019," while the transfers at issue took place in 2012, 2015 and 2016, and they assume that the two transfers totaling 80 percent of property interests that Ringel made in 2012 and 2015 were invalid.  Moreover, as Defendants themselves acknowledge, "[t]he operative reference point for determining insolvency is the time at which the transfer took place."  (Def. Memo. at 9).  B. Ringel's purported solvency years after the time of transfer is irrelevant.

Further, Defendants' argument assumes that the only claims against B. Ringel are that of C. Ringel and RCG (which together totalled more than $25 million).  But, in fact, it is alleged that there were outstanding "claims and judgments of B. Ringel's numerous other creditors" (Compl. ¶ 2), and that he has "many creditors" (Compl. ¶ 5), including "many judgment creditors" (*Id.* ¶ 24), all of whom he has sought to defraud by these transfers.  B. Ringel's attempt to have himself declared solvent as a matter of law by ignoring all but two of his creditors is risible.

Whether Ringel was solvent or insolvent when he made the three fraudulent transfers at issue here is a factual issue that cannot be resolved on a motion to dismiss.  C. Ringel has adequately pleaded his insolvency, and indeed, the pleading of the lack of consideration creates a presumption of insolvency.  No more is required at this stage, and at trial it will be shown that in fact the transfers beginning in 2012 were made at a time when either he was insolvent, rendered him insolvent or left him with unreasonably small capital.

## V.     C. Ringel Was Already A "Creditor" Of B. Ringel in 2012

Defendants next argue that, as to the 2012 transfer, C. Ringel cannot maintain an action for fraudulent transfer, as she was not then a "creditor," having only brought suit against him in 2015

and 2016. (Def. Memo. 11). This is legally erroneous. The DCL defines a creditor as "a person having any claim, ***whether matured or unmatured***, liquidated or unliquidated, absolute, fixed or contingent." DCL § 270 (emphasis added). Even before suit is filed, it is settled law that when a cause of action by one person accrues against another, he or she becomes a "creditor" within the meaning of the DCL. "Where an individual has a tort claim against the conveyor, she or he becomes a creditor at the moment the claim accrues, viz., at the moment of injury." *Cheek v. Brooks*, 188 A.D.3d 785, 786 (2d Dept. 2020).

Review of the two Complaints brought by C. Ringel in New Jersey indicates that Mr. Ringel's wrongful conduct began before 2012. For example, the claims that B. Ringel breached his fiduciary duties and looted the companies they owned together commenced before 2012 causing plaintiff to suffer damages. (*See, e.g.,* Schwalb Aff. Exh. C, ¶¶ 32-44; Schwalb Aff. Exh. A).

Since the wrongful actions that form the basis of C. Ringel's claims in the two New Jersey actions commenced well before the January 2012 transfer, she was already a "creditor" as that term is defined in the DCL, even if she did not file suit until 2015 and 2016.

## VI. That One Of The New Jersey Actions Is Also Against BR Lakewood Does Not Preclude C. Ringel's Fraudulent Transfer Claims

Defendants next argue that because BR Lakewood is a named defendant in one of the New Jersey actions, any award obtained against B. Ringel can also be enforced against that company, and hence B. Ringel's transfer of 80% of his interest in that company to the Trust did not hinder C. Ringel as a creditor. (Def. Memo. at 11). This argument is meritless for several reasons. First, it ignores that there are *two* actions pending in New Jersey, and BR Lakewood is a defendant in only one of them (*see* Schwalb Aff. Exhs. A, C) and so obviously will have no liability in the case to which it is not even a party.

9

Furthermore, even in the one action in which BR Lakewood is a defendant, while the liability of the B. Ringel and BR Lakewood may be identical, the defendants' liability could be different. It is thus quite possible that there will be a judgment entered against B. Ringel that is not the same as BR Lakewood. Finally, a plaintiff is entitled to a judgment against two defendants if there is a basis for that liability as is the case here. Consequently, this argument is meritless.

## VII. The Actual Fraud Claim Pleads Intent To Defraud As It Alleges Multiple Badges Of Fraud

Defendants next argue that the claim of fraudulent transfer by actual fraudulent intent fails to plead fraud with particularity as required by CPLR 3016(b). (Def. Memo. at 12-13). Notably, however, the only pleading defect claimed is in the allegations of fraudulent intent; the other elements of the claim are not challenged. This argument fails for the following reasons.

When pleading a claim of fraudulent transfer under DCL § 276, it is sufficient to satisfy CPLR 3016(b) if "plaintiff allege[s] the overall fraudulent scheme in detail" and "fraudulent intent is fairly inferred from such details." *Marine Midland Bank v. Zurich Ins. Co.,* 263 A.D.2d 382, 383 (1st Dept. 1999). Furthermore, "[d]ue to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on 'badges of fraud' to support his case, *i.e.,* circumstances so commonly associated with fraudulent transfers 'that their presence gives rise to an inference of intent.'" *Wall St. Assocs. v. Brodsky*, 257 A.D.2d 526, 529 (1st Dept. 1999). "Among such circumstances are: a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business; inadequacy of the consideration; the transferor's knowledge of the creditor's claim and the inability to pay it; and retention of control of the property by the transferor after the conveyance." *Id. See 172 Van Duzer Realty Corp. v. 878 Educ., LLC,* 142 A.D.3d 814, 818 (1st Dept. 2016).

