UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| BCR PINEWOOD REALTY LLC, | Case No. 23-22655 |
| Debtor. | |

**MOTION TO DISMISS OR TO LIFT THE AUTOMATIC STAY**

KOFFSKY SCHWALB LLC
Efrem Schwalb
Bruce Weiner
Tal S. Benschar
500 Seventh Avenue, 8th Floor
New York, NY 10016
Tel.: 646.553.1590
Fax: 646.553.1591

# TABLE OF CONTENTS

**INTRODUCTION**........................................................................................................... 1

**JURISDICTION** ........................................................................................................... 2

**FACTS**........................................................................................................................... 2

    Debtor's Corporate Family And Chana Ringel's Interest Therein ............................. 2

    The Litigations Between Benjamin and Chana Ringel ............................................... 4

    The Partial Settlement ................................................................................................ 5

    Benjamin Loses the Arbitration.................................................................................. 6

    Creditors Pursue Benjamin Ringel............................................................................. 7

    The Sale Of Pinewood And Ringel's Attempts To Interfere ...................................... 8

**ARGUMENT** ................................................................................................................ 10

    The Petition Should Be Dismissed Because Ben Ringel Lacked Authority To Authorize It .... 10

    The Petition Should Also Be Dismissed For Bad Faith ............................................. 14

    The Filing Is Objectively Futile ................................................................................ 16

    The Listed Creditors Are Not Creditors Of Debtor.................................................... 16

    Alternatively, The Court Should Lift The Automatic Stay ........................................ 18

**NOTICE**........................................................................................................................ 20

**CONCLUSION** ............................................................................................................ 20

**Index of Motion Exhibits**........................................................................................... 22

**APPENDIX OF PROCEEDINGS IN NEW JERSEY SUPERIOR COURT** ........................ 24

# TABLE OF AUTHORITIES

**Cases**

*Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 295 (Del. 1999)............................................. 12

*In re 167 W. 133rd St. Hous. Dev. Fund Corp.,* 2018 WL 4637460, at *6 (Bankr. S.D.N.Y. 2018) ........................................................................................................................... 12, 16

*In re AAGS Holdings LLC*, 608 B.R. 373, 382 (Bankr. S.D.N.Y. 2019)...................................... 19

*In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1310 (2d Cir. 1997) ............................................. 14, 16

*In re Inwood Heights Hous. Dev. Fund Corp.*, 2011 WL 3793324, at *11 (Bankr. S.D.N.Y. 2011) ........................................................................................................................... 14, 15

*In re Park Towers Corp.*, 387 F.2d 948 (2d Cir. 1967) ................................................................ 12

*In re Pasta Bar By Scotto II, LLC*, 2015 WL 7307246, at *3 (Bankr. S.D.N.Y. 2015) ............... 12

*In re Quigley Co., Inc.*, 361 B.R. 723, 743 (Bankr. S.D.N.Y. 2007)...................................... 18, 19

*In re Reyes*, 2015 WL 4624156, at *5 (Bankr. S.D.N.Y. 2015) ................................................... 15

*In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir.1990)..................................................... 18

*Molecular Dynamics Ltd. v. Spectrum Dynamics Med. Ltd.,* 2022 WL 2901559, at *2 (S.D.N.Y. 2022).......................................................................................................................... 13

*Price v. Gurney*, 324 U.S. 100, 106 (1945)................................................................................. 12

*Sapphire Dev., LLC v. McKay*, 549 B.R. 556, 568 (D. Conn. 2016) .......................................... 16

**Statutes**

28 U.S.C. § 1334........................................................................................................................... 2

28 U.S.C. § 157............................................................................................................................. 2

6 Del. C. § 18-110....................................................................................................................... 12

N.J.S.A. 42:2C-42 ...................................................................................................................... 17

N.J.S.A. 42:2C-43 ...................................................................................................................... 17

N.Y. LLC Law § 603................................................................................................................... 17

N.Y. LLC Law § 607................................................................................................................... 17

## INTRODUCTION

Chana Ringel ("Chana") and CR Lakewood LLC (collectively "Movants"), as interested parties, as and for their application for an order dismissing this case under section 1112 of the Bankruptcy Code, respectfully represent as follows:

The instant bankruptcy petition was filed by Ben Ringel without any authority. Benjamin Ringel was removed by the New Jersey Superior Court, Chancery Division (the "Chancery Court") from any authority over Debtor and its parent company, and he was enjoined from acting as its manager. And, even if he had not been removed, he would not have had authority to file this bankruptcy under the governing Operating Agreements. And yet he filed this petition, falsely claiming he is the sole authority to do so. He also falsely claims that the creditors listed in the petition are Debtor's, when in fact they are Benjamin Ringel's personal creditors.

Benjamin's filing of the petition is a classic illustration of a bad faith litigation tactic. Benjamin Ringel has been litigating with his sister, Chana, since 2015 in the Chancery Division of the New Jersey Superior Court, over allegations that he looted several real-estate companies that they owned equally, including Debtor, and cheated her out of substantial sums. In the same proceedings, numerous creditors of Benjamin Ringel have been pursuing him and seek to attach proceeds from the sale of $47 million property in which he has a half interest, along with Chana Ringel, and which the court ordered sold. Just as these legal issues were coming to resolution, Ben Ringel filed this petition. Its clear purpose was to derail the Chancery Court proceedings, and substitute this Court as the forum for the liquidation of these companies.

Alternatively, in the event the Court does not dismiss this case, it should lift the bankruptcy stay so as to permit the Chancery Court to complete its resolution of the disputes outlined above.

## JURISDICTION

1.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York, dated July 10, 1984.

## FACTS

**Debtor's Corporate Family And Chana Ringel's Interest Therein**

2.      On September 7, 2023, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.  (D.E. 1)

3.      The Petition was signed by Benjamin Ringel, purporting to be the "Co-Managing Member of the Debtor."

4.      In his supporting declaration, however, he tells a different story.  He states that: "The Debtor is solely owned by BCR Lakewood Holdings LLC ("Holdco"), a pass-through Delaware limited liability company. Fifty percent (50%) of the membership interests in Holdco are held by BR Lakewood LLC ("BR") and the other fifty percent (50%) of the membership interests in Holdco are held by CR Lakewood LLC ("CR")."  (Benjamin Decl. ¶ 4)  These statements are correct.

5.      Benjamin Ringel attaches an organizational chart as Exhibit A, which we reproduce here:



That chart is mostly correct, except that in reality, Ringel himself is 100% owner of BR Lakewood. The purported 80% ownership by Benjamin Ringel Children's Trust is the result of sham transfers purportedly made in 2012 and 2015. One state court judge has already issued an order reversing the 2015 transfer of 40% interest in a suit brought by another creditor (Motion Exh. 26)[1], and lawsuits are being pursued to declare all of the transfers as fraudulent transfers.

6. Thus, Benjamin Ringel and Chana Ringel each own, indirectly, a half interest in Debtor and its sole asset, a residential complex known as the Pinewood property.

7. Debtor's Operating Agreement (Motion Exh. 20) states that BCR Lakewood is the sole member of Debtor, and appoints that company as its manager. (Motion Exh. 20, ¶¶ 7, 9).

---

[1] An index of all Motion Exhibits is appended at the end of this motion.

8.     BCR Lakewood's Operating Agreement in turn, recites that Benjamin and Chana Ringel are appointed Co-Managers, and expressly states that the approval of *both* Ben and Chana Ringel is required for any decision:

> The Members hereby elect and appoint Benjamin Ringel and Chana Ringel as the initial Managers of the Company. **Any decision, action, consent or approval of the initial Managers under this Agreement shall require all of the initial Managers acting jointly**.

