# EXHIBIT B

**Declaration of Andrew K. Glenn**

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>BCR PINEWOOD REALTY LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 21-10529 (SHL) |

**DECLARATION OF ANDREW K. GLENN IN SUPPORT OF APPLICATION OF DEBTOR BCR PINEWOOD REALTY LLC FOR AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF GLENN AGRE BERGMAN & FUENTES LLP AS COUNSEL *NUNC PRO TUNC* TO SEPTEMBER 7, 2023**

I, Andrew K. Glenn, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct to the best of my knowledge, information and belief:

1. I am the managing partner of Glenn Agre Bergman & Fuentes LLP ("Glenn Agre"), a national law firm with its principal office at 1185 Avenue of the Americas, 22nd Floor, New York, New York 10036.

2. I am an attorney at law duly admitted to (i) the bar of the State of New York; (ii) the United States District Court for the Southern District of New York; (iii) the United States Court of Appeals for the First Circuit; and (iv) the United States Court of Appeals for the Second Circuit. No disciplinary proceedings are pending against me.

3. I submit this declaration (the "Declaration") in connection with the application (the "Application")[1] of BCR Pinewood Realty LLC (the "Debtor"), as debtor and debtor-in-possession in the above-captioned Chapter 11 case (the "Chapter 11 Case"), for entry of an order authorizing the Debtor to retain and employ Glenn Agre as its counsel *nunc pro tunc* to September 7, 2023, at Glenn Agre's normal hourly rates in effect from time to time, and to provide the disclosures

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

required under Sections 327 and 328 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

4. Unless otherwise stated in this Declaration, I have personal knowledge of the facts as set forth herein. To the extent any information disclosed herein requires amendment or modification upon Glenn Agre's completion of further review, or as additional information regarding parties-in-interest becomes available, a supplemental declaration will be submitted to the Court reflecting such amended, supplemented, or otherwise modified information.

## **GLENN AGRE'S QUALIFICATIONS**

5. Glenn Agre is a national law firm with its principal office in New York, New York, and a second office in San Francisco, California. The Debtor has selected Glenn Agre as its counsel because of Glenn Agre attorneys' extensive experience and knowledge in the field of debtors' and creditors' rights, business reorganizations, their past representation of debtors, creditors, and official and ad hoc creditor and equity committees, and their expertise, experience, and knowledge practicing before bankruptcy courts, including this Court.

6. Attorneys at Glenn Agre have served as counsel to debtors, trustees, creditors' committees, equity committees, and creditors in many of the country's largest bankruptcy proceedings. *See, e.g.*, *In re Garrett Motion Inc.,* Case No. 20-12212 (MEW) (Bankr. S.D.N.Y. 2020) (counsel for official committee of equity securities holders); *In re Hercules Offshore, Inc., et al.*, Case No. 16-11385 (KJC) (Bankr. D. Del. 2016) (counsel for official equity committee); *In re LATAM Airlines Group S.A.,* Case No. 20-11254 (JLG) (Bankr. S.D.N.Y. 2020) (counsel for ad hoc committee of shareholders); *In re The Hertz Corporation, et al.*, Case No. 20-11218 (MFW) (Bankr. D. Del. 2020) (counsel for ad hoc committee of shareholders); *In re Cineworld Group*

*PLC, et al.*, Case No. 22-90168 (MI) (Bankr. S.D. Tex. 2022) (counsel to ad hoc group of secured lenders); *In re Endo International plc*, Case No. 22-22549 (JLG) (Bankr. S.D.N.Y. 2022) (counsel for ad hoc group of unsecured noteholders); *In re Ninety-Five Madison Company, L.P.*, Case No. 21-10529 (DSJ) (Bankr. S.D.N.Y. 2021) (counsel for the debtor); *In re Grupo Aeroméxico, S.A.B. de C.V.*, Case No. 20-11563 (SCC) (Bankr. S.D.N.Y. 2020) (conflicts counsel to ad hoc group of lenders and noteholders); *In re Covia Holdings, Inc.* (Bankr. S.D. Tex. 2020) (special counsel to creditors' committee); *In re MTE Holdings, LLC,* Case No. 19-12269 (CSS) (Bankr. D. Del 2019) (counsel for the debtors); *In re Exco Resources,* Case No. 18-30155 (MI) (Bankr. S.D. Tex. 2018) (counsel for senior secured lenders); *In re SunEdison Inc.*, Case No. 16-10992 (SMB) (Bankr. S.D.N.Y. 2016) (counsel for ad hoc committee of second lien lenders); *In re ESML Holdings Inc. et al.*, Case No. 16-11626 (BLS) (Bankr. D. Del. 2016) (counsel for official committee of unsecured creditors and unsecured creditor litigation trust); *In re Energy Future Holdings Corp.,* Case No. 14-10979 (CSS) (Bankr. D. Del. 2014) (counsel for ad hoc group of legacy noteholders); *In re Borders Group, Inc.,* Case No. 11-10614 (MG) (Bankr. S.D.N.Y. 2011) (counsel for debtors); *In re Adelphia Communications Corp.,* Case No. 02-41729 (REG) (Bankr. S.D.N.Y. 2002) (counsel for official committee of unsecured creditors); and *In re Enron Corp.,* Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. 2001) (counsel for various creditors).

