**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>BCR PINEWOOD REALTY LLC,<br><br>Debtor. | ) Chapter 11<br>)<br>) Case No. 23-22655 (SHL)<br>)<br>)<br>)<br>) |

**STIPULATION AND INTERIM ORDER AUTHORIZING
DEBTOR'S USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363
<u>*NUNC PRO TUNC* TO THE PETITION DATE AND GRANTING RELATED RELIEF</u>**

This stipulation and interim order (the "<u>Stipulation and Order</u>") is made by and between BCR Pinewood Realty LLC (the "<u>Debtor</u>"), the Debtor in the above-captioned Chapter 11 case (the "<u>Chapter 11 Case</u>") and Citizens Bank, N.A., successor by merger to Investors Savings Bank (the "<u>Lender</u>" and, together with the Debtor, the "<u>Parties</u>") pursuant to Sections 361, 362, 363 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rules 4001-1 and 4001-5 of the Local Rules of the United States Bankruptcy Court for the Southern District of New York (the "<u>Local Rules</u>"): (i) authorizing the Debtor, through Affiliated (as defined herein) to use Cash Collateral (as defined herein) pursuant to the terms and conditions set forth in this Stipulation and Order, *nunc pro tunc* to the Petition Date (as defined herein); (ii) authorizing the Debtor to provide the Lender with adequate protection on the terms set forth in this Stipulation and Order on account of the Debtor's use of the Cash Collateral, through Affiliated, and any diminution in value of the Lender's interest in the Prepetition Collateral (as defined below); and (iii) vacating and modifying the automatic stay imposed under Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Stipulation and Order.

The Parties having agreed to the entry of this Stipulation and Order, the relief granted hereby, and the terms and conditions set forth herein, and on the basis of the prior representations made and any evidence previously presented to the Court and upon the record in this Chapter 11 Case, the Court finds and determines that it is in the best interests of the Debtor's estate and its creditors and that there is cause to grant the relief provided herein.

## RECITALS

**I.  BACKGROUND**

  A. <u>Petition Date</u>.  On September 7, 2023 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under the Bankruptcy Code.  No trustee, examiner or statutory committee has been appointed in this Chapter 11 Case.

  B. <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334, and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York dated January 31, 2012.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

  C. <u>The Mortgage Loan</u>.  On or about April 12, 2011, the Lender made a loan to the Debtor in the original principal amount of $8,000,000 (the "<u>Mortgage Loan</u>").  The terms of the Mortgage Loan are memorialized in a loan agreement dated April 12, 2011 (as subsequently amended, modified and/or extended, the "<u>Mortgage Loan Agreement</u>").  The Mortgage Loan matured and is payable in full as of May 1, 2023.

  D. <u>The Mortgage Lien</u>.  Repayment of the Mortgage Loan is secured by, *inter alia*, that certain Mortgage and Security Agreement dated as of April 12, 2011 in favor of the Lender (the "<u>Mortgage</u>") and an Assignment of Leases and Rents in favor of the Lender (the "<u>Assignment of Leases</u>" and, together with the Mortgage Loan Agreement, the Mortgage and all related loan

documents, collectively, the "Mortgage Loan Documents"). Pursuant to the Mortgage Loan Documents, the Debtor granted the Lender, among other things, a valid and enforceable first priority (i) mortgage on that certain commercial property located at 1609-15 Monmouth Avenue, Lakewood, New Jersey 08701 (the "Real Property") and (ii) blanket lien on, and a security interest in, all of the Debtor's assets, including, but not limited to, cash, accounts, leases and leasehold improvements, rents, contracts, equipment, personal property, furniture, and all proceeds therefrom (collectively, the "Personal Property" and, together with the Real Property, the "Prepetition Collateral"). The Lender properly perfected its first priority liens and security interests in the Prepetition Collateral by virtue of, among other things, the filing and recording of the Mortgage.

