# GIORDANO, HALLERAN & CIESLA, P.C.

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
WWW.GHCLAW.COM

**DONALD F. CAMPBELL, JR., ESQ.**
SHAREHOLDER
DCAMPBELL@GHCLAW.COM
DIRECT DIAL: (732) 219-5494

*Please Reply To:*
1250 BROADWAY
36TH FLOOR
NEW YORK, NY 10001
(646) 475-8065

October 17, 2023

Client/Matter No. 21742-1

Honorable Sean H. Lane, U.S.B.J.
United States Bankruptcy Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601-4140

Re: **In re BCR PINEWOOD REALTY, LLC**
Chapter 11 Case No. 23-22655 (Bankr. S.D.N.Y.)(SHL)

Dear Judge Lane:

This office represents Intervenor, JDWC, LLC as assignee of RCG LV Debt IV Non-Reit Assets Holdings, LLC ("*JDWC*") in the above-referenced matters. Please accept this letter brief in lieu of a more formal brief in support of interested parties, Chana Ringel ("Chana") and CR Lakewood, LLC (collectively "Movants")'s motion for an order in accordance with Section 1112 of the Bankruptcy Code, 11 U.S.C. §1112, to dismiss BCR Pinewood Realty, LLC ("Debtor")'s Chapter 11 petition or alternatively to lift the automatic stay, 11 U.S.C. §362(d)(1). JDWC also seeks as alternative relief, the dismissal of the action pursuant to §305.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### JDWC's 2016 Judgment

On January 8, 2016, JDWC's assignor, RCG LV Debt IV Non-Reit assets Holdings, LLC ("RCG") obtained a judgment against Benjamin Ringel ("Ringel") in AC I Times River Mezz.,

GIORDANO, HALLERAN & CIESLA
A Professional Corporation
ATTORNEYS-AT-LAW
Honorable Sean H. Lane, U.S.B.J.
October 17, 2023
Page 2

LLC, et al. v. JDWC, LLC, as assignee of RCG LC Debt Non-Reit Asset Holdings, LLC v. Bejamin Ringel, et al., Superior Court of New Jersey, Chancery Division Docket No. OCN-C-209-13 ("2016 Judgment")[1]. (See, Certification of Donald F. Campbell, Jr. Esq. ("Campbell Cert.") at Exhibit A). On May 5, 2016, the 2016 Judgment was docketed in the State of New Jersey as Judgment No. J-75989-16. Id. On June 29, 2016, the 2016 Judgment was domesticated in New York. (See, Campbell Cert. at Exhibit C). In 2019, RCG assigned its interest in the 2016 Judgment to JDWC. (See, Campbell Cert. at Exhibit D). On March 26, 2019 RCG filed an Assignment of Judgment, assigning its interest in the 2016 Judgment, transcribed in the New York County Clerk's Office on July 7, 2016. (See Campbell Cert. at Exhibit E).

On October 25, 2019, the Superior Court of New Jersey entered an order (the "JDWC Charing Order") which states, in part: (a) Ringel's interest in the entities are charged pursuant to N.J.S.A. 42:2C-43 until the judgment is paid in full, (b) the order acts as a levy and a perfected lien against all of Ringel's economic interests in the entities, and (c) Ringel, the "Debtor", includes all persons and LLC entities who are related or subordinate to Ringel. BR Lakewood, LLC is referenced as an entity whereby Ringel's assets are charged, a levy has been placed and a lien has been perfected. (See, Campbell Cert. at Exhibit E). Since February 6, 2020 through August 29, 2023, the Debtor has made distributions in excess of $1.8 Million. GH&C trust account has received a total of $927,000 representing Ringel/BR Lakewood's 50% distributions from the

---

[1] On August 30, 2023, the Appellate Division of the Superior Court of New Jersey affirmed the January 8, 2016 Judgment against Ringel. The Appellate Division remanded the matter to the trial court for further proceedings consistent with its opinion, including for a calculation of Ringel's outstanding debt on the loan agreement and related documents determined at contract default rate of interest. (See, Campbell Cert. at Exhibit B).

