**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
Tracy L. Klestadt
Brendan M. Scott
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone: (212) 972-3000
tklestadt@klestadt.com
bscott@klestadt.com

*Attorneys for Atalaya Asset Income Fund II LP*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
          :
In re:    : Chapter 11 Case
          :
          : Case No.: 23-22655 (SHL)
BCR PINEWOOD REALTY LLC,  :
          :
          :
        Debtor,  :
          :
------------------------------------------------------------------------x

## STATEMENT RELATED TO MOTION TO DISMISS CASE

Atalaya Asset Income Fund II LP ("Atalaya"), by and through its undersigned counsel, submits the following statement related to the motion of Chana Ringel and CR Lakewood LLC (collectively, the "Movants") for an order pursuant to section 1112 of the Bankruptcy Code dismissing this case (the "Motion"), and respectfully alleges as follows:

### STATEMENT

1. Atalaya has been litigating with Benjamin Ringel regarding a $10 million defaulted loan for more than eight (8) years. During this period, Ringel has been adept at blocking and frustrating Atalaya and other creditors from collecting on judgments and foreclosing on collateral by filing frivolous litigation, including frivolous bankruptcy petitions. Atalaya currently holds a judgment (entered in New York Supreme Court on October 2, 2020) against Benjamin Ringel

personally and his wife Yael totaling $5.2 million (including post judgment interest), and has served New York restraining notices and obtained charging orders and an injunction from New York Supreme Court Justice Joel Cohen freezing all of Ringel's assets, including the limited liability company through which Ringel holds his interest in the Debtor.

2. Ringel's bad faith conduct is undisputed and well established, including through two contempt orders issued by Justice Cohen. His misconduct during the past three years since the New York court entered judgment against him personally has included lying to the New York Court and to Atalaya concerning his sources of funds, failing to disclose his assets (including the existence of the Debtor and the impending sale of the Pinewood Property) and failing to produce critical documents. As found by Justice Cohen, he has also engaged in "gamesmanship" and has sought to play courts against each other.

3. Given the substantial history between the Ringels and Atalaya, Ringel's altruistic comment that he intends to pay back his creditors in full lacks any credibility, and his actions refute the assertion in his affidavit to this Court that "[t]he Debtor intends to assume the Rushmore Sale Agreement and effectuate the sale of the Property to maximize value for the benefit of the Debtor and all of its stakeholders." Declaration of Benjamin Ringel Pursuant to Local Bankruptcy Rule 1007-2, para. 27 [ECF Doc. No. 2]. For eight years, Ringel has refused to pay a nickel to Atalaya on the defaulted loan, and for three years he has refused to pay a nickel on the judgment against him personally. Moreover, (i) Ringel has repeatedly taken legal action to impede the sale of the Pinewood Property to the point that a special agent had to be appointed to sign documents because Ringel refused to do so, and (ii) Ringel failed to disclose his ownership in the Pinewood Property to Atalaya in the face of an Atalaya judgment and contempt orders.

4. Atalaya fully supports a prompt sale of the Pinewood Property. Atalaya, which

intervened in the New Jersey action pending before Judge Hodgson, had anticipated that the Pinewood Property would be sold this year as Ringel had exhausted all appeals. The Movants allege in their Motion that Rushmore Capital remains ready, willing and able to close on the sale of the Pinewood Property and suggest that a sale of the Pinewood Property (as defined in the Motion) could be effectuated quickly and more efficiently in New Jersey Chancery Court ("New Jersey Court") if this bankruptcy case is dismissed. Atalaya has no reason to question this position, and has no objection to the sale of the Pinewood Property to Rushmore Capital under the auspices of the New Jersey Court. However, whether the Pinewood Property is sold under the auspices of the New Jersey Court or a bankruptcy court, Ringel cannot have the ability to interfere with the sale. Atalaya thus reserves all of its rights, including to request the appointment of a Chapter 11 Trustee if the Court denies the motion to dismiss.

5. Atalaya submits this Statement to provide the Court with a more fulsome record of the prior proceedings between the interested parties and to provide necessary background regarding the dishonest and fraudulent conduct of Benjamin Ringel ("Ringel"), which would necessitate the appointment of a Chapter 11 trustee if this case is not dismissed.

