UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| BCR PINEWOOD REALTY LLC, | Case No. 23-22655 (SHL) |
| Debtor. | |

**REPLY MEMORANDUM OF CHANA RINGEL AND CR LAKEWOOD LLC
IN FURTHER SUPPORT OF MOTION TO DISMISS OR
<u>TO LIFT THE AUTOMATIC STAY</u>**

KOFFSKY SCHWALB LLC
Efrem Schwalb
Bruce Weiner
Tal S. Benschar
500 Seventh Avenue, 8th Floor
New York, NY 10018
646.553.1590

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................................. 1

ARGUMENT ........................................................................................................................... 2

    I.    The Filing Was Unauthorized ......................................................................... 2

       A.   Lack of Authorization Mandates Dismissal ................................................ 2

       B.   The Chancery Court Order Divested Mr. Ringel Of Authority ...................... 2

       C.   Mr. Ringel Also Lacked Authority Under the Operating Agreement............... 4

       D.   Courts Have Upheld Blocking Provisions By Equity Owners......................... 6

       E.   Chana Ringel Is Not A Creditor of Debtor .................................................. 8

    II.   The Petition Was Filed In Bad Faith ............................................................. 10

       A.   Ben Ringel Does Not Dispute The Bad Faith Factors ................................. 10

       B.   The Filing Was Also Done To Forum Shop And Revisit Adverse Rulings By The New Jersey Courts.................................................................................................... 10

       C.   Mr. Ringel's Submissions Contain Numerous Misrepresentations............... 13

    III.  The Bankruptcy Process Is Not In The Interest Of Debtor, The Creditors,  Or The Equity Owners.................................................................................................... 15

    IV.  Alternatively, The Automatic Stay Should Be Lifted To Allow The Sale Process To Proceed Under Chancery Court Supervision ......................................................... 17

CONCLUSION..................................................................................................... 18

**Cases**

*Hager v. Gibson*, 108 F.3d 35, 39 (4th Cir. 1997)................................................................ 2

*In re 3P Hightstown, LLC*, 631 B.R. 205, 211-14 (Bankr. D.N.J. 2021) .................................. 7, 8

*In re 477 West 142nd Street Housing Dev. Fund Corp.*, 2022 WL 2093418, at *10 (S.D.N.Y. 2022)............................................................................................................................ 2

*In re Coinmint, LLC*, 261 A.3d 867, 889 (Del. Ch. 2021) ............................................... 6

*In re Corporate & Leisure Event Prods.*, Inc., 351 B.R. 724 (Bankr. D. Ariz. 2006) .................. 3

*In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1311 (2d Cir. 1997) .................................... 10

*In re D & W Ltd., LLC*, 467 B.R. 427, 431 (Bankr. E.D. Mich. 2012) ......................................... 5

*In re DB Cap. Holdings, LLC*, 463 B.R. 142, *5 (10th Cir. BAP 2010)...................................... 5

*In re Feldman*, 597 B.R. 448, 460 (Bankr. E.D.N.Y. 2019), *aff'd sub nom. Glassman v. Feldman*, 2020 WL 6119270 (E.D.N.Y. 2020)..........................................................................11

*In re Franchise Servs. of N. Am., Inc.,* 891 F.3d 198, 207 (5th Cir. 2018) ................................ 5, 7

*In re Generation Zero Grp., Inc.*, 2021 WL 267812, at *1 (Bankr. W.D.N.C. 2021).................... 5

*In re Intervention Energy Holdings, LLC*, 553 B.R. 258, 265 (Bankr. D. Del. 2016) ................... 7

*In re MacInnis*, 235 B.R. 255, 262 (S.D.N.Y. 1998)................................................................ 13

*In re Pasta Bar By Scotto II, LLC,* 2015 WL 7307246, at *3 (Bankr. S.D.N.Y. 2015) .............. 5, 6

*In re Quad–C Funding LLC*, 496 B.R. 135, 141 (Bankr. S.D.N.Y. 2013).................................. 6, 7

*In re Reyes*, 2015 WL 4624156, at *5 (Bankr. S.D.N.Y. 2015) .................................................. 10

*In re SB Properties, Inc.*, 185 B.R. 198, 206 (E.D. Pa. 1995) ......................................................11

*In re Sino Clean Energy, Inc.*, 901 F.3d 1139 (9th Cir. 2018)................................................. 3

*In re Squire Court Partners L.P.*, 574 B.R. 701, 706-07 (E.D.Ark. 2017) ................................... 7