The Complaint alleges *all five* badges of fraud:

10

FILED: NEW YORK COUNTY CLERK 02/23/2022 12:07 AM
NYSCEF DOC. NO. 24

INDEX NO. 653518/2021
RECEIVED NYSCEF: 02/23/2022

23-22655   Doc 2-9   Filed 09/07/23   Entered 09/07/23 20:04:25   Exhibit EX_I   Pg
343 of 374

The Fraudulent Transfers are replete with badges of fraud used to analyze the parties' intent:

(a) The transfers were to parties with close relationships to B. Ringel, such as to the Trust, whose beneficiaries are B. Ringel's four children, or to the family members directly;

(b) Such transfers were not in the usual course of business for B. Ringel;

(c) B. Ringel knew that C. Ringel was a potential creditor, and many of the Fraudulent Transfers were made after C. Ringel commenced one or both of the New Jersey Superior Court actions against him;

(d) The consideration was completely inadequate; indeed, there was zero consideration paid at all; and

(e) B. Ringel in fact retained control and/or possession of the assets that were transferred and the parties to whom transfers were made.

(Compl. ¶ 47, *see id.* ¶¶ 24, 27-29, 30-32).

These allegations more than suffice to plead a claim under DCL § 276. Defendants rely upon *Avilon Auto. Group v Leontiev*, 2020 NY Slip Op 30837[U], *14 (Sup Ct. NY Cty. 2020), but, ironically, in that case this Court actually found that fraudulent intent was properly pleaded because of the pleading of multiple badges of fraud. *Id.* at *28. The same is the case here, and this part of the motion to dismiss is accordingly meritless.

**VIII. The Statute Of Limitations Has Not Run On The DCL 276 Claim**

Finally, Defendants seek dismissal of the claims in the action with respect to the 2012 transfer as untimely and barred by the statute of limitations. (Def. Memo. at 14-15). They implicitly concede that the claims as to the 2015 and 2016 transfers are timely. We accordingly address only the 2012 transfer.

With respect to the claim under DCL § 273-a as it applies to the 2012 transfer, as discussed above, these claims are premature, not time-barred, and the statute of limitations has not even

11

begun to run.  They should be dismissed without prejudice.  With respect to the claim under DCL
§ 273 as it applies to the 2012 transfer, we agree that the claim is time-barred.

With respect to the claim under DCL § 276 as it applies to the 2012 transfer,  that is not
time barred, as the two-year discovery rule applies.  "New York law provides that a claim for
constructive fraud is governed by the six-year limitation set out in CPLR 213 (1), and that such a
claim arises at the time the fraud or conveyance occurs." *Wall St. Assocs. v. Brodsky*, 257 A.D.2d
526, 530 (1st Dept.  1999).  "In cases of actual fraud, however, the claim is timely if brought either
within six years of the date that the fraud or conveyance occurs or within two years of the date that
the fraud or conveyance is discovered or should have been discovered, whichever is longer." *Id.*

Ringel did not learn of the 2012 transfer until March 2020, when she was informed of the
certification that B. Ringel filed in the New Jersey action brought by another creditor where Mr.
Ringel set forth those transfers and the lack of consideration for them.  (C. Ringel Aff. ¶ 2).  B.
Ringel makes no claim that Plaintiff knew of the transfers, but nevertheless argues that the claim
"should have been discovered," because in April 2019, his counsel sent draft settlement papers
that made reference to the Trust's ownership interest in BR Lakewood.  A review of that draft (B.
Ringel Aff. Exh. 2, Dkt. 19) reveals that it makes only passing reference to the ownership by the
trust.  The first page states that the parties to the agreement include "ANY TRUSTS THAT OWN
BR LAKEWOOD."  That was changed in another draft to  read "Ringel Children Trust I."  That
draft also states that "Benjamin and Ringel Children Trust I are the only members of BR
Lakewood."  No statement is made as to what percentage the Trust owned in BR Lakewood, nor
when any transfer may have been made, nor that the transfers were not made for fair consideration.

"[T[he issue of when a plaintiff, acting with reasonable diligence, could have discovered
an alleged fraud turns upon whether the plaintiff possessed knowledge of facts from which he

12

could reasonably have inferred the fraud; although a plaintiff may not shut his eyes to facts which call for investigation, mere suspicion will not suffice as a ground for imputing knowledge of the fraud." *Saphir Int'l, SA v. UBS PaineWebber Inc.*, 25 A.D.3d 315, 315–16 (1st Dept. 2006). "This inquiry involves a mixed question of law and fact, and, where it does not conclusively appear that a plaintiff had knowledge of facts from which the alleged fraud might be reasonably inferred, the cause of action should not be disposed of summarily on statute of limitations grounds. Instead, the question is one for the trier-of-fact." *Id*. at 316.

The assertion that the fraud should have been discovered in 2019 is doubly defective. First, the vague reference in April 2019 that the Trust had some kind of interest in BR Lakewood, with no indication of how much interest it owns in that company, when and how its ownership came about, and how much consideration the Trust remitted for that interest, is not sufficient to impute knowledge to C. Ringel of the fraudulent transfer. At the pleading stage, all inferences of what Plaintiff "should have known" must be interpreted in Plaintiff's favor. All that B. Ringel has shown is that at some point in 2019, he indicated that his children's trust had obtained some kind of interest in BR Lakewood. That fact, standing alone, raises no more than a "mere suspicion" of a fraudulent transfer, which is insufficient to start the statute of limitations. *Saphir Int'l, SA,* 25 A.D.3d at 315–16.