(Ringel Decl. Exh. B ¶ 5.1(a))

**The Litigations Between Benjamin and Chana Ringel**

9.     In 2015, Movants brought an action in New Jersey Superior Court in Ocean County (the "Chancery Court") entitled *Chana Ringel v. BR Lakewood*, LLC, Docket No. OCN-C-127-15 (the "Lakewood Action") to prevent Benjamin Ringel from destroying their significant real estate holdings in Lakewood, New Jersey (the "Lakewood Properties"), as he had previously done to every other investment she made with him.  Movants alleged that Benjamin was treating BCR Lakewood and its five subsidiary companies (one of which is Debtor) as his and his alone, making management decisions without advising Chana, and taking whatever money he wanted, whenever he wanted, without Chana's knowledge or consent, the financial  consequences to the Company be damned.  (*See* First Amended Verified Complaint in the Lakewood Action, Motion Exh. 1).

10.     The proceedings there were lengthy and complex.  We attach an Appendix that summarizes the proceedings, and state here only those directly relevant to this motion.

11.     Almost immediately after the original complaint was filed, the Chancery Court acted to stem Benjamin Ringel's misconduct.  On November 6, 2015, now-Chief Judge of the New Jersey Courts in Ocean County Francis Hodgson entered an order (Motion Exh. 2) which enjoined the Defendants (Benjamin Ringel and BR Lakewood LLC) from accessing the companies' bank accounts or directing the company or its staff to distribute funds to Benjamin or his related entities

and from "otherwise functioning as a member or manager of BCR Lakewood Holdings, except as specifically approved by the Court or its authorized agent."

12.     The Chancery Court also appointed Affiliated Management Co. ("Affiliated") as "Special Fiscal Agent" with "all powers of a member of BCR Lakewood Holdings and of the constituent holding entities including all powers necessary for the operation, control and management of said companies" and authorized Affiliated to appoint a forensic accountant to perform an accounting "of all amounts wrongfully paid by BCR Lakewood Holdings or its constituent entities to the Defendants" Benjamin Ringel and BR Lakewood.  (*Id.*)

13.     Thus, as more fully discussed below, since November 2015, Benjamin Ringel has been removed from any management of BCR Lakewood, the manager of Debtor.  The sole manager of BCR Lakewood is Chana Ringel, with Affiliated Management also given powers necessary for the operation, control and management of BCR Lakewood per Court order.

**The Partial Settlement**

14.     Trial began on February 25, 2020.  On the third day of trial, February 27, 2020, the parties engaged in direct settlement discussions in the Chambers of Judge Hodgson, which resulted in a partial settlement.  After numerous motions by Ben Ringel to attempt to change the terms, on September 4, 2020, the Chancery Court entered an order attaching a "Term Sheet" as Exhibit A that set forth the final terms of the Settlement.  (Motion Exh. 5).  The parties executed the Settlement Agreement on October 26, 2020.  (Motion Exh. 6)

15.     The key terms of the settlement were that (a) Pinewood would be sold through an arms-length process under the auspices of the Chancery Court, and the proceeds split equally between the owners; (b) Affiliated Management would continue to manage the Pinewood property, the Debtor and BCR Lakewood until the Pinewood sale was completed pursuant to the existing November 6, 1995 Order of the Chancery Court; (c) the other four properties would be split, two

to CR Lakewood LLC and two to BR Lakewood LLC; (d) the remaining claims would be sent to arbitration; and (e) if the Pinewood sale closing occurred before the conclusion of the arbitration, $5 million would be escrowed to help satisfy an arbitration award. (*See id.*). Each of these would create issues.

**Benjamin Loses the Arbitration**

16.     The parties retained an arbitrator, a retired New Jersey Chancery Court judge, Hon. Robert P. Contillo to arbitrate the claims. After multiple days of hearings spread over many months, the Arbitrator found that Benjamin Ringel "ha[d] acted oppressively against his sister Chana by paying himself excess distributions, in breach of the equality demands of the operating agreement(s), and in breach of his fiduciary duty to Chana and CR Lakewood." (Motion Exh. 7 at 15).

17.     The Arbitrator awarded in excess of $1.1 million in the Lakewood Action, and terminated Benjamin's participation as manager of BCR Lakewood. He also awarded approximately $700,000 in a second action, the Oakridge action, which included Chana's reasonable attorney's fees for that action. (*Id.* at 14-15; Motion Exh. 9).

18.     In a later decision, the Arbitrator granted reconsideration to Benjamin Ringel, and struck the provision terminating Benjamin Ringel's management rights based on Benjamin's argument that there was no need for such an order, as the Chancery Court's order of November 6, 2015 removing Benjamin as manager was still in effect, and Benjamin had even agreed to that in the Settlement Agreement until the sale of Pinewood was completed. (Motion Exh. 8). We discuss that motion in more detail below as it confirms that even Benjamin conceded just a few months ago that he has no authority over BCR Lakewood.

19.     The Chancery Court later confirmed the award and entered it as a judgment. (Motion Exh. 10)   Thus, Chana Ringel is a creditor of Benjamin Ringel of approximately $1.8 million.

20.     After confirmation, Chana Ringel sought a charging order against various companies, including Debtor, which can be used to seek a turnover of monies belonging to Benjamin to be directed to Movants.  As of this date, that motion is pending and was originally scheduled to be heard and decided the day after Benjamin filed the petition in this case, and is now scheduled for October 20, 2023.

**<u>Creditors Pursue Benjamin Ringel</u>**

21.     Apart from his dispute with Chana Ringel, Benjamin Ringel has been sued, found liable and sanctioned in numerous other lawsuits, and therefore has several large creditors. Contrary to the declaration filed by Mr. Ringel in this proceeding, none of the creditors he listed in the bankruptcy petition are "creditors" of BCR Pinewood.  Rather, they are parties in interest in that Benjamin's creditors have or are trying to obtain charging orders requiring his share of the Pinewood sale proceeds to be distributed to his creditors.

22.     In addition to Chana Ringel, the following creditors have intervened in the Lakewood Action and hold judgments against him in the following approximate amounts:

| | |
|---|---|
| Atalaya Income Fund II LP | $4.1 million |
| LMEZZ 250 W90 LLC | $11.6 million |
| JDWC LLC | $5 million |
| Cohen Tauber Spievack & Wagner P.C. | $400,000 |

23. At least three of these creditors have obtained charging orders against various LLCs, and a fourth's motion for a charging order is pending and was originally scheduled to be heard the day after Benjamin filed this proceeding.

24. Each of these creditors has filed pleadings concerning the disposition of the proceeds of the Pinewood sale that belong to their creditor Benjamin Ringel. As Mr. Ringel concedes, the total of the outstanding judgments against him of these creditors exceeds Benjamin's 50 percent share of the net proceeds.

**The Sale Of Pinewood And Ringel's Attempts To Interfere**

25. Despite agreeing to a court-supervised sale of the Pinewood property in May 2020, Benjamin has taken numerous steps to prevent that sale. All of these steps were rejected by the Chancery Court and Appellate Division in New Jersey. (*See* Appendix)

26. After numerous starts and stops, including two appeals by Benjamin Ringel, the Chancery Court determined that the winning bidder was by a company named Rushmore Capital ("Rushmore") for $47,100,000. (Motion Exhs. 12 and 13, Orders of August 23, 2021, and August 25, 2021).

27. Since Benjamin's last appeal was denied, Rushmore has indicated its desire to close the Pinewood sale. It has placed a $3 million deposit with respect to the purchase of the Pinewood property. However, because Benjamin has not cooperated with the parties by agreeing with his creditors where his share of the sale proceeds shall go, as well as dealing with various restraining notices issued by his creditors, the sale to Rushmore required further Court intervention.