7. Accordingly, Glenn Agre has the necessary capabilities and expertise to serve as counsel and deal effectively with many of the potential legal issues and difficulties that may arise in the context of the Chapter 11 Case. Additionally, Glenn Agre was retained by the Debtor prior to the commencement of the Chapter 11 Case to advise on a potential restructuring. As a result of Glenn Agre's prepetition work on behalf of the Debtor, Glenn Agre has acquired a strong understanding of the Debtor's capital structure and gained insight into the current condition of the

Debtor's business, management, assets, and liabilities. Based on the foregoing, Glenn Agre is both well qualified and uniquely able to represent the Debtor in an efficient and timely manner.

## SERVICES TO BE PROVIDED

8. I have been advised by the Debtor that they wish to obtain Court approval of the retention and employment of Glenn Agre for rendering the following necessary legal services required in the Chapter 11 Case, including, among others:

   a. advise the Debtor in connection with its rights, powers and duties as debtor-in-possession in the continued management and operation of its business and properties;

   b. take necessary action to protect and preserve the Debtor's estate, including prosecuting actions on the Debtor's behalf, defending any action commenced against the Debtor and representing the Debtor's interests in negotiations concerning litigation in which the Debtor is involved, including, but not limited to, objections to claims filed against the estate;

   c. attend meetings and negotiate with representatives of creditors and other parties-in-interest;

   d. prepare, on behalf of the Debtor, all necessary motions, applications, answers, orders, reports, and papers in support of positions taken by the Debtor and necessary to the administration of the estate;

   e. negotiate and prepare, on behalf of the Debtor, a plan of reorganization and all related documents;

   f. advise the Debtor in connection with any sale of assets;

   g. appear before this Court and any appellate courts in connection with the Chapter 11 Case; and

   h. perform other necessary legal services and provide other necessary legal advice to the Debtor in connection with the Chapter 11 case.

## GLENN AGRE'S DISINTERESTEDNESS

7. Based on a conflicts search conducted by Glenn Agre and described herein, to the best of my knowledge, neither Glenn Agre, nor any partner, including myself, counsel or associate, insofar as I have been able to ascertain, has any connection with the Debtor. In addition to the

4

foregoing, through diligent inquiry, I have ascertained no connection, as such term is used in Section 101(14)(C) of the Bankruptcy Code and Bankruptcy Rule 2014(a), between Glenn Agre and (i) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") or any person employed by the Office of the U.S. Trustee, (ii) any attorneys, accountants, or financial consultants in the Chapter 11 Case, or (iii) any claimants or other parties-in-interest in the Chapter 11 Case. I know of no other connections of Glenn Agre to the Chapter 11 Case.

8. As part of its practice, Glenn Agre appears in cases, proceedings, and transactions involving many different creditors, shareholders, attorneys, accountants, financial consultants, investment bankers and other entities, some of which may be or may represent claimants and parties-in-interest in this Chapter 11 Case. Glenn Agre does not represent any such entity in connection with this Chapter 11 Case or have a relationship with any such entity or professionals that would imperil its disinterestedness.

9. In addition, if Glenn Agre has or hires professionals who worked at a prior firm on any matter in a material way for any party actually or potentially adverse to this Chapter 11 Case, Glenn Agre will procedurally "wall off" such professionals from those that work on this Chapter 11 Case.