E. All cash and cash equivalents, whether in the form of cash, rents, accounts generated therefrom, security deposits, deposit accounts, or in any other form, whenever acquired, which represent income, proceeds, products, rents, or profits of the Prepetition Collateral that are now in the possession, custody or control of the Debtor (or persons in privity with the Debtor), or in which the Debtor will obtain an interest during the pendency of this Chapter 11 Case, are and shall be treated as the Lender's "cash collateral" for the purposes, and within the meaning, of Section 363(a) of the Bankruptcy Code (collectively, the "Cash Collateral").

F. The Debtor will be seeking by separate pleading this Court's authorization for the Debtor's property manager and fiscal agent, Affiliated Management, Inc. ("Affiliated") to remain in control of the management and operation of the Real Property, including but not limited to leasing, maintaining, supervising and otherwise operating the Real Property, in the capacity of a fiduciary to the Debtor and its estate. Pending this Court's consideration of the separate pleading regarding Affiliated's role as the Debtor's property manager and fiscal agent, the Parties have

agreed that Affiliated may act as manager and fiscal agent of the Real Property in accordance with the terms of this Order.

G. The Debtor cannot meet its ordinary and necessary operating expenses or maintain and preserve the Real Property without the use of a portion of the Cash Collateral. The Lender consents to the use of its Cash Collateral on, and subject to, the terms and conditions set forth herein.

H. The Debtor has requested that the Lender permit Affiliated to use certain Cash Collateral for the purpose of paying the expenses identified in the proposed budget attached hereto as **Exhibit A** (the "Budget"). The Lender consents to Affiliated's use of Cash Collateral on, and subject to, the terms and conditions set forth herein.

I. The Debtor submits that the terms of its and Affiliated's use of the Lender's Cash Collateral and the adequate protection authorized hereunder are fair and reasonable under the circumstances and reflect the Debtor's exercise of reasonable business judgment.

J. Good cause has been shown for entry of this Order. The Debtor has an immediate and critical need to use Cash Collateral in order to minimize disruption to and to avoid diminution in value of the Real Property and its business. The Debtor is unable to obtain such funds in the form of unsecured credit or unsecured debt allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense, pursuant to Section 364(b) of the Bankruptcy Code. Without the use of Cash Collateral, the Debtor will not have sufficient liquidity to continue its operations. Absent authorization to use Cash Collateral, the Debtor's estate and creditors would suffer immediate and irreparable harm. The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are

necessary to obtain consent or non-objection of certain parties, and to adequately protect the Lender's interest in the Prepetition Collateral.

## II. ACKNOWLEDGMENTS, REPRESENTATIONS, RELEASE

K. The Debtor hereby acknowledges, represents and agrees that:

a) The Mortgage Loan Documents are legal, valid and binding obligations upon the Debtor, and each are enforceable against the Debtor in accordance with its respective terms subject only to the Debtor's rights under the Bankruptcy Code or principles of equity;

b) The outstanding amounts of principal, interest and late charges due to the Lender under the Mortgage Loan Documents as of September 7, 2023 was $**6,413,197.72, plus accrued legal fees and costs**. This amount, plus continuing interest at a per diem of $1,663.53 and legal fees, and any other amounts due in connection with the Mortgage Loan Documents, is hereinafter referred to as the "Indebtedness";

c) The Lender has duly perfected security interests in and liens (collectively, the "Liens") on the Prepetition Collateral, to secure the Indebtedness;

d) The Indebtedness is now due and owing in full by the Debtor without any defense, offset, claim, counterclaim or deduction of any kind or nature whatsoever; and

e) The Debtor acknowledges that the value of the Prepetition Collateral securing repayment of the Indebtedness is at least equal to and in any event not less than the amount of the Indebtedness, including interest accruing on the Indebtedness to the Lender.

L. The Debtor hereby waives any right it may have as of the date of this Stipulation and Order to contest, setoff against, counterclaim or seek other reduction of the Liens and/or the Indebtedness.