GIORDANO, HALLERAN & CIESLA
A Professional Corporation
ATTORNEYS-AT-LAW

Honorable Sean H. Lane, U.S.B.J.
October 17, 2023
Page 3

Debtor. Approximately half of those funds were released to Ringel. (Campbell Cert. at ¶ 17). On or about June 26, 2020, the court entered a Writ of Execution regarding the unpaid balance on the 2016 Judgment, which does not take into account all of the interest, costs, fees and credits that must be applied to date. (See, Campbell Cer.t at Exhibit F). Also, the June 1, 2020 Order required all distributions from BR Lakewood received from the court appointed fiscal agent to be held in escrow by Giordano, Halleran & Ciesla, P.C. ("GH&C") (See, Campbell Cert. at Exhibit G). Twenty percent (20%) of the distributions representing Ringel's undisputed share in BR Lakewood were related to JDWC while the remaining eighty percent (80%) were held in escrow pending further court order. JDWC did file a new action in the <u>JDWC, as assignee of RCG v. Benjamin Ringel, BR Lakewood, LLC, et al.</u>, Superior Court of New Jersey, Docket No. OCN-C-101-20, seeking to void fraudulent transfers and sought injunctive relief. In connection with this later action, the court entered an Order to Show Cause with temporary restraints on August 6, 2020, and an Order continuing restraints on September 19, 2020. (See, Campbell Cert. at Exhibits H and I).

**Further Modifications to JDWC Charing Order and the Orders for Restraints**

On March 10, 2021, the Superior Court entered an order modifying the restraints provided in the JDWC Charing Order in C-209-13 and the two orders entered preliminary restraints dated August 6, 2020 and September 19, 2020 in C-101-20 (the "Order Modifying Restraints"). (See Campbell Cert. at Exhibit J). The purpose was to allow for a potential settlement to be effectuated in related matters, which modification included but is not limited to the instructions for the release of escrow funds from the "JDWC Escrow" account held in GHC's trust account, the continued distributions due to BR Lakewood, LLC from the Debtor, BCR Gertners Realty, LLC ("Gertners")

GIORDANO, HALLERAN & CIESLA
A Professional Corporation
ATTORNEYS-AT-LAW

Honorable Sean H. Lane, U.S.B.J.
October 17, 2023
Page 4

and BCR 12th Carey Street, LLC ("Carey") to be escrowed in the JDWC Escrow, the allowance of 50% of the escrowed monies to be disbursed to JDWC and the 50% made available to be disbursed to Ringel via an escrow agent for legal fees or educational expenses, the requirement of a posting of a Supersedeas Bond in the amount not less than $5,000,000 from distributions of the sale of Pinewood, the restraint of the proceeds of the sale of Pinewood in order to satisfy the January 8, 2016 Judgment, plus attorney fees (including this firm's fees), costs and interest. Id. The order and escrow have been the subject of recent motions before the court, none of which disturbed the JDWC portion of the escrow, but ultimately, added restrictions to the release of Ringel's portion of the escrow. (See, Campbell Cert. at Exhibits K, L and M).

**BCR Pinewood Realty, LLC Bankruptcy**

In the meantime, there are pending actions in the New Jersey Superior Court, Chancery Division, Ocean County, entitled Chana Ringel v. BR Lakewood, LLC, Docket No. OCN-C-127-15 and Chana Ringel, et al. v. Benjamin Ringel, et al., Docket No. OCN-C-152-16 ("Chancery Court"). In 2020, in the Chancery Court, the parties to that action entered into a settlement agreement, where they agreed among other items, to sell the Pinewood Property in a court-supervised bidding and sale process, with the net proceeds to be split evenly between the two owners. Ringel has been resisting the sale of the Property. Ringel owes several creditors monies, including JDWC, in excess of the anticipated half distribution to him.