**Atalaya's Tortured History with Ringel and its Turnover Motion.**

a. Atalaya's Judgment in New York Supreme Court and Collection Efforts.

6. In May 2015, Atalaya loaned approximately $10 million to an entity controlled by Ringel. Ringel's entity defaulted on the loan almost immediately by failing to make the first payment in full on June 1, 2015. Atalaya sent a Default Notice to the borrower, addressed to Ringel's attention, on June 3, 2015.

7. After the default, Atalaya sought to foreclose on the collateral for the loan, including a shopping center in New Jersey and a luxury mansion previously owned by Ringel

3

through a shell company in Sagaponack, New York (the "Sagaponack Property"). After delaying the foreclosure sale for years through frivolous litigation, on the eve of the foreclosure sale, Ringel caused the entity that owned the Sagaponack Property to file a bankruptcy petition.[1] After that bankruptcy case was dismissed, on the eve of the rescheduled foreclosure sale, in a further effort to stall the sale, Ringel filed another bankruptcy case in a different court, for an entity that was an affiliate of the debtor that owned the Sagaponack Property.[2] After that case was also dismissed, and the Sagaponack Property was ultimately sold, Ringel refused to vacate, necessitating his eviction by the Sherriff of Suffolk County, New York.

8. Ringel's tactical (and frivolous) bankruptcy filings seeking to block the sale of the Sagaponack Property is similar to Ringel's obvious strategy here with respect to the Pinewood Property.

9. In July 2019, Atalaya filed an action in the Supreme Court of the State of New York, New York County, entitled Atalaya Asset Income Fund II LP v. Benjamin Ringel et al., Index No. 654299/2019 (the "New York Action"), against the guarantors of Atalaya's loan: Ringel, Yael Ringel, and Ringel's companies, BCR Realty Investments II LLC and Sagg Main Inv LLC. The defendants defaulted, and on April 27, 2020, the New York Court issued an order granting judgment to Atalaya and awarding costs.

10. On October 2, 2020, the New York County Clerk entered Judgment in favor of Atalaya against the Ringels and BCR Realty Investments in the amount of $13,177,056.64 (the "Judgment"). A partial satisfaction of the Judgment reflecting the sale of the Sagaponack Property

---

[1] The referenced bankruptcy case, In re: 219 Sagg Main LLC, was filed in the United States Bankruptcy Court for the Southern District of New York, Chapter 11 Case No.: 19-20004-(RDD).

[2] The referenced bankruptcy case, In re: Sagg Main Inv LLC, was filed in the United States Bankruptcy Court for the Eastern District of New York: 20-70026 (REG).

4

was entered on October 26, 2020. The remaining amount due under the Judgment at that time was $4,177,056.64, together with post-judgment interest from October 2, 2020. Today, Atalaya's judgment totals approximately $5.2 million including post judgment interest.

11. After securing the Judgment, Atalaya took prompt action to identify and freeze the Ringels' assets. On October 28, 2020, Atalaya served Ringel and his wife, Yael Ringel, as well as BCR Realty Investments LLC with a restraining notice pursuant to CPLR 5222 (the "Restraining Notices").

12. Atalaya also served post-judgment information subpoenas pursuant to CPLR 5224, seeking disclosure of the Ringels' assets. The Ringels ignored these subpoenas, and Atalaya promptly moved to compel in February 2021. In response, Ringel moved to vacate the judgment; this motion was denied, and the Court granted Atalaya's motion to compel. Subsequently the Ringels provided misleading and untrue responses.

13. In July 2022, Atalaya moved for an order of contempt against Ringel and his wife in the New York Action. During the contempt hearing, the New York Court found that the Ringels' "unwillingness" to disclose information concerning their assets "**has led me to conclude that there is something going on here that is inappropriate in terms of hiding assets or hiding of information**." *See* Exhibit "A", Kaplan Affirmation, Ex. 23 at 21:3-11(emphasis added).[3]

14. During the hearing on Atalaya's first contempt motion, the New York Court admonished Ringel for "playing procedural games in a way that has led to wasting the time of two courts" in New York County and Suffolk County (where Atalaya's foreclosure action was pending). *See* Exhibit "A", Kaplan Affirmation, Ex. 7 at 39:3-4. The New York Court further