*Price v. Gurney*, 324 U.S. 100, 106 (1945)..................................................... 1, 5, 6, 10

*Total Recall Technologies v. Luckey,* 2017 WL 930788, at *5  (N.D. Cal. 2017)......................... 5

**Statutes**

Del. Code. § 18-1101 ................................................................................................................ 6

Del. Code. § 18-402 ................................................................................................................. 6

**Other Authorities**

*In re AC 1 Manahawkin LLC*, No. 14-22791 (RDD) (Bankr. S.D.N.Y. June 30, 2014)................. 8

*In re Pace Indus. LLC*, Case No. 20-10927 (MFW) (Bankr. D. Del. May 5, 2020)....................... 8

Chana Ringel ("Chana") and CR Lakewood LLC (collectively "Movants") submit this reply memorandum in further support of their motion to dismiss the Petition under section 1112 of the Bankruptcy Code, and respectfully represent as follows:

## PRELIMINARY STATEMENT

1.     Nothing in Debtor's Opposition undermines the conclusion that the instant bankruptcy petition was filed both without authorization and in bad faith, and must be dismissed.

2.     Where there is no authorization, the Court lacks jurisdiction, and has no discretion; dismissal is mandatory as a matter of law.  No less authority than the United States Supreme Court has so stated:  "If the District Court finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition."  *Price v. Gurney*, 324 U.S. 100, 106 (1945).   As further demonstrated below, that is the case here and the Court should dismiss the case.

3.     Furthermore, the Opposition makes clear that this Petition was filed in bad faith, for forum shopping reasons, to avoid a venue that has repeatedly ruled adversely to Mr. Ringel.

4.     And, the bankruptcy process is against the interests of the Debtor, the creditors and the equity owners.  The process will  cause significant delays, endanger Debtor, and result in the Debtor expending $1 million and more in wasteful  legal fees to achieve a result that can as easily be obtained in the New Jersey Chancery court: sale of Debtor's sole asset, the Pinewood Property, and distribution of half the net proceeds to Ben Ringel's creditors.  Chana Ringel objects to this waste of Debtor's assets – half of which will be from her pocket, as she is a 50% equity owner.

<u>**ARGUMENT**</u>

**I.**      <u>**The Filing Was Unauthorized**</u>

     **A.**      <u>**Lack of Authorization Mandates Dismissal**</u>

5.      Contrary to Debtor's opposition, because Mr. Ringel was not authorized to file the Petition, the Court has no discretion and must dismiss the case. "[W]here a voluntary petition for bankruptcy is filed on behalf of a corporation, the bankruptcy court does not acquire jurisdiction unless those purporting to act for the corporation have authority under local law 'to institute the proceedings.'" *Hager v. Gibson*, 108 F.3d 35, 39 (4th Cir. 1997); *In re 477 West 142nd Street Housing Dev. Fund Corp.*, 2022 WL 2093418, at *10 (S.D.N.Y. 2022). As quoted above from *Price,* in such circumstance "the court has no alternative but to dismiss the petition." *Hager*, 108 F.3d at 39. The cases cited by Debtor to the effect that the Court has discretion whether to dismiss all deal with motions to dismiss on other bases, such as a bad faith filing. There is no authority that grants the Court discretion to retain a petition filed without authorization; such a requirement is jurisdictional. If the Court finds lack of authority, dismissal is mandatory.

     **B.**      <u>**The Chancery Court Order Divested Mr. Ringel Of Authority**</u>

6.      The New Jersey Chancery Court order (Motion Exh. 2, Dkt. 8-2) enjoined Mr. Ringel from acting as a co-manager over Debtor and its parent, BCR Lakewood Holdings LLC. As demonstrated in Movants' initial motion, that order is valid, remains in place, and divested Mr. Ringel of any managerial authority over Debtor and its parent. (Dkt. 8-1, ¶¶ 38-43). Mr. Ringel does not dispute any of these points.

7.      Instead, he cites a series of cases, most of which merely hold that the appointment of a receiver does not divest the company from authority to file a bankruptcy petition. (*See* Dkt. 43, ¶¶ 31-32). But those cases are irrelevant. Movants do not rest their lack-of-authority argument on the fact that Affiliated Management was appointed Special Fiscal Agent, but on the undisputed

2

facts that (a) Ben Ringel was removed by the Chancery Court from acting as a co-manager; and (b) even if he had not been enjoined from acting as a co-manager, the Operating Agreement clearly provides the he could not act unilaterally without Chana Ringel. Accordingly, for two independent reasons, the filing was unauthorized.