Second, even assuming that C. Ringel had reason to suspect there was a fraudulent transfer, there is no indication that she had any way of verifying this. It is not sufficient for a plaintiff to be alerted to a possible fraud; the two-year statute only begins to run from the time the plaintiff "could with reasonable diligence have discovered it." CPLR 213(8). Where a plaintiff lacks the means to discover the fraud, the statute does not begin to run. *See In re Bernard L. Madoff Inv. Securities LLC*, 445 B.R. 206, 233 (Bankr. S.D.N.Y. 2011) (although defrauded investors had "red flags" of

13

FILED: NEW YORK COUNTY CLERK 02/23/2022 12:07 AM
NYSCEF DOC. NO. 24

23-22655    Doc 2-9    Filed 09/07/23    Entered 09/07/23 20:04:25    Exhibit EX_I    Pg
346 of 374

INDEX NO. 653518/2021
RECEIVED NYSCEF: 02/23/2022

18 of 19

fraud, only the insiders had access to information that would allow them to discover the fraud, while most investors did not, and so statute of limitations did not begin to run as to them); *Jenkins v. Jenkins*, 181 Misc.2d 1, 11 (Westchester Cty. 1999) (Although wife knew about transfers at issue early on, it was not until she obtained discovery from the court years later that she learned of the fraud, and so statute of limitation did not run until then.)

Here, all that C. Ringel knew was that B. Ringel had twice claimed in 2016 and 2018 that he was the "sole" member of BR Lakewood, and yet in 2019 his children's trust supposedly held some unknown percentage interest in that company, with no indication of how or when that came about. And, she had no way of ascertaining the facts – this was a completely private transfer, engineered by B. Ringel, as to which she was not provided with the details, and there is no reason to believe that Mr. Ringel would have provided such details as he was making transfers to avoid his creditors as the Complaint alleges.

"Where it does not conclusively appear that a plaintiff had knowledge of facts from which the fraud could reasonably be inferred, a complaint should not be dismissed on motion and the question should be left to the trier of the facts." *Trepuk v. Frank,* 44 N.Y.2d 723, 725 (1978). The issue of what Plaintiff should have known regarding B. Ringel's fraudulent transfers in 2012 and 2015 clearly raises questions of fact that cannot be resolved on this motion to dismiss.

14

# CONCLUSION

Defendants' motions should be denied, except (1) the claims under DCL § 273-a should be dismissed without prejudice as premature and (2) the claim under DCL § 273 solely with respect to the 2012 transfer should be dismissed.  All other claims should remain.

Dated: New York, New York
      February 22, 2021

                        /s/ Efrem Schwalb
                        Efrem Schwalb
                        KOFFSKY SCHWALB, LLC
                        *Attorneys for Plaintiff*
                        500 Seventh Avenue, 8th Floor
                        New York, New York 10018
                        (646) 553-1590

15

| | |
|---|---|
| CHANA RINGEL AND CR LAKEWOOD, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR LAKEWOOD HOLDINGS, LLC, | **SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: OCEAN COUNTY** |
| Plaintiffs, | Civil Action |
| vs. | |
| BR LAKEWOOD, LLC AND BENJAMIN RINGEL, | Docket No. OCN-C-127-15 |
| Defendants, | |

| | |
|---|---|
| CHANA RINGEL, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR OAKRIDGE, LLC, | |
| Plaintiffs, | Docket No. OCN-C-152-16 |
| vs. | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' ORDER TO SHOW CAUSE TO ENFORCE LITIGANT'S RIGHTS** |
| BENJAMIN RINGEL, SUNSET HILL OAKRIDGE PLAZA, LLC, JOHN DOES 1-10, AND ABC CORPORATION 1-10, | |
| Defendants. | |

**PATTERSON BELKNAP WEBB & TYLER LLP**
Peter C. Harvey, Esq. – NJ 035131989
1133 Avenue of the Americas
New York, New York 10036
Phone: (212) 336-2000
Email:  pcharvey@pbwt.com

Attorneys for Defendants-Appellants
BR Lakewood, LLC, Benjamin Ringel
and Sunset Oakridge Plaza, LLC

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT...........................................1

FACTUAL AND PROCEDURAL BACKGROUND...............................4

     A.   Chana Breaches the Term Sheet by Commencing
         Another Action in New York State Court...............6

     B.   This Court Awards the Pinewood Property to
         Rushmore Without Knowing of Chana's First Breach
         of the Term Sheet....................................7

     C.   Chana Again Breaches the Term Sheet..................9

ARGUMENT.......................................................11

I.  This Court Should Exercise Its Personal
    Jurisdiction Over Chana and Order Her to Withdraw
    Her Complaint in the New York Action.....................11

II.  Because Chana Has Breached the Term Sheet
    Multiple Times, this Court Should Reverse the
    Order Awarding the Pinewood Property to Rushmore.........14

III. This Court Should Order Chana to Pay Counsel Fees
    Incurred in Connection with the New York Action..........17

CONCLUSION.....................................................19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Associated E. Mortg. Co. v. Young,
    163 N.J. Super. 315 (Ch. Div. 1978) ........................16

Benjoray, Inc. v. Academy House Child Dev. Ctr.,
    437 N.J. Super. 481 (App. Div. 2014) .......................14

Bonnco Petrol, Inc. v. Epstein,
    115 N.J. 599 (1989) ........................................15

Brundage v. Estate of Carambio,
    195 N.J. 575 (2008) ........................................14

Dep't of Pub. Advocate, Div. of Rate Counsel v. New
    Jersey Bd. of Pub. Utils.,
    206 N.J. Super. 523 (App. Div. 1985) ...................12, 13

Hageman v. 28 Glen Park. Assoc., LLC,
    402 N.J. Super. 43 (Ch. Div. 2008) .........................16

Inselberg v. Bisignano,
    No. A-3511-18T3, 2020 WL 2120267 (N.J. Super. Ct.
    App. Div. May 4, 2020) .....................................18

Jannarone v. W. T. Co.,
    65 N.J. Super. 472 (App. Div. 1961) ........................13