28. Accordingly, on August 9, 2023, Rushmore moved the Chancery Court for a stay on the closing so that restraints issued by Benjamin's creditors could be removed, and for the Chancery Court to direct where the proceeds that are to be paid to Ben Ringel should be deposited, and other relief. (Motion Exh. 18, letter brief from Rushmore counsel).

29.     Thereafter, the above-referenced creditors of Ben Ringel filed motions with the Chancery Court to determine the priority of their claims from Benjamin's property, including any proceeds of the sale by Debtor of Pinewood.

30.     Chana Ringel, who is the sole manager of BCR Lakewood, which in turn is the manager of the Debtor, submitted a response in which she consented to a stay so that any restraints by creditors could be modified or removed, and requested that the Court order the proceeds of the Pinewood sale to be deposited in an escrow account under the Chancery Court's control, to be distributed according to its rulings on priority of Benjamin's creditors.  (Motion Exh. 19).

31.     The other creditors took positions similar to Chana's, agreeing that the parties should work to remove any restraints that might prevent the sale of Pinewood, Ben Ringel's portion of the proceeds should be escrowed while the Chancery Court determines the priority of Benjamin's creditors' claims.

32.     These various motions were initially due to be heard on September 8, 2023.  On September 7th, however, the Chancery Court adjourned the motions to October 20, 2023.  That same day, Ben Ringel filed the instant petition on behalf of Debtor.

33.     To summarize, the Chancery Court has been overseeing the sale of the Pinewood property, Debtor's sole asset, and the distribution of half the net proceeds to Benjamin Ringel's creditors, and the other half to Chana Ringel, as per the Settlement Agreement.  Ben Ringel has for years attempted to derail this process, and this petition is merely his latest bad faith effort to do same.

<u>**ARGUMENT**</u>

<u>**The Petition Should Be Dismissed Because Ben Ringel Lacked Authority To Authorize It**</u>

34.     Debtor's Operating Agreement (Motion Exh. 20) recites that BCR Lakewood is the sole member of Debtor, and appoints that company as its manager.  (Motion Exh. 20, ¶¶ 7, 9).

35.     Benjamin relies on the Operating Agreement of BCR Lakewood (Ringel Decl. Exh. B) which vests him with authority as Co-Manager of that company.   However, that Operating Agreement makes clear that even before Benjamin was removed as a co-manager by the Chancery Court, the agreement expressly requires the approval of *both* Ben and Chana Ringel for any decision:

> The Members hereby elect and appoint Benjamin Ringel and Chana Ringel as the initial Managers of the Company. **Any decision, action, consent or approval of the initial Managers under this Agreement shall require all of the initial Managers <u>acting jointly.</u>**

(Ben Ringel Decl. Exh. B ¶ 5.1(a))

36.     Chana was never consulted regarding the filing of this Chapter 11 petition and she does not consent to its filing.  (C. Ringel Decl. ¶ 3).  Consequently, Benjamin did not have authority to commence this petition on behalf of BCR Pinewood.

37.     Moreover, Ringel hides from this Court the Chancery Court order removing him as a co-manager of BCR Lakewood.

38.     As noted, the Chancery Court entered an order on November 6, 2015  (Motion Exh. 2)  which removed Ben Ringel "from otherwise functioning as a member or manager of BCR Lakewood Holdings." (*Id.* ¶ (f, g)).  The sole manager of BCR Lakewood is Chana, and Affiliated was appointed the fiscal agent.

39.     No modification of the removal of Benjamin as manager has *ever* been made by the Chancery Court.

40.     Notably, Benjamin himself vehemently argued to the Arbitrator that the November 6, 2015 order was still in effect.  As noted, initially, the Arbitrator ordered that Benjamin would be removed as manager of BCR Lakewood.  Benjamin moved to reconsider, arguing that this issue was not properly before the Arbitrator, as it had already been determined by the November 6, 2015 Chancery Court order cited above and the parties' settlement agreement.  (*See* Motion Exh. 21, reply brief on motion for reconsideration, at 2).

41.     That letter brief references the same orders, and a term of the Settlement Agreement that, until the closing of the sale of the Pinewood property, it would continue to be managed per the Court's prior orders regarding management.  (*See id.*)  In response to Chana's argument to the arbitrator that Benjamin's motion for reconsideration of the arbitrator's decision to remove Benjamin as manager indicated that Ben was intending to take some managerial action despite the existence of the November 6, 2015 Order, Benjamin responded unequivocally:

> **Yes, Judge Hodgson entered orders regarding management of BCR Lakewood**. Yes, those orders were referenced in paragraph 3 of the settlement agreement. Yes, paragraph 3 sets forth the parties' agreement on the management of BCR Lakewood.  There is only one conclusion that can be reached from these facts.  **The issue of the management of BCR Lakewood was already decided by Judge Hodgson** and agreed to by the parties and is NOT part of this arbitration.  **Further, the fact that Ben is challenging the ruling regarding management does not mean he does not intend to comply with the settlement agreement**.  The settlement agreement has been in effect for years and Plaintiffs have not cited one example where Ben has failed to comply with the management aspect (paragraph 3) of the agreement.  The reason is simple. Ben has fully complied with the settlement agreement **and intends to continue to do so**.

(*Id.* at 7-8).

42.     Notably, the Arbitrator granted the motion to reconsider, noting that Chancery Court's orders, referenced above, still were in effect.  (Motion Exh. 8 at 11)

43.     Thus, as Ringel himself vehemently argued, under the Chancery Court order, he had no managerial authority over BCR Lakewood or Debtor..

44.     We note that the Chancery Court only removed the "Defendants," *i.e.*, Benjamin Ringel and BR Lakewood, from management authority.  Chana Ringel remains a manager of BCR Lakewood, and through BCR Lakewood, the Debtor.[2]

45.     Benjamin Ringel's complete lack of authority requires dismissal.  "It is settled that the lack of authority to file a voluntary chapter 11 bankruptcy petition by the party filing it constitutes an independent ground for 'cause' for relief under § 1112(b) of the Bankruptcy Code." *In re 167 W. 133rd St. Hous. Dev. Fund Corp.,* 2018 WL 4637460, at *6 (Bankr. S.D.N.Y. 2018). *See Price v. Gurney*, 324 U.S. 100, 106 (1945) ("If the District Court finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition."); *In re Park Towers Corp.*, 387 F.2d 948 (2d Cir. 1967).

46.     In order to determine whether a party has authority to file, courts look to the state law governing the entity. *In re Pasta Bar By Scotto II, LLC*, 2015 WL 7307246, at *3 (Bankr. S.D.N.Y. 2015).

47.     Debtor is a limited liability company formed under the laws of the State of Delaware.  (Ringel Decl. ¶ 4)  Delaware law grants its chancery court to hear claims to remove management of such a company.  6 Del. C. § 18-110(a);  *Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 295 (Del. 1999).

48.     The New Jersey Superior Court clearly had jurisdiction to hear the motion to remove Ben Ringel as manager of BCR Lakewood, as the parties consented to the jurisdiction of

---

[2]     The Arbitrator incorrectly stated that Chana Ringel was also removed as a manager of BCR Lakewood Holdings.  That issue was not before him, and it is not a correct reading of the Chancery Court's order, which expressly applied only to the "Defendants" there, not Chana Ringel.  In any event, Chana Ringel is clearly an interested party in this bankruptcy proceeding, and has standing to make this motion regardless of whether she remains a manager of BCR Lakewood Holdings.

that Court and the company owned five other LLCs, each of which held property in Ocean Country New Jersey. Benjamin Ringel never challenged that authority, and indeed affirmatively asserted the validity thereof to the arbitrator.

49.    There is thus no question that the Chancery Court's order removing Ben Ringel as manager was valid, and remains subsisting today – as Ringel himself successfully argued to the arbitrator.