10. If Glenn Agre discovers additional information that requires disclosure, Glenn Agre will file a supplemental disclosure statement with the Court.

11. Based upon the above, I believe that Glenn Agre is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code and that Glenn Agre, its partners, associates, and counsel are not creditors, equity security holders or insiders of the Debtor, and do not hold any interest adverse to the interests of its estate; are not and were not within two years before the commencement of the Chapter 11 Case, managers or employees of the Debtor or other

parties-in-interest; and do not have an interest materially adverse to the interest of the Debtor's estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or this Chapter 11 Case, or for any other reason.

**PROFESSIONAL COMPENSATION**

12. Glenn Agre has agreed to receive compensation and reimbursement of expenses in accordance with its standard billing practices, except as set forth herein and subject to this Court's approval, pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any procedures or orders of the Court as are applicable to this Chapter 11 Case.

13. Glenn Agre's current hourly billing rates, which are charged the same for both bankruptcy and non-bankruptcy clients, are as follows:

| Position | Hourly Rate |
|---|---|
| Partners | $1,000 - $1,475 |
| Of Counsel | $800 - $925 |
| Associates | $600 - $1,075 |
| Senior Analysts | $375 |
| Litigation Managers | $375 |
| Paralegals | $250 - $325 |

14. Glenn Agre has informed the Debtor that its hourly billing rates may change from time to time in accordance with Glenn Agre's established billing practices and procedures to reflect economic and other conditions and, generally, are adjusted in January of each year. Moreover, the above-hourly billing rates (the "Hourly Rates") to be charged by Glenn Agre for services to be rendered to the Debtor shall be the same hourly billing rates as charged to its other clients. The Hourly Rates are set at a level designed to compensate Glenn Agre fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. The Hourly Rates vary

with the experience and seniority of the individuals assigned. Glenn Agre will provide notice of any rate increases to the Debtor and the U.S. Trustee.

15. Glenn Agre is not a creditor of the Debtors. Glenn Agre received a retainer from the Debtor in the amount of $40,000 (the "Retainer") on September 1, 2023. On September 7, 2023, Glenn Agre applied its fees for services performed and expenses incurred prepetition against the Retainer. There is no remaining balance on the Retainer.

16. Glenn Agre, subject to orders of this Court, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the guidelines promulgated by the U.S. Trustee (the "U.S. Trustee Guidelines"), as applicable, shall seek reimbursement of its expenses incurred in connection with its representation of the Debtor in accordance with Glenn Agre's normal reimbursement policies. Glenn Agre's disbursement policies pass through all out-of-pocket expenses at actual cost or an estimated actual cost when the actual cost is difficult to determine. Other reimbursable expenses (whether the service is performed by Glenn Agre in house or through a third-party vendor) include, but are not limited to, facsimiles, overtime meals, deliveries, court costs, transcript fees, travel, and clerk fees.

17. No promises have been received by Glenn Agre, or any partner, counsel, or associate thereof, as to payment or compensation in connection with this Chapter 11 Case other than in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and such other procedures that have been or may be fixed by order of this Court. Glenn Agre has no agreement with any other entity to share with such entity any compensation received by Glenn Agre or by such entity.

## **CONCLUSION**

18. The Application requests approval of the Debtor's retention of Glenn Agre at Glenn

Agre's normal hourly rates in effect at the time the services are rendered, and in accordance with Glenn Agre's normal reimbursement policies, subject to any modifications to such policies that Glenn Agre may be required to make to comply with orders of this Court, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the U.S. Trustee Guidelines, as applicable. Subject to these terms and conditions, Glenn Agre intends to apply, pursuant to Sections 330 and 331 of the Bankruptcy Code, for allowances of compensation for professional services rendered in this Chapter 11 Case and for reimbursement of actual and necessary expenses incurred in connection therewith in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the U.S. Trustee Guidelines, as applicable.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: September 22, 2023
New York, New York

**GLENN AGRE BERGMAN & FUENTES LLP**

By: /s/ *Andrew K. Glenn*
    Andrew K. Glenn
    Managing Partner
    Glenn Agre Bergman & Fuentes LLP

**Exhibit 1**

**Engagement Letter**



Jed I. Bergman
jbergman@glennagre.com
1185 Avenue of the Americas, 22nd Floor
New York, NY 10036