M.     The stipulations, waivers and admissions contained in this Stipulation and Order shall be immediately binding upon the Debtor in all circumstances and shall be binding upon all other parties in interest, including, without limitation, any Official Committee of Unsecured Creditors (the "Committee"), subject only to the rights of the Committee, or any party in interest to file an adversary proceeding or, to the extent permissible under the Code and Federal Rules of Bankruptcy Procedure, a contested matter, challenging the representations and stipulations set forth in this Stipulation and Order within the earlier of (a) 90 days from the date of the formation of the Committee appointed in this case and (b) 105 days after the entry of this Stipulation and Order approving the Debtor's use of the Cash Collateral, through Affiliated.

## STIPULATION AND ORDER

Accordingly, the Debtor and the Lender hereby stipulate as follows, and IT IS HEREBY ORDERED, ADJUDGED AND DECREED, on an interim basis, that:

1. The Recitals stated above are incorporated into this Stipulation and Order.

**A.  DEBTOR'S USE OF CASH COLLATERAL THROUGH AFFILIATED, PAYMENTS UNDER MORTGAGE LOAN AGREEMENT AND ADEQUATE PROTECTION**

2. Subject to the terms and conditions set forth herein (and contingent upon the Debtor's compliance herewith) and entry of this Stipulation and Order by the Bankruptcy Court, the Lender consents to the Debtor's use of Cash Collateral, through Affiliated, *nunc pro tunc* to the Petition Date and in accordance with the terms and conditions set forth herein, from the effective date of this Stipulation and Order until the "Termination Date" which shall be the earlier of (a) October 25, 2023; (b) an uncured Event of Default (as defined herein) by the Debtor upon five (5) business days' written notice to cure said default; or (c) upon the Lender obtaining relief from the automatic stay.

3. Subject to future orders of the Court and unless there occurs an Event of Default (as hereinafter defined), the Debtor and Affiliated are hereby authorized to use the Lender's Cash Collateral through and including the Termination Date: (i) solely in accordance with and pursuant to the terms and provisions of this Stipulation and Order; and (ii) only to the extent required to pay those expenses enumerated in the Budget attached hereto as **Exhibit A**, as and when such expenses become due and payable, except that no Cash Collateral or portion thereof may be used to compensate any of the Debtor's professionals for services rendered or expenses incurred since the Petition Date without further order of the Court.

4. So long as this Order remains in effect, all Cash Collateral currently held by or in the possession, custody or control of the Debtor or Affiliated as fiscal agent to the Debtor, and all Cash Collateral received or collected from and after the date hereof, shall be transferred and/or deposited into an account which shall be in the name of the Debtor and designated DIP Account (the "Collateral Account").

5. The Debtor shall be responsible for and shall comply with any and all maintenance, disclosure and reporting obligations with respect to the Collateral Account as required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable rules or guidelines of the Office of the United States Trustee.

6. The Debtor, through Affiliated, has continued to pay partial payments to the Lender after the maturity date of the Mortgage Loan on the first of each month. The most recent payment was made on the Petition Date of September 7, 2023. The Debtor, through Affiliated, shall continue to pay partial payments of principal and interest on the Indebtedness as if the Mortgage Loan had not matured. The next monthly partial payment is due on October 1, 2023. Payments under this Stipulation and Order shall be applied to the Indebtedness in the manner elected by the

Lender in its sole discretion. It is agreed that for the sake of convenience and compliance with this Stipulation and Order, the Lender shall be permitted, but is not required, to invoice and send the Debtor and Affiliated monthly statements in the Lender's discretion, which, among other things, may show the loan payments then due; and that the invoices shall not constitute a violation of the automatic stay. Payments by Affiliated, on behalf of the Debtor, to the Lender, and the acceptance of the same by the Lender, shall not violate the automatic stay imposed under the Bankruptcy Code.