Ultimately through the bidding process, Rushmore Capital, was deemed the successful bidder and has signed a sales contract for $47.1 Million. In addition to JDWC, various other creditors have filed various charge orders against Ringel, individually. Rigel's creditors' charging

GIORDANO, HALLERAN & CIESLA
A Professional Corporation
ATTORNEYS-AT-LAW

Honorable Sean H. Lane, U.S.B.J.
October 17, 2023
Page 5

orders would be satisfied from half of the net proceeds to be paid to Ringel. The Chancery Court had several motions pending to fix the priority of the liens among Ringel's creditors and deal with any remaining impediments to the sale to Rushmore Capital, currently returnable November 16, 2023.[2] Ringel is using the Petition to interfere with the sale of the Property to Rushmore, shift the existing litigation in Chancery Court to an alternative forum in the last-minute attempt to avoid paying personal creditors.

On September 7, 2023, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Despite Ringel's execution of the Petition as "Co-Managing Member of the Debtor", Ringel fails to disclose that in 2015, the Court in New Jersey removed him from any manager authority (with Chana remaining as the sole member) and appointed a fiscal agent named Affiliated Management, Inc. (See Exhibit A to Motion). Moreover, under the Operating Agreement, Ringel must obtain the consent of Chana for any management decisions. Chana never agreed to the bankruptcy filing and opposes it. (See September 21, 2023 Declaration of Chana Ringel, Paragraph 3). Chana has certified that she is the Managing Member of BCR Lakewood Holdings, LLC which is the sole member and manager of the Debtor. Benjamin Ringel ('Ringel") executed the Debtor's Chapter 11 petition lacking the authority to authorize the filing having not consulted or obtaining the consent of Chana. (See September 21, 2023 Declaration of Chana Ringel).

Furthermore, on September 20, 2023, the Debtor's counsel filed a letter with the Superior Court of New Jersey requesting an adjournment of a case management conference concerning the

---

[2] The motions were originally scheduled for September 8, 2023, the day before the Petition was filed.

GIORDANO, HALLERAN & CIESLA
A Professional Corporation
ATTORNEYS-AT-LAW

Honorable Sean H. Lane, U.S.B.J.
October 17, 2023
Page 6

recalculation of the amount due under the 2016 Judgment, asserting the automatic stay applied to that case. As the Debtor is not a direct party to that case, this reflects an attempt by Ringel to attempt to delay the sale of the Property through the filing of the Debtor's bankruptcy action. (Campbell Cert. at Exhibit O).

Chana and CR Lakewood, LLC have filed a motion to dismiss the petition and lift the automatic stay. JDWC files this letter brief in support of Chana and CR Lakewood, LLC's motion.

## LEGAL ARGUMENT

## POINT I

### THIS COURT SHOULD DISMSIS BCR PINEWOOD REALTY, LLC'S CHAPTER 11 PETITION AS THE BANKRCUPTCY COURT LACKS SUBJECT MATTER JURISIDCAITON PURSUANT TO THE ROOKER-FELDMAN DOCTRINE

The Debtor's petition is a last-ditch effort to overturn the Chancery Court's judgments ordering the sale of the Pinewood Property. This violates the holdings of Rooker-Fid. Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and D.C. Ct. of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct, 1303, 75 L.Ed.2d 206 (1983) ( referred to as the "Rooker-Feldman Doctrine") and thus, the bankruptcy court does not have subject matter jurisdiction to hear the Chapter 11 Petition and, specifically, any efforts to stop the sale of the Pinewood Property.

Under the Rooker-Feldman Doctrine, "federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423, 426 (2d Cir. 2014); see, Green v. Mattingly, 585 F.3d 97, 101 (2d Cir.