---

[3] All citations in this Statement are to the Affirmation of Howard Kaplan, dated October 20, 2023 ("Kaplan Affirmation"), which was submitted in support of Atalaya's Motion Seeking Turnover and Appointment of a Receiver that was filed in the New York Court on October 2, 2023, as discussed in paragraph 23 hereof. A copy of the Kaplan Affirmation with the exhibits thereto that are referenced herein is annexed hereto as Exhibit "A".

rebuked Ringel for his gamesmanship:

> [I]t seems pretty clear to me that a decision was made by the defendant here to try to play these two courts against each other . . . . [T]he defendant – used the existence of this case to try to get some tactical advantage in Suffolk and now is here, saying, essentially, that they weren't served properly, even though they were served at what had been their home and what [plaintiff] thought was their home. It all seems to me to be an enormous amount of gamesmanship. . . .

*Id*. at 38:9-20.

15. Atalaya's first contempt motion was granted, and the New York Court held Benjamin and Yael Ringel in civil contempt in an order dated August 18, 2022 (the "First Contempt Order"). *See* Exhibit "A", Kaplan Affirmation, Ex. 24. Among other things, the First Contempt Order included an injunction (the "Injunction") that prevents Ringel and his wife from dissipating any assets held by (i) themselves, (ii) any companies that they control, and (iii) any trusts as to which they or their children are trustees or beneficiaries, including certain sham trusts that Ringel purportedly set up for the benefit of his children, which hold 80% of the interests in BR Lakewood (the "Ringel Childrens' Trust") *See Exhibit "A", Kaplan Affirmation, Id*. at 1-2.

16. In September 2022, Atalaya notified the New York Court of the Ringels' failure to comply with the First Contempt Order and requested leave to make an application to incarcerate Ringel. *See* Exhibit "A", Kaplan Affirmation, Ex. 25.

17. In November 2022, Atalaya filed an application in the New York Action seeking a warrant for Ringel's arrest and incarceration and other relief.

18. A hearing on Atalaya's motion for an arrest warrant was held on January 17, 2023. Ringel appeared *pro se*. Ringel claimed he was not intentionally withholding any documents and promised the Court that "I will look for everything in the next two and a half weeks. That's all. I'll just get it done by the end of February . . . ." *See* Exhibit "A", Kaplan Affirmation, Ex. 35 at 42:15-17. Based in part on Ringel's representations, the Court did not issue an arrest warrant at

6

that time and gave Ringel one final chance before issuing further sanctions. *See id*. 62:12-13, 65:3-13.

19. The Court issued a second contempt order against Ringel on March 28, 2023 (the "Second Contempt Order"). *See* Exhibit "A", Kaplan Affirmation, Ex. 36.

20. Rather than collecting the necessary documents to purge the contempt, Ringel's new lawyers engaged in more gamesmanship by filing another motion to vacate the Judgment, this time in the original Suffolk County foreclosure action, and moved to stay the New York Action. Both of these motions have since been denied. *See* Exhibit "A", Kaplan Affirmation, Exs. 37-38.

21. To this day, Ringel has not purged his contempt.

22. Notwithstanding several Court orders, for the last three (3) years, Ringel has willfully attempted to conceal his assets by making repeated misrepresentations in discovery responses and testimony, failing to produce relevant documents, and causing his wife to lie about his assets. Moreover, he continues to violate the Restraining Notices and contempt orders issued by the New York Court. Ringel has been held in contempt ***twice*** by Judge Joel M. Cohen and threatened with incarceration by the New York Court, first as the result of his willful failure to respond to information subpoenas, and then as the result of his efforts to conceal assets by failing to produce relevant documents and information.

    b. Atalaya Discovers the Chana Ringel and JDWC Actions Against Ringel in New Jersey.

23. Ringel concealed from Atalaya (i) the impending sale of the Pinewood Property and (ii) the existence of litigation related to the Pinewood Property, despite Atalaya's duly served information subpoenas and despite the New York State Court's contempt orders. This was a material omission related to assets that could easily satisfy Atalaya's Judgment.