8.　　Mr. Ringel cites one District of Arizona bankruptcy case, *In re Corporate & Leisure Event Prods.*, Inc., 351 B.R. 724 (Bankr. D. Ariz. 2006) for the proposition that even where a state court enjoins a party from management, that party can still file for bankruptcy. Incredibly, he fails to alert this Court that the case was abrogated by the Ninth Circuit in *In re Sino Clean Energy, Inc.*, 901 F.3d 1139 (9th Cir. 2018). The Ninth Circuit expressly held that directors who had been removed by a state court order lacked authority to authorize a bankruptcy petition, and expressly disavowed the holding in *Corporate & Leisure Event Prods*. relied upon by Mr. Ringel. *Id.* at 1141-42. *Sino Clean Energy* is directly on point, *i.e.*, the Chancery court removed Mr. Ringel from management, and he lacked authority to authorize the petition.

9.　　Moreover, even if the Arizona Bankruptcy Court case was not expressly abrogated, what that case actually states is that "[i]t makes no difference whether the corporate officers and directors were actually removed by the receiver or the receivership order merely enjoins their interference or filing of a petition." That is clearly a different situation because it involved a scenario where the entire management of the company was removed. Here, in contrast, the Chancery Court order only removed management authority from the "Defendants" meaning Ben Ringel and BR Lakewood. Chana Ringel remains a manager and would be authorized to file a bankruptcy petition.[1]

---

[1]　　Mr. Ringel claims that Movants contend that "only Affiliated could file a Chapter 11 case." (Opposition ¶ 7). That claim is false. The moving papers make no such claim. Movants maintain that Chana Ringel retained managerial authority over Debtor and its parent. However, the issue

### C.     **Mr. Ringel Also Lacked Authority Under the Operating Agreement**

10.    Mr. Ringel does not dispute that Debtor's Operating Agreement recites that its parent, BCR Lakewood is the manager of Debtor, and that Ben and Chana Ringel are co-managers of the parent (if Mr. Ringel had not been removed by the Chancery Court). The Operating Agreement expressly states that both of their consents are required for any decision:

> The Members hereby elect and appoint Benjamin Ringel and Chana Ringel as the initial Managers of the Company. **Any decision, action, consent or approval of the initial Managers under this Agreement shall require all of the initial Managers <u>acting jointly</u>.**

(Ringel Decl. Exh. B ¶ 5.1(a), Dkt. 2)

11.    However, he asserts that this provision constitutes a "blocking right" which he claims is void as against public policy. That argument is frivolous. All of the authorities cited by Mr. Ringel concern clauses, generally in a creditors' contract, which specifically grant a veto power to some party over a bankruptcy filing.

12.    The quoted provision at issue is no such thing – it does not even *mention* bankruptcy. It simply provides for joint management of the company by Ben and Chana Ringel, not surprising since each, in effect, own 50% of the company. The decision as to whether to file a petition is one of myriad possible decisions that fall under its terms. Without Chana Ringel's consent, any authorization of the voluntary petition is and was void as a matter of law. *See, e.g., In re DB Cap. Holdings, LLC*, 463 B.R. 142, *5 (10th Cir. BAP 2010) (Where LLC Operating Agreement did not authorize Manager to authorize bankruptcy petition, the filing was filed without authorization and had to be dismissed); *In re Generation Zero Grp., Inc.*, 2021 WL 267812, at *1

---

before the Court is Ben's lack of authorization, not Affiliated's authority (who did not authorize anything). The only authorization for the filing of the Petition was from Benjamin Ringel, and he clearly lacked authority, so the Petition should be dismissed.

(Bankr. W.D.N.C. 2021) (Where LLC operating agreement vested management in Directors of company, petition filed under authorization of LLC president was filed without authority, and petition was dismissed); *In re Pasta Bar By Scotto II, LLC,* 2015 WL 7307246, at *3 (Bankr. S.D.N.Y. 2015) (terms of LLC operating agreement controlled who could authorize a bankruptcy filing); *Total Recall Technologies v. Luckey,* 2017 WL 930788, at *5 (N.D. Cal. 2017) (partnership agreement that required consent of both partners meant that filing was unauthorized where only one consented); *In re D & W Ltd., LLC*, 467 B.R. 427, 431 (Bankr. E.D. Mich. 2012) (where members of LLC had amended the operating agreement to grant all management rights to a third party, their authorization of a later bankruptcy petition was void and petition was dismissed for lack of authority).