John Hancock Mut. Life Ins. Co. v. Fiorilla,
    83 N.J. Super. 151 (Ch. Div. 1964) .................11, 12, 13

O'Loughlin v. O'Loughlin,
    6 N.J. 170 (1951) ..........................................12

Robb v. Shore Bus Transp. Co.,
    159 A. 527 (N.J. Super. Ct. 1932) ..........................11

Wear v. Selective Ins. Co.,
    455 N.J. Super. 440 (App. Div. 2018) .......................17

**PRELIMINARY STATEMENT**

As this Court knows, this ongoing dispute between Ben Ringel and Chana Ringel has lasted for several years. In August 2021, pursuant to the terms of a settlement agreement between the parties (the "Term Sheet") or "Settlement Agreement"), this Court declared Rushmore Capital, LLC ("Rushmore"), the winning bidder on the Pinewood Property. This Court retained jurisdiction over this dispute and the Term Sheet. Since then, Defendants have filed an appeal of that decision, and Plaintiffs and Rushmore have been attempting to forcibly and prematurely execute that sale. The settlement agreement also declared that all remaining claims would be sent to arbitration. As noted above, this Court has exclusive jurisdiction over the execution of the settlement terms.

However, despite Plaintiffs' ongoing efforts to characterize Defendants as unnecessarily litigious and in breach of the parties' settlement terms, it actually is Plaintiffs who breached the settlement agreement first. In May 2021 — months before this Court's August 2021 Order declared Rushmore the winning bidder on the Pinewood Property — Chana commenced a new action in New York Supreme Court (the "New York Action") by issuing a Summons. Later, Chana filed a Complaint in the New York Action claiming that Ben had been fraudulently transferring his assets in a way that would affect her ability to recover any judgment obtained in the actions pending in this Court, including in the related arbitration. This

separate New York litigation constitutes a clear breach of the
settlement agreement, which expressly reserved for this Court all
issues related to the execution of the settlement agreement.

Moreover, in January 2022, Defendants offered to buy-out
Chana's interest in Pinewood Property for approximately $19.6
million. This buy-out would not only be the most tax-efficient
way to dispose of the property as a whole, but it also would save
Chana millions of dollars in tax liability. As this Court is
aware, both the Term Sheet and this Court's May 8, 2020 Order
explain that any disposition of the Pinewood Property must be done
in a way that achieves all available tax savings. Instead of
accepting Defendants' offer, Chana filed an Order to Show Cause
before this Court, attempting to force the sale of the Pinewood
Property to Rushmore before Defendants even had a chance to finish
briefing the appeal of that matter. Chana's refusal to accept
Defendants' offer and attempt to force the sale of Pinewood
Property to Rushmore — which is a tax-inefficient transaction — is
yet another breach of the parties' settlement agreement and this
Court's May 2020 Order.

Chana's breaches of the Term Sheet constitute, as a matter of
law, unclean hands. Given this Court's inherent equitable powers
and personal jurisdiction over Chana herself, it has the ability
to end this bitter litigation and dispose of the Pinewood Property
in a manner that ultimately benefits everyone and harms no one.

2

Specifically, for the reasons set forth below, this Court should
(1) order Chana to withdraw her complaint in the New York Action;
(2) order that BR Lakewood purchase Chana's share of the Pinewood
Property, which would save Chana millions of dollars in tax
liability; and (3) order Chana to pay counsel fees that Defendants
have incurred in defending against the New York Action.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises from two lawsuits filed by Chana Ringel and related entities ("Plaintiffs"), against her brother, Ben Ringel, and related entities ("Defendants"). The first suit, filed in 2015, is captioned as Chana Ringel v. BR Lakewood, LLC, Docket No. OCN-C-127-15. The second was filed in 2016 and captioned as Chana Ringel, et al. v. Benjamin Ringel, et al., Docket No. OCN-C-152-16.

Trial in both actions commenced in February 2020. (Harvey Cert. Exhibit A at 3.)[1] At the close of the third day of trial, the parties engaged in direct settlement discussions in this Court's chambers. (See Harvey Cert. Exhibit B.) These discussions were held both in chambers and, separately, among counsel and the parties. The talks proved to be fruitful. A settlement was reached between the parties. (Harvey Cert. Exhibit B at 4-5.) However, despite the discussion and agreement to certain material terms, Chana delayed the execution of the Term Sheet, causing Defendant to have to file a motion to enforce the settlement. (Harvey Cert. Exhibit B.)

Pursuant to the discussion leading up to the Term Sheet, the material terms of the settlement agreement were, among other things, that (1) the "Pinewood property would be listed for sale

---

[1] "Harvey Cert." refers to the Certification of Peter Harvey in support of Defendants' Order to Show Cause and accompanying Exhibits.

with a broker and publicly sold, with each party retaining the
right to bid on the property," (2) the "four remaining properties
comprising BCR Lakewood would be divided" among the parties, and
(3) "all remaining issues in the case would be resolved in
arbitration." (Harvey Cert. Exhibit B at 4-5.)

On May 8, 2020, the trial court entered an Order granting
Defendants' motion to enforce the settlement. (Harvey Cert.
Exhibit C.) Specifically, the Court ordered that the terms of the
settlement were those set forth in the Term Sheet attached as
Exhibit A to a March 10, 2020 Certification submitted by prior
counsel. (Harvey Cert. Exhibit C at 2.) In recognition of the
potential negative tax implications from the sale of the Pinewood
Property, the Court made this important change to the terms of the
agreement:

> Section V is amended – tax efficiencies are
> agreed to - to the extent they benefit both
> parties.