50.    Further, Ringel is judicially estopped from asserting otherwise, since he successfully argued that the November 2015 Order remains in effect to the Arbitrator. *See Molecular Dynamics Ltd. v. Spectrum Dynamics Med. Ltd.,* 2022 WL 2901559, at *2 (S.D.N.Y. 2022) (Judicial estoppel applies where: (1) "a party's later position is clearly inconsistent with its earlier position"; (2) "the party's former position has been adopted in some way by the court in the earlier proceeding"; and (3) "the party asserting the two positions would derive an unfair advantage against the party seeking estoppel.")

51.    And, even if Ben had not been removed, any decision to file the bankruptcy petition would have to have been made jointly by Ben and Chana Ringel. That was not done.[3]

---

[3]    Benjamin's papers reference a purported conflict on Chana's part because she is allegedly a creditor of the Debtor by virtue of a clause in the Settlement requiring BR Lakewood's share of the Pinewood sale proceeds to be escrowed if the sale occurred before the conclusion of the arbitration. This conflict, it is argued, renders her unable to manage Debtor. First, Chana is not a creditor of the Debtor, just Benjamin. Further, the referenced escrow in the Settlement Agreement is inapplicable because the arbitration concluded before the Pinewood sale took place. Moreover, even if money was to be escrowed, the escrowed funds refer to BR Lakewood's share of the sale proceeds, which would not make Chana a creditor of BCR Pinewood. Finally, even if Chana was a creditor of BCR Pinewood, that does not prevent her from being a manager under the law. Managers are often lenders to their companies. Benjamin is the one with a conflict as he wants to prevent the sale to avoid his personal creditors.

52. Chana Ringel clearly has an interest in dismissal of this petition because she is the sole remaining manager of BCR Lakewood Holdings, and hence Debtor. Further, she and CR Lakewood LLC hold a half interest in the Debtor and are due half the net proceeds.

53. For all of these reasons, this Court should dismiss the Petition.

**The Petition Should Also Be Dismissed For Bad Faith**

54. "When it is clear that, from the date of filing, the debtor has no reasonable probability of emerging from the bankruptcy proceedings and no realistic chance of reorganizing, then the Chapter 11 petition may be frivolous. Further, an entity may not file a petition for reorganization which is solely designed to attack a judgment collaterally—the debtor must have some intention of reorganizing." *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1310 (2d Cir. 1997).

55. The Second Circuit adopted the following factors for a court to consider as indicative that a filing is in bad faith:

> (1) the debtor has only one asset;
> (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;
> (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;
> (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;
> (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
> (6) the debtor has little or no cash flow;
> (7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and
> (8) the debtor has no employees.

*Id.* at 1311. *See In re Inwood Heights Hous. Dev. Fund Corp.*, 2011 WL 3793324, at *11 (Bankr. S.D.N.Y. 2011) (applying *C-TC* factors)

56. Here, several factors are present: the debtor has only one asset; it has no creditors, apart from one secured creditor, the bank which holds a mortgage on the property; the real dispute

here is between Benjamin Ringel and his many creditors (including Chana Ringel), who are seeking to escrow his share of the proceeds to pay off their judgments; the timing of the judgment, on the eve of when the Chancery Court was scheduled to consider the various creditor motions evidences an intent to hinder that process.

57.     Benjamin has repeatedly attempted to purchase Pinewood and avoid the contractually agreed proceeding agreed to by the parties.  He has done everything possible to interfere with the Rushmore closing, including by filing this petition.

58.     Indeed, the Rushmore Agreement of Sale (Motion Exh. 32) contains a covenant that the "Seller Parties," which includes Debtor, will not file a voluntary petition for bankruptcy.  (*Id.*, ¶ 15(h)(7))  This very bankruptcy filing – done by Ben Ringel with no authority – could be cited by Rushmore as a breach of that agreement.  Given Ben Ringel's past history, this deliberate, unauthorized breach of the sales agreement can only be understood as yet one more bad faith litigation tactic.  It also obviously has potential to cause tremendous prejudice to Movants.

59.     Benjamin Ringel's bad faith is now manifest.  His counsel sent a letter on September 20, 2023 (Motion Exhibit 33)  in which he asserts various bankruptcy provisions in an attempt to take over Debtor's sole asset, a residential property known as the Pinewood property, and related accounts used to operate the property.  This action is in clear contempt of the injunction against Mr. Ringel in Motion Exhibit 2.  Thus this bankruptcy petition is a tactic for Mr. Ringel to wrest control not only from the Chancery Court but Chana Ringel, whom he has failed to consult in any way about this petition, even though she owns 50% interest in Debtor.

60.     The use of a bankruptcy petition as a litigation tactic is one that weighs heavily in favor of finding bad faith and dismissal.  "As a general rule where, as here, the timing of the filing of a Chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of

the filing was a litigation tactic, the petition may be dismissed as not being filed in good faith." *In re Reyes*, 2015 WL 4624156, at *5 (Bankr. S.D.N.Y. 2015).

**The Filing Is Objectively Futile**

61.     Some courts in this Circuit require two showings for dismissal: "[T]he standard in [the Second Circuit] is that a bankruptcy petition will be dismissed if both objective futility of the reorganization process and subjective bad faith in filing the petition are found." *In re Inwood Heights Hous. Dev. Fund Corp.*, 2011 WL 3793324, at *11. Other courts have questioned whether both are required under Second Circuit precedent, and argue that either suffice. *Sapphire Dev., LLC v. McKay*, 549 B.R. 556, 568 (D. Conn. 2016).

62.     We submit, with all respect to the courts that have held otherwise, that the latter position is correct. In *In re C-TC 9th Ave. P'ship*, the Second Circuit affirmed dismissal for two alternative reasons, the second of which was "that C–TC filed its Chapter 11 petition in bad faith." *Id.*, 113 F.3d at 1313. Yet the term "objective futility" is nowhere mentioned in the decision, nor did the Second Circuit's discussion of bad faith, *Id.* at 1310-12, include any discussion as to whether the filing was futile. *See id.*

63.     In any event, assuming that objective futility is a requirement, it is clearly present here. "The objective futility standard focuses on whether a reorganization is realistically possible. A debtor will fail to satisfy that standard, particularly when there is no realistic possibility of an effective reorganization." *In re 167 W. 133rd St. Hous. Dev. Fund Corp.*, 2018 WL 4637460, at *8 (Bankr. S.D.N.Y. 2018). Here, Benjamin has no possibility of reorganization because he has no authority to do anything on behalf of the Debtor.

**The Listed Creditors Are Not Creditors Of Debtor**

64.     Furthermore, Benjamin Ringel outright lies when he claims that there are other creditors of Debtor. The Petition lists three creditors, Atalaya Asset Management, Cohen Tauber

Spievack and Wagner PC, and Ladder Capital Corp. (D.E. 1)   But these are not creditors of Debtor – they have never made any claim against Debtor, nor do they hold judgments against Debtor.

65.     Rather, these creditors have judgments against *Benjamin Ringel personally*, but he is three steps removed from Debtor, owning BR Lakewood, which in turn has a 50 percent interest in BCR Lakewood Holdings, which in turn owns Debtor.   The claim that these three are creditors of Debtor is a knowing falsehood of Mr. Ringel.

66.     It is true that three of these creditors hold charging orders under New York or New Jersey law, which are directed to various LLCs, including   Debtor, as well as other affiliated companies.

67.     However, charging orders are not debts of the company, they are merely means for a judgment creditor to perfect an interest in the judgment debtor's distributions due from that limited liability company.  *See* N.Y. LLC Law § 607(a) (judgment creditor may obtain charging order, but "the judgment creditor has only the rights of an assignee of the membership interest."); *Id.* § 603(a)(3)("[T]he only effect of an assignment of a membership interest is to entitle the assignee to receive, to the extent assigned, the distributions and allocations of profits and losses to which the assignor would be entitled."); N.J.S.A. 42:2C-43 ("judgment creditor [who obtained a charging order] has only the rights of an assignee of the limited liability company interest."); N.J.S.A. 42:2C-42 ("A transferee has the right to receive, in accordance with the transfer, distributions to which the transferor would otherwise be entitled" but does not have the right to "participate in the management or conduct of the company's activities").