September 7, 2023

By Email

Mr. Benjamin Ringel
BCR Pinewood Realty LLC
c/o Affiliated Management
301 South Livingston Avenue, Second Floor
Livingston, NJ 08753
Email: bringel@armstrong-capital.com

Re: Terms and Conditions of Engagement

Dear Ben:

We are delighted that you have retained Glenn Agre Bergman & Fuentes LLP (the "Firm") to represent BCR Pinewood Realty LLC (the "Client") as counsel for the Client in connection with the filing of a Chapter 11 case and other related matters. As required by applicable rules, this letter establishes a common understanding between us about the terms and conditions of the engagement. Please note that the Firm's representation is only of the Client; the Firm does not represent any shareholder, director, officer, partner, or joint venturer of the Client.

**General Terms**. This engagement letter (the "Agreement") sets forth the terms of your retention of the Firm to provide legal services and constitutes an agreement between us. The Agreement sets forth our entire agreement for rendering professional services for the current matter, as well as for all other existing or future matters, except where we otherwise agree in writing (*i.e.*, by signing a different engagement letter).

**Personnel**. I, along with Andrew Glenn, Malak Doss, and Maggie Lovric, will be primarily responsible for this engagement. Other attorneys and legal assistants also will perform services during the course of this engagement. We will involve such other lawyers and legal assistants employed by the Firm to the extent that your needs make such involvement desirable and acceptable to you.

**Fees**. The Firm will bill the Client for fees incurred at its regular hourly rates, which currently range from $1,000-$1,475 for partners and $300-$950 for associates and paralegals. We reserve the right to adjust the Firm's billing rates from time to time in the ordinary course of the Firm's representation of the Client. Although we may attempt, if requested by the Client, to estimate fees to assist you in your planning, such estimates are subject to change and are not binding unless otherwise expressly and unequivocally stated in writing.

**Expenses**.  Expenses related to providing services under this Agreement shall be included in our statements as disbursements advanced by us on your behalf.  Such expenses include photocopying, printing, scanning, witness fees, travel expenses, filing and recording fees, certain secretarial overtime, and other overtime expenses, postage, express mail, and messenger charges, deposition costs, computerized legal research charges, and other computer services, and miscellaneous other charges.  The Client shall pay directly (and is solely responsible for) certain larger costs, such as consultant or expert witness fees and expenses, and outside suppliers or contractors' charges, if any.

**Billing Procedures**.  Subject to any applicable rules and court orders, our statements for fees and expenses are typically rendered monthly and, unless other arrangements are made, payment in full is due upon receipt.  We may adjust our billing cycle upon agreement with you.  You may have the billing statement in any reasonable format you choose, but we will select an initial format for the statement unless you otherwise request in writing.  Depending on the circumstances, however, estimated or summary bills may be provided during certain billing cycles, with supporting time descriptions and expense summaries to follow thereafter.

**Retainer**.  The Firm will be provided a retainer (the "Retainer") in the amount of $40,000, which shall by earned by the Firm upon receipt.  The Client agrees to increase or replenish the retainer upon receiving invoices from the Firm so that the retainer amount remains at or above the Firm's estimated fees and expenses expected to be accrued and unpaid by the Client between payment cycles.

The retainer will be placed into the Firm's general cash account, will not be held in a separate account on your behalf, and you will not receive any interest on these funds.  You have no interest in the retainer.  This amount does not constitute a security deposit.  Upon the termination of this Agreement, the Firm shall return any unused portion of the retainer to the Client.

**Termination**.  The Firm's retention may be terminated by either the Firm or the Client at any time by written notice by or to you.  Our representation will end at the earliest of (a) your termination of our representation, (b) our withdrawal, and (c) the substantial completion of our substantive work.  We normally do not withdraw from a representation unless a client misrepresents or fails to disclose material facts, fails to pay fees or expenses, or makes it unethical or unreasonably difficult for us to continue to represent the client, or unless other just cause exists.  If permission for withdrawal is required by a court, we shall apply promptly for such permission, and termination shall coincide with the court order for withdrawal.  If this Agreement or our services are terminated for any reason, such termination shall be effective only to terminate our services prospectively and all the other terms of this Agreement shall survive any such termination.