7. Notwithstanding anything to the contrary contained in Section 552(a) of the Bankruptcy Code, as adequate protection for, and to secure payment of, the aggregate diminution in the value of the Cash Collateral from the Petition Date, and as consideration to the Lender to permit the Debtor's use of Cash Collateral through Affiliated, the Debtor hereby grants to the Lender the following adequate protection: (i) a replacement perfected security interest under Section 361(2) of the Bankruptcy Code to the extent the Cash Collateral is used by the Debtor, solely to the extent and validity of, and with the same priority in, the Debtor's postpetition collateral, and proceeds thereof, the Lender may have held in the Debtor's Prepetition Collateral; and (ii) a superpriority administrative expense claim, pursuant to Section 507(b) of the Bankruptcy Code, senior to any and all claims against the Debtor under Section 507(a) of the Bankruptcy Code, whether in this proceeding or in any superseding proceeding, in the amount of any diminution in value of the Cash Collateral from the Petition Date, subject only to the Carve-Out (as defined below).

8. Neither the Debtor nor Affiliated on behalf of the Debtor shall use Cash Collateral except as expressly permitted by this Order. Except as expressly permitted by this Order, neither the Debtor nor Affiliated shall cause or permit or consent to cause or permit any new lien, mortgage

or security interest in the Real Property, the rents or leases, the Cash Collateral, or any of the collateral subject to this Order pursuant to Section 364(d) of the Bankruptcy Code or otherwise on a level that is equal to or senior in priority to any lien, mortgage or security interest held by the Lender.

9. This Order shall be sufficient and conclusive evidence of the priority, perfection and validity of all of the security interests in and liens upon the Real Property granted to the Lender as set forth herein, without the necessity of filing, recording or serving any financial statements or other documents which may otherwise be required under federal, state or local law in any jurisdiction or the taking of any other action to validate or perfect the security interests and liens granted to the Lender pursuant to this Order.

10. The administrative claims, liens and security interests granted to the Lender hereunder shall be subordinate and subject only to: (a) claims for fees and reimbursement of expenses that may be awarded pursuant to Sections 330 or 331 of the Bankruptcy Code to professionals retained by the Debtor and any official committee of unsecured creditors incurred prior to or following the occurrence of an Event of Default (as defined herein), to the extent such fees and expenses are (i) within the amounts set forth in the Budget approved by the Lender, and (ii) subsequently allowed by the Court under Sections 330, 331 or 363 of the Bankruptcy Code; (b) unpaid fees or expenses of a chapter 7 trustee or any fees or disbursements arising after the conversion of this Chapter 11 Case to a case under Chapter 7, in an aggregate amount not to exceed $20,000; and (c) any claims for payments the Debtor is required to make to the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") as specified in 28 U.S.C. § 1930 and 31 U.S.C. § 3717 (collectively, the "Carve-Out").

## B. EVENTS OF DEFAULT AND TERMINATION

11. The occurrence of any of the following during the term of this Stipulation and Order shall constitute an event of default hereunder (each, an "Event of Default"):

   i. the Debtor shall fail to keep, observe or perform any of the terms of this Stipulation and Order or undertakings hereunder including, but not limited to, all payment requirements and reporting provisions contained herein;

   ii. the Debtor shall knowingly furnish or knowingly make any false, inaccurate or materially incomplete representation, warranty, certificate, report or summary in connection with or under this Stipulation and Order;

   iii. the Debtor and/or any of its affiliates shall permanently cease substantially all of its operations or take any action for the purpose of such cessation;

   iv. any entity other than the Lender is granted relief from the automatic stay imposed by section 362 of the Bankruptcy Code, with regard to any of the Prepetition Collateral;

   v. the Debtor shall contest the extent, validity and/or priority of any lien or security interest of the Lender, file any claim, complaint, adversary proceeding, suit, demand, action or cause of action against the Lender, or shall seek to have the Bankruptcy Court annul, modify or amend any part of this Stipulation and Order without the prior written consent of the Lender;

   vi. the suspension of the Chapter 11 case under Section 305 of the Bankruptcy Code;

   vii. the Debtor shall suffer the appointment of a trustee;