GIORDANO, HALLERAN & CIESLA
A Professional Corporation
ATTORNEYS-AT-LAW

Honorable Sean H. Lane, U.S.B.J.
October 17, 2023
Page 7

2009) (explaining that the Rooker-Feldman Doctrine bars federal claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments" (quoting Exon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)). There are four "requirements" that must be satisfied before the Rooker-Feldman Doctrine is applied: (1) the "federal-court plaintiff must have lost in state court," (2) the plaintiff "must complain of injuries caused by a state-court judgment," (3) the plaintiff "must invite district court review and rejection of that judgment," and (4) the state-court judgment "must have been rendered before the district court proceedings commenced." Green, 585 F.3d at 101 (quoting Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005))(internal quotation marks and brackets omitted). The underlying principle of the Rooker-Feldman Doctrine is that "within the federal judicial system, only the Supreme Court may review state-court decisions." Hoblock, 422 F.3d at 85.

Here, Ringel, the filer of the bankruptcy petition on behalf of the Debtor, has lost in state court. In fact, on September 20, 2023, the Debtor's counsel filed a letter with the Superior Court of New Jersey requesting an adjournment of a case management conference concerning the recalculation of the amount due under the 2016 Judgment, asserting the automatic stay applied to that case. As the Debtor is not a direct party to that case, this reflects an attempt by Ringel to attempt to delay the sale of the Property through the filing of the Debtor's bankruptcy action.

The Chancery Court has ordered the sale of the Pinewood Property. This holding has been affirmed with the Appellate Division affirming the trial court's decision for the sale of the Property

GIORDANO, HALLERAN & CIESLA
A Professional Corporation
ATTORNEYS-AT-LAW

Honorable Sean H. Lane, U.S.B.J.
October 17, 2023
Page 8

to Rushmore Capital, who has been deemed the highest bidder. The Debtor's bankruptcy filing is an attempt to overturn the court's order of the sale of the sole asset of the Debtor. Ringel has filed this action for no other purpose than to stop the sale and force a reorganization of the distributions and for Ringel's personal benefit. The sale of the Property has been decided by the Chancery Court and all appellate avenues before the Superior Court of New Jersey has been exhausted by Ringel. The only motions pending concerning the stay of the sale while the Chancery Court determines the various priorities of Ringel's personal creditors and the resolution of various restraints on the Pinewood Property filed Ringel's personal creditors. Ringel's attempt to challenge the state court's determinations and undo the ordered sale of the Pinewood property is the "paradigm situation in which the Rooker-Feldman [doctrine] precludes a federal district court from proceeding." Exxon Mobile Corp., 544 U.S. at 293, 125 S.Ct. 1517 (internal quotation marks omitted). The Court should hold that it does not have subject matter jurisdiction over the mater under the Rooker-Feldman doctrine.

Moreover, the fallacy of the filing of the Chapter 11 Petition by the Debtor must be examined as application of the balance sheet test or the going concern analysis would result in the conclusion that the Debtor is not insolvent. 11 U.S.C. §101(32) applies the balance sheet test to determine the solvency of a Debtor. See, In re Centennial Textiles, Inc., 220 B.R. 165, 173 (Bankr. S.D.N.Y. 1998)(citing United States v. 58th Street Plaza Theatre, Inc., 287 F. Supp. 475 (S.D.N.Y. 1998); see Morgan Guaranty Trust Co. v. Hellenic Lines, Ltd., 621 F.Supp. 198, 220 (S.D.N.Y. 1985)). Here, the sheer amount of distributions to the members of the Debtor reflect that the Debtor is not insolvent. Since February 6, 2020 through August 29, 2023, the Debtor has made

GIORDANO, HALLERAN & CIESLA
A Professional Corporation
ATTORNEYS-AT-LAW

Honorable Sean H. Lane, U.S.B.J.
October 17, 2023
Page 9

distributions in excess of $1.8 Million. GH&C trust account has received a total of $927,000 representing Ringel/BR Lakewood's 50% distributions from the Debtor. Approximately half of those funds were released to Ringel. This reflects that the Debtor is not insolvent and has the ability to pay its debts.