24. Atalaya only discovered the pending sale of the Pinewood Property and the

7

litigation between Benjamim Ringel and his sister Chana Ringel in the New Jersey Chancery Court (the "New Jersey Action")(as discussed in more detail in the Motion) through its own investigation. Specifically, Atalaya learned of the planned sale of the Pinewood Property in early November 2022, when it discovered the New Jersey Appellate Division decision dated October 20, 2022 issued in two related actions, *Chana Ringel et al. v. BR Lakewood, LLC et al.*, No. OCN-C-127-15 and *Chana Ringel et al. v. Benjamin Ringel et al.*, No. OCN-C-152-16.

25. Ringel did not inform the New Jersey Court that his assets are subject to Atalaya's Restraining Notices and the New York Court's Injunction. In sum, Ringel intentionally concealed relevant facts from ***both courts*** to create confusion and inconsistency between court proceedings, all of which has served to prevent Atalaya and other creditors from being paid under valid judgments.

26. Upon learning of the New Jersey Action, Atalaya notified all the parties of its Restraining Notices and the New York Court's injunction, and intervened in the New Jersey Action.

    c. Atalaya Obtains a Charging Order Against BR Lakewood and Other Entities.

27. On January 10, 2023, Atalaya filed a motion in the New York Action for an order charging the Ringels' interests in various of their limited liability companies (the "Ringel LLCs") with satisfaction of the outstanding amount of Atalaya's Judgment pursuant to N.Y. Limited Liability Company Law § 607. *See* Exhibit "A", Kaplan Affirmation*,* Exs. 44-45. Atalaya's motion also sought a charging order against the interests held by certain sham trusts in the Ringel LLCs, including BR Lakewood. *See* Exhibit "A"*,* Kaplan Affirmation, Ex. 45 at 1-2 & Ex. A. The Ringels did not answer or otherwise oppose the motion. *See* Exhibit "A", Kaplan Affirmation, Ex. 46.

8

28. At the January 17, 2023 hearing on the second contempt motion, the Court explained the consequences of a charging order to Ringel:

> And I think it's important for Mr. Ringel to know that [the] charging motion, which is right behind this one, means that if I conclude, based on the merits, that some of these other entities, including the Children's Trusts . . . are on the hook for this judgment, then . . . these fines that will start building up, will ultimately have to be satisfied either out of Mr. Ringel's funds, or any other entities, including the trust, that can be found.

*See* Exhibit "A", Kaplan Affirmation, Ex. 35 at 55:11-19.

29. The Court was also skeptical of Ringel's claim that there are only a handful of documents regarding the Ringel Childrens' Trust that he purportedly set up for his children which allegedly hold 80% of the interests in BR Lakewood, saying, "the story of a trust with millions of dollars in it is not a couple of documents. There's got to be more than that." *Id*. at 27:17-20. "[Y]our companies, and your trusts . . . whatever it is that is funding a lifestyle that does not candidly strike me as one of penury at this point, **there's something missing in this story** . . .[w]e are ultimately going to figure it out. And the judgment is just going to keep getting bigger and bigger the longer this takes. And the fines are going to start piling up, so I'm imploring you…[to] pull out all the stops….You know, **you've got a credibility gap to make up**." *Id*. at 63:5-20 (emphasis added).

30. The New York Court granted Atalaya's motion for a charging order in its entirety by order dated March 8, 2023 against all 38 of the entities identified in the motion (the "Charging Order"). *See Exhibit "A", Kaplan Affirmation,* Exs. 46-47. The Charging Order requires BR Lakewood to pay to Atalaya any distributions arising from the membership interests of Ringel, or the sham trusts (which Ringel calls the "Childrens' Trusts"), until Atalaya's Judgment is satisfied in full. The Ringels did not appeal the Charging Order, and their time to file a notice of appeal has expired.

31. Several other creditors obtained charging orders from the New Jersey Court against Ringel's direct interest in BR Lakewood, and attacked Ringel's transfers to the sham Ringel Childrens' Trust as fraudulent conveyances.

   d. <u>Ringel Blocks the Pinewood Property Sale by Refusing to Satisfy Outstanding Judgments</u>

32. From Atalaya's perspective, Ringel is solely responsible for preventing the sale of the Pinewood Property to Rushmore Capital. Ringel's behavior is squarely inconsistent with Ringel's filings with this Court. If, as Ringel states, the purpose of the bankruptcy petition is to satisfy his creditors or the creditors of the Debtor, all Ringel had to do in this regard was agree to close on the sale to Rushmore Capital in New Jersey Court.