13.   What Mr. Ringel is asking this Court to do is rewrite the Operating Agreement to deprive a 50% equity owner of her managerial rights agreed-to when the company was formed. That is beyond this Court's power:

> The power of the court to shift the management of a corporation from one group to another, to settle intracorporate disputes, and to adjust intracorporate claims is strictly limited to those situations where a petition has been approved.   . . . [N]owhere is there any indication that Congress bestowed on the bankruptcy court jurisdiction to determine that those who in fact do not have the authority to speak for the corporation as a matter of local law are entitled to be given such authority and therefore should be empowered to file a petition on behalf of the corporation.

*Price v. Gurney*, 324 U.S. at 106–07.  *See In re Franchise Servs. of N. Am., Inc.,* 891 F.3d 198, 207 (5th Cir. 2018).  This is so even if it is asserted that the opposition to a bankruptcy filing by a person with authority is a breach of fiduciary duty to the Debtor.  *In re Pasta Bar By Scotto II, LLC,* 2015 WL 7307246, at *3 (Bankr. S.D.N.Y. 2015) ("The Debtor's argument that Torkian breached his fiduciary duty by failing to authorize the bankruptcy filing cannot save the Debtor's bankruptcy petition from dismissal.")

14. Here, if Ben had not committed misconduct leading to the Chancery Court enjoining him from acting as a manager, the relevant Operating Agreement still makes clear that all management decisions are vested in both Ben and Chana Ringel. Both Debtor and its parent are limited liability companies organized under Delaware law, which broadly validates operating agreements, including with regards to setting management authority over the company. *See* Del. Code. §§ 18-402 and 18-1101(b); *In re Coinmint, LLC*, 261 A.3d 867, 889 (Del. Ch. 2021).

15. Since *Price v. Gurney*, it has been clear that it is state law which governs authority to file a bankruptcy petition. *In re Quad–C Funding LLC*, 496 B.R. 135, 141 (Bankr. S.D.N.Y. 2013). The provisions of the Operating Agreement, which the equity owners agreed to at the inception of Debtor, should be honored.

16. In short, the line of cases dealing with so-called "blocking rights" have no application here, because those deal with provisions specifically concerning decisions bankruptcy, not provisions governing general management of the company. Mr. Ringel has not cited a single case that holds otherwise. He agreed long ago that Chana Ringel would have equal management rights in Debtor and its parent. Nothing he has submitted permits him to change that arrangement. And , in this instance, he has no management rights because he was removed as a co-manager for his misconduct.

### D. Courts Have Upheld Blocking Provisions By Equity Owners

17. Even if the cited provision of the Operating Agreement were to be construed as a "blocking right" – and it is not – most courts uphold such provisions where they are granted to *bona fide* equity owners, as opposed to mere creditors, and even if the equity owner  also happens to be a creditor of the company. *See In re Franchise Servs. of North America, Inc,.* 891 F.3d 198, 208 (5th Cir. 2018) ("[B]ankruptcy law does not prevent a bona fide equity holder from exercising

its voting rights to prevent the corporation from filing a voluntary bankruptcy petition just because it also holds a debt owed by the corporation and owes no fiduciary duty to the corporation or its fellow shareholders."); *In re Squire Court Partners L.P.*, 574 B.R. 701, 706-07 (E.D.Ark. 2017); *In re 3P Hightstown, LLC*, 631 B.R. 205, 211-14 (Bankr. D.N.J. 2021).

18.     As the Fifth Circuit aptly stated: "It is one thing to look past corporate governance documents and the structure of a corporation when a creditor has negotiated authority to veto a debtor's decision to file a bankruptcy petition; it is quite another to ignore those documents when the owners retain for themselves the decision whether to file bankruptcy." *Franchise Servs.*, 891 F.3d at 208.

19.     The authorities relied upon by Mr. Ringel are not to the contrary. *In re Intervention Energy Holdings, LLC*, 553 B.R. 258, 265 (Bankr. D. Del. 2016) involved a creditor, not an equity holder.

20.     *In re Quad-C Funding LLC*, 496 B.R. 135, 141, 143–44 (Bankr. S.D.N.Y. 2013) dealt with a situation where a minority member of an LLC claimed that certain shares had been issued without authority, and hence the bankruptcy filing was unauthorized. *See id.* ("There is no question that Debtor is and has been controlled by the current management and that the filing is not the usurpation of authority by minority equity holders. There is similarly no issue that there was a board resolution adopted by at least 63.5% of the individuals and entities who have held membership interests since 2010. The validity of the issuance of the new membership units has been argued before the State Court, which rejected Crossroads' arguments on its motion for a preliminary injunction and found that Crossroads had not shown a substantial likelihood of success on the merits on this issue.").