(Harvey Cert. Exhibit C at 2.)

The Term Sheet, dated October 26, 2020, memorialized the terms
of the parties' agreement (the "Term Sheet" or "Agreement"), which
was meant to settle all issues and controversies between the
parties relating to the present actions. (Harvey Cert. Exhibit D;
Ringel Cert. ¶ 6.) The Term Sheet divides equally among the
parties four of the five parcels of real estate at issue in the
lawsuits. (Harvey Cert. Exhibit D.) The parties further agreed

to sell the fifth parcel - the "Pinewood Property" – as part of a
court-supervised bidding process.  (Harvey Cert. Exhibit D at 1-
2.)  The parties stipulated that the remaining claims would be
submitted to binding arbitration with a "mutually acceptable
arbitrator."  (Harvey Cert. Exhibit D at 2.)  The parties chose
to arbitrate before the Honorable Robert P. Contillo.  (Ringel
Cert. ¶ 5.)[2]  Additionally, the trial court retained jurisdiction
over the parties to enforce the Agreement.  (Harvey Cert. Exhibit
D at 3.)

### A.   Chana Breaches the Term Sheet by Commencing Another Action in New York State Court

Despite the Term Sheet's clear instruction that all claims
outside of the issues surrounding the five real estate parcels
should be submitted to arbitration, on May 30, 2021, Chana filed
an action in New York Supreme Court (the "New York Action").
(Ringel Cert. Exhibits A, B.)  The lawsuit alleges that Ben
fraudulently transferred assets while he was a defendant in the
two above-captioned lawsuits, in violation of New York state laws.
(Ringel Cert. Exhibit B.)  Specifically, Chana alleges that Ben
transferred his ownership interest in a parcel of property at 15
Washington Avenue, Lawrence, New York to his wife, Yael Ringel,
for no meaningful consideration.  (Ringel Cert. Exhibit B at 6.)
Chana also alleges that Ben twice transferred 40% of his ownership

---

[2] "Ringel Cert." refers to the Certification of Benjamin Ringel in support of
Defendants' Order to Show Cause and accompanying Exhibits.

interest in BR Lakewood, once in 2012 and once in 2015, without any meaningful consideration. (Ringel Cert. Exhibit B at 6.) Chana claimed that she was entitled to have each fraudulent transfer set aside under New York Debtor and Creditor Law. (Ringel Cert. Exhibit B at 6-9.)

Throughout the New York complaint, Chana references the actions she brought in New Jersey Superior Court. (See, e.g., Ringel Cert. Exhibit B at 1, 3, 6.) Chana claims that Ben's transfers could affect her ability to recover "any judgment" in the actions before this Court. (Ringel Cert. Exhibit B at 1.) On January 17, 2022, Ben moved to dismiss the complaint. (Ringel Cert. Exhibit C.) Then, on February 23, 2022, Chana submitted papers in opposition to Ben's motion to dismiss. (Ringel Cert. Exhibit E.) Ben filed a reply in support of his motion to dismiss on March 4, 2022. (Ringel Cert. Exhibit D.)

The New York Action is an explicit violation of the Term Sheet. Under the settlement agreement, the parties were required to submit "all remaining claims" to arbitration, and this Court retained jurisdiction to enforce "the terms of the Settlement Agreement." (Harvey Cert. Exhibit D at 2, 3.)

**B.** **This Court Awards the Pinewood Property to Rushmore Without Knowing of Chana's First Breach of the Term Sheet**

In August 2021, after the bidding process for the Pinewood Property concluded, Plaintiffs and Defendants each filed motions

7

concerning the sale of the Pinewood Property.  Chana moved for an order declaring Rushmore the winning bidder, arguing that Rushmore's final bid was a higher face value dollar amount. (Harvey Cert. Exhibit F.)  Ben cross-moved for an order declaring BR Lakewood the winning bidder, grounding the motion in simple math and logic:  BR Lakewood's bid was the highest net value amount and would maximize the Pinewood Property's value since it would yield the most money to the parties.  (Harvey Cert. Exhibit G.) BR Lakewood's bid was not only the highest, but also the only bid that offered the tax efficiencies this Court sought to achieve in its May 8th Order. (See Ringel Cert. ¶¶ 13, 15.)

Unaware of Chana's prior breach, on August 25, 2021, this Court granted Plaintiffs' Order to Show Cause seeking to declare Rushmore the highest bidder under the Agreement.  (Harvey Cert. Exhibit E.)  On October 5, 2021, Defendants filed a timely Notice of Appeal, and on October 7, 2021, the Appellate Division filed a notice of docketing.  (Harvey Cert. Exhibit H.)  Defendants filed their opening appellate brief on January 20, 2022.  (Harvey Cert. Exhibit I.)

Rushmore and Chana have each filed an Order to Show Cause to effectuate the sale of the Pinewood Property.  (Harvey Cert. Exhibits K, M.)  Ben, meanwhile, filed for a motion to stay proceedings in this Court while the merits of the sale are pending on appeal.  (Harvey Cert. Exhibit J.)