68.     The Debtor here owes these creditors nothing; to the extent there are any distributions to Benjamin Ringel, then the charging orders merely provide for payments to these creditors first of any of his distributions.  And, since Ben Ringel holds no direct interest in Debtor,

even these charging orders will have no direct effect on Debtor; it will merely pay any distributions to its parent, BCR Lakewood Holdings. Thus, there is no need to protect Debtor from these "creditors" because they are not creditors of Debtor but of Benjamin Ringel.

69.     In short, this is a bad faith filing and should be dismissed because (i) this is a two-party dispute between Ben and Chana Ringel, (ii) the petition was filed as a litigation tactic after years and years of litigation in which Ben Ringel has consistently lost, (iii) the petition serves no purpose other than to frustrate the legitimate sale of the Pinewood property and the management rights of Chana Ringel, and to stop the sale of the Pinewood property to Rushmore under the auspices of the Chancery court and (iv) the petition was not filed to reorganize the company but rather to stop the sale and compel a sale to Ben Ringel that is not in the interests of the company and its creditors.

**Alternatively, The Court Should Lift The Automatic Stay**

70.     To the extent the Court does not dismiss the petition, it should at least lift the automatic stay. That is impeding proceedings in the Chancery court, which are to the benefit of both Chana Ringel, and Benjamin Ringel's other creditors. And, as noted, this very petition threatens to derail the Rushmore sale.

71.     "Section 362(d)(1) of the Bankruptcy Code permits relief from the stay, on motion of a party in interest and after notice and a hearing, for cause, including the lack of adequate protection of an interest in property of such party in interest." *In re Quigley Co., Inc*., 361 B.R. 723, 743 (Bankr. S.D.N.Y. 2007). Courts in this Circuit look to the 12 factors listed in *In re Sonnax Indus., Inc*., 907 F.2d 1280, 1286 (2d Cir.1990):

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of

action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

"Not all of the factors are relevant in every case, and the Court need not assign equal weight to each factor." *Quigley Co., Inc.,* 361 B.R. at 743-44.

72.     In this case, it is apparent that Benjamin Ringel simply seeks to substitute this court for the New Jersey Chancery court as the forum to oversee the liquidation of Debtor. As discussed, the Chancery Court has been dealing with these issues for years, and the petition was filed on the eve of that court hearing motions by creditors and the contract buyer, Rushmore, to arrange for the sale of the Debtor's sole asset, the Pinewood property, and then provide for an orderly distribution of the assets to creditors and Movants as half-owners of the property.

73.     The petition had only one purpose – to derail that process, and substitute this forum for that one. This bad faith is alone sufficient basis to lift the automatic stay, if dismissal is not ordered. *In re AAGS Holdings LLC*, 608 B.R. 373, 382 (Bankr. S.D.N.Y. 2019) ("[T]he same finding of a bad faith filing [that justified dismissal] may justify relief from the automatic stay.")

74.     Numerous parties are being prejudiced by the delay caused by this filing. As noted, Chana Ringel is due half of the net proceeds from the sale of Pinewood, and the delay caused by this filing prejudices her by delaying receipt of those funds. Further, Chana Ringel is a judgment creditor of Benjamin Ringel, and she and Ben's other creditors are likewise delayed.

75.     As noted, among other things, Chana Ringel sought an order from the Chancery Court that the various creditors should move to modify or vacate restraints obtained in other courts

so as to permit the Rushmore sale and the deposit of Ben Ringel's portion of the proceeds with the Chancery court or an escrow account under its control. That process too is delayed by the stay.

76. There is another reason to lift the stay. As noted, the Chancery Court enjoined Benjamin Ringel from "otherwise functioning as a member or manager of BCR Lakewood Holdings, except as specifically approved by the Court or its authorized agent." (Motion Exh. 2). Yet his conduct by filing this bankruptcy and asserting management over BCR Lakewood and Debtor is a direct violation of the Chancery Court's orders. The need to protect Debtor from further interference by Benjamin Ringel is manifest. That must be done through an appropriate motion to the Chancery Court.

77. For these reasons, if the Court does not dismiss the petition, it should lift the automatic stay to allow the Chancery Court which has been overseeing the Pinewood sale, Benjamin's creditors claims and the dispute between its owners to continue to do so.

## NOTICE

78. Notice of this motion has been provided to (i) the Office of the United States Trustee for the Southern District of New York; (ii) the Debtor; (iii) all creditors listed in the petition for bankruptcy; and (iv) any other party that filed a Notice of Appearance in this case. The Movants submit that such notice is sufficient under the circumstances.

## CONCLUSION

79. For the above reasons, the Court should either dismiss the petition or lift the automatic stay.

Dated: September 20, 2023                KOFFSKY SCHWALB LLC

                                         /s Efrem Schwalb
                                         Efrem Schwalb
                                         Bruce Weiner
                                         Tal S. Benschar
                                         500 Seventh Avenue, 8th Floor

New York, NY 10016
646.553.1590

**Index of Motion Exhibits**

| Motion Exhibit No. | Description |
|---|---|
| 1 | First Amended Verified Complaint in *Chana Ringel v. BR Lakewood, LLC*, Docket No. OCN-C-127-15 (N.J. Chancery) (the "Lakewood Action") |
| 2 | Order dated November 6, 2015 in the Lakewood Action |
| 3 | Complaint in Chana Ringel, et al. v. Benjamin Ringel, et al., Docket No. OCN-C-152-16 (N.J. Chancery) |
| 4 | Decision of the N.J. Superior Court, Appellate Division, dated July 17, 2020. |
| 5 | Order dated September 4, 2020 in the Lakewood Action. |
| 6 | October 26, 2020 Executed Term Sheet of Settlement Agreement |
| 7 | Opinion of Arbitrator, Hon. Robert P. Contillo, dated October 17, 2022 |
| 8 | Opinion of Arbitrator, Hon. Robert P. Contillo, dated June 12, 2023 |
| 9 | Opinion of Arbitrator, Hon. Robert P. Contillo, dated June 12, 2023 |
| 10 | Confirmation of Arbitration award by NJ Superior Court, Chancery Division ("Chancery court") dated June 21, 2023 |
| 11 | June 4, 2021 Order of the Chancery Court in the Lakewood Action |
| 12 | Order of August 23, 2021 of the Chancery Court in the Lakewood Action |
| 13 | Order of August 25, 2021 of the Chancery Court in the Lakewood Action |
| 14 | Order of February 4, 2022 of the Chancery Court in the Lakewood Action |
| 15 | Orders (2) of March 11, 2022 of the Chancery Court in the Lakewood Action |
| 16 | Decision of the NJ Superior Court, Appellate Division, dated October 20, 2022. |
| 17 | Decision of the NJ Superior Court, Appellate Division, dated June 12, 2023. |
| 18 | Letter Brief from Rushmore Capital LLC dated August 9, 2023 filed in Lakewood Action |
| 19 | Letter Brief from Chana Ringel dated August 31, 2023 filed in Lakewood Action |
| 20 | Operating Agreement of BCR Pinewood Realty LLC (Debtor) dated February 18, 2011 |
| 21 | Benjamin Ringel Reply Brief submitted to Arbitrator, Hon. Robert P. Contillo, dated January 6, 2023 |
| 22 | Email from Benjamin Ringel dated September 8, 2023 to Citizens Bank |
| 23 | Collection of adverse decisions of various courts regarding Benjamin Ringel |
| 24 | Decision and Order dated August 18, 2022, in *Atalaya Asset Income Fund II LLP v. Benjamin Ringel, et al*, Index No. 654299/2019 (N.Y. Supreme Court) |
| 25 | Decision and Order dated March 28, 2023, in *Atalaya Asset Income Fund II LLP v. Benjamin Ringel, et al*, Index No. 654299/2019 (N.Y. Supreme Court) |
| 26 | Decision and Order dated April 1, 2022, in *Cohen Tauber Spievack & Wagner P.C. v. Benjamin Ringel, et al*, Index No. 653585/2021 (N.Y. Supreme Court) |
| 27 | Notice of Motion to Enforce Settlement in Lakewood Action dated Mach 10, 2020 |
| 28 | Order dated May 8, 2020 in Lakewood Action |