Upon cessation of our active involvement in a particular matter (even if we continue active involvement in other matters on your behalf), we will have no further duty to inform you of future developments or changes in law as may be relevant to such matter.  Further, unless you and we

mutually agree in writing to the contrary, we will have no obligation to monitor renewal or notice dates or similar deadlines that may arise from the matters for which we had been retained.

**File Retention**. All records and files will be retained and disposed of in compliance with our policy in effect from time to time. Upon your prior written request, we will return client records to you prior to their destruction. It is not administratively feasible for us to advise you of the closing of a matter or the disposal of records. We recommend, therefore, that you maintain your own files for reference or submit a written request for your client files promptly upon conclusion of a matter.

**Conflicts of Interest**. It is possible that one of our current or future clients may take positions adverse to certain positions of the Client (including in litigation or other dispute resolution mechanisms) in a matter in which the Firm may be retained. Subject to the rules pertaining to the Firm's retention as counsel for the Client in a Chapter 11 Case (as defined below), in the event a present conflict of interest exists between the Client and our other clients or in the event one arises in the future, the Client agrees to waive any such conflict of interest or other objection that would preclude our representation of another client in other current or future matters that are substantially unrelated to this representation of the Client. The Client also agrees that our representation is solely of the Client and that no member or other entity or person related to it (such as equity holders, directors, officers or employees) has the status of a client for conflict of interest purposes.

**Chapter 11 Case**. If and when the Client commences a case under Chapter 11 of the U.S. Bankruptcy Code (a "Chapter 11 Case"), our ongoing employment by you will be subject to the approval of the court with jurisdiction over the petition. The Firm shall take the steps necessary to prepare the disclosure materials required in connection with the Firm's retention as lead restructuring counsel. In the near term, the Firm will begin conflicts checks on potentially interested parties as provided by you.

If necessary, we will prepare a preliminary draft of a schedule describing the Firm's relationships with certain interested parties (the "Disclosure Schedule"). We will give you a draft of the Disclosure Schedule once it is available. Although the Firm believes that these relationships do not constitute actual conflicts of interest, these relationships must be described and disclosed in your application to the court to retain the Firm.

If actual conflicts of interest arise in the Chapter 11 Case, the Client will be required to use separate conflicts counsel in those matters, and the Firm will not participate in those matters.

**No Guarantee of Success**. It is impossible to provide any promise or guarantee about the outcome of your matters. Nothing in this Agreement or any statement by our staff or attorneys constitutes a promise or guarantee. Any comments about the outcome of your matter are simply expressions of judgment and are not binding on us.

**GLENN AGRE BERGMAN & FUENTES** 

**Miscellaneous**. This Agreement sets forth our entire agreement for rendering professional services. It can be amended or modified only in writing and not orally or by course of conduct. The party signing below is responsible for all obligations due us and represents that it has full authority to execute this Agreement so that it is binding. If any provision of this Agreement or the application thereof is held invalid or unenforceable, the invalidity or unenforceability shall not affect other provisions or applications of this Agreement which can be given effect without such provisions or application, and to this end the provisions of this Agreement are declared to be severable.

We are not advising you with respect to this Agreement because we would have a conflict of interest in doing so. If you wish to receive advice with respect to this Agreement, you should consult independent counsel.

**Dispute Resolution**. This agreement is governed by New York law (excluding its choice-of-law rules). While we do not anticipate any disputes in our relationship, we are required under New York law to advise you that in the event a fee dispute arises, you have the right, in certain circumstances, at your election, to seek arbitration to resolve the fee dispute pursuant to Part 137 of the Rules of the Chief Administrator of the New York Courts. Other than as provided in the preceding sentence, and subject to any rules and court orders in effect in the Chapter 11 Cases, any disputes arising out of or relating to this agreement will be litigated only in the state or federal courts located in New York City.

\* \* \* \* \* \*

If the foregoing correctly reflects your understanding of the terms and conditions of the engagement, please so indicate by executing a copy of this letter agreement in the applicable signature block provided below. We look forward to working with you on this matter.

Sincerely,

GLENN AGRE BERGMAN & FUENTES LLP

By: ___/s/Jed I. Bergman___
Jed I. Bergman

AGREED AND ACKNOWLEDGED AS OF
THIS 7TH DAY OF SEPTEMBER 2023:

BCR Pinewood Realty LLC

By: _[signature]_
Benjamin Ringel
Authorized Signatory