   viii. the Debtor's chapter 11 case is converted to a case under chapter 7 of the Bankruptcy Code or is dismissed or the Debtor files a motion requesting a dismissal or a

conversion of its chapter 11 case to a liquidation under chapter 7 of the Bankruptcy Code unless any of the foregoing are consented to by the Lender;

      ix.      the Debtor shall contract or agree to sell or sells any of its assets, outside of the ordinary course of business, which are subject to the Liens, without prior consent of the Lender;

      x.      the Prepetition Collateral is impaired by the imposition of any material lien, claim or encumbrance arising after the Petition Date, which is asserted to be equal or senior, in whole or in part, to the Liens in favor of the Lender, except to the extent consented to by the Lender;

      xi.      the Debtor attempts, under Section 363, 364 or any other Section of the Bankruptcy Code to subordinate the Liens of the Lender or to provide any other person any lien or adequate protection in the Collateral without the prior consent of the Lender; and

      xii.      any default or event of default shall occur and be continuing pursuant to any agreement between the Debtor and any third party (including, but not limited to the Lender) pursuant to which agreement such third party: (i) has consented to Debtor's use of its cash collateral; or (ii) has agreed to provide such Borrower with debtor in possession financing pursuant to § 364 of the Bankruptcy Code.

12.     In the event that any entity is granted relief from the automatic stay imposed by section 362 of the Bankruptcy Code, with regard to any property securing the Mortgage Loan, the Lender shall automatically, without further leave of court and in addition to any other protections afforded hereunder or under any law, be granted immediate relief from the automatic stay with regard to the same property, without restriction, so that the Lender shall be able to assert and protect its rights with regard to such property as it may deem appropriate. Further, nothing in this Stipulation and Order shall prevent the Lender from asserting its right to seek relief from the

automatic stay to assert any right it may possess with respect to any of its Prepetition Collateral and this Stipulation and Order shall not operate in any way to prejudice any such relief requested by the Lender.

C.   **MISCELLANEOUS**

13.   In taking any actions or exercising any discretion set forth in this Stipulation and Order (including, without limitation, the exercise of its approval rights with respect to any budget), the Lender shall have no liability to any third party and shall not be deemed to be in control of the operations of Debtor, and the Lender's relationship with Debtor shall not constitute or be deemed to constitute a joint venture or partnership of any kind between the Lender and Debtor.

14.   The automatic stay provisions of Section 362 of the Bankruptcy Code are hereby lifted and terminated as to the Lender to the extent necessary to implement the provisions of this Stipulation and Order, thereby permitting the Lender to, *inter alia,* receive collections and proceeds of Prepetition Collateral and to apply the same to the Indebtedness and to file any financing statements or other instruments and documents, if any, to further evidence the Liens or Replacement Liens in the Prepetition Collateral.

15.   Debtor shall pay all post-petition income, sales, real estate taxes and/or other applicable taxes, if any, as and when they come due in respect of the Collateral, maintain insurance as required by the Mortgage Loan Documents and comply with all other requirements of the Mortgage Loan Documents that are necessary to preserve and maintain the value of the Lender's liens and security interests in the Prepetition Collateral.

16.   During the term of this Stipulation and Order, the Debtor, through Affiliated, shall pay all insurance premiums necessary to maintain adequate insurance coverage on all of Debtor's assets and shall pay all withholding taxes and all other taxes assessed against the Debtor as and when due and provide proof of such deposits to the Lender at the time of such payment.

17. If any or all of the provisions of this Stipulation and Order are, at any time, modified, vacated or stayed, such stay, modification or vacation shall not affect the validity and enforceability of any lien, priority or other benefit conferred under this Stipulation and Order prior to such stay, modification or vacation.

18. The entry of this Stipulation and Order shall be sufficient and conclusive evidence of the validity, enforceability and perfection of the liens granted to the Lender hereunder, whether or not the Lender elects to file or record financing statements.

19. This Stipulation and Order is without prejudice to the rights of the Lender to seek additional adequate protection, or to assert any right or remedy it may possess.