Furthermore, "fair valuation" is determined, in the going concern context, "by the fair market value of the debtor's assets that could be obtained in sold in a prudent manner within a reasonable period of time to pay the debtor's debts." Lawson v. Ford Motor Co. Iin re Robin Indus. Inc.), 78 F.3d 30, 35 (2d Cir, 1996)(discussing insolvency under the Bankruptcy Code); see Rubin v. Mfrs. Hanover Trust Co., 661 F.2d 979, 995 (2d Cir. 1981) ( discussing "present fair salable value" under the Bankruptcy Act of 1898); Syracuse Engineering Co., Inc. v. Haight, 110 F.2d 468, 471 (2d Cir. 1940)(discussing "bankruptcy insolvency" under the Bankruptcy Act of 1898). Here, Rushmore Capital has entered into a contract to purchase the Property at the sale price of $47.1 Million. The Debtor has a mortgage in the amount of approximately $6 Million.[3] The remaining value is in excess of $40 Million. Thus, the Debtor is not insolvent. The non insolvency of the debtor reflects the bad faith filing of the bankruptcy petition to have no other effort than to stop the sale of the Property and change the forum to the bankruptcy court for the determination of the distribution of the assets. This action is contrary to the Rooker-Feldman doctrine and, thus, Debtor's petition should be dismissed for lack of subject matter jurisdiction. In

---

[3] JDWC does note that the Debtor has not filed its schedules to the Bankruptcy Petition in an effort to thwart the court's efforts in determining the insolvency of the Debtor. The Debtor has filed a motion to extend the time to file the schedules, which has been opposed.

GIORDANO, HALLERAN & CIESLA
A Professional Corporation
ATTORNEYS-AT-LAW

Honorable Sean H. Lane, U.S.B.J.
October 17, 2023
Page 10

the alternative, the automatic stay should be lifted to permit the sale of the Property and the Chancery Court to have jurisdiction to determine the distribution.

## POINT II

### THIS COURT SHOULD DISMSIS BCR PINEWOOD REALTY, LLC'S CHAPTER 11 PETITION (AGREEING WITH MOVANT'S POINTS I- IV)

JDWC files this brief joining in Movant's motion to dismiss the Chapter 11 Petition because (1) Ringel lacked authority to authorize the filing; (2) the Chapter 11 Petition was filed in bad faith, (3) the file is objectively futile and (4) the list of creditors are not creditors of the Debtor.

Section 1112(b) of the Code provides ten (10) non-exclusive bases for dismissing a chapter 11 case or converting it to one under chapter 7 of the Code, whichever is in the best interest of creditors and the estate. *See* 11 U.S.C. § 1112(b). See also, In re Gucci, 174 B.R. 401, 409 (Bankr.S.D.N.Y.1994) ("causes" listed in § 1112(b) are non-exhaustive); In re D & F Meat Corp., 68 B.R. 39, 40 (Bankr.S.D.N.Y.1986) (same); In re Cardi Ventures, Inc., 59 B.R. 18, 21 (Bankr.S.D.N.Y.1985) (same). Many courts hold that "cause" under this provision may include debtor's lack of good faith in commencing a chapter 11 case. See, e.g., Carolin Corp. v. Miller, 886 F.2d 693 (4th Cir.1989); In re Phoenix Piccadilly, Ltd., 849 F.2d 1393 (11th Cir.1988); In the Matter of Little Creek Development Co., 779 F.2d 1068 (5th Cir.1986). This must be proven by a preponderance of the evidence that there is "cause" for relief under § 1112(b). See In re Woodbrook Assocs., 19 F.3d 312, 317 (7th Cir.), reh'g denied, May 12, 1994; In re A–K Enterprises, Inc., 111 B.R. 149, 150 (Bankr. N.D.Ohio 1990); In re Mattiace Indus., Inc., 76 B.R.