33. Ringel had previously put in a bid to purchase the Pinewood Property, but lost to Rushmore. His attempt to overturn the bidding process was rejected by the New Jersey appellate court. It appears that his motivation in filing this bankruptcy (despite what he says in his affidavit) is to take another run at stopping the sale to Rushmore and acquiring the property himself, perhaps at a reduced price. Indeed, at paragraph 11 of his Declaration in Support of the Debtor's Opposition to the Motion, Ringel indicates that BR Lakewood made a fully financed offer to purchase the Pinewood Property as recently as August 2023. [ECF Doc. No. 44]

34. Atalaya notes that Ringel's offer to purchase the Pinewood Property through BR Lakewood violates the New York Court's Injunction, which, as noted above, prohibits Ringel and his wife from dissipating any assets held by (i) themselves, (ii) any companies that they control, including without limitation, BR Lakewood, and (iii) any trusts as to which they or their children are trustees or beneficiaries. Moreover, any payment by Ringel would violate Atalaya's Restraining Notice and the New York Court's injunction.

35. Given his past efforts to protect his assets from creditors through fraud and

dishonest conduct, all of which are indisputable[4], it is clear that Ringel has no intent to sell the Pinewood Property for the highest and best offer in order to distribute assets to his creditors. He has and will lie to courts and to his creditors, he has and will conceal information and will file any frivolous litigation that suits his purpose. Ringel is now playing three courts against each other – the New York Court, the New Jersey Court, and this Court.

    e. <u>Atalaya's Turnover Petition</u>

36. Due to Ringel's continuing fraudulent efforts to frustrate Atalaya's efforts to collect, on October 20, 2023, Atalaya filed a Motion Seeking Turnover Order and Appointment of Receiver in the New York Action by Order to Show Cause (the "<u>Turnover Motion</u>")[5], seeking a turnover of the interests of Ringel and Ringel Childrens' Trust so that Benjamin Ringel will no longer have any authority to interfere with the administration of the Debtor's assets. If the Turnover Motion is granted, Atalaya would control one hundred percent (100%) of BR Lakewood, and thus control 50% of the Debtor's membership interests. Ringel would be ousted from control.

    f. <u>If the Court Determines to Deny the Motion, It Should Appoint a Chapter 11 Trustee Sua Sponte</u>

37. To the extent the Court denies the Motion, Atalaya urges the Court exercise its authority under 11 U.S.C. §§ 105 and 1104 to appoint a Chapter 11 trustee for cause *sua sponte*. It is quite clear that Ringel cannot be trusted to administer the Debtor's assets in the best interests of the Debtor and its creditors based upon his fraudulent conduct.

38. Ringel has proven himself time and time again to be dishonest and willing to engage in whatever fraudulent conduct is required to avoid paying his creditors. His creditors and the

---

[4] This Statement contains only a summary of Benjamin Ringel's deceitful conduct. There are many more instances of such contact. In the interests of brevity, Atalaya chose to include only a summary of some of his most egregious conduct.

[5] A complete copy of Atalaya's Memorandum of Law in Support of the Turnover Action is annexed hereto as Exhibit "B."

parties-in-interest in this case have no faith that he will ever do what is in the best interests of anyone but himself. As detailed in the Motion, Ringel's creditors went to great lengths in state court and were successful in having Ringel removed from control over the Pinewood Property prior to the filing of this case. Allowing him to exert control over the Debtor now will undoubtedly lead to additional motion practice and more litigation before this Court, which will further delay the sale of the Pinewood Property, which is the exact scenario that Ringel desires.

39. Atalaya hereby reserves all of its rights.

Dated: New York, New York
October 26, 2023

                        **KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**

                        By: */s/ Tracy L. Klestadt*
                            Tracy L. Klestadt
                            Brendan M. Scott
                        200 West 41st Street, 17th Floor
                        New York, New York 10036
                        Telephone: (212) 972-3000
                        tklestadt@klestadt.com
                        bscott@klestadt.com

                        *Attorneys for Atalaya Asset Income Fund II LP*