21.     Ben Ringel cites Hr'g Tr. at 20:2–6, 15:20, *In re AC 1 Manahawkin LLC*, No. 14-22791 (RDD) (Bankr. S.D.N.Y. June 30, 2014) (Dkt. No. 28), but that decision is miscited by Mr. Ringel.  In ruling on a motion to dismiss, Judge Drain nowhere held that issues of fiduciary duty could authorize what was not authorized.  Rather, he held that there were issues of fact on the issue of authorization which required an evidentiary hearing (and discovery), which had not yet been held.  (*Id.* at 14:21 to 15:5)  The denial was without prejudice to renewal after discovery and an evidentiary hearing.  (*Id.*)  There are no issues of fact in this instance.

22.     Ringel cites Hr'g Tr. at 38:11–13, *In re Pace Indus. LLC*, Case No. 20-10927 (MFW) (Bankr. D. Del. May 5, 2020) (Dkt. No. 148), which is the only decision holding that a blocking right by an equity holder who is not also a creditor is void as against public policy.  But, as the court in *In re 3P Hightstown, LLC*, 631 B.R. 205, 212-13 (Bankr. D.N.J. 2021) explained, that decision was "bottomed on the narrow, specific facts of the case before [that court]."

23.     The majority of courts hold that a *bona fide* equity holder may be granted a blocking right, and nothing in federal bankruptcy law pre-empts that.  Moreover, as shown above, the blocking right law is inapplicable to the provision at issue here, which governs authority to manage the Debtor generally.

### E.     Chana Ringel Is Not A Creditor of Debtor

24.     Part of Mr. Ringel's argument is premised on the notion that Chana Ringel is a creditor of Debtor.  That is simply false.  As Movants demonstrated in their initial motion papers, the mere fact that she and other creditors hold a charging order does not render her a creditor, since all that does is require Debtor to pay any distributions owed to Ben Ringel or BR Lakewood to her.  (Dkt. 8-1 ¶¶ 66-68)  Mr. Ringel does not dispute this point.

25.     Rather, he points to the parties' settlement agreement, which he claims provides that after the property owned by Debtor is sold, Movants will receive the amount of the arbitration award from his and BR Lakewood's 50% portion of the net proceeds.  (B. Ringel Decl. ¶¶ 10, 25, Dkt. 44)

26.     But the Settlement Agreement provides for no such thing.  The statements by Mr. Ringel in his declaration to that effect are yet another deliberate fabrication by him to this Court.

27.     The Settlement Agreement merely provides for an escrow ***in the event that the sale of the Pinewood Property precedes the arbitration award***.  (Dkt. 44-2, ¶¶ 2, 6)  That contingency did not occur, as Mr. Ringel admits.  (Dkt. 44, ¶ 27).  There will be no escrow, period.

28.     And even if there were an escrow of the BR Lakewood and Ben Ringel's proceeds of the Pinewood sale, that does not make Chana Ringel a creditor of BCR Pinewood.  She remains a creditor of BR Lakewood and Ben Ringel, not Debtor.  The contemplated escrow concerned distribution of proceeds otherwise due to BR Lakewood and Ben Ringel.

29.     When the Pinewood Property is sold, she will be entitled to collect from their portion of the net proceeds.  She is not, and has never claimed to be, a creditor of Debtor, and the claims that she has so claimed are a deliberate fabrication (and would be irrelevant to her managerial authority in any event).[2].

30.     To summarize: the filing of the bankruptcy petition here was unauthorized for two independent reasons:  the Chancery Court order, and the Operating Agreement.  Under these

---

[2]     Ben Ringel charges "[u]pon information and belief, [that] Chana has a preexisting financial relationship with Rushmore."  That assertion is false, and was previously rejected by the Chancery Court.  He made the same claim about the court-appointed broker who marketed the property at his request, until he lost the bidding for the Pinewood property.

circumstances, "the court has no alternative but to dismiss the petition." *Price v. Gurney*, 324 U.S. at 106.

## II.    The Petition Was Filed In Bad Faith

31.    Apart from lack of authorization, there are numerous indications that the case was filed in bad faith.

### A.    Ben Ringel Does Not Dispute The Bad Faith Factors

32.    In Movants' opening papers, we noted several factors which evidence bad faith as per *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1311 (2d Cir. 1997).  Among the *C-TC* factors present here are:  the debtor has only one asset; it has no creditors, apart from one secured creditor, the bank which holds a mortgage on the property; the real dispute here is between Benjamin Ringel and his many creditors (including Chana Ringel), who are seeking to escrow his share of the proceeds to pay off their judgments; the timing of the filing, on the eve of when the Chancery Court was scheduled to consider the various creditor motions evidences an intent to hinder that process.  (Dkt. 8-1, ¶ 56).  Ringel nowhere disputes any of these points, conceding that numerous factors point to the filing being done in bad faith.