### C.    Chana Again Breaches the Term Sheet

As Defendants were preparing for the appeal, on January 7, 2022, counsel for Defendants submitted a letter to counsel for Plaintiffs offering a mutually beneficial way to resolve the disagreement over the Pinewood Property. (Harvey Cert. Exhibit L.) Specifically, the letter offered to buy-out Chana's interest in the Pinewood Property for approximately $19.6 million. (Harvey Cert. Exhibit L at 1.) As outlined in the January 7 letter, the proposed transaction would permit Chana to save over $8 million in capital gains tax. (Harvey Cert. Exhibit L at 1-2.) Separately, a partner at a law firm with expertise in tax law has concluded that the most tax-efficient way to dispose of the Pinewood Property — pursuant to this Court's May 8, 2020 Order — would be through the proposed transaction outlined in the January 7, 2022 letter. (Ringel Cert. ¶ 15.) Rather than respond to the January 7, 2022 letter and accept the offer, Chana brought an Order to Show Cause in the present actions, seeking to forcibly sell the Pinewood Property to Rushmore. (Ringel Cert. ¶ 14.) This application also constitutes a breach of the Term Sheet and this Court's May 8, 2020 Order, both of which direct the parties to seek out tax savings strategies. (Harvey Cert. Exhibit D at 2; Harvey Cert. Exhibit C at 2.)

Defendants' ongoing efforts to enforce the Term Sheet — which Chana has now breached twice — have caused Defendants to spend

over $100,000 in legal expenses.  (Ringel Cert. ¶ 4.)  Chana has
been using these actions and the New York Action in furtherance of
her personal feud with Ben.  (Ringel Cert. ¶ 20.)

    At this point, the most reasonable and tax-efficient method
by which this Court can dispose of the Pinewood Property would be
to reverse the August 2021 Order awarding the property to Rushmore
and ordering Chana to accept BR Lakewood's offer to buy out Chana's
interest in the Pinewood Property.

## ARGUMENT

### I.   THIS COURT SHOULD EXERCISE ITS PERSONAL JURISDICTION OVER CHANA AND ORDER HER TO WITHDRAW HER COMPLAINT IN THE NEW YORK ACTION

The New York Action is a clear breach of the Term Sheet. As the proper execution of the Term Sheet falls under this Court's exclusive jurisdiction, this Court should exercise its personal jurisdiction over Chana and order her to withdraw the complaint in the New York Action. Granting this relief is common in New Jersey jurisprudence, particularly where, as here, Chana has subjected Ben to vexatious and redundant litigation in violation of the Term Sheet, which was meant to put an end to this ongoing legal feud.

A plaintiff implicitly consents to personal jurisdiction in the court where she chooses to file suit. See Robb v. Shore Bus Transp. Co., 159 A. 527, 528 (N.J. Super. Ct. 1932). Under well-settled New Jersey law, so long as a court has personal jurisdiction over a party, it may order her to refrain from "prosecuting suits in other jurisdictions where such action would be contrary to equity and good conscience." John Hancock Mut. Life Ins. Co. v. Fiorilla, 83 N.J. Super. 151, 155 (Ch. Div. 1964). These orders "are In personam judgments against the party who has instituted the foreign litigation." Id.

A court may order a party to withdraw a complaint in a foreign jurisdiction for any one of the following three reasons: "(1) to prevent vexatious and oppressive litigation and/or to prevent a

11

multiplicity of litigation, (2) to prevent an evasion of some policy of the forum state, or (3) to allow the court which first obtains possession of the controversy to dispose of it." Id. (internal citations omitted).

While this Court may issue an injunction for any one of the above-mentioned reasons, all three are applicable here. First, the litigation in New York is undisputedly "vexatious and oppressive." Id. Chana has no right to harass Ben by initiating duplicative actions in foreign jurisdictions. Chana is bound to litigate any violations of the settlement agreement in the forum she previously agreed to: New Jersey Superior Court. See O'Loughlin v. O'Loughlin, 6 N.J. 170, 181 (1951) ("No one at the common law has a right to have his controversy adjudicated in any particular court.") To the extent Chana was concerned with any allegedly fraudulent transactions that could have affected any possible judgment from these actions or from the arbitration, Chana should have brought such claims to the attention of this Court — not a state court in New York. To protect Ben from the costs and hardship associated with litigating duplicative actions in two forums, this Court should enjoin Chana's New York Action.

Second, allowing the New York Action to proceed would undermine New Jersey's "strong public policy" in favor of enforcing settlement agreements. Dep't of Pub. Advocate, Div. of Rate Counsel v. New Jersey Bd. of Pub. Utils., 206 N.J. Super. 523, 528

12

(App. Div. 1985).  In New Jersey, the "settlement of litigation ranks high" in its public policy.  Jannarone v. W. T. Co., 65 N.J. Super. 472, 476 (App. Div. 1961).  To further this policy, New Jersey courts "strain to give effect to the terms of a settlement wherever possible."  New Jersey Bd. of Pub. Utils., 206 N.J. Super. at 528.  Here, the Term Sheet provides that all claims must be submitted to arbitration and any breach of the Agreement must be brought to and adjudicated by *only* this Court.  (See Harvey Cert. Exhibit D at 2-3.)  An order enjoining Chana from pursuing the New York Action would be in furtherance of the New Jersey public policy favoring settlement of litigation.  Accordingly, the second element — "to prevent an evasion of some policy of the forum state" — is also met.  Fiorilla, 83 N.J. Super. at 155.

Finally, the Term Sheet was executed on October 26, 2020 — long before Chana commenced the New York Action on May 30, 2021. Accordingly, it is this Court — and not the New York Supreme Court — that has "first obtain[ed] possession of the controversy."  Id.

As all three elements described in Fiorilla are met, and as this Court has personal jurisdiction over Chana, this Court can and should order Chana to withdraw the complaint in the New York Action.  Failure to do so would expose Defendants to duplicitous and oppressive litigation.