| | | |
|---|---|---|
| 29 | Notice of Motion to Amend May 8, 2020 Order in Lakewood Action | |
| 30 | Order dated September 4, 2020 in Lakewood Action | |
| 31 | Order dated October 16, 2020 in Lakewood Action | |
| 32 | Agreement of Sale of Pinewood Property, dated January 2022 | |
| 33 | Letter from Debtor's counsel to Affiliated Management Inc. dated September 20, 2023 | |

# APPENDIX OF PROCEEDINGS IN NEW JERSEY SUPERIOR COURT

The following is a more complete recitation of the history of the proceedings in New Jersey between Movants and Benjamin Ringel:

## The Litigations Between Benjamin and Chana Ringel

1. In 2015, Movants brought the Lakewood Action in the Chancery Court to prevent Benjamin from destroying their significant real estate holdings in Lakewood, New Jersey (the "Lakewood Properties"), as he had previously done to every other investment she made with him. Movants alleged that Benjamin was Ringel treating BCR Lakewood and its five subsidiary companies (one of which is Debtor) as his and his alone, making management decisions without advising Chana, and taking whatever money he wanted, whenever he wanted, without Chana's knowledge or consent, the financial consequences to the Company be damned.

2. Plaintiffs sought a variety of legal and equitable relief regarding the ownership and management of the Lakewood Properties. Movants later filed a First Amended Verified Complaint with the same allegations, but clarifying that the relief they were seeking included his removal as manager, monetary damages for looting the companies' bank accounts, the dissolution of BCR Lakewood and the equitable division and distribution of its assets. (See Motion Exh. 1).

3. Almost immediately after the original complaint was filed, the Chancery Court acted to stem Benjamin Ringel's misconduct. On November 6, 2015, now-Chief Judge of the New Jersey Courts in Ocean Chancery Francis Hodgson entered an order (Motion Exh. 2) which enjoined the Defendants (Benjamin Ringel and BR Lakewood LLC) from accessing the Company's bank accounts or directing the Company or its staff to distribute funds to Benjamin or his related entities and from "otherwise functioning as a member or manager of BCR Lakewood Holdings, except as specifically approved by the Court or its authorized agent."

4.      At the request of Movants, the Chancery Court also appointed Affiliated Management Co. ("Affiliated") as "Special Fiscal Agent" with "all powers of a member of BCR Lakewood Holdings and of the constituent holding entities including all powers necessary for the operation, control and management of said companies" and authorized Affiliated to appoint a forensic accountant to perform an accounting "of all amounts wrongfully paid by BCR Lakewood Holdings or its constituent entities to the Defendants" Benjamin Ringel and BR Lakewood.  (*Id.*)

5.      Thus, since November 2015, Benjamin Ringel has been removed from any management of BCR Lakewood, the manager of Debtor.  The sole manager of BCR Lakewood is Chana Ringel, with Affiliated Management also given powers necessary for the operation, control and management of BCR Lakewood per Court order.

**<u>Benjamin Ringel Tries But Fails To Force The Case To Arbitration</u>**

6.      Although Benjamin asserts in his declaration that Chana Ringel violated the BCR Lakewood Operating Agreement by instituting the Lakewood Action and a related action involving another jointly owned company BCR Oakridge LLC, he conspicuously fails to note that his attempts to force arbitration were rebuffed by the New Jersey courts.

7.      After being removed as a manager of BCR Lakewood, Ben Ringel appeared before the Chancery Court numerous times for case management conferences and motion arguments, and after participating in comprehensive discovery for over two years in both actions, on October 25, 2018, Benjamin filed a motion to dismiss the actions in favor of arbitration.  On December 7, 2018, the Chancery Court entered orders denying Benjamin's motion.  He then appealed, but the Appellate Division denied the appeal in an opinion dated June 17, 2020, finding that he had waived any putative right to arbitrate the claims at issue in both actions through his active participation in the Lakewood Action and the Oakridge action for several years. (Motion Exh. 4)

**The Partial Settlement**

8.      Trial in both actions began on February 25, 2020.  On the third day of trial, February 27, 2020, the parties engaged in direct settlement discussions in the Chambers of Judge Hodgson. On March 10, 2020, the Defendants filed a motion to enforce the settlement purportedly reached during discussions with Judge Hodgson. In support of the motion, Defendants' counsel submitted a certification in which he stated that a material term of the settlement was that "[t]he Pinewood property would be listed for sale with a broker and publicly sold, with each party retaining the right to bid on the property." (Motion Exh. 27, Nagel Cert. ¶ 3)

9.      On May 8, 2020, the Chancery court entered an order granting Defendants' motion to enforce the settlement, and ordered that the terms of the settlement were set forth in the Term Sheet attached as Exhibit A to Defendants' motion, with some modifications.   (Motion Exh. 28)

10.     In addition, the Term Sheet enforced by the Chancery Court provided that "[t]he Sales Process shall be under the auspices of the Court, and the Parties agree to present any issues or disputes regarding the Sales Process to the Court for resolution in the Court's sole discretion and authority.  The Court's rulings with regard to the Sales Process shall be binding upon the Parties." (Motion Exhs. 28 and 27 at Nagel Exh. A at ¶ 3.vi.)

11.     Despite successfully moving to enforce the settlement, since May 2020, Benjamin has done everything in his power to prevent the settlement from actually being implemented.

12.     On July 7, 2020, Benjamin filed a motion to amend the May 8, 2020 Order.  (Motion Exh. 29).  Through that motion, Defendants sought to change or eliminate certain provisions in the settlement agreement and to add additional provisions. (*Id.*).

13.     That motion was denied except to the extent that Movants consented to certain changes that had been proposed.  (Motion Exh. 30).

14. On September 4, 2020 the Chancery Court entered an order attaching a "Term Sheet" as Exhibit A that set forth the final terms of the Settlement. (Motion Exh. 5)

15. On September 11, 2020, Benjamin once again tried to change the Settlement and filed a motion for reconsideration of the Court's September 4, 2020 order, which motion for reconsideration was denied. (Motion Exh. 31).

16. The parties executed the Settlement Agreement on October 26, 2020. (Motion Exh. 6)

17. The key terms of the settlement were that (a) Pinewood would be sold through an arms-length process under the auspices of the Chancery Court, and the proceeds split equally between the Ringels; (b) Affiliated Management would continue to manage the properties until the sale was completed pursuant to the existing November 6, 1995 Order of the Chancery Court; (c) the other four properties would be split two to Chana Ringel and two to Benjamin Ringel; (d) the remaining claims would be sent to arbitration; and (e) if the Pinewood sale closing occurred before the conclusion of the arbitration, $5 million would be escrowed to help satisfy an arbitration award. (*See id.*) Each of these would create issues.