20. The Debtor's representations and warranties, acknowledgments and waivers set forth in this Stipulation and Order shall survive the termination hereof.

21. The rights, powers and remedies of the Lender provided in this Stipulation and Order and the Mortgage Loan Documents are cumulative and not exclusive of any right, power or remedy provided by law or equity. No failure or delay on the part of the Lender in the exercise of any other right, power or remedy or shall constitute a waiver of such right or remedy.

22. No amendment or extension of this Stipulation and Order, and no waiver of any one or more of the provisions hereof shall be effective unless set forth in writing and signed by the Lender and the Debtor.

23. This Stipulation and Order: (i) shall be binding upon the Debtor and the Lender and, where applicable, their respective predecessors, successors, agents and permitted assigns (including, as to the Debtor, Affiliated or any trustee appointed or elected in these cases or in a case under chapter 11 or chapter 7); and (ii) shall inure to the benefit of the Debtor and the Lender and, where applicable, their respective predecessors, successors, agents and permitted assigns;

provided, however, that the Debtor may not assign its rights hereunder without the written consent of the Lender, and any such assignment or attempted assignment by the Debtor shall be void and of no effect with respect to the Lender.

24. Upon the Termination Date, the funds in the Collateral Account shall be disbursed pursuant to an order of this Court and/or the provisions of a confirmed Chapter 11 plan (if applicable), and the Debtor's authorization to spend Cash Collateral through Affiliated shall terminate immediately.

25. The automatic stay pursuant to Section 362 of the Bankruptcy Code is hereby modified to the extent necessary to effectuate any of the provisions of this Order.

26. The terms and conditions of this Order shall be effective and immediately enforceable upon its entry by the Clerk of the Court.

27. The Debtor, Affiliated and the Lender are authorized to perform all acts and to make, execute and deliver any and all instruments as may be necessary to confirm or implement the terms and conditions of this Order.

28. This Order was negotiated at arms' length and in good faith by the Debtor and the Lender.

29. The provisions of this Order shall be binding upon the Parties hereto and each of their predecessors, predecessors-in-interest, successors, successors-in-interest and assigns, and all of their respective members, shareholders, partners, officers, officials, directors, managers, employees, subsidiaries, affiliates, insurers, trustees, agents and representatives, including but not limited to any successor trustee appointed in this Chapter 11 Case or under Chapter 7 of the Bankruptcy Code should the case be converted to a case under Chapter 7 of the Bankruptcy Code.

30. This Order shall be governed by and shall be construed under the laws of the State of New York, without regard to such state's conflict of law rules. This Court shall retain jurisdiction with respect to all matters relating to this Order.

| | |
|---|---|
| **GLENN AGRE BERGMAN & FUENTES LLP** | **BIELLI & KLAUDER, LLC** |
| By: */s/ Andrew K. Glenn* <br> Andrew K. Glenn <br> 1185 Avenue of the Americas <br> 22nd Floor <br> New York, New York 10036 <br> Telephone: (212) 358-5600 <br> Email: aglenn@glennagre.com <br><br> *Counsel to the Debtor* | By: */s/ Thomas D. Bielli* <br> Thomas D. Bielli, Esq. (ID No. 5831474) <br> 1905 Spruce Street <br> Philadelphia, Pennsylvania 19103 <br> Telephone: (215) 642-8271 <br> Email: tbielli@bk-legal.com <br><br> *Local Counsel to the Lender* <br><br> - and - <br><br> **UNRUH TURNER BURKE & FREES** <br> Kristen Wetzel Ladd <br> P.O. Box 515 <br> 17 West Gay Street <br> West Chester, Pennsylvania 19381 <br> Telephone: (484) 653-2233 <br> Email: kladd@utbf.com <br><br> *Lead Counsel to the Lender* |

**SO ORDERED:**

Dated: _____

 _____
 HONORABLE SEAN H. LANE
 UNITED STATES BANKRUPTCY JUDGE