GIORDANO, HALLERAN & CIESLA
A Professional Corporation
ATTORNEYS-AT-LAW

Honorable Sean H. Lane, U.S.B.J.
October 17, 2023
Page 11

44, 48 (Bankr.E.D.N.Y.1987). Thereafter, it is incumbent upon debtor to show that relief under § 1112(b) is not warranted. <u>See</u>, <u>In re Namer</u>, 141 B.R. 603, 606 (Bankr.E.D.La.1992).

At the outset, Ringel filed this action in bad faith in a last-ditch effort to avoid distributions to his personal creditors from the sale of the Debtor's sole asset the Pinewood Property. <u>See</u>, <u>In re C-TC 9th Avenue P'sip</u>, 4113 F.3d 1304 (2d Cir. 1997); <u>In re Inwood Heights Hous. Dev. Fund Corp.</u>, 2011 WL 3793324 (Bankr. S.D.N.Y. 2011). The Debtor has one sole creditor, and thus, Ringel listed his personal creditors on the schedule to contend that it is bankrupt. This is just a bad faith attempt by Ringel to continue to avoid his creditors and pay what is due and owing. The fact that Ringel's creditors, including JDWC, have charging orders do not make them a creditor of the Debtor. See, N.Y. LLC Law §607(a); <u>N.J.S.A.</u> 42:2C-43. Moreover, Ringel further reflects bad faith due to his counsel sending a letter on behalf of the Debtor wherein he asserts various bankruptcy provisions in an attempt to take over the Pinewood Property, the Debtor's sole asset and related accounts used to operate the Property. Moreover, the Debtor, through counsel, has asserted that the automatic stay provisions apply to a state court action where the Debtor is not even a party, but Ringel is a party individually. (See, Exhibit B to Motion).

Furthermore, Ringel did not receive the consent or approval from Chana to file the bankruptcy petition contrary to the Operating Agreement. Moreover, the Chancery Court removed Ringel as co-manager of the Debtor. Affiliated was appointed as the fiscal agent. Thus, Ringel had not authority to file the Chapter 11 Petition and thus, it should be dismissed. See, <u>In re 167 W.133rd St. Hous. Dev. Fund Corp.</u>, 2018 WL 4637460 at 86 (Bankr. S.D.N.Y. 2018). Also due to Ringel's lack of authority to do anything on behalf of the Debtor, reorganization of the Debtor

GIORDANO, HALLERAN & CIESLA
A Professional Corporation
ATTORNEYS-AT-LAW

Honorable Sean H. Lane, U.S.B.J.
October 17, 2023
Page 12

is not a possibility and thus, the filing of the petition is objectively futile. Any determination that Ringel has the authority to file the Chapter 11 Petition for the Debtor would be contrary to the Chancery Court's prior ruling and, thus, the Rooker-Feldman doctrine should be applied to that issue. Thus, this Court should dismiss the Chapter 11 Petition.

## POINT III

### IN THE ALTERNATIVE, THIS COURT SHOULD ABSTAIN FOR HEARING THE DEBTOR'S MATTER

JDWC contends that this court should dismiss the case pursuant to § 305(a) of the Bankruptcy Code. § 305(a) of the Bankruptcy Code provides:

> The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—
> (1) the interests of creditors and the debtor would be better served by such dismissal or suspension;

The dismissal of a case pursuant to § 305(a) of the Code is reviewable by the district court, but not reviewable by the court of appeals or the Supreme Court. 11 U.S.C. § 305(c). It is an extraordinary remedy for which the court must exercise great care by reviewing all of the relevant facts when such a motion is pending. In re Melp, Ltd., 143 B.R. 890, 892 (Bankr.E.D.Mo.1992); In re Waynes Sport Haus, Ltd., 27 B.R. 521, 522 (Bankr.E.D.Mich.1983). See also, In re Manchester Heights Assocs., 140 B.R. 521, 523 (Bankr.W.D.Mo.1992). § 305(a) is an extraordinary power which is to be used only in extraordinary circumstances). The legislative history for §305(a) provides , a case may be dismissed pursuant to this section:

GIORDANO, HALLERAN & CIESLA
A Professional Corporation
ATTORNEYS-AT-LAW

Honorable Sean H. Lane, U.S.B.J.
October 17, 2023
Page 13

> If an arrangement is being worked out by creditors and the debtor out of court, there is no prejudice to the rights of creditors in that arrangement, and an involuntary case has been commenced by a few recalcitrant creditors to provide a basis for future threats to extract full payment. The less expensive out-of-court workout may better serve the interests in the case.

In re Grigoli, 151 B.R. 314, 319-20 (Bankr. E.D.N.Y.) (quoting H.R. 95–595, 95th Cong. 1st Sess. 325 (1977). S.R. No. 95–989, 95th Cong.2d Sess. 36 (1978), U.S. Code Cong. & Admin.News pp. 5787, 6281, 5822 (1978)). Courts rely on a three-part test to decide whether or not to dismiss a case pursuant to § 305. The prongs of that test are: (1) the petition was filed by a few recalcitrant creditors and that most creditors oppose the bankruptcy; (2) there is a state insolvency proceeding or an out-of-court arrangement pending; and (3) that dismissal is in the best interest of the debtor and all creditors. See, In re Trina Assocs., 128 B.R. 858 (Bankr.E.D.N.Y.1991). Although the tests are useful, in determining whether dismissal under § 305(a) is appropriate, courts must look to the facts of the individual cases. In re Fitzgerald Group, 38 B.R. 16, 17 (Bankr.S.D.N.Y.1983). In examining the facts of each case, some courts have considered, in addition to the three-prong test previously referred to, a number of different criteria to determine whether a case should be dismissed under this section including:

> (1) economy and efficiency of administration; (2) whether another forum is available to protect the interest of both parties or there is already a pending proceeding in a state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving the equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interest in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal

GIORDANO, HALLERAN & CIESLA
A Professional Corporation
ATTORNEYS-AT-LAW

Honorable Sean H. Lane, U.S.B.J.
October 17, 2023
Page 14

bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought.

In re Fax Station, Inc., 118 B.R. 176, 177 (Bankr.D.R.I.1990).

Applying the above criteria to this case, the question first addressed is whether most creditors oppose the bankruptcy, there is state proceeding pending and the dismissal is in the best interest of the debtor and all creditors. In this matter, most creditors oppose the bankruptcy. Ringel did not have the authority to file the bankruptcy petition on behalf of the Debtor. The only purpose for filing was to delay payment to Ringel's personal creditors and thus, the petition was filed in bad faith. The economic and efficiency administration of this matter would be better served by the Chancery Court proceeding with the resolution of this matter as it has knowledge and expertise with this mater for several years. There is already a pending Chancery Court proceeding which is available to protect the interest of the parties. The federal proceedings are not necessary to reach a just and equitable solution as that can be reached through the Chancery Court proceeding. The Chancery Court proceedings have been occurring for over seven years with the resolution and sale of Pinewood Property being administered by the court. The change of the matter to the federal bankruptcy process would be costly, time consuming, and a violation of the Rooker-Feldman doctrine. See Point I, supra.. Finally, the bankruptcy jurisdiction was sought improperly and with no other purpose than to delay the Chancery Court proceedings. Thus, this Court should dismiss the Chapter 11 Petition.

GIORDANO, HALLERAN & CIESLA
A Professional Corporation
ATTORNEYS-AT-LAW

Honorable Sean H. Lane, U.S.B.J.
October 17, 2023
Page 15

## POINT IV

### IN THE ALTERNATIVE, THIS COURT SHOULD LIFT THE AUTOMATIC STAY (AGREEING WITH MOVANT'S POINTS V)

JDWC also joins in Movants alternative request to lift the automatic stay. Section 362(d)(1) provides, in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay— (1) for *cause* ....