33.    Indeed, he does not dispute that the case was filed as a litigation tactic to stall the sale of the Pinewood Property by the Chancery Court.  (*Id.* ¶ 60).  That also weighs heavily in favor of dismissal as a bad faith filing.  *In re Reyes*, 2015 WL 4624156, at *5 (Bankr. S.D.N.Y. 2015).

### B.    The Filing Was Also Done To Forum Shop And Revisit Adverse Rulings By The New Jersey Courts

34.    It is well established that the filing of a petition as a means of forum shopping to avoid unfavorable proceedings in other courts also evidences bad faith.  *In re SB Properties, Inc.*,

185 B.R. 198, 206 (E.D. Pa. 1995); *In re Feldman*, 597 B.R. 448, 460 (Bankr. E.D.N.Y. 2019),

*aff'd sub nom. Glassman v. Feldman*, 2020 WL 6119270 (E.D.N.Y. 2020).

35.     That is clearly the case here.  As detailed in our initial papers, the New Jersey courts

have consistently rejected every attempt by Mr. Ringel to derail the sales process:

- The New Jersey Chancery Court and then the Appellate Court rejected his attempt to force the dispute between him and Chana Ringel to arbitration.  (Dkt. 8-1, Appendix, ¶¶ 6-7)

- After the Chancery Court enforced the settlement agreement, Mr. Ringel attempted to amend the terms, which the court rejected.  (*Id.*  ¶¶ 11-13)

- He then again tried to amend the terms on a motion for reconsideration, which was again rejected.  (*Id.* ¶ 15)

- The Court rejected Ben's proposal of JLL as the property broker in favor of Gebroe Hammer which he then agreed to.  But he later sought to remove that same broker, arguing a "conflict of interest."  Those arguments were rejected by the Chancery Court and Appellate Court.  (*Id.*  ¶¶ 30-31)

- The broker conducted a sealed-bid process in which Rushmore Capital was the highest bidder.  But Mr. Ringel immediately challenged that, claiming that his third highest bid was the highest.  The Chancery Court rejected that position, which ruling was later affirmed by the Appellate Court.  (*Id.*  ¶¶ 32-35, 38-40)

- Ben Ringel then refused to sign the sales contract, requiring the Chancery Court to order him to do so, which he still refused to do, leading to the appointment of a Special Agent to sign on his behalf.  Even though the Appellate Court had confirmed that

Rushmore was the highest bidder, Ben Ringel still appealed the order requiring him to sign the contract, which appeal was once again rejected.  (*Id.*  ¶¶ 35-38, 40).

- And, as noted, the instant Petition was filed just one day before the Chancery Court was due to hear various motions related to the distribution of funds from the Pinewood sale.  (*Id.*  ¶¶ 42-47)

36.    Mr. Ringel clearly seeks to avoid a forum that has rejected his many attempts to derail the sale of the Pinewood property.  And, his Opposition papers make clear that he intends to use this Court to revisit many of the adverse rulings against him by the New Jersey courts.  For example, he once again argues that his bid was actually the higher one because of certain tax savings (Dkt. 44-1, ¶ 12), a position twice rejected in New Jersey.  Or, he states that he is engaging JLL as a broker to solicit new bids for the Property (*Id.* ¶ 21), again positions rejected in New Jersey.

37.    Further, Mr. Ringel's seeking of an alternative forum to decide issues relating to the sale is a breach of his settlement agreement with Chana, which provides that any issues with the sale would be determined by the Chancery Court:

> The Sales Process shall be under the auspices of the [Chancery] Court, and the Parties agree to present any issues or disputes regarding the Sales Process to the Court for resolution in the Court's sole discretion and authority.  The Court's ruling with regard to the sales Process shall be binding upon the Parties.

(Settlement Term Sheet, ¶ 2.iii., Motion Exhibit 6, Dkt. 8-2).  Ben Ringel agreed that any issues with the sales process would be submitted to the Chancery Court.  If he believes that Rushmore has been delaying the process, or is incapable of closing, or some modification to the sales process is appropriate, his remedy was to move the Chancery Court for relief.