II.   **BECAUSE CHANA HAS BREACHED THE TERM SHEET MULTIPLE TIMES,
      THIS COURT SHOULD REVERSE THE ORDER AWARDING THE PINEWOOD
      PROPERTY TO RUSHMORE**

Chana has now breached the Term Sheet twice.  First, as discussed, she has filed the New York Action, despite the Term Sheet's clear instruction that any money claims would be submitted for arbitration and that controversies under the Term Sheet would be under this Court's jurisdiction.  Second, Chana rejected BR Lakewood's offer to buy out Chana's interest in the Pinewood Property, which was the most tax-efficient way to dispose of the Pinewood Property.  These breaches — the first of which occurred <u>before</u> this Court awarded the Pinewood Property to Rushmore — have injured Ben.  Accordingly, this Court has ample grounds to reverse the August 2021 Order awarding the Pinewood Property to Rushmore.

Under New Jersey law, a settlement agreement is governed by principles of contract law.  <u>Brundage v. Estate of Carambio</u>, 195 N.J. 575, 600 (2008).  While courts strive to enforce settlement agreements, recession of the settlement agreement is appropriate when a party has "gained an unfair advantage by virtue of a fraudulent misrepresentation, and monetary damages alone will not satisfy the injury sustained by the aggrieved party."  <u>Benjoray, Inc. v. Academy House Child Dev. Ctr.</u>, 437 N.J. Super. 481, 488 (App. Div. 2014).  The purpose of rescinding a contract is to "restore the parties to the status quo ante and prevent the party who is responsible for the misrepresentation from gaining a

14

benefit." <u>Bonnco Petrol, Inc. v. Epstein</u>, 115 N.J. 599, 612 (1989).

This Court should reverse its decision to award the Pinewood Property to Rushmore. At the time this Court issued its August 25, 2021 Order, it did not know that Chana had already breached the Term Sheet by commencing the New York Action in May 2021. (Harvey Cert. Exhibit E; Ringel Cert. Exhibit A.) Had this Court known of this breach, it probably would not have never awarded title to the Pinewood Property to Rushmore.

Awarding the Pinewood Property to Rushmore also has given rise to yet another breach of the Term Sheet. The award to Rushmore is in direct contradiction with this Court's May 8, 2020 Order requiring the parties to account for "tax efficiencies" in disposing of the property. (Harvey Cert. Exhibit C.) Throughout this litigation, Plaintiffs and Rushmore have consistently argued that the most tax-efficient way to transfer the Pinewood Property would be in connection with a Section 1031 exchange. However, as analyzed by a law firm with expertise in this area of the law, a Section 1031 exchange would not be feasible. (Ringel Cert. ¶ 15.) Instead, the most tax efficient way to transfer the Pinewood Property — and the transaction that also would yield the highest net proceeds to <u>both</u> parties — is a sale of the Pinewood Property to Defendant BR Lakewood, LLC. (Ringel Cert. ¶ 15.) The pending sale to Rushmore, therefore, would breach the Term Sheet and this

Court's instructions to dispose of the Pinewood Property in a manner that seeks out all tax savings strategies.

Chana's refusal of the January 7, 2022 offer to buy out her interest in the Pinewood Property also constitutes a breach of those instructions. (Ringel Cert. ¶¶ 13, 14.) Instead of accepting the tax-efficient offer, Chana has been seeking to forcibly sell the Pinewood Property to Rushmore. As that compelled sale is not a tax efficient transaction, such a result would breach the Term Sheet and violate this Court's May 8, 2020 Order. (Harvey Cert. Exhibits C, D.)

Ordering Chana to accept BR Lakewood's offer to buy out her interest in the Pinewood Property is especially appropriate, given that her intentional breaches of the Term Sheet have left her with unclean hands. Associated E. Mortg. Co. v. Young, 163 N.J. Super. 315, 330 (Ch. Div. 1978) ("The unclean hands doctrine refuses relief to a plaintiff whose conduct has violated the court's conscience, good will or other equitable principles."). Although rarely used, it is nevertheless "an available tool for a court of equity's use, not out of regard for defendant or to punish plaintiff, but upon larger considerations that make for the advancement of right and justice." Hageman v. 28 Glen Park. Assoc., LLC, 402 N.J. Super. 43, 55 (Ch. Div. 2008).

Here, should BR Lakewood be given the opportunity to buy-out Chana's interest in the Pinewood Property, it would not harm Chana

at all.  Instead, it would create millions of dollars of tax savings for Chana and be the most efficient way to dispose of the property, finally ending the years of bitter litigation in this case.  (Ringel Cert. ¶¶ 13, 15, 17.)  Because Chana has now breached the Term Sheet in two separate instances, this Court should use its inherent equitable powers to end this litigation and dispose of the Pinewood Property in a way that hurts no one and benefits everyone — requiring BR Lakewood to buy out Chana's interest in the Pinewood Property.

### III. THIS COURT SHOULD ORDER CHANA TO PAY COUNSEL FEES INCURRED IN CONNECTION WITH THE NEW YORK ACTION

Chana's decision to unnecessarily engage in redundant litigation in New York, despite the clear import of the Term Sheet, has caused Ben to incur unnecessary and burdensome counsel fees. Because Chana is at fault, this Court should order her to pay counsel fees incurred in connection with Ben's defense of the New York Action.

Rule 1:10-3 provides that courts may "make an allowance for counsel fees to be paid by any party to the action to a party accorded relief under this rule."  R. 1:10-3; see also Wear v. Selective Ins. Co., 455 N.J. Super. 440, 459 (App. Div. 2018) ("The decision to award counsel fees [under Rule 1:10-3] 'rests within the discretion of the trial court.'" (quoting Maudsley v. State, 357 N.J. Super. 560, 590 (App. Div. 2003)).