**The Arbitration**

18. The parties retained an arbitrator, a retired New Jersey Chancery Court judge, Hon. Robert P. Contillo to arbitrate the claims. After multiple days of hearings spread over many months, the Arbitrator found that Benjamin Ringel "ha[d] acted oppressively against his sister Chana by paying himself excess distributions, in breach of the equality demands of the operating agreement(s), and in breach of his fiduciary duty to Chana and CR Lakewood." (Motion Exh. 7 at 15). The Arbitrator found Benjamin Ringel wholly untruthful:

> The BCR Lakewood, LLC Operating Agreement and Benjamin's fiduciary duty, compelled equal distributions to the two sides out of BCR Lakewood. Benjamin

routinely diverted funds to himself, far in excess of the distributions due his sister and her entity, and failed to seek or secure her necessary consent. ***Further, he obfuscated these distributions through fabricated claims of legitimate expenses***. The spreadsheets upon which Benjamin relies to refute the Quickbook entries are purely ad hoc creations of Benjamin, utterly lacking in any documentary support or the support of any independent witness. . . . ***In addition, his justifications themselves were a constantly moving target, shifting to adjust to implausibilities revealed in cross-examination.***

. . .

***Benjamin himself was neither forthright nor believable in his shifting, undocumented justifications for the hundreds of thousands of dollars he diverted to his own purposes***, without reciprocal payments as mandated by the BCR Lakewood Operating Agreement and by his fiduciary duty, all without the knowledge or consent of his partner. His say so, standing as it does - alone - against the business records of his own company, is without any significant, countervailing weight to his sister's straightforward, credible testimony on the issues of Benjamin's diversions of BCR Lakewood funds, and her futile efforts to get her brother to cease those unliteral actions or otherwise bring himself into alignment with his contractual and fiduciary duties.

(*Id.* at 16-17, emphasis added)

19. Similarly, in the Oakridge matter, the Arbitrator found that Benjamin Ringel had improperly transferred over $300,000 for his own benefit, even as Chana received *no* distributions, in breach of the operating agreement and his fiduciary duty of loyalty. (*Id.* at 26-27)

20. The Arbitrator awarded in excess of $1.1 million in the Lakewood Action, and terminated Benjamin's participation as manager of BCR Lakewood. He also awarded approximately $700,000 in the Oakridge action, which included Chana's reasonable attorney's fees for that action. (*Id.* at 14-15; Motion Exh. 9).

21. In a later decision, the Arbitrator granted reconsideration to Benjamin Ringel, and struck the provision terminating Benjamin Ringel's management rights based on Benjamin's argument that there was no need for such an order, as the Chancery Court's order of November 6, 2015 removing Benjamin as manager was still in effect, and Benjamin had even agreed to that in the settlement agreement until the sale of Pinewood was completed. (Motion Exh. 8).

22.	The Chancery court later confirmed the award and entered it as a judgment. (Motion Exh. 10)   Thus, Chana Ringel is a creditor of Benjamin Ringel of approximately $1.8 million.

23.	After confirmation, Chana Ringel sought a charging order against various companies, including Debtor, which can be used to seek a turnover of monies belonging to Benjamin to be directed to Movants.  As of this date, that motion is pending and was originally scheduled to be heard and decided the day after Benjamin filed the petition in this case.

**Creditors Pursue Benjamin Ringel**

24.	Apart from his dispute with Chana Ringel, Benjamin Ringel has been sued, found liable and sanctioned in numerous other lawsuits, and therefore has several large creditors. Contrary to the declaration filed by Mr. Ringel in this proceeding, none of the  creditors he listed in the bankruptcy petition are "creditors" of BCR Pinewood.  Rather, they are parties in interest in that Benjamin's creditors have or are trying to obtain charging orders requiring his share of the Pinewood sale proceeds to be distributed to his creditors.

25.	Benjamin's misconduct as detailed in the many actions in which he has been involved includes a complete disregard for the law, multiple findings of contempt, his removal as a fiduciary, and multiple millions of dollars in judgments that continue to the present, including, but not limited to, the following:

	a.	Removed as co-manager for misappropriation in *Ringel v. Burns* -- *See Ringel v. Burns*, Transcript and Decision in Index No. 600256/2012, pp. 16-27 (N.Y. Sup. Ct. Nassau Cnty. Apr. 14, 2014) (Exh. B to Motion Exh.23).  The Court removed Mr. Ringel as a co-manager because he misappropriated funds from the company's bank account;

	b.	Restrained from collecting rents for misappropriation in *RCG v. AC I Toms River LLC*. The New York court restrained Ben from collecting tenant rents because of his diversion of more than $500,000.  *See* Order in *RCG LV Debt IV Non-REIT Assets Holding LLC v. AC I Toms River LLC*, Index No. 65129/2013

(N.Y. Sup. Ct. N.Y. Cnty. July 24, 2013) and related lender affidavit (<u>Exh. C to Motion Exh. 23</u>);

c. <u>Restrained from siphoning proceeds and held in contempt for concealing assets, among other things, in *Acadia v. Ringel*.</u> -- *See* Affidavit and Order *in Acadia Realty Limited Partnership v. Ringel*, Index No. 652054/2013 (N.Y. Sup. Ct. N.Y. Cnty.) (<u>Exh. D to Motion Exh. 23</u>). In that action, Ben violated "use of proceeds" provisions in loan documents and distributed to himself more than $7.5 million in loan proceeds that should have been used to pay down various loans. (*See* Ex. D ¶ 6). Ben was found in contempt for concealing assets and discovery abuse, among other things. (*See* Order, entered on March 19, 2015, p. 21, attached as <u>Exh. O to Motion Exh. 23</u>);

d. <u>$22 million personal judgment, pending contempt motion and related restraining notice in *RCG v. AC I Toms River LLC*</u> -- *See* Judgment, attached as <u>Exh. E to Motion Exh. 23</u>). Ben was served with a restraining notice in that action that restricts his ability to transfer or interfere with any property in which he has any interest. *See* Restraining Notice, attached as <u>Exh. F to Motion Exh. 23</u>). A motion to find Ben in contempt for failure to respond to discovery was filed. (*See* Order, dated November 17, 2016, attached hereto as <u>Exh. G to Motion Exh. 23</u>);

e. <u>$2.5 million personal judgment and contempt order in *BCM v. Ringel*</u> -- *See* Order dated Sept. 9, 2014 in BCM CRE Opportunity Fund I v. Ringel, Index No. 654476/2013 (N. Y. Sup. Ct. N.Y. Cnty., attached as <u>Exhi. H to Motion Exh. 23</u>). An order of contempt was issued in a related action. (*See* Order dated Nov. 25, 2013, attached as <u>Exh. I to to Motion Exh. 23</u>);

f. <u>Judgment of foreclosure and on personal guaranty in *LBUBS v. AC I Southwest Broadway LLC*</u> – *See LBUBS 2005-C2 New York Retail, LLC v. AC I Southwest Broadway LLC,* Index No. 850074/2012 (N.Y. Sup. Ct. N.Y. Cnty.), Order dated Dec. 11, 2013, attached as <u>Exh. L to to Motion Exh. 23</u>); and

g. <u>Judgment and multiple contempt orders</u> – *See Atalaya Asset Income Fund II v. Ringel,* Index No. 654299/2019 (NY Sup. Ct. NY Cnty.), Contempt Orders dated March 28, 2023 and Aug. 18, 2022, attached as Motion Exhs. 24 and 25); *Atalaya Asset Income Fund II LP v. 219 Sagg Main LLC, et. al,* Index No. 609491/2015 (N.Y. Sup. Ct. Suffolk Cnty.), Order dated June 21, 2016, attached as <u>Exh. M to to Motion Exh. 23</u>); Receiver Order dated Oct. 6, 2016 and Affirmation dated July 6, 2016, attached as <u>Exh. N to to Motion Exh. 23</u>).