11 U.S.C. § 362(d)(1) (emphasis added).

While 11 U.S.C. § 362(d)(1) states that the authority it provides—dismissal or relief from stay, respectively—may be granted for "cause," and lists one or more examples of cause, each precedes the list with the word "includes," and none of those lists is exhaustive. Cause, for either dismissal or relief from the stay, may be found based on unenumerated factors, including "bad faith," See, C–TC 9th Avenue Partnership v. Norton Co. (In re C–TC 9th Avenue Partnership), 113 F.3d 1304, 1313 (2d Cir.1997), or failure to deal with creditors fairly even where "bad faith" is not found. See, in re Kaplan Breslaw Ash LLC, 264 B.R. 309, 334 (Bankr.S.D.N.Y.2001) (Gerber, J.), and cases cited therein. See also, in re Hudgins, 188 B.R. 938, 946 (Bankr.E.D.Tex.1995) ("cause" under section 362(d)(1) is not limited to those situations where the property of a party lacks adequate protection; instead, "cause" "encompasses many different situations").

GIORDANO, HALLERAN & CIESLA
A Professional Corporation
ATTORNEYS-AT-LAW

Honorable Sean H. Lane, U.S.B.J.
October 17, 2023
Page 16

As Chief Judge Brozman noted in In re 234–6 West 22nd St. Corp., 214 B.R. 751 (Bankr.S.D.N.Y.1997) (wherein she granted relief from the stay, under section 362(d)(1), by reason of bad faith filing), "the standards for bad faith as evidence of cause," whether in the context of dismissal or relief from the stay, "are not substantively different from each other." Id. at 757; see also, in re Setzer, 47 B.R. 340, 344 (Bankr.E.D.N.Y.1985) ("[b]ad faith has frequently been held to provide sufficient cause to warrant both types of relief"). The Judge in 234-6 West 22nd St. cautioned, in this connection, that the concept of bad faith filing should be used sparingly to avoid denying bankruptcy relief to statutorily eligible debtors, except in extraordinary circumstances. 234–6 West 22nd St., 214 B.R. at 757. She then continued:

> [W]hen faced with a motion to lift the stay on bad faith grounds, a judge must conduct a careful analysis similar to that performed with a motion to dismiss a case on bad faith grounds. In both cases, the relief sought is an extraordinary remedy that requires careful examination of the facts on a case-by-case basis. But where the circumstances require such relief, and the cases granting both types of motions are legion, a judge must not shrink from ordering it.
>
> Id.

Here, the automatic stay should be lifted as the filing of the Chapter 11 Petition has no other purpose than to delay the sale of the Property to Rushmore Capital and delay the payment of monies to Ringel's personal creditors. The petition was filed in bad faith. Ringel is seeking a forum outside of the Chancery Court against the Rooker-Feldman doctrine. See Point I, supra. There have been numerous years spent litigating the matter and JDWC performing collection efforts. The Chancery Court has the authority to determine the priority of Ringel's creditors and address issues concerning the sale of the Pinewood Property. Ringel should not be permitted to

GIORDANO, HALLERAN & CIESLA
A Professional Corporation
ATTORNEYS-AT-LAW
Honorable Sean H. Lane, U.S.B.J.
October 17, 2023
Page 17

further delay the matter. JDWC would be prejudiced by any delay. It has waited for nearly eight (8) years for the satisfaction of its 2016 Judgment. Thus, this Court should lift the automatic stay.

## **CONCLUSION**

Based on the foregoing, JDWC respectfully joins Movants' motion to dismiss the Chapter 11 Petition pursuant to §1112 and §305. In the alternative, this court should lift the automatic stay.

Respectfully Submitted,

*/s/ Donald F. Campbell, Jr.*

DONALD F. CAMPBELL, JR., ESQ.

DFC/AHE

Cc: All noticing parties