38.    The record is thus clear that the real purpose of the filing is to avoid the New Jersey courts, who by now are well acquainted with Mr. Ringel's bad faith tactics and have ruled against

him many times, and revisit repeated decisions that the courts have rejected.  This forum shopping shows that the filing was in bad faith.

**C.**     **Mr. Ringel's Submissions Contain Numerous Misrepresentations**

39.     Mr. Ringel's submissions contain numerous misrepresentations, which "clearly evidence bad faith." *In re MacInnis*, 235 B.R. 255, 262 (S.D.N.Y. 1998) (citation omitted).

40.     For example, Movants showed in their moving papers that Ben Ringel failed to disclose that the Chancery Court had removed him as a co-manager of the company.

41.     Another note in the initial papers is that the three creditors listed in the bankruptcy petition as Debtor's creditors, are in fact only Benjamin Ringel's creditors.  (Dkt. 8-1, ¶¶ 64-65).  Rather than refute this, or attempt to explain why a charging order renders a party a creditor, Mr. Ringel merely doubles down on his lie that "Debtor has multiple creditors and there will be a fight as to priority and liquidation of each creditor's claims."  (Dkt. 44 ¶ 33)

42.     Another example noted above is his complete deception to the Court about the terms of the alleged escrow for payment of any arbitration award.

43.     The Opposition papers are replete with other misrepresentations and misleading statements.  We address only a few of them.

44.     <u>Misrepresentation: Rushmore or Chana Have Been The Cause Of Delay</u>    As outlined at length in our initial motion papers, in February 2020, the parties agreed to sell the Pinewood Property through a court-ordered process.  The record is clear that it was Ben Ringel who then took numerous steps to thwart the sale, resulting in the failure for the sale to be consummated.  (Dkt. 8-1 ¶¶ 25-28; Appendix ¶¶ 29-41)

45.     <u>Misrepresentation: Rushmore Is Incapable Of Closing</u>    This is belied by the fact that as late as July 14, 2023, Rushmore wrote Mr. Ringel's counsel a letter seeking cooperation

on the closing. (Reply Exh. A) And, Rushmore sought a stay of the sale, not because it lacked funds, but because restraining orders by creditors of Mr. Ringel that Ben refused to deal with prevented the title company from agreeing to the closing. (Dkt. 8-2, Motion Exh. 18). The record is clear that Rushmore remains eager to close, but has been prevented from doing so due to Mr. Ringel's interference and pursuit by creditors.

46. <u>Misrepresentation: Rushmore Did Not Contact Mr. Mandelbaum</u> Mr. Ringel states that he contacted Barry Mandelbaum, the court appointed attorney for BCR Lakewood Holdings, and then asserts "upon information and belief" that Rushmore never contacted Mr. Mandelbaum to coordinate preparation of closing documents. (Dkt. 44 ¶ 20). However, e-mails from November 2022 prove that Rushmore's counsel contacted Mr. Mandelbaum at that time regarding closing, but he responded that because Ben Ringel refused to close, it would need to go to the Court. (Reply Exh. B)

47. <u>Misrepresentation: Chana Ringel Is Acting In Bad Faith In Seeking Dismissal</u>
There is no evidence that Chana is seeking to bankrupt her brother or attempting to continue litigation without end. Rather, as set forth in her initial papers, she opposes this bankruptcy proceeding because it is yet another delay tactic by Mr. Ringel in a long line of delaying tactics he used to breach the parties' Settlement Agreement, and he continue through this filing to attempt to reverse multiple court rulings that have gone against him. .

48. Further, Ben Ringel stole more than one million dollars from her in connection with the Debtor, requiring her to bring two actions against him, and obtain a large arbitration award of about $1.8 million. Movants have good reason not to trust his handling of any sale of the Pinewood property (or any property) – and it is clear that Mr. Ringel views this proceeding as a means to rest control of the sale process. As he states in his declaration: "We will need to hire a new broker,

solic new bids for the Property, and negotiate a new contract with a new purchaser." (Dkt. 44, ¶ 21)

49.     Had Mr. Ringel honored his commitment in the parties' settlement agreement in February 2020, the sale with Rushmore would have been completed.  Instead, he has taken numerous frivolous actions to thwart the sale  – each one of which has been rejected again and again by the courts (including some of which have led to his being sanctioned), but which nevertheless delayed the sale significantly.