Chana's decision to circumvent this Court and file the duplicative and vexatious New York Action is "clear evidence" of her "willful non-compliance" with the parties' Term Sheet. <u>Inselberg v. Bisignano</u>, No. A-3511-18T3, 2020 WL 2120267, at *5 (N.J. Super. Ct. App. Div. May 4, 2020). As discussed above, Chana not only has violated the Term Sheet, but she also failed to disclose her breach of the agreement to this Court. As a result of Chana's recalcitrant conduct, Ben has been forced to litigate the same underlying dispute in two different forums at great expense. For these reasons, this Court should grant Ben the counsel fees incurred as a result of having to defend the New York Action.

## CONCLUSION

For the reasons set forth above, this Court should (1) order Chana to withdraw her complaint in the New York Action; (2) order that BR Lakewood purchase Chana's share of the Pinewood Property, which would save Chana herself millions of dollars in tax liability; (3) order Chana to pay counsel fees that Defendants have incurred over the years in an attempt to enforce the settlement agreement and defend against the New York Action; and (4) grant such other relief as the Court deems equitable and just.

PATTERSON BELKNAP WEBB & TYLER LLP

By: ___/s/ Peter C. Harvey___
PETER C. HARVEY, ESQ.

Attorneys for Defendants-Appellants BR Lakewood, LLC, Benjamin Ringel, and Sunset Oakridge Plaza, LLC

DATED:  March 9, 2022

| | |
|---|---|
| CHANA RINGEL AND CR LAKEWOOD, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR LAKEWOOD HOLDINGS, LLC,<br><br>    Plaintiffs,<br><br>       vs.<br><br>BR LAKEWOOD, LLC AND BENJAMIN RINGEL,<br><br>    Defendants, | **SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION:OCEAN COUNTY**<br><br>Civil Action<br><br><br><br>Docket No. OCN-C-127-15 |
| CHANA RINGEL, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR OAKRIDGE, LLC,<br><br>    Plaintiffs,<br><br>       vs.<br><br>BENJAMIN RINGEL, SUNSET HILL OAKRIDGE PLAZA, LLC, JOHN DOES 1-10, AND ABC CORPORATION 1-10,<br><br>    Defendants. | Docket No. OCN-C-152-16<br><br>**ORDER** |

    **THIS MATTER HAVING BEEN OPEN TO THE COURT** by Defendants Benjamin Ringel, BR Lakewood, LLC, and Sunset Hill Oakridge Plaza, LLC ("Defendants"), by and through their counsel, Patterson Belknap Webb & Tyler LLP (Peter C. Harvey, Esq., appearing) seeking relief pursuant to *Rule 4:52* by way of Order to Show Cause, and the Court having read the papers filed in support thereof and in

opposition thereto, and the Court having heard oral argument on the application, and based upon the pleadings and proceedings had to date herein; and good cause having been shown;

It is on this _____ day of March 2022,

**ORDERED** and declared that, having filed an Action in New York Supreme Court on May 30, 2021 (the "New York Action"), Plaintiffs Chana Ringel and CR Lakewood, LLC individually, and derivatively on behalf of BCR Lakewood Holdings, LLC and BCR Oakridge, LLC ("Plaintiffs") have breached and violated the Term Sheet dated October 26, 2020, memorializing the parties' settlement in this case;

**ORDERED** that Plaintiffs withdraw the New York Action;

**ORDERED** and declared that, as a result of such breach, the Term Sheet is now null and void;

**ORDERED** that the Pinewood Property shall be transferred to Defendant BR Lakewood, LLC, who shall purchase Chana Ringel's share in the Pinewood Property for the amount proposed in Defendants' letter to Plaintiffs, dated January 7, 2022.

**IT IS FURTHER ORDERED** that Plaintiffs shall pay Defendants their reasonable attorneys' fees and costs incurred in connection with enforcing the Term Sheet and defending against the improperly filed New York Action, in an amount to be determined by the Court.

**IT IS FURTHER ORDERED** that a copy of this Order shall be served on all parties by electronic filing.

DATED:  March ____, 2022

_____
HON. FRANCIS R. HODGSON, JR.
Presiding Judge
Chancery Division


This motion was:
__ Opposed
__ Unopposed

| | |
|---|---|
| CHANA RINGEL AND CR LAKEWOOD, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR LAKEWOOD HOLDINGS, LLC,<br><br>    Plaintiffs,<br><br>        vs.<br><br>BR LAKEWOOD, LLC AND BENJAMIN RINGEL,<br><br>    Defendants, | **SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION:OCEAN COUNTY**<br><br>CIVIL ACTION<br><br><br><br>Docket No. OCN-C-127-15 |
| CHANA RINGEL, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF BCR OAKRIDGE, LLC,<br><br>    Plaintiffs,<br><br>        vs.<br><br>BENJAMIN RINGEL, SUNSET HILL OAKRIDGE PLAZA, LLC, JOHN DOES 1-10, AND ABC CORPORATION 1-10,<br><br>    Defendants. | Docket No. OCN-C-152-16<br><br>**CERTIFICATE OF SERVICE** |

I, Peter C. Harvey, hereby certify that on the 9th day of March 2022, a true and correct copy of the Memorandum of Law in Support of Defendants' Order to Show Cause to Enforce Litigant's Rights, the accompanying Certifications of Benjamin Ringel and Peter C. Harvey with Exhibits, and proposed orders granting Defendants' requested relief were served *via* the New Jersey Superior Court's electronic filing notification system upon all counsel of record.

By: _____ */s/ Peter C. Harvey*_
                    Peter C. Harvey, Esq.

PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of Americas
New York, NY  10036-6710
Tel. (212) 336-2000
Fax (212) 336-2222
E-Mail:  pcharvey@pbwt.com

DATED: March 9, 2022