26. In addition to Chana Ringel, the following creditors have intervened in the Lakewood Action and hold judgments against him in the following approximate amounts:

| Atalaya Income Fund II LP | $4.1 million |
| LMEZZ 250 W90 LLC | $11.6 million |
| JDWC LLC | $5 million |
| Cohen Tauber Spievack & Wagner P.C. | $400,000 |

27.     At least three of these creditors have obtained charging orders against various LLCs, and a fourth's motion for a charging order is pending and was originally scheduled to be heard the day after Benjamin filed this proceeding.

28.     Each of these creditors has filed pleadings concerning the disposition of the proceeds of the Pinewood sale that belong to their creditor Benjamin Ringel.  As Mr. Ringel concedes, the total of the outstanding judgments against him of these creditors exceeds Benjamin's 50 percent share of the net proceeds.

**The Sale Of Pinewood And Ringel's Attempts To Interfere**

29.     Despite agreeing to a court-supervised sale of the Pinewood Property in May 2020, Benjamin has taken numerous steps to prevent that sale.  All of these steps were rejected by the Chancery Court and Appellate Division in New Jersey.

30.     By email dated November 6, 2020, Benjamin Ringel's counsel proposed Gebroe Hammer as the broker for the sale of Pinewood, with a well-known multi-family specialist named Joseph Brecher to lead the sales team.  Movants agreed to that selection.  Thereafter, Gebroe Hammer marketed Pinewood for sale, and received bids from prospective purchasers.

31.     The highest bid came from Rushmore.  However, Benjamin complained that Gebroe Hammer had a conflict of interest with Rushmore and should be removed as broker and that Rushmore's bid should be rejected.  The Chancery Court denied Benjamin's conflict of interest

assertion, but ordered Gebroe Hammer to continue the marketing process and provided additional guidance regarding the sale process. (Motion Exh. 11, June 4, 2021 Order).

32.　　Brecher proceeded to execute a new bidding process, with sealed bids to be submitted by July 21, 2021. Several parties bid, and the highest bid was once again made by Rushmore for $47,100,000. The court-appointed counsel then emailed a draft of a proposed sales contract to Rushmore.

33.　　However, Ben Ringel's counsel the same day filed a letter with the Court, claiming that in fact his company, BR Lakewood was the highest bidder, because that bid would result in the highest "net proceeds" to the parties. Chana Ringel filed an order to show cause with the Chancery court to have Rushmore declared the winner; Ben Ringel filed a cross-motion to have BR Lakewood declared the winner, even though its bid was lower by about $ 700,000.

34.　　After a lengthy hearing, the Chancery Court rejected Ben Ringel's position, and found that Rushmore was the winning bidder. These rulings were memorialized in two orders, which also authorized the court-appointed attorney to finalize a written contract. (Motion Exhs. 12 and 13, Orders of August 23, 2021, and August 25, 2021)

**<u>Ben Ringel's Failed Appeals</u>**

35.　　On October 5, 2021, Ben Ringel filed a notice of appeal of both the June 4 and August 25 Orders (both untimely). He also refused to sign the contract for the sale to Rushmore despite the Court order requiring that, and his agreement in the parties' court-ordered Settlement Agreement to fully cooperate to effectuate the sale of Pinewood.

36.　　On January 19, 2022, Rushmore filed an Order to Show Cause seeking to compel Ben Ringel to appear and show cause why an order enforcing litigant's rights under N.J. Ct. Rule 1:10-3 should not be entered ordering Defendants to execute the sales contract. On January 27,

Movants filed their own Order to Show Cause, seeking to hold Ben Ringel in contempt of court, and to appoint a Special Agent to execute the Rushmore sales contract.

37.     On February 4, 2022, the Chancery Court entered an order requiring defendants to execute the sales contract within three days, and if they failed to do so, a named lawyer would be appointed as special agent authorized by the Court with power of attorney to do so.  (Motion Exh. 14)  The same order also provided for attorney's fees to be assessed against Ben Ringel if he did not comply.  (*Id.*)

38.     On March 11, 2022, the Chancery Court denied Ben Ringel's motion for a stay pending appeal. (Motion Exh. 15)

39.     Ben Ringel proceeded with his appeal of the order awarding the property to Rushmore and his conflict of interest claims against Gebroe Hammer and Rushmore, and after briefing, the Appellate Court rejected his position and affirmed the ruling that Rushmore was the highest bidder and that Brecher had no conflict of interest.  (Motion Exh. 16).

40.     While that appeal (his second in the case) was pending, Ben Ringel filed a further, third appeal, this time of the March 11, 2022 order, appointing the special agent and assessing attorney's fees.  After briefing, this third appeal was rejected, and the Appellate Court affirmed the Chancery court's order in all respects by decision dated June 12, 2023.  (Motion Exh. 17)   They wrote:

> Because defendants failed to take any steps to convey the Pinewood Property in the six-month time period from the date of the first order on August 25, 2021 through the date of the March 11, 2022 enforcement order, the judge compelled the transfer of title to Rushmore by appointing a special agent to complete the transaction. Defendants' repeated failures to comply with the court's order to execute documents for the sale of the Pinewood Property warranted appointment of a special agent to finalize the sale.

> Additionally, under [N.J. Ct.] Rule 1:10-3, the judge had the authority to compel defendants' compliance with his prior orders. A trial court may enforce a

"recalcitrant" party's compliance with a court order through a Rule 1:10-3 motion to enforce litigant's rights. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 392 (1995). Defendants claim the judge failed to find them "recalcitrant" under Rule 1:10-3. We disagree.

Defendants' repeated failures to comply with the judge's orders directing the sale of the Pinewood Property evidenced their recalcitrance. Absent stay relief, defendants were not entitled to flout multiple orders commanding them to sign the documents necessary for the sale of the Pinewood Property. We are satisfied the judge properly exercised his authority to enforce defendants' compliance with the prior orders under Rule 1:10-3.

(*Id.* at 8-9).

41.     Although no stay had been granted, these repeated appeals delayed the sale to Rushmore through June 2023.

**Post-Appeals Attempts to Close And Further Delays**

42.     Benjamin and his company BR Lakewood's conduct delaying the sale to Rushmore for the last two years constitutes another breach of his fiduciary duties and Settlement Agreement with Chana.  Since Benjamin's last appeal was denied, Rushmore has indicated its desire to close the Pinewood sale.  However, because Benjamin has not cooperated with the parties by agreeing with his creditors where his share of the sale proceeds shall go, as well as dealing with various restraining notices issued by his creditors, the sale to Rushmore required further Court intervention.

43.     Accordingly, on August 9, 2023, Rushmore moved the Chancery Court for a stay on the closing so that restraints issued by Benjamin's creditors could be removed, and for the Chancery Court to direct where the proceeds that are to be paid to Ben Ringel should be deposited, and other relief.  (Motion Exh. 18, letter brief from Rushmore counsel).

44.     Thereafter, the above-referenced creditors of Ben Ringel filed motions with the Chancery Court to determine the priority of their claims from Benjamin's property, including any proceeds of the sale by Debtor of Pinewood.

45.     Chana Ringel, who is the sole manager of BCR Lakewood, which in turn is the manager of the Debtor, submitted a response in which she consented to a stay so that any restraints by creditors could be modified or removed, and requested that the Court order the proceeds of the Pinewood sale to be deposited in an escrow account under the Chancery Court's control, to be distributed according to its rulings on priority of Benjamin's creditors.  (Motion Exh. 19).

46.     The other creditors took positions similar to Chana's, agreeing that the parties should work to remove any restraints that might prevent the sale of Pinewood, Ben Ringel's portion of the proceeds should be escrowed while the Chancery Court determines the priority of Benjamin's creditors' claims.

47.     These various motions were initially due to be heard on September 8, 2023.  On September 7th, however, the Chancery Court adjourned the motions to October 20, 2023.  That same day, Ben Ringel filed the instant petition on behalf of Debtor.