## III.     The Bankruptcy Process Is Not In The Interest Of Debtor, The Creditors,  Or The Equity Owners

50.     Finally, we address arguments that the bankruptcy process is in the interest of the Debtors, creditors and equity owners.   The bankruptcy filing will cause significant expense to the Debtor – the budget submitted by the Debtor's counsel submitted calls for Debtor to expend at least $450,000 in exorbitant legal fees just for the first three months of this proceeding alone.  (Dkt. 19-1).  The case is likely to go on much longer than that, likely resulting in over $ 1 million in fees charged to Debtor – half of which will come out of Chana Ringel's pocket, since she is a 50% owner.   Avoiding these unnecessary expenses is certainly a good faith reason to oppose the bankruptcy process.

51.     Such expenditures of fees is a complete waste of Debtor's assets, and prejudices Chana Ringel and other creditors, when the same result can be achieved in the Chancery Court without such an expenditure.  No explanation is provided by the Opposition why it is advantageous to Debtor or the creditors to waste a substantial amount of its assets in a needless bankruptcy proceeding.

52. Furthermore, the conduct of Debtor in the short time this petition has been pending indicates that resolution will be long-delayed and plagued by missteps which will prejudice Debtor:

- Debtor belatedly filed a motion for a cash collateral order, to permit Debtor's business to continue, on September 28, 2023 – *three weeks after* the Petition was filed. (Dkt. No. 19) This delay was because the first time anyone contacted Citizens Bank, Debtor's secured creditor, was *after* the Petition was filed. Not surprisingly, two-and-a-half weeks of negotiations ensued, before Citizens agreed to the terms of such an order on September 28, 2023. This delay endangered Debtor's business by threatening default on bills due and payroll.

- Worse, the agreed-to order expired on October 25, 2023. (Dkt. 19, ¶ 2).

- Debtor stated at the inception of this petition, on September 7, 2023, that it "anticipates filing a Chapter 11 plan of reorganization within the next month." (Dkt. 2, ¶ 31) That time has come and gone.

- Debtor recently filed a second motion for extension of time to file a schedule of assets and liabilities. (Dkt. No. 25) The asserted reason for the delay was delay in obtaining documentation from Affiliated Management. (*See id.*, ¶ 9). This delay is a result of Ben Ringel and his counsel hiding the impending bankruptcy petition until after the filing, even from the Court appointed fiscal agent "that oversees the day-to-day operation and management of the Property." We believe this was done deliberately, since Affiliated Management would have informed Chana Ringel and she would have been able to stop the filing.

- Just this week, Debtor filed a third motion for extension of time to file its schedule of assets and liabilities. (Dkt. No. 49). Astoundingly, its excuse for not completing the schedules on time was that it has been "been preoccupied with reviewing and responding" to this motion to dismiss, as well as the US Trustee's motion for change of venue (which was just recently filed on October 23), and that the documents needed are in the possession of Affiliated Management – a fact it must have known since before the Petition was filed in light of Debtor's counsel's representation in its retention declaration that it had knowledge of the "current condition of the Debtor's business, management, assets, and liabilities," which formed part of the basis for its being "well qualified and uniquely able to represent the Debtor in an *efficient and timely* manner." Yet Debtor's counsel, which charges up to $1,500 per hour for its work, cannot get the schedule of assets and liabilities filed. This case is not about consummating the sale, but Mr. Ringel once again attempting to orchestrate a sale to himself or a partner as he has been trying to do for years, notwithstanding the harm to his creditors. .

53.     This short history shows that this bankruptcy process will be delayed and may well harm Debtor's business. That is not in the interest of Debtor, nor the creditors and equity holders.

## IV.     Alternatively, The Automatic Stay Should Be Lifted To Allow The Sale Process To Proceed Under Chancery Court Supervision

54.     For all of the above reasons and those already stated in our initial petition, to the extent the Court does not dismiss this Petition, it should lift the automatic stay to allow the Chancery Court to complete the sale of the Pinewood Property.

55.     Ben Ringel's primary argument against lifting the stay is that such would interfere with the administration of the bankruptcy estate. (Dkt. 43, ¶ 50) But that argument is unsupported: there is no reason that the Chancery court cannot oversee the sale and distribution of assets and

determine priority among creditors as well as this Court. The argument that the Chancery court proceedings have dragged on is disingenuous, where, as outlined above, it is Ben Ringel who has been the cause of that delay.

## **CONCLUSION**

56.     For the above reasons, and those previously stated in our initial motion papers, the Court should either dismiss the petition or lift the automatic stay.

Dated: October 27, 2023

KOFFSKY SCHWALB LLC
*/s Efrem Schwalb*
Efrem Schwalb
Bruce Weiner
Tal S. Benschar
500 Seventh Avenue, 8th Floor
New York, NY 10018
